UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:20-cv-21254-BLOOM/Louis

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

JUSTIN W. KEENER, *d/b/a JMJ Financial*,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss, ECF No. [15] ("Motion"). Plaintiff filed a response in opposition, ECF No. [21] ("Response"), to which Defendant filed a reply, ECF No. [24] ("Reply"). The Court has considered the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

    **I.**    **BACKGROUND**

This action arises out of Defendant's alleged violation of Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78o(a)(1). According to the Complaint, ECF No. [1], between January 2015 and January 2018, Defendant bought and sold billions of newly issued shares of microcap securities (penny stocks) and generated millions of dollars of profits from those sales, but he failed to comply with dealer registration requirements under the Exchange Act. *Id.* at ¶ 1. Specifically, Defendant's business model entailed buying convertible notes from penny stock issuers, holding the notes for at least six months, converting the notes into newly issued shares of stock at a deep discount to the prevailing market price (generally ranging between 35-50% less), and then selling those shares into the public market for a significant profit. *Id.* at

¶¶ 2, 8, 13, 15. Defendant purportedly purchased or converted more than 100 notes from more than 100 different microcap issuers, and he sold over 17.5 billion newly issued shares into the public market generating approximately $21.5 million in profits during the alleged three year period. *Id.* at ¶¶ 2, 8, 16. In Plaintiff's view, Defendant operated as an unregistered securities dealer. *Id.* at ¶¶ 3-4, 19, 22.

Plaintiff alleges that Defendant has never been registered with the SEC, and the Financial Regulatory Authority ("FINRA") barred him from associating with any FINRA member in any capacity in 2012. *Id.* at ¶ 5. Defendant at one point employed as many as twenty people even though he describes his business as a sole proprietorship. *Id.* The Complaint alleges that Defendant "held himself out to the public as being willing to buy convertible notes at a regular place of business[.]" *Id.* at ¶ 10. In particular, he "operated a website that advertised his business to issuers;" "hired employees, who worked on commission, to solicit issuers who were willing to sell convertible notes to him;" he and his employees "attended, and sometimes sponsored, conferences at which they solicited penny stock issuers in person;" and he gave presentations at conferences "that included a notarized affidavit from his accountant stating that he had $20 million 'committed' to purchase convertible notes from issuers." *Id.* Plaintiff allegedly obtained "nearly all of the stock that he sold in his business directly from the issuers, through note conversion, and not from purchases in the secondary market." *Id.* at ¶ 11.

The Complaint asserts a single count for violation of Section 15(a)(1) of the Exchange Act. *Id.* at ¶¶ 23-26. Plaintiff seeks four forms of relief: (i) a permanent injunction restraining Defendant and his agents from acting as an unregistered securities dealer; (ii) an injunction restraining Defendant from participating in the offering of any penny stock; (iii) ordering Defendant to pay a civil penalty; and (iv) ordering Defendant to disgorge, with prejudgment interest, all ill-gotten gains derived from the activities set forth in the Complaint. *Id.* at 11-12.

Defendant now moves to dismiss the Complaint largely on the basis that he is a "trader" and not a "dealer" under the Exchange Act and therefore he does not need to register with the SEC. *See generally* ECF No. [15]. He maintains that the "distinction between a securities dealer and a securities trader is like the distinction between a restaurant and a grocery store—while they may both deal with similar products (*i.e.*, securities or food), they are two different entities subject to two different regulatory requirements." *Id.* at 7; *see also id.* at 23 ("just as a grocery store does not become a restaurant simply by selling a lot of food, a trader does not become a dealer simply by selling a lot of stock."). He makes five overarching arguments: (i) there is extensive legal guidance on the definition of a dealer; (ii) Plaintiff fails to allege any facts to show that Defendant was a dealer; (iii) the Complaint's allegations show that Defendant was a trader; (iv) Plaintiff fails to state a claim for injunctive relief; and (v) the Complaint alternatively should be dismissed as a due process violation because of a lack of fair notice that his conduct could be unlawful.

