1          **IN THE UNITED STATES DISTRICT COURT**
           **SOUTHERN DISTRICT OF FLORIDA**
2
                        **MIAMI DIVISION**
3
              **CASE NO.:  20-cv-21254-BB**
4

5

6

7   SECURITIES AND EXCHANGE  )
    COMMISSION,               )
8                             )
             Plaintiff,       )
9   v.                        )
                              )              June 18, 2021
10  JUSTIN W. KEENER,         )
    d/b/a JMJ Financial,      )
11                            )              Pages 1 - 47
             Defendant.       )
12  _____/

13

14

15                     DISCOVERY HEARING
16
        BEFORE THE HONORABLE LAUREN FLEISCHER LOUIS
17              UNITED STATES MAGISTRATE JUDGE

18

19

20
    APPEARANCES:
21

22  On behalf of the Plaintiff:

23                  SECURITIES AND EXCHANGE COMMISSION
                    100 F Street Northeast
24                  Washington, DC 20549
                    BY:  ANTHONY R. PETRILLA, ESQ.
25                  BY:  JOSHUA E. BRAUNSTEIN, ESQ.
                    BY:  JAN FOLENA, ESQ.

```
 1

 2    APPEARANCES CONTINUED:

 3
      On behalf of the Defendant:
 4
                       GREENBERG TRAURIG, P.A.
 5                     333 SE 2nd Avenue
                       Suite 400,
 6                     Miami, FL 33131
                       BY:   BENJAMIN G. GREENBERG, ESQ.
 7

 8

 9
                       BUCKLEY LLP
10                     2001 M Street NW,
                       Suite 500,
11                     Washington, DC 20036
                       BY:  CHRISTOPHER F. REGAN, ESQ.
12                     BY:  VEENA VISWANATHA, ESQ.

13

14

15
      Transcribed by:
16
                       BONNIE JOY LEWIS, R.P.R.
17                     7001 SW 13 Street
                       Pembroke Pines, FL  33023
18                     954-985-8875
                       caselawrptg@gmail.com
19

20

21

22

23

24

25
```

1          (Thereupon, the following proceeding was held:)

2          THE COURTROOM DEPUTY:  The United States District

3    Court for the Southern District of Florida is now in session.

4    The Honorable Lauren Louis presiding.

5          Calling Case Number 20-cv-21254-Bloom; Securities and

6    Exchange Commission versus Justin Keener.

7          Counsel, would please note your appearances for the

8    record.

9          THE COURT:  For the Plaintiff.

10         MR. BRAUNSTEIN:  Good morning, Your Honor.

11         Joshua Braunstein and I am joined by Jan Folena who is

12   a supervisory trial attorney at the SEC.

13         THE COURT:  Okay.  Thank you.

14         MR. GREENBERG:  Good morning, Your Honor.

15         Ben Greenberg along with Chris Regan and Veena

16   Viswanatha on behalf of Mr. Keener and Mr. Keener is also

17   present, but not being seen.

18         THE COURT:  Okay.  No problem with that.

19         It sounds like we have a better connection now.  I am

20   hearing each of you well.

21         Okay.  So we went through the materials.  They are

22   voluminous.  I am not sure that I appreciate all the nuances.

23   So let me just look at something really quickly.  I thought I

24   had a question before we even started.

25         Okay.  Well, Mr. Greenberg, you noticed this dispute.

1   You have the floor.

2          MR. GREENBERG:  Thank you, Your Honor.  I appreciate

3   the Court noticing this for a hearing.

4          Dispute what Courts have said, 80 years of enforcing a

5   statute and their own regulations in a certain way, the SEC has

6   really created confusion by speaking out of both sides of its

7   mouth.

8          And unfortunately, the only thing that has been

9   consistent in their words and actions has been how inconsistent

10  they are.  And I am not talking about Mr. Petrilla and Mr.

11  Braunstein, obviously, but the Commission as a whole.

12         And for Mr. Keener, this isn't just a matter of

13  semantics because the case is monumentally important.  And now,

14  Your Honor, the SEC is compounding the problem by making it

15  extremely difficult for Mr. Keener to defend himself.  So we

16  are asking the Court to order that the SEC comply with a really

17  modest and narrow discovery.

18         What I would like to do, Your Honor, is talk exactly

19  why those are relevant and, then, take it from there.  And

20  there really are three reasons and they overlap.  So I am going

21  to address them together.

22         The first is fair notice and due process;

23         The second is *scienter* and Mr. Keener's ability to

24  defend himself against the injunctive relief that the SEC is

25  seeking;

1        And third really is the confusion that the SEC has

2    created by taking separate positions with third parties and in

3    public statements, which is relevant to the heart of the SEC's

4    substantive case.

5        Let me start with a very brief statement of the law

6    and I think an area where we disagree.  The question is whether

7    Mr. Keener had a reasonable opportunity to know what is

8    prohibited so that he may act accordingly.

9        Now quoting from the *Big Apple*, the SEC says Mr.

10   Keener, and I quote, has no due process notice defense because

11   this case involves the plain language of the dealer

12   registration statute.  That simply isn't correct.  To say that

13   Mr. Keener has no due process and notice defense at this point

14   is wrong.

15       What Judge Bloom said in her order and, of course, we

16   are all bond by that as we are by *Big Apple*, but Judge Bloom

17   only said that accepting the SEC's factual allegations as true

18   and evaluating the inferences in their favor, the complaint

19   survived what is a fairly low threshold of 12(b)(6).  She

20   didn't decide any of the merits.

21       Mr. Keener has pled this due process defense in his

22   answer and that hasn't been struck.  And so the real question

23   specifically as it relates to the SEC as the Second Circuit

24   said is whether there was substantial uncertainty in the

25   Commission's interpretation.  And the problem is that the SEC

1    is asking for this Court to essentially decide the case at the

2    discovery phase.

3           And let me go into some of the specifics.  For years

4    the SEC was telling the world that sometimes you can easily

5    tell if someone is a dealer.  Other situations can be less

6    clear and that's on their guidance that is on their website

7    that is here as of this morning.

8           But the industry or market's understanding of the

9    dealer registration's requirements, especially when that

10   understanding is based on communications with the SEC and

11   that's what we are here about is relevant to the fair notice

12   defense.  Let me tell you why.

13          The SEC's argument that its communications with market

14   participants are wholly irrelevant to a fair notice defense has

15   been repeatedly objected.  We talked in our papers about *SEC v.*

16   *Kosmin (*phonetic).

17          In a moment I will talk about a very recent case,

18   *Ripple Labs* where the Court ordered the SEC to turn over

19   communications with market participants about the rule that was

20   an issue in that case.

21          And again, confusion and inconsistent interpretations

22   within an agency support a fair notice defense.  That is not

23   disputable.  And as you know, Your Honor, confusion and

24   inconsistency are the cryptonite for fair notice.