Plaintiff responds that Defendant's arguments focus "largely on non-binding factors outside of the plain language of the statute, while ignoring binding precedent in this Circuit." ECF No. [21] at 1. According to Plaintiff, the Exchange Act's definition of a dealer is clear and broad in its scope, and "[t]here is substantial case law applying the dealer definition in this Circuit and elsewhere[.]" *Id.* a 4-5. Plaintiff makes four arguments. First, The Complaint properly alleges that Defendant was an unregistered dealer. In this respect, it argues that the "unambiguous plain language controls," and the Eleventh Circuit applies the plain language of the dealer registration statute. *Id.* at 7-13. Second, Defendant's trader exception argument is both premature and erroneous. *Id.* at 13-16. Third, Plaintiff has alleged sufficient facts to support an injunction, *id.* at 16-18, and finally, Defendant's due process argument is meritless because he had "ample notice" that he was a "dealer" under the statute. *Id.* at 18-20.

Defendant replies that the "question presented is this: can the SEC allege a plausible dealer registration claim against Mr. Keener under the Securities Exchange Act of 1934, if (1) it alleges no facts to show Mr. Keener is a dealer under the criteria set forth in many court cases and prior SEC statements; and (2) it alleges no facts to show that Mr. Keener was more than a trader excluded from the statutory dealer definition? The answer is no, and thus the Complaint must be dismissed." ECF No. [24] at 1. He makes four points. First, the dealer factors are "essential to the *Iqbal* analysis;" second, the Complaint fails to allege the dealer factors; third, Plaintiff's cases are "not on point;" and fourth, the request for injunctive relief must be dismissed because Plaintiff fails to allege a reasonable likelihood of future violation.

The Motion, accordingly, is ripe for consideration.

## II.     LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (*quoting Twombly*, 550 U.S. at 557, 127 S.Ct. 1955 (alteration in original)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. These elements are required to survive a motion brought under Rule 12(b)(6), which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F.Supp.2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955; *see Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (*quoting Iqbal*, 556 U.S. at 682, 129 S.Ct. 1937).

A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and the attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (*citing Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

It is through these lenses that the Court considers the Motion and the parties' arguments.

5

### III. DISCUSSION

Determining whether Defendant is entitled to dismissal of the Complaint raises two overarching issues. The first is whether the Complaint alleges a plausible claim that Defendant is a "dealer" for purposes of the Exchange Act. And second, if so, whether the Complaint fails to state a claim for injunctive relief. The Court will address each issue in turn.

#### A. Defendant is alleged to be a "dealer" under the Exchange Act

The parties dispute whether Defendant is subject to the "onerous requirements that come with" being a securities dealer. ECF No. [15] at 6. Under the Exchange Act, a "dealer" is "any person engaged in the business of buying and selling securities . . . for such person's own account through a broker or otherwise." 15 U.S.C. § 78c(5)(A). A dealer, however, does not include a trader, a "person that buys or sells securities . . . for such person's own account, either individually or in a fiduciary capacity, but not as a part of a regular business." *Id.* at § 78(c)(5)(B). The Exchange Act requires "dealers" to register with the SEC. *Id.* at § 78o(a)(1).

Defendant contends that he is a trader, and not a dealer, based on various factors mentioned in the SEC's Guide to Broker-Dealer Registration.[1] ECF No. [15] at 12-13 (listing nine factors). According to Defendant, the statutory language defining a dealer "would cast too broad a net" if taken literally and would "broadly cover" anyone that buys and sells securities. *Id.* at 12, 14. In his view, Plaintiff "does not allege that [Defendant] possessed a single one of the attributes the SEC has itself identified as characteristic of a dealer, and consequently, the Complaint must be dismissed." *Id.* at 6. Plaintiff, conversely, argues that the Exchange Act's language is "clear," and the statutory definition was "drawn broadly by Congress to encompass a wide range of activities

---

[1] *See Guide to Broker-Dealer Registration*, U.S. Securities and Exchange Commission, Division of Trading and Markets, April 2008, https://www.sec.gov/reportspubs/investor-publications/divisionsmarketregbdguidehtm.html (last visited August 13, 2020) ("SEC Guide").

involving investors and securities markets." ECF No. [21] at 4-5 (citing Registration Requirements for Foreign Broker-Dealers, 54 Fed. Reg. 30013, 30015). *See also Roth v. SEC*, 22 F.3d 1108, 1109 (D.C. Cir. 1994) ("The broker-dealer registration requirement serves as the 'keystone of the entire system of broker-dealer regulation.'") (citation omitted). It contends that the Complaint alleges sufficient facts to show that Defendant was a dealer under the statute's explicit terms. Accordingly, the parties disagree regarding whether the Court should apply the statutory language or the non-binding factors when assessing the Complaint's allegations.