25          So the confusion comes from the SEC itself and we will

 1  talk about that in a couple of moments, but let me just start

 2  with one thing.  The broker dealer guide says this section

 3  covers the factors that determine whether a person is a broker

 4  or a dealer.

 5          Yet, the SEC is telling Mr. Keener that he cannot

 6  consider the factors that determine whether a person is a

 7  broker or a dealer.

 8          The problem is this, Judge.  The SEC invites people to

 9  ask questions relating to the dealer requirements and provides

10  answers to the market participants who do so.  They can call.

11  They can e-mail.

12          We need to know are they referencing *Big Apple* holding

13  in those communications like they are telling us?  Like they

14  are telling the Court?  Does the SEC analyze or mention the

15  factors that determine whether a person is a dealer?

16          The SEC is now saying that you can't look at the

17  guide.  You can only look at the statute and the *Big Apple*

18  case.  But in the years before this litigation, the SEC was

19  telling market participants to look at the guide and not the

20  statute or the *Big Apple* case.  That is relevant to our fair

21  notice defense.

22          What these communications say matters.  And look, we

23  don't need to know the particulars of the business.  We aren't

24  going to argue that the SEC ultimately is wrong or right as to

25  Mr. Keener based on what these other inquiries were.

1        But, Judge, Mr. Keener couldn't have had fair notice
2   if the industry generally did not have fair notice of the way
3   the SEC now interprets the statute and did not have fair notice
4   that the SEC would now ignore its own guide.

5        You probably had the opportunity to see in the
6   voluminous materials that you mentioned a hearing transcript
7   from a case called *Ripple Labs*, an SEC matter in the Southern
8   District of New York.

9        We really do think it is on all fours and I will just
10  give a very, you know, very brief sort of overview of that and
11  why it matters.  *Ripple*, this is the world of crypto currency,
12  asked for discovery into the SEC's communications with market
13  participants just like we are doing about two other crypto
14  currency, Bitcoin and Ethereum, specifically to its fair notice
15  defense.

16        Now to be clear, these were third party communications
17  between the SEC and third party participants in the market.
18  Initially the SEC refused to produce those documents on
19  relevance grounds, but Judge Netburn overruled their objection
20  and agreed that they should produce some of those documents.

21        This is incredibly important, Your Honor, because just
22  like in *Ripple Labs*, we are in a situation where Mr. Keener is
23  the subject of an enforcement action where he is asserting that
24  the SEC has not adequately advised the market of the rules that
25  it is now seeking to enforce through legislation.

1           We are simply asking the same thing that *Ripple Labs*,

2    the Defendant asked for in that case, which is to tell us what

3    is in these third party communications.  We need to know what

4    is there because what the SEC is saying to market participants

5    matters as to that fair notice proposition.

6           It simply does not all begin and end with whether or

7    not the statute is ambiguous.  We have to look at what the

8    market understood and that is exactly what the Magistrate Judge

9    did in *Ripple* in ordering those communications to be turned

10   over.

11          So these cases together, Judge, stand for the

12   proposition that what the SEC tells market participants about

13   rules and regulations are relevant to a fair notice defense in

14   an enforcement like that, period.

15          Let me move, Your Honor, to injunctive relief, if I

16   may.  And I think Your Honor in many ways this is really the

17   death now for the Commission's argument.  One of Mr. Keener's

18   defenses against the SEC's request for injunctive relief is

19   that he did not act with *scienter*.

20          Now the Commission argues and they are right about

21   this, that *scienter* itself is not part of the one count in the

22   complaint.  But as they acknowledge and as Judge Bloom said in

23   her order, the Court will consider *scienter* in assessing the

24   SEC's request for injunctive relief.

25          That is, I don't think, a proposition that the parties

1  debate at all.  And so if we get to that point and the

2  Commission prevails at the liability phase and we are talking

3  about what the appropriate remedy is for Mr. Keener and they

4  are seeking injunctive relief -- and remember this is serious

5  business for Mr. Keener.

6         One of the issues will be whether or not he acted with

7  reckless disregard of industry practice.  So industry practice

8  is at the heart of that and we would want to present evidence

9  of that.

10        Now, it is not like we get a chance to come back to

11  Your Honor if the SEC is successful on liability and say,

12  Judge, or SEC, now give us all of this stuff.  This is it.

13  This is our only chance.

14        In one of the letters from the SEC, they say that --

15  and I'm going to quote it:

16        "We have never contended that Mr. Keener recklessly

17  disregarded industry practice whatever you believe that means

18  here in acting as an unregistered dealer.  Indeed, the SEC will

19  not make any such argument in this case."

20        Well, we appreciate that, but if we get to that point

21  just because the SEC says that they are not going to make a

22  certain contention -- and we believe them, Judge.  It is not

23  that we are doubting what is in that letter for a second.

24        But if we get to the point where we are discussing

25  injunctive relief, Mr. Keener and his lawyers absolutely have a

 1 | right to talk about the industry standard because it goes to

 2 | *scienter*.  If we want to get up there and say, look, what Mr.

 3 | Keener did is followed 80 years of SEC precedent.

 4 |         If Mr. Keener wants to say look at what everybody else

 5 | in the industry was doing until the Commission decided to file

 6 | a series of lawsuits.  The most important thing is what the

 7 | market thinks and so what the SEC is telling these third

 8 | parties is incredibly important.

 9 |         And I want to draw a distinction on what is on the

10 | website and what would be in these communications with third

11 | parties.  And it is kind of the difference between doing

12 | something passively and actively.

13 |         So on the website -- and by the website, Judge, I mean

14 | the broker/dealer guides.  The SEC says these are the factors

15 | that you should ask to determine whether you are acting as a

16 | dealer.  Okay.  They are publically saying that these factors

17 | matter.  They are encouraging people to ask questions.

18 |         If this was so clear, then why would the SEC be

19 | saying, come, ask us these questions and we will give you these

20 | answers.  The SEC's website says other situations could be less

21 | clear.  So that's what they say publically.

22 |         But when somebody follows their invitation and asks a

23 | question and the SEC responds, that response is directed to a

24 | particular person, in a particular way, about a particular

25 | issue.  Now, yes, it is not to Mr. Keener, but that is not the

1  point.

2  The issue is that they may say something in a very

3  passive way on the website, but when asked direct questions

4  from market participants about whether or not they should

5  register as a dealer, what the Commission says actively,

6  directly to that person is essentially where the industry's

7  knowledge comes from.

8  And so we would be completely, you know, unable to

9  defend Mr. Keener if we get to that stage.  We hope we won't,

10  but this is our chance to ask for that information.  And let me

11  conclude very briefly, Your Honor, with the third point that

12  this goes to the heart of the SEC's case.

13  Judge, when I woke up this morning, I did as I do

14  every morning.  I went onto the SEC's website to see if the

15  broker/dealer guidance is still up there.  Now, in fairness, I

16  have only done that two mornings in my life, but it is still

17  there and the SEC guidance says nothing about the *Big Apple*.