Upon review and consideration, the Court need not ultimately resolve at this stage whether Defendant is a dealer or a trader—a legal determination better suited for a complete factual record. Instead, the Court must ascertain simply whether the Complaint alleges that Defendant is a dealer, subject to the Exchange Act's provisions, based on the underlying allegations. In this setting, Plaintiff has carried his burden to set forth a plausible claim that Defendant is a "dealer" under 15 U.S.C. § 78c(5)(a). First, the Court is unconvinced that it should overlook the actual statutory language and instead perform a holistic factorial analysis based on various "characteristics" of a dealer. ECF No. [15] at 11-12. Not only is such a fact-intensive analysis ill-suited for a motion to dismiss setting, it is unclear how the Court is to weigh each factor. *See SEC v. River N. Equity LLC*, 415 F. Supp. 3d 853, 858 (N.D. Ill. 2019) (denying motion to dismiss, and noting that "these factors (and any decisions construing them) are not controlling. They are neither exclusive, nor function as a checklist through which a court must march to resolve a dispositive motion. And whether and which are met is necessarily a fact-based inquiry best reserved for summary judgment or trial"). Indeed, the SEC Guide provides that a "yes" answer to any one of the referenced factors "indicates that you may need to register as a dealer." Under that same reasoning, a "no" answer to one or even all of the factors does not foreclose the possibility that someone is a "dealer."

Against this backdrop, the Court notes that while factors are relevant for assessing and ultimately concluding whether a party is a dealer, they do not supplant the statute's plain language, especially at this stage. This conclusion is strengthened following review of Defendant's case authorities applying factors that did not take place in a motion to dismiss posture. *See SEC v. Federated Alliance Grp.*, Case No. 93-cv-0895E(F), 1996 WL 484036 (W.D.N.Y. Aug. 21, 1996) (summary judgment); *Chapel Investments, Inc. v. Cherubim Interests, Inc.*, 177 F. Supp. 3d 981 (N.D. Tex. 2016) (motion for approval of stipulation of settlement); *Oceana Capitol Grp. Ltd. v. Red Giant Entm't, Inc.*, 150 F. Supp. 3d 1219 (D. Nev. 2015) (same). As recognized in *River North*, "there's a reason most opinions the parties cite were decided at later stages." 415 F. Supp. 3d at 858.

Further, the Court notes that the SEC has previously represented that "the primary indicia in determining that a person has 'engaged in the business' within the meaning of the term 'dealer' is that the level of participation in purchasing and selling securities involves more than a few isolated transactions." *In the Matter of Gordon Wesley Sodorff, Jr.*, 50 S.E.C. 1249, 1992 WL 224082, at *4-5 (Sept. 2, 1992). Under the Complaint's allegations, Defendant engaged in buying and converting over 100 convertible notes securities from more than 100 different microcap issuers during the three year period. ECF No. [1] at ¶¶ 2, 8, 16. He sold into the public market approximately 17.5 billion shares of newly issued stock derived from the converted notes, and he made a $21.5 million profit. These allegations suggest that Defendant's "level of participation in purchasing and buying securities involves more than a few isolated transactions." *See River North*, 415 F. Supp. 3d at 858 ("The SEC alleges that during the relevant period River North bought and sold over 10 billion shares of stock from more than 62 microcap issuers, and then quickly resold them to the investing public, receiving some $31 million in profit. From this, it is more than plausible that River North meets the statutory 'dealer' definition."); *Sodorff, Jr.*, 1992 WL 224082,

at *5 ("Sodorff's participation in the Buffalo transactions was sufficient to establish that he engaged in the securities business. Over the course of approximately a two-month period, Sodorff sold 556,227 shares of Buffalo stock to 17 investors, hardly an instance of isolated activity.").