18  If the position that the SEC is taking in this case,

19  which is *Big Apple* controls, end of story.  Then how is it

20  possible that their website to this day still does not mention

21  *Big Apple* and it mentions all these factors.

22  If the Commission out of one side of its mouth is

23  telling Mr. Keener and others that you should look at these

24  factors.  Here are some of the questions you should ask to

25  determine whether you are acting as a dealer.  And at the same

1  time this litigation is telling Mr. Keener those factors that

2  determine whether you are acting as a dealer do not matter at

3  all.

4         That's a problem not just for fair notice.  Not just

5  for injunctive relief, but that is a fundamental problem in the

6  SEC's case.

7         And look, part of the problem here is that, you know,

8  regardless of whether the source of law that a we are talking

9  about is a statute, or regulation, or agency rule -- and that

10  has come up in the correspondence.

11         And I am sure it will today.  It's a fair point, but

12  look, Your Honor, the SEC's own participation in creating this

13  ambiguity and confusion is directly relevant to all of these

14  issues.

15         The SEC can fix this, but they haven't.  They are not

16  a passive bystander.  They are not a regulator sitting on the

17  side where another enforcement agency comes in and says, look,

18  we want to get involved.

19         And so what we need here, Judge, is a very modest

20  request.  What is the SEC telling market participants?  Not

21  just what is on the website, but what are they saying?  They

22  have invited people to ask questions.  We need to know what it

23  is that we are saying.

24         We have tried in our RFP interrogatory to narrow it

25  down.  The Commission has identified that these documents

1    exist.  You know, we followed Your Honor's order last time and

2    we are not asking for, you know, last time I think it was all

3    communications about the broker/dealer guidance.  We have

4    narrowed it down.

5         We've narrowed down the one area within the SEC that

6    we want them to look, the Office of Interpretation and

7    Guidance.  And presumably they provide interpretation and

8    guidance about this.  The SEC has managed to identify this body

9    of document.  It's voluminous.  We get that.

10        But when we are talking about things like due process,

11   fair notice, defense at post liability and really the heart of

12   the Government's case, boy, I don't see how it gets to be any

13   more important than that.  Especially if the SEC thinks all of

14   this is irrelevant and I imagine they do.

15        And they have said that and, look, that is a

16   legitimate dispute, but let's have that dispute at summary

17   judgment.  Let's have that dispute down the road.  This isn't

18   the time to essentially rule on the merits of the case.

19        THE COURT:  Okay.  Is the focal point, Mr. Greenberg,

20   on what is evidenced by the questions that are being posed to

21   the SEC or solely on the reponse that the SEC is giving?

22        I ask for two reasons, relevance and scope.  Because

23   if we are going to fashion something that requires -- I'm

24   trying to get my head around what you are seeking to compel and

25   I am also curious why we're going back to 2013.

1           MR. GREENBERG:   Sure.   Thank you, Your Honor.

2           So both matter and I think for similar reasons.   The

3   questions certainly matter.   Meaning the questions from the

4   market participants because that shows, I think, the degree of

5   uncertainty in the market about what the registration

6   requirements actually are.

7           And so, if the question sort of show that, oh, look,

8   this is totally clear and Mr. Keener is an outlier, then that

9   certainly is important.   I don't think that is going to happen,

10  but it could cut either way.

11          And so the questions say what is on the market

12  participants, what is on their minds.   After reading the

13  guidance, what do they think?   What is their knowledge about?

14  So I think it is focused on their point.

15          If you look at it from the point of view of the SEC,

16  meaning their answers, that is relevant because as I mentioned

17  before, if the SEC is saying different things to different

18  people, that matters in a case where what the SEC's main

19  position is, well, *Big Apple* decided a case and this is what it

20  means.   End of story.

21          So if the SEC is citing these factors and is telling

22  an individual market participant to consider these things, that

23  is really important to Mr. Keener's defense.   If what they are

24  saying is, you know, rely on *Big Apple*, rely on *Big Apple*, that

25  is also important.

1          But, you know, since we don't really know, it is hard

2    to know for sure, but those are the two ways that it matters.

3    To address --

4          THE COURT:  Hold on, Mr. Greenberg.

5          I understood the relevance you proffered on the SEC's

6    response.  My focal point was shifting to how is it that you

7    propose they are going to find the correspondence?

8          Meaning, I saw your request.  Who has corresponded

9    with respect to this subsection?  And I assume from the volume

10   of the package there has been a lot of conferral about how it

11   is that you would propose identifying communications that fit

12   the description of what you are looking for.

13         So now that I have confirmed that it focuses on both

14   the answer and the request, how is it that you are defining or

15   otherwise proposing that they look for the types of questions

16   that are relevant to this request?

17         MR. GREENBERG:  So we have gone back and forth with

18   the Commission on that and one of the things that we talked

19   about is search terms.  We didn't get fully to the point of

20   analyzing what those search terms would actually be.

21         THE COURT:  Right.

22         MR. GREENBERG:  I know that the Commission had applied

23   some terms.  I think it may have been just Mr. Keener's name.

24         It's in the correspondence, Judge.  I'm just off the

25   top of my head not one hundred percent sure, but I think if

1  Your Honor were to agree that on the relevance issue, we could

2  certainly work with the Commission to fashion search terms or a

3  way to do it in an expeditious way.

4      THE COURT:  Search terms are most helpful when we have

5  a good sense of what it is we are looking for.

6      So I am trying to establish here, are you looking for

7  every time someone has contacted the SEC and used the term

8  dealer?  Any time someone has had a question like Mr. Keener,

9  am I a trader, or am I a dealer, or a broker?

10     That is where I am headed.  What are the relevant

11 questions that are being proposed?

12     MR. GREENBERG:  Okay.  So let me back up and correct

13 myself and then answer your question.

14     From what we understand there is one database and the

15 SEC has actually already isolated the communications with the

16 public that are about the guide.  So my understanding is that

17 that work is already being done.

18     Now how we would sort of go to that -- so you have

19 that first bucket.  How you go, you know, to sort of to narrow

20 that universe down, you know, I think it's hard for -- Judge, I

21 don't want to not answer your question, but it is hard for me

22 to come up with exactly what those search terms would be

23 because we don't know exactly what terms the SEC already --

24     THE COURT:  Sure.

25     MR. GREENBERG:  -- used.

1    THE COURT:  Just to be clear, Mr. Greenberg, that's

2  not my ask.  I think search terms are hard and they have to be

3  iterative.

4    Really it was for the purpose of in a minute I am

5  going to be talking with counsel for the SEC and I want to have

6  a good handle on what you are asking them.  I have read the

7  request.

8    MR. GREENBERG:  Right.

9    THE COURT:  And I assume on conferral it had been

10  tightened up and I wanted to understand your position on that.

11  If you are relying on the language of the request, then, I will

12  leave it there.

13    MR. GREENBERG:  Well, so we are relying on that

14  language, Judge.  And obviously, we want to keep going back and

15  narrowing it as much as possible if the Court, you know, rules

16  in our favor on that.