The Court notes that Plaintiff *did* allege facts that come within the ambit of certain of the factors listed in the SEC Guide. For instance, apart from alleging that Defendant operated a business to purchase debt securities directly from issuers, which were later converted into stock at a deeply discounted price compared to prevailing market prices and then resold on the public market for a sizeable profit, the Complaint alleges that Defendant held himself out to the public as being willing to buy convertible notes at a regular place of business. ECF No. [1] at ¶ 10. *See also See River North*, 415 F. Supp. 3d at 858-59 (rejecting defendant's argument that the SEC failed to allege that defendant was a "dealer" because the complaint did not allege "the presence of a laundry list of factors set forth in various SEC no-action letters and other guidance," and finding it "particularly significant" that defendant purchased stocks at a discounted price directly from numerous issuers). Specifically, he allegedly operated a website advertising his business to issuers, he hired employees to solicit issuers who were willing to sell convertible notes to him, he sponsored conferences in which he and his employees solicited penny stock issuers in person, and he made PowerPoint presentations at conferences representing that he had $20 million "committed" to purchase convertible notes from issuers. *See* SEC Guide (noting as a consideration whether one "advertise[s] or otherwise let[s] other know that you are in the business of buying and selling securities"). These allegations further permit the Court to reasonably conclude that the Complaint adequately alleges that Defendant was a dealer under the Exchange Act.

The Eleventh Circuit has examined the explicit statutory language defining a "dealer" without referencing factors when evaluating whether a party is subject to securities registration requirements. *See SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 809-10 (11th Cir. 2015)

(explaining that the "centerpiece" of the definition of a "dealer" is the word "business," and noting that defendants were dealers where their "*entire* business model was predicated on the purchase and sale of securities" and where they bought "stocks at deep discounts" by contractual agreement and "then resold those stocks for profit") (emphasis in original).[2] *See also Eastside Church of Christ v. Nat'l Plan, Inc.*, 391 F.2d 357, 361 (5th Cir. 1968) (determining that defendant was a dealer under the explicit terms of the Exchange Act because defendant purchased church bonds "for its own account as part of its regular business and sold some of them");[3] *SEC v. Offill*, No. 3:07-CV-1643-D, 2012 WL 246061, at *8-9 (N.D. Tex. Jan. 26, 2012) (granting summary judgment in favor of the SEC, explaining that while "there is not an abundance of binding case law defining broker and dealer," *Eastside Church*, 391 F.2d at 361, is "illustrative," and determining that defendant was a dealer under the Exchange Act because he "bought and sold securities as part of his regular business").

Finally, the Court does not agree with Defendant that the Complaint should be dismissed because of a due process violation. The Complaint's allegations support the inference that Defendant is not a novice investor that occasionally dabbles in securities trading. *See, e.g.*, ECF No. [1] at ¶¶ 5, 12, 15. Defendant asserts that unless the lawsuit is dismissed, he will be penalized for conduct he "had no way of knowing could be unlawful," ECF No. [15] at 23. However, he overlooks the express language of the Exchange Act, decisions from this circuit applying the

---

[2] Although Defendant stresses that *Big Apple* does not apply because that court interpreted the Securities Act of 1933 rather than the Exchange Act, ECF No. [24] at 1, the Court is not persuaded. The Eleventh Circuit panel noted that the definition of a "dealer" under both statutes is "very similar" and it found the district court's analysis to be "sound" where the district court "analyzed the definition of dealer as it related to the SEC's [Exchange Act] claims and generally applied that analysis to the [Securities Act of 1933] exception." 783 F.3d at 809 n.11.

[3] The Eleventh Circuit has adopted, as binding precedent, all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

definition of "dealer," and the SEC Guide itself, which sets forth instances in which a party can be deemed a dealer. Defendant failes to point to any particular aspect of the Exchange Act that is ambiguous. Further, at least one other court has rejected an analogous due process challenge at the motion to dismiss stage. *River North*, 415 F. Supp. 3d at 859 ("[Defendants] argue that allowing the claims against them to go forward would violate their due process rights . . . But while the Court agrees that formal SEC guidance on these matters would be helpful, it cannot conclude that the SEC's claims fail as a matter of law for lack of it. The definition at issue is broad. The factors for the Court's consideration are merely factors. And the players in this case are not new to this field."). Accordingly, the Motion is denied on this basis.