17    And we think, you know, that since they have already

18  been identified what the Commission has talked about is, look,

19  they can be produced.  I don't want to say that they could just

20  hit a button and produce them.  That is not what I am trying to

21  say.

22    And obviously, things could be redacted and stuff like

23  that, but they could be produced right now with further review

24  being very limited to taking out stuff that is privileged or

25  something like that.

1       Your Honor, you had also asked about why 2013.  You

2  know, that is the timeframe that we have been using on the

3  other discovery requests in this case.

4       I think, again, if Your Honor is of the view that this

5  material is relevant to either of the three subject areas that

6  I mentioned, we would certainly talk to the Commission about

7  narrowing that.

8       *Big Apple* came out in 2015.  So it is certainly hard

9  to imagine going back, you know, after that.  But I think the

10 reason we want to -- the other reason we want to start a bit

11 before 2015 is one of the big issues in this case is the extent

12 to which the Commission's guidance has changed; post *Big Apple*

13 and pre *Big Apple*.

14      THE COURT:  Okay.  All right.  Thank you, Mr.

15 Greenberg.

16      MR. BRAUNSTEIN:  Your Honor, thank you.  This is Josh

17 Braunstein for the SEC.

18      Your Honor, in your December 17th order you denied the

19 Defendant's request for documents that the Defendant could not

20 have relied upon.

21      As well as categories of documents that were not

22 calculated to reach him.  Any responsive documents that they

23 are seeking today are exactly within that category of

24 documents.

25      And Your Honor, we submit that, therefore, for that

1   reason alone the Court should deny the request because none of

2   these third party documents, whatever they are and whatever

3   exists, were not calculated to reach him.

4          We know this because we did search for Mr. Keener's

5   name and searched for J and J in the database.  And I will talk

6   about it later, but Mr. Greenberg has misunderstandings about

7   how the searches would be conducted and how they were conducted

8   and so we will clarify that.

9          But there is no question that Mr. Keener did not call

10  or write to the SEC.  There is no question that J and J did not

11  write or seek any guidance from the SEC.  And Your Honor, we

12  also invited the Defense to narrow -- and it's in the papers

13  that were submitted.  We invited them to narrow the request.

14  We offered to search for any names J and J requested.

15         In other words, anybody Mr. Keener knew or any entity

16  that he knew and wanted us to search for to see if they had

17  communications with the SEC, we are willing to do that and they

18  declined this offer.

19         So there is no reason to believe the Defendant or

20  anyone he knew received any guidance from the SEC at all.  But

21  Your Honor, more importantly, perhaps, is just what the

22  guidance is that they are seeking.

23         They want third party communications that would

24  comprise telephone logs summarizing calls that SEC staff

25  members took when they were on duty.  These were expressly

1  informal.  The guides to broker/dealer registration, which

2  makes very, very clear that it is not the law and that everyone

3  has to follow the law.

4        Those conversations were non biding and informal.  If

5  someone wanted to get a formal impression from the SEC about

6  what the guide to broker/dealer registration -- scratch that --

7  about what the statute meant, then they could have asked for a

8  no action letter and got a formal request to the SEC and

9  received a formal response.

10        So what we are talking about is telephone logs and

11  summarizing calls.  And again, non biding informal responses

12  from staff at the Office of Interpretation and Guidance about

13  any questions that may have come in via e-mail.

14        The Defense, Your Honor, has already been trying to

15  make the resolution of this case somehow turn on the guide to

16  broker/dealer registration despite that as Judge Bloom noted.

17        And by the way, Judge Bloom did acknowledge that the

18  factors in the guide to broker/dealer registration that the SEC

19  alleged facts against Mr. Keener that come within the ambit of

20  the factors in the guide.

21        So the guide is implicated in our complaint.  The

22  Judge has already ruled that.  And so the whole premise of

23  their argument that the somehow the guide is inconsistent, it

24  is not sustainable.

25        Even on its face, the Judge has already acknowledged

1    the guide and that there were factors that apply to him.   But

2    the guide to broker/dealer registration, as I said, is simply

3    not the law.   It is just that, a guide.

4              And we have controlling Eleventh Circuit law that

5    Mr. Greenberg has acknowledged.   And that law of that case

6    doesn't mention the guide.   That doesn't mean the SEC has taken

7    inconsistent positions.   The *Big Apple* case simply doesn't look

8    at a factor's test and looks at the plain language of the

9    statute.

10             Well, Judge Bloom's order denying their motion to

11   dismiss in August of 2020 acknowledges just that.   And so the

12   guide as well, Your Honor, this is not like what senior

13   officials of the SEC said in speeches as to what *XRP* was in the

14   *Ripple* case.

15             This is not a senior official speech.   These are staff

16   members of the Office of Interpretation and Guidance answering

17   questions as they come in and about the guide to broker/dealer

18   registration which, itself, Your Honor, is infused with

19   admonition that it is not the law.

20             THE COURT:   Let me make sure that I understand both

21   the documents and your representation.

22             When you are telling me that their staff of SEC, are

23   you suggesting that they are not authorized to speak in that

24   capacity on behalf of the SEC?

25             MR. BRAUNSTEIN:   Not at all, Your Honor.

1        What I am saying is that the guide makes very clear

2   that any calls would be informal and non biding.  It states

3   that explicitly and expressly.  In other words, it is not an

4   official statement.  It is not a formal statement by the SEC.

5   It is intended to help guide people to where they need to go.

6        And Your Honor, most of the responses are you should

7   get a lawyer and that is exactly what the guide itself says.

8   Early in the guide it says in all caps, Your Honor:

9        "Caution, make sure you follow all laws and rules.

10  This guide is not, quote, comprehensive.  Brokers and dealers

11  must must comply with all applicable requirements including

12  those of the SEC."

13       THE COURT:  What are you reading from?

14       MR. BRAUNSTEIN:  I'm reading from the guide to

15  broker/dealer registration, Your Honor.

16       THE COURT:  The website?

17       MR. BRAUNSTEIN:  It's on the website.  Yes, Your

18  Honor.

19       THE COURT:  Okay.

20       MR. BRAUNSTEIN:  And  we have also excerpted it in the

21  papers in our letters to them.  And also, to the Defense and

22  also in our responses to their discovery requests.

23       What we are fighting over, what they are trying to get

24  in order to build some sort of a -- as yet unclear due process

25  fair notice argument is informal staff guidance from a guy that

1   says that it is not the law and that you have to follow the

2   law.  And it says it multiple times and explicitly in all caps

3   that you can say that.

4          So these documents, even if they exist, would not tell

5   anything about what the market understood.  They would tell

6   what a staff member told informally to somebody.

7          Now, if Mr. Keener could point to one market

8   participant that had received conflicting information, Mr.