### B. Injunctive relief

Defendant contends that the Complaint's claim for injunctive relief is inadequate because "[i]njunctions such as penny stock bars and obey-the-law injunctions are proper *only* to prevent imminent harm, not to punish the defendant." ECF No. [15] at 20 (emphasis in original). According to Defendant, the Complaint has not alleged any ongoing violations.

Plaintiff is entitled to injunctive relief when it establishes (1) a prima facie case of previous violations of federal securities laws, and (2) a reasonable likelihood that the wrong will be repeated. *SEC v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004). "Indicia that a wrong will be repeated include the 'egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of the conduct, and the likelihood that the defendant's occupation will present opportunities for future violations.'" *Id.* (citation omitted). *See also SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978) ("The critical question in issuing the injunction and also the ultimate test on review is whether defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future.").

Upon review, although the Court agrees that the Complaint does not allege an ongoing violation of securities laws after January 2018, dismissing an injunctive relief claim at this early stage is unwarranted, especially as liability has not been established and evidence has not been presented. *See, e.g.*, *SEC v. Gabelli*, 653 F.3d 49, 61 (2d Cir. 2011), *rev'd on other grounds*, 568 U.S. 442 (2013) ("[I]t is most unusual to dismiss a prayer for injunctive relief at this preliminary stage of the litigation, since determining the likelihood of future violations is almost always a fact-specific inquiry."); *SEC v. Melvin*, No. 1:12-CV-2984-CAP, 2013 WL 12062834, at *6 (N.D. Ga. June 26, 2013) ("Determining whether to grant injunctive relief is fact-specific. . . . The court does not believe this is the appropriate time to consider whether to dismiss the SEC's request for injunctive relief.") (quoting *Gabelli*, 653 F.3d at 61); *SEC v. C. Jones & Co.*, 312 F. Supp. 2d 1375, 1382 ("Although [defendant] is correct that the SEC must eventually prove a reasonable likelihood of future violations, that does not mean 'the SEC is subject to a higher standard of pleading when it seeks injunctive relief.' . . . I find [defendant's] argument premature. [] This issue must await resolution until after the SEC has had the opportunity to present evidence supporting its claims.").

Based on the Complaint's allegations, Plaintiff has pled sufficient facts to obtain injunctive relief. Defendant was previously barred by FINRA from associating with any FINRA member in any capacity after 2012, his alleged instant securities violations spanned three years and involved selling over 17.5 billion shares, he employed twenty people working on commission at one point, sponsored conferences and gave presentations as part of his business, and he dealt with over 100 different microcap issuers. Although none of these features alone demonstrate a reasonable likelihood of future violations, together they permit an inference that Defendant's alleged misconduct will be repeated if not enjoined. Indeed, they illustrate that by skirting dealer registration requirements, Defendant could conduct a highly lucrative business in a relatively short

period of time and can enlist numerous people to assist him. Therefore, because it is premature at this stage to dismiss this claim for relief, Defendant's Motion is also denied on this ground.[4]

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [15]**, is **DENIED**. Defendant shall answer the Complaint by **August 27, 2020**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 13, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

[4] In the Reply, Defendant argues for the first time (in a concluding three sentence paragraph) that the Complaint's request for disgorgement is not plausibly alleged. ECF No. [24] at 10. It is improper to raise an argument for the first time in a reply. *See, e.g.*, *Herring v. Secretary, Dep't of Corrs.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotations omitted); *Willis v. DHL Global Customer Sols. (USA), Inc.*, No. 10-62464-CIV, 2011 WL 4737909, at *3 (S.D. Fla. Oct. 07, 2011) (collecting cases and noting that "[j]udges in this district . . . have repeatedly rejected attempts by parties to raise new arguments in reply memoranda"). Further, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Melford v. Kahane and Assocs.*, 371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. 2019). Because this argument is raised for the first time in the Reply and is undeveloped, it is waived and not considered by the Court.