9   Greenberg's entire argument was that we were inconsistent.

10         And there is nothing whatsoever before the Court today

11  or that has been before the Court yet that suggests any

12  inconsistency.  The guide to broker deal exists.  It is on the

13  website.  It says that it is not the law and you have to follow

14  the law.

15         It encourages people to get attorneys and it says if

16  you call us, we will try to help you, but we are not giving you

17  legal advice.  They say explicitly in there that we are not

18  acting as your lawyer and you may wish to consult a lawyer.

19         So the nature of the responsive material, to the

20  extent they exist, Your Honor, would I think not be

21  proportional to require the SEC to search them because even if

22  you got something, it is again only non biding staff statements

23  that are explicitly non biding on the SEC.

24         The other problem is that the Defense has not shown

25  any genuine need for them.  They say that they need this for

1  their due process argument.  But Judge Bloom made very clear

2  that they did not -- and this is essential, Your Honor.  She

3  said, quote, they did not, quote, point to any particular

4  aspect of the exchange that is ambiguous.

5          So they are trying to make this case about the

6  potential confusion that somebody might have had when they

7  called and got somebody that they don't know, might have had

8  when they called and spoke to a staff attorney at the Office of

9  Interpretation and Guidance.

10          As Judge Bloom noted, when addressing and rejecting

11  their due process argument in the motion to dismiss, the Judge

12  said that the Defendant, quote, overlooked the express language

13  of the Exchange Act and decisions from the circuit applying the

14  definition of dealer and the SEC guide itself, which sets forth

15  instances in which a party can be deemed a dealer, end quote.

16          That captures everything.  There is nothing about that

17  that is ambiguous and there is nothing about that that is

18  likely to change based upon the Defense finding some needle in

19  a haystack on this fishing expedition.

20          They also were trying to make this case about the

21  *Ripple* case, which is obviously a case outside of this circuit

22  which we think a Magistrate Judge made an incorrect decision

23  in.  But, Your Honor, in that case, at least the Defense

24  pointed to concrete examples that they said showed that there

25  might be something there.

1         Again, we think it is wrong for all the reasons stated

2    and I can't speak for the SEC on that case.  I don't know work

3    on that case, but it is very clear that they point to a 2018

4    speech by a senior official that they say caused confusion.

5         They say that they had explicit evidence of high level

6    communications with market participants that caused confusion

7    about whether *XRP* was, in fact, a security or not about public

8    statements that they say that caused confusion in the

9    marketplace.

10        Mr. Greenberg isn't really saying that with any

11   evidence whatsoever.  They are hoping that there is something

12   in these logs, these phone logs, these informal phone logs that

13   will get them where they want to go.  But, Your Honor, that is

14   the definition of a fishing expedition.

15        They don't have any explicit knowledge of any kind of

16   communication.  And again, Your Honor, we encourage them to

17   give us names of anybody they wanted to give us and we will

18   offer that here today.

19        We will search for any person that Mr. Keener may have

20   known or any entity that they want to see if we had any

21   questions or answers to and from that person.  Otherwise, it is

22   back to your ruling in December, Your Honor.

23        These are not documents or statements that were

24   designed to reach the Defendant and they certainly are not

25   relevant to whether he was acting as an unregistered dealer.

1        In fact, the *Big Apple* case, as we point out in our

2   papers to them, our letters, and in our responses, the case law

3   was clear from the time the relevant period in this case began.

4   Judge Bloom observed that and ruled that in her order denying

5   the motion to dismiss.  And again, that's not going to change

6   regardless of what they find.

7        Now if Mr. Keener had called the SEC, or J and J, or

8   someone he knew and said, listen, I am buying convertible notes

9   and converting them to securities and then selling billions of

10  shares in the over-the-counter marketplace and that's what I do

11  for a living.

12       Do I need to register as a dealer?  And the SEC staff

13  attorney said, no way, that may be something.  But they have no

14  evidence of that ever happening and I dare say that that didn't

15  happen.

16       Your Honor, also, you know, the *Ripple* case that they

17  also are trying to import into this decision, the *Ripple* case

18  did not involve a statutory interpretation.  Here they are not

19  saying that the statute is even ambiguous in any way.

20       So there isn't the marketplace confusion here.  They

21  can't point to any marketplace confusion.  They just hope that

22  maybe they find that some might exist somewhere.  But Mr.

23  Keener would know all of the players in this business that he

24  is engaged in.

25       It's not a huge business.  They would know one

1  another.  They could give us the names of those people and say

2  search for this person.  Did they call with a question and the

3  SEC told them you don't need to register as a dealer.  We don't

4  consider convertible notes businesses to be that kind to fall

5  within the ambit of the statute.

6        So it is simply here it would simply not be

7  proportional to the needs of the case to have the SEC search.

8  And again, I should make a point that the understanding is the

9  misunderstanding that J and J may have of that.  We told him

10 that this is a limited purpose database of this material

11 contained within.

12       We told them that the estimate for searching for all

13 of the questions and answers would take, estimated by the

14 staff, would take 470 hours.  It's not a merely you can turn it

15 over wholesale and say here take this and don't worry about

16 privileges, or whistleblowers, or attorney/client privilege

17 communications that attorneys provide in confidence.

18       They have to search, because of the nature of the

19 database, the searches would have to be essentially by hand and

20 it would be difficult to narrow from what we have been told and

21 from what we understand.  So proportionality here is, I think,

22 quite key.

23       And in *Ripple*, the market, you know, it was clear that

24 the market (inaudible).  I heard that there were 14 people on

25 this call.  There were over 500 people listening into that

1    discovery dispute and that's in the transcript.

2          There were billions and billions of dollars at issue

3    there and we understand this is important to Mr. Keener.  But,

4    again, Judge Bloom's order has made abundantly clear that this

5    case is about the statutory language, which they have not said

6    is ambiguous.

7          It's about the controlling case law in the Eleventh

8    Circuit, which existed throughout most, if not all, of the

9    relevant period.  And it is about the guide to broker/dealer

10   registration, which the Judge has already found the SEC has

11   alleged certain factors that Mr. Keener's business met.

12         So, Your Honor, we don't believe that the Court should

13   order any kind of search beyond the one that we have already

14   offered, which is to say we would search for anybody that they

15   asked us to.

16         You know, they also try to import the decision of the

17   District of Kansas decision, the *Kosmin* case.  Your Honor, this

18   case, we believe that's wrongly decided for one.  It is not in

19   this circuit, of course, but the facts and legal issues are

20   completely distinct there.

21         And it is also, you know, the ruling there is contrary

22   to this Court's express holding that they are not entitled to

23   things that were not calculated to reach the Defendant.

24         But, again, that Court's decision there turned on

25   *scienter*.  And we don't, as Mr. Greenberg knows, we don't have

1   *scienter* here.  And we are not required on injunctive relief to

2   prove that Mr. Keener had any specific intent to violate the

3   securities laws to get injunctive relief.

4        But, Your Honor, Mr. Keener is foreclosed anyway from

5   registering as a dealer.  So if we get passed liability, the

6   defense does not deny that he is barred by FINRA from

7   registering as a dealer.  So he would be effectively shut out

8   of the industry anyway.

9        But, as well, Your Honor, we don't need to worry

10  whether some third party participant or market participant had

11  a conversation with a staff attorney at the SEC to determine

12  whether the *scienter* component to Mr. Keener's injunctive

13  relief if and when we get to that point.

14       Mr. Keener continued selling stock after Judge Bloom

15  denied the motion to dismiss and there is evidence of that in

16  the public records of SEC filings by other players, other

17  issuers.

18       So, Your Honor, we don't believe that there is any

19  basis for their reliance on *Kosmin* and *Ripple*.  Another problem

20  with *Ripple*, it was decided under an old and no longer

21  operative standard for what is discoverable, the old version of

22  Rule 26 and in their letters to us they say this is reasonably

23  calculated to lead to discovery of admissible evidence.

24       Well, Your Honor, as you know, the reasonably

25  calculated language is no longer there.  It is a narrower

1    standard now.  Is this relevant to your case?  Is this relevant

2    to your claims and defenses?  And the answer is resoundingly,

3    no, Your Honor.  And we believe that the Court should deny

4    their request here.

5              THE COURT:  I need to understand and you hit it right

6    on the head in terms of proportionality how you estimate the

7    470 hours and what the search entails.  So I want to understand

8    this database.

9              MR. BRAUNSTEIN:  So I can't speak expertly on it, Your

10   Honor.  And so, but what we understand is that this is a

11   limited purpose database that cannot be searched with boolean

12   searches.  So as you noted earlier, it is difficult to search

13   under the best of circumstances.

14             But in the database that this is kept in, it just

15   apparently does not work that way.  They have it, my

16   understanding is that they have the documents contained, you

17   know, within a large broad framework.

18             But if you do a search, for instance, for dealer you

19   will get every call that came in and every e-mail that came in

20   with questions about brokers and dealers because they don't

21   parse them out.  They don't separate them.

22             So any search would require a hand search of many,

23   many, many documents.  Thousands of documents and they all have

24   to be reviewed because there may be whistleblower materials in

25   there.  There may be privileged communications in there and

1  there are certainly lots and lots of sensitive and personal

2  information TII in there.

3      So we asked them to break it down for us and they

4  explained that it would take a certain number of minutes for

5  each record.  And then, to review it for responsiveness and

6  then to obviously compile it, collate it, and review it for

7  privilege and other concerns.

8      THE COURT:  How could it be privileged?  Is the

9  database's communications with third parties?

10     MR. BRAUNSTEIN:  Well, no.

11     So there is a log in there, Your Honor.  We would have

12 to review the entries.  There could be attorney work product in

13 the log.  We have not reviewed all the entries.

14     The log is attorneys writing down what the call

15 entailed as a factual matter and it may contain impressions.

16 They have not done that search yet, Your Honor.  So we can't

17 say, but there could definitely be whistleblower materials and

18 that is at least what we have been told.

19     THE COURT:  It is exceptionally hard for me to make

20 findings on burden when I don't have information about what the

21 data is, and how will it be searched, and what it does or does

22 not entail.  It is difficult to make the representation that it

23 could be privileged if no one has looked at it.

24     MR. BRAUNSTEIN:  Well, I'm told that there would be

25 some whistleblower materials.  That they do have that in those

1 database for certain.  And so that I can represent, Your Honor.

2 That is what I have been told.  And again, they didn't include

3 the exhaustive search like we have explained.  So I can't make

4 representations beyond that, but there could very well be work

5 product in the log itself.

6 　　　　　Your Honor, we believe that because they are not

7 relevant at all, our position is that no burden is proportional

8 to the needs of this case.  And so we have already undertaken a

9 search, the one that we have expressly stated, and we have

10 already offered to do other searches and we were not taken up

11 on that.

12 　　　　　THE COURT:  How did you conduct the search that you

13 agreed to undertake?

14 　　　　　MR. BRAUNSTEIN:  I believe that the staff searched for

15 just the one word, you know, the names which would be

16 searchable because it does not require a boolean search, you

17 know, a combination of phrases.

18 　　　　　For instance, you could not search for dealer and not

19 broker in the current database.  So that was the problem that

20 it was pulling up all the questions about broker and dealer

21 registrations no matter how far afield they were.  So I think

22 that was the understanding.

23 　　　　　THE COURT:  Did you search for Apple?

24 　　　　　MR. BRAUNSTEIN:  We could search for Apple, Your

25 Honor.

 1          THE COURT:  Listen, it's a tough position.

 2          Particularly after 2015 to stand on relevance without

 3  being able to make an informed presentation on burden and

 4  proportionality.

 5          I think to the reliance on my prior order is difficult

 6  to suggest that it forecloses the use that Mr. Keener is here

 7  advancing.  The difference that I see between what was sought

 8  from what I remember, based on my notes in the last hearing,

 9  was communications that were entirely internal.

10          They were definitely not calculated to reach Mr.

11  Keener.  They were not calculated to reach anyone in the market

12  as distinguished from the documents that they seek now, which

13  are public facing communications.

14          It is still interesting and I have not reached any

15  decisions about the relevance of that they are here proffering.

16  Whether that is enough that it was reaching other people in the

17  market, but it is enough of a difference for me, at least, to

18  say that my prior ruling with respect to those requests does

19  not foreclose him from seeking it here.  It is different.

20          The other issue that I have and I don't really hear

21  addressed is that Judge Bloom's ruling does not foreclose the

22  due process argument.  She found it insufficient at the motion

23  to dismiss to dismiss the complaint on that ground.

24          And I hear an argument from the SEC predicated on the

25  assumption that the due process argument is not part of the

1  case anymore.  That due process is objective and not

2  subjective.

3  So inherently -- okay.  It's okay.  It's just that the

4  two legal questions that I think are still in play in the case,

5  at least as I understand it, are that Mr. Keener has advanced

6  an argument that the position that the SEC has taken with

7  respect to his case is different enough that he had been put on

8  notice of as a participant in the market.

9  And likewise, the *scienter* argument that they

10  anticipate making, I hear you when you say you don't have to

11  prove *scienter* and I hear Mr. Keener saying the same.  But

12  rather that he intends to advance it as a factor at the

13  injunctive relief stage.  Notwithstanding your position that

14  you don't have to prove it.

15  Is that a fair summary of where you both stand on

16  *scienter*?

17  MR. BRAUNSTEIN:  No, Your Honor.

18  Our position on *scienter*, it is not an element of the

19  claim that we made.  We made one allegation that he was acting

20  as an unregistered dealer and --

21  THE COURT:  I heard Mr. Greenberg say the same that he

22  has acknowledged that.

23  MR. BRAUNSTEIN:  Yes.  And so our position on

24  injunctive relief is, Your Honor, that there are multiple

25  factors.

1        As you know, Your Honor, injunctive relief looks at

2   whether there is a *prima facie* case that he engaged in the

3   violation and then whether there is a likelihood or the

4   likelihood that he would engage in the future.

5        You are not required to show that he acted with

6   reckless disregard of the securities laws to get there because

7   it is, in our case, it is essentially a strict liability case.

8        So the question whether he would do it again in the

9   future, Your Honor, he has already done it again in the future

10   after the motion to dismiss phase.

11        That's what we are saying.  And we, also, are saying

12   that he could not register as a dealer anyway.  And so, Your

13   Honor, the issue is not something that we would need to flesh

14   out.

15        And we also, our position is also that we don't see

16   how anything that would be in the database of the Office of

17   Interpretation and Guidance would have any bearing on the

18   resolution of that *scienter*.

19        Because, again, Your Honor and back to your

20   proportionality point and your prior ruling, we invited him,

21   Mr. Keener and the defense, to provide us with a list of names

22   of anybody they thought might have spoken to the SEC and we

23   didn't get that.  If they provide it now, we are happy to make

24   that search.

25        So, Your Honor, to your point about what your prior

1  ruling, we are not saying that you are bound by it.  We are

2  saying is that these are really the same kinds of documents

3  even though they were sent to third parties.

4       If Mr. Keener didn't know these people and didn't

5  speak to them and doesn't have any idea about them, then they

6  were certainly not calculated to reach him and he couldn't have

7  relied on them.

8       And so we have invited him to say tell us who is it

9  that you think might have been told something conflicting that

10 could have created this ambiguity.

11      As to Judge Bloom's motion to dismiss ruling, Your

12 Honor, we are not saying that the issue is foreclosed, but we

13 are saying that she spoke resoundingly to the argument about

14 things that aren't going to change no matter what the evidence

15 is.

16      She talked about the express language of the Exchange

17 Act.  Decisions from the circuit.  Employing the definition in

18 the SEC guide itself.  So all of it is that the Judge did not

19 see the SEC, as Mr. Greenberg said, talking out of both sides

20 of its face.  That's not something that -- of it's mouth

21 rather.  That is not something that is in this case.

22      They have injected it into this argument today, but it

23 is not something that is reflected in the Court's order.  And

24 it is not something that is reflected in the SEC's complaint or

25 in our pleading.  We do rely on the plain language of the

1  statute.  And we do believe it controls, particularly with the

2  *Big Apple* case, but by no means, means that the guide

3  broker/dealer registration has nothing whatsoever to do with

4  the case.

5         And Judge Bloom has already ruled that it does.  That

6  we have made allegations that it was in the guide.  So, Your

7  Honor, we just don't believe that there is any need that the

8  Defense has not shown relevance.

9         They have argued that they could really use this

10 evidence if it exists, but they have no basis to suggest that

11 after we do this search were we to do this search that anything

12 would be helpful to their due process claim.

13        And they have a burden of showing that there is

14 relevant evidence.  The fact that the SEC gave non binding

15 informal staff communications, again, they try to be helpful.

16        But I can assure you that nobody told -- and I haven't

17 checked this myself, Your Honor, but it would be highly,

18 highly, highly unlikely that anybody ever told a person in

19 exactly Mr. Keener's position that they did not need to

20 register as a dealer.

21        So we --

22        THE COURT:  Well, the difficult, because as you

23 likewise know under Rule 26, one of the factors that I have to

24 consider in terms of balancing the proportionality is the

25 ability of the party to discover it from anywhere else and the

 1   opposing party's unique control over the information.

 2          And I find that both of those factors weigh heavily

 3   here in favor of recognizing -- to me it is intuitive the

 4   request at least the way that Mr. Greenberg presents it with

 5   respect to the due process argument.

 6          And it is not going to fall to me to determine the

 7   merits of that dispute.  Proportionality here is very difficult

 8   because I have such incomplete information about this database.

 9          What I am going to do here is, as I have indicated,

10   you can run the term apple that was from the proffer from Mr.

11   Greenberg.  One of the very specific questions he has are they

12   responding and telling these people that *Big Apple* is

13   controlling.

14          That might not have been the term, Mr. Greenberg, that

15   you had in mind when you came in here at 10:00 as me saying

16   that you are going to attest, but that is what we're going to

17   do.  We are going to test at least that term.

18          If either of you have another term that you want to

19   test, I've got to know more about this database.  I can't fly

20   from somebody says 470 hours.  That is a ton of time and it is

21   in a vacuum.  I have just have no real way to contextualize it.

22   The proffer on privilege candidly doesn't make sense as

23   compared to the rest of the information that I was given about

24   what the database is.

25          So I am going to have you run a test term or two or

1  three.  And I am going to give you both leave to brief it with

2  an expediting briefing schedule after those terms have been

3  tested and we have some information.

4        The discovery calendar works great for simple

5  disputes.  It is not as perfect for complex ones.  So let's get

6  closer to an even playing field in terms of what the

7  information is.

8        If somebody really doesn't want to use the term apple

9  and wants to propose two different ones, I will hear it now,

10  but any way around it that's what we're going to do.  I'm going

11  to have you test the terms.

12        MR. GREENBERG:  Your Honor, I would submit that the

13  *Big Apple* case is only controlling in the Eleventh Circuit.  It

14  is only in one circuit.

15        And again, I don't think that we will find that the

16  SEC staff attorneys are pointing individual third party callers

17  to controlling case law.

18        THE COURT:  I will be surprised as well, which is why

19  I point out that I don't -- I don't mean to make light of the

20  task at hand.

21        And I will hear from both of you to suggest, like I

22  said, two or three terms that you think are likely to hit on

23  responsive documents.  And otherwise, inform us about the

24  challenge of running the database   but right now I've got

25  nothing.

1        So, Mr. Greenberg, what would you propose in giving me

2   one to three terms that you want them to try.  It seems that

3   the database has the capacity to run single words.  We have

4   tried Mr. Keener, I assume.

5        MR. BRAUNSTEIN:  Yes, Your Honor.

6        MR. GREENBERG:  Judge, I am going to invite my

7   co-counsel to chime in on the selection of words if they have

8   any thoughts.

9        THE COURT:  So I am probably not going to ask for

10  dealer, trader, or broker.

11       If there is a -- I also don't know whether the

12  database is able to apply numbers versus words so that whether

13  or not we could use specific citations to the guide.

14       I also don't know if there is any language that is a

15  canned response that would go out on every single

16  correspondence from the SEC.  If there is we should not use any

17  word that appears in that canned response because it will hit

18  every document, right?

19       But again, Mr. Braunstein, you are the only one among

20  us who is even in a position to know this.  So while I would

21  really like to nail down a couple of words right here, if you

22  can't do that without comparing it against at least a test

23  response or two -- go ahead.

24       MR. BRAUNSTEIN:  I apologize.

25       Sorry for the interruption, Your Honor.  What if we --

1  because this was a convertible note's business, what if we run

2  convertible and note, because if you run dealer or broker you

3  will get thousands and thousands.

4          THE COURT:  Right.

5          MR. GREENBERG:  We are also happy to run apple, Your

6  Honor and, then, that would narrow things considerably.

7          THE COURT:  Do you know that you could run Convertible

8  and Note together or are you going to be limited in running

9  them separately?

10         MR. GREENBERG:  No.  You would be limited to running

11  them separately.  And now that I say it, I would imagine Note

12  would be very, very difficult.

13         THE COURT:  So do I.

14         MR. GREENBERG:  But Convertible might be at least more

15  narrower.

16         THE COURT:  That seems reasonable.

17          Mr. Greenberg or his colleagues, if you have a

18  suggestion, this is a good time.  Going once.

19         MR. GREENBERG:  Judge, could we have maybe the weekend

20  to maybe propose to Your Honor those two or three terms?  Just

21  so we can caucus a little bit about that because we would like

22  to take you up on that.

23         THE COURT:  So I am in trial next week.

24          And so my ability to give you an another audience is

25  really limited.  You saw how many times we had to respond to

1  you to get you in here today.

2        So what I am going to suggest here is that -- I'm

3  trying to be practical about how we would possibly do that.  I

4  think that Mr. Braunstein's offer to run Convertible is a good

5  one and a place to start.

6        What I would tell you here, Mr. Greenberg, is that if

7  by Monday you and your team have a good and narrow suggestion,

8  you pose it to Mr. Braunstein, but you may be at the mercy of

9  him saying, you know -- well, run it.

10        I'll tell you what, Mr. Braunstein, run the term.

11        MR. BRAUNSTEIN:  Yes.

12        THE COURT:  And you will tell him the hits.  The

13  ruling here is to produce those that hit on Convertible, you

14  understand?

15        MR. BRAUNSTEIN:  Now I do.

16        THE COURT:  At a minimum I want you to run the term

17  that Mr. Greenberg's team advances on Monday up to two and at

18  least tell him the results.

19        If they are substantially more than what hit on

20  Convertible, then I may be seeing you sooner rather than later

21  and that may be included in your briefing.  We'll have to see,

22  frankly.

23        MR. BRAUNSTEIN:  Your Honor, if we produce those

24  documents, what kind of briefing would be necessary?

25        THE COURT:  That's up to you.

1           So this is why we're going to do this in stages.  We

2   are going to have you produce the results to the Convertible.

3           What is your close of discovery?  How much time do we

4   have left?

5           MR. BRAUNSTEIN:  We have August 2nd, Your Honor.

6           THE COURT:  So August 2nd.  So we have six weeks.

7           And what depositions are you still waiting on for

8   this?

9           MR. BRAUNSTEIN:  Several, Your Honor.  We're setting

10  up depositions now, both sides.

11          THE COURT:  Okay.  Mr. Greenberg, from your

12  perspective, are any of them hanging on this production, on

13  this issue?

14          MR. GREENBERG:  Depositions, no.  Experts potentially.

15          THE COURT:  Okay.  All right.  In fairness I am just

16  trying to figure out how tight of a schedule I have to give you

17  guys.

18          MR. GREENBERG:  Sure.

19          THE COURT:  Because I would give the SEC normally

20  14 days to complete a production that is compelled at a

21  discovery calendar.  Here's what I'm ordering.

22          You are going to produce the response to the word

23  Convertible and if the search results for the term proposed by

24  Mr. Keener's team is the same or less than Convertible, you

25  produce those as well.

1        MR. BRAUNSTEIN:  Understood, Your Honor.

2        THE COURT:  Within seven days of that production,

3   either side has leave to file, whether that is a motion to

4   compel or a motion for protective order, I will leave to your

5   able strategy minds.

6        However, I am only giving you a motion and a response.

7   So nobody is getting a third bite of the proverbial apple

8   anyway.  So it is going to be seven days and seven days.

9        You have a motion that you can file seven days after

10  production.  You have a response that comes seven days after

11  that.  I will set it for hearing.

12       MR. BRAUNSTEIN:  All right.

13       THE COURT:  If you confer in advance and propose dates

14  for that hearing, I will probably pick the date that you

15  proposed.  If you don't, then, you will just get an e-mail from

16  my law clerk proposing dates.

17       MR. BRAUNSTEIN:  Yes, Your Honor.

18       THE COURT:  Okay.

19       MR. GREENBERG:  Thank you.

20       THE COURT:  Please confer and be mindful of costs in

21  terms of the format of production.

22       I don't know, again, what this database yields and

23  whether ordinarily it would be the gold standard practice to

24  convert it to TIF or whatever has been the case.

25       But I am telling both sides now to confer and try to

1   make this production in a manner that is the least expensive

2   if it could be done in native format.  I don't know if this

3   database format will make that impractical or not, but give it

4   a shot.

5          MR. BRAUNSTEIN:  There would be e-mails for the e-mail

6   ones and there would be for the calls, Your Honor, there would

7   only be the attorneys notes of what the call consisted of.

8   Unless the person then followed up with the other e-mails.

9          THE COURT:  I understand.

10          I view that as content as opposed to format.  So I

11   don't know if they have maintained an Excel spreadsheet.  I

12   don't know if this is --

13          MR. BRAUNSTEIN:  We'll figure it out.

14          THE COURT:  Bingo.  I had a feeling you would.

15          Okay.  Perfect.  A short written order will follow the

16   hearing just memorializing both the ruling compelling that

17   limited production and the timelines to produce a brief if

18   necessary.  It's a complex issue.

19          Like I said, it does not really lend itself to this

20   format, but this is intended to at least get you to a place of

21   being able to make a more informed decision about what you are

22   to do.  Okay.

23          MR. GREENBERG:  Okay.  Thank you, Your Honor.

24          MR. BRAUNSTEIN:  Thank you, Your Honor.  I appreciate

25   that.

1        THE COURT:  I appreciate your presentations here.

2        The hearing is adjourned.  You are excused.

3        Interns stay on and anybody who wants to talk to a

4   bunch of judicial interns about what they do for a living, I

5   bet they would be really grateful to hear from you more than

6   they me because they see me a lot and today is Friday and

7   technically court is closed.

8        MR. GREENBERG:  Your Honor, if you would like me to

9   stay on and talk to interns, I would be happy to do that.

10       THE COURT:  I would.  I'm sure that they would love to

11  hear from you informally.  So I am going to cut the recording

12  now.

13       (Thereupon, the proceedings concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              CERTIFICATE

3

4          I hereby certify that the foregoing transcript is an

5    accurate transcript of the audio recorded proceedings in the

6    above-entitled matter.

7

8

9

10   06/23/21                      Bonnie Joy Lewis,
                            Registered Professional Reporter
11                             CASE LAW REPORTING, INC.
                               7001 Southwest 13 Street,
12                            Pembroke Pines, Florida 33023
                                    954-985-8875
13

14

15

16

17

18

19

20

21

22

23

24

25