UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:20-CV-21254-BLOOM/LOUIS

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

v.

JUSTIN W. KEENER D/B/A JMJ FINANCIAL,

                Defendant.

[ORAL ARGUMENT REQUESTED]

**DEFENDANT'S MOTION TO COMPEL COMMUNICATIONS BETWEEN THE SEC'S OFFICE OF INTERPRETATION AND GUIDANCE AND THIRD PARTIES**

**I.      INTRODUCTION**

This Motion seeks the production of communications between the SEC's Office of Interpretation and Guidance ("OIG") and members of the public about the specific question in this case—which persons must register as securities dealers. This Court has already ruled that such communications are relevant to Mr. Keener's fair notice and lack of scienter defenses. The communications will shed light on the understanding of the SEC and market participants of the dealer registration requirements and will show how this understanding was created by the SEC itself. In fact, the limited set of OIG communications the Court previously ordered the SEC to produce (11 document families that hit on two specific terms) already demonstrate that the SEC told market participants to analyze the law in a way that directly contradicts its current litigation posture. Specifically, the SEC did not tell market participants—as it does in this case—that a dealer is anyone who buys and sells a large volume of securities for his own account. Instead,

1

the SEC told market participants that the question of who is a securities dealer is a complex factual question that can only be answered by assessing the numerous factors listed on the SEC's Guide to Broker Dealer Registration and set forth in prior case law and SEC no-action letters. Given the indisputable relevance of the few documents already produced, Mr. Keener seeks the production of OIG communications that hit on a limited set of additional search terms.

The SEC has not identified any specific burden associated with producing these documents. The OIG communications are stored in a single, searchable database. Mr. Keener's requested searches could be conducted quickly, and the hits produced easily. The communications are with third parties, and the SEC has not identified any particular privileged information in the database. Despite having six months to articulate a specific burden, the SEC has been silent. Accordingly, Mr. Keener respectfully requests that the Court order the SEC to produce the limited set of additional OIG communications that he seeks.

## II.    FACTUAL BACKGROUND

### A.    This Case Concerns the Correct Interpretation of the Definition of a Securities Dealer

On March 24, 2020, the SEC filed a single-count complaint against Mr. Keener. ECF 1. The Complaint's sole allegation is that under the SEC's current interpretation of the definition of a dealer under Section 3(a)(5) of the Securities Exchange Act of 1934, Mr. Keener was a securities dealer. *Id.* The essence of Mr. Keener's defense is that under the plain statutory language, legislative history, judicial interpretations, and decades of SEC guidance, no-action letters, and statements to members of the public, the Exchange Act's definition of a dealer cannot be and has never been interpreted as broadly as the SEC seeks to do in this case to encompass individuals like Mr. Keener who solely invest their own money and provide no services to the investing public.

>    B.   **Mr. Keener's Efforts to Obtain the SEC's Documents Concerning the Dealer Registration Requirements**

At the start of discovery in this case, Mr. Keener issued document requests to the SEC seeking all of the SEC's internal and external statements concerning the dealer registration requirements, and in particular concerning which persons are obligated to register as securities dealers. ECF No. 36 (Notice of Hearing describing these requests). Other than copies of the Guide to Broker-Dealer Registration, which is currently posted to the SEC's website, the SEC refused to produce any responsive documents. Mr. Keener noticed that discovery dispute for a hearing in December 2020. The Court found the initial request overbroad, but "recognize[d] the relevance" of the documents and suggested that Mr. Keener "could appropriately narrow and define" the request to include limitations on "where or when" the SEC had to search for documents. Dec. 17, 2020 H'rg Tr. at 21.

Shortly after that hearing, Mr. Keener issued an interrogatory and a document request seeking only communications between one office within the SEC—the OIG—and members of the public concerning the dealer registration requirements. *See* Exs. 1- 2 (Def's First Set of Interrogs.; Def's Second Req. for the Production of Docs.). The SEC's Guide to Broker-Dealer Registration, which directs the public to consider nine complex factors in assessing whether a person is a securities dealer, itself solicits questions about the application of these factors from the public. *See* Ex. 3 at 3 ("The SEC staff stands ready to answer your questions and help you comply with our rules. After reading this guide, if you have questions, please feel free to contact the Office of Interpretation and Guidance."). Mr. Keener's discovery requests seek these questions received by the OIG and answers provided by OIG to members of the public about the central question in this case—the definition of a dealer.

The SEC acknowledged that the documents Mr. Keener seeks are stored in one database that can be searched with search terms to identify responsive documents. *See* Ex. 4 (May 11, 2021 Letter from J. Braunstein). Yet the SEC refused to produce any documents because it alleged the documents were not relevant to any claim or defense in this case, and it asserted—without any explanation—that the search and review process would take 470 hours to complete. *See* Ex. 5 (Apr. 30, 2021 Email from J. Braunstein). Counsel for Mr. Keener asked the SEC to provide the search terms it had applied in deriving its 470-hour estimate and offered to work with the SEC to narrow the search terms and reduce the alleged burden. *See* Ex. 6 (May 3, 2021 Email from V. Viswanatha). The SEC refused. *See* Ex. 4. Mr. Keener then noticed the dispute for a hearing.

      **C.**      **June 18, 2021 Discovery Hearing and the SEC's Subsequent Limited Production**

At the June 18, 2021 hearing, the Court ruled as a preliminary matter "the information sought [by Mr. Keener concerning the OIG communications] is relevant; the request is intuitive with respect to Defendant's due process argument and [to] scienter." ECF No. 45 at 3. The Court further ordered the SEC to produce the documents that hit on the terms "apple" (referring to *SEC v. Big Apple*, 783 F.3d 786 (11th Cir. 2015), which the SEC essentially argues is the only case the Court need consider to grant it a total victory on the merits) and "convertible" (in light of the SEC's focus on Mr. Keener's investments in convertible notes as the basis for its claim that he should have registered as a securities dealer). ECF No. 45 at 3. Following the hearing, on June 25, the SEC only produced 11 document families that purportedly hit on those two terms.

The limited documents produced by the SEC demonstrate the following:

- Members of the public have asked the SEC for help in assessing whether they must register as a broker-dealer. *See, e.g.*, Ex. 8 (SEC-JMJ-OIG-13); Ex. 9

4

- (SEC-JMJ-OIG-51); Ex. 10 (SEC-JMJ-OIG-53); Ex. 11 (SEC-JMJ-OIG-02); Ex. 12 (SEC-JMJ-OIG-59); Ex. 13 (SEC-JMJ-OIG-62).

- In response to such questions, the SEC routinely directs members of public to the Guide, and explains that the analysis is "a fact-specific assessment that involves consideration of a number of factors (which have been developed through SEC staff no action letters and case law)." Ex. 14 (SEC-JMJ-OIG-44); Ex. 15 (SEC-JMJ-OIG-50); Ex. 16 (SEC-JMJ-OIG-63). In none of these communications did the SEC ever tell market participants to read *Big Apple* or the Exchange Act's dealer definition.

- The SEC created confusion in the marketplace after filing its case against Ibrahim Almagarby and his company Microcap Equity Group, another case concerning a convertible note investor. *See, e.g.*, Ex. 8 (attorney for clearing firm asking questions about whether the SEC was now "deeming the acquisition of third-party debt, conversion of that debt, and sale into the public marketplace a business model . . . that requires registration as a dealer?  We are aware that the definition of dealer excludes routine trading transactions for one's own account as well as other potentially relevant carve outs.  Here we are simply trying to gain our regulators posture.")  Based on the documents received thus far, the SEC did not provide any written guidance following this inquiry.

During the June 18 discovery hearing, the Court also ordered the SEC to produce documents that hit on two additional terms of Mr. Keener's choosing if the hits were "equal to or lesser than" the hits for "convertible." ECF No. 45 at 3-4. Counsel for Mr. Keener asked the SEC to advise of the number of search hits for "apple," "convertible," and 14 other terms so that it could select terms with a similar number of hits. *See* Ex. 17 (June 21, 2021 Email from C. Regan listing the terms trader, factors, microcap, statute, discount, spread, 144, hold, advertise, business, penny, invest, investment, and conference).[1] The SEC refused. *See* Ex. 22 (June 21, 2021 Email from J. Braunstein). Counsel for Mr. Keener then asked the SEC to run "trader" and "factors." *See* Ex. 23 (June 21, 2021 Email from C. Regan). On June 25, the SEC asserted it would not produce documents for the terms "trader" and "factors" on the basis that "each

---

[1] Mr. Keener crafted these specific terms in order to target OIG communications with third parties concerning the allegations and facts the SEC has focused on in this case.

returned more hits than both apple and convertible." *See* Ex. 18 (June 25, 2021 Email from A. Petrilla).

Counsel for Mr. Keener followed up on Monday, June 28, seeking a number of clarifications regarding the limited production, including (i) the exact hit count for "apple" and convertible" as some of the document families appeared to hit on neither term, and (ii) whether documents were withheld on the basis of privilege or work product given the non-sequential nature of the Bates stamping. *See* Ex. 7 (June 28, 2021 Email from V. Viswanatha). Counsel for Mr. Keener further requested the hit counts for "trader" and "factors." *Id*. The SEC did not respond.

### III.   LEGAL STANDARD

Under the Federal Rules of Civil Procedure, courts allow for liberal and broad discovery. *See Powers v. Target Corp.*, No. 19-CV-60922-Bloom/Valle, 2020 WL 409534, at *1 (S.D. Fla. Jan. 24, 2020) ("[The] overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information.") (quoting *Shapiro v. Dynamic Recovery Sols., LLC*, No. 18-CV-60035-BB, 2018 WL 8130559, at *4 (S.D. Fla. July 26, 2018)). The Rules grant district courts broad discretion to compel discovery, and "strongly favor full discovery whenever possible." *See Powers*, 2020 WL 409534, at *1 (quoting *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985)); *Companhia Energetica Potiguar v. Caterpillar Inc.*, 307 F.R.D. 620, 627 (S.D. Fla. 2015).

Thus, the burden rests on the party resisting discovery to "demonstrate with specificity" that a request is unreasonable or otherwise unduly burdensome. *Id*.; *Alvar v. No Pressure Roof Cleaning, LLC*, No. 17-80725-CV, 2018 WL 1187777, at *2 (S.D. Fla. Mar. 7, 2018). And where, as here, the discovery at issue is highly relevant, courts allow for a proportionally higher

burden on the served party. *See Adkins v. Christie,* 488 F.3d 1324, 1331 (11th Cir. 2007) ("The Defendants have failed to demonstrate a burden or an abuse of process sufficient to justify such limitations on discovery, especially in light of the highly relevant nature of the materials sought by [plaintiff].").

IV.  **ARGUMENT**

The SEC should be compelled to produce documents from its OIG database that hit on the 14 terms set forth above.[2] The limited production the SEC has made to date demonstrates that the documents are relevant. The SEC's communications with third-party market participants about the exact question at issue here, namely which persons fit within the definition of a dealer, are relevant to claims and defenses in this litigation. Moreover, and despite having six months to do so, the SEC has not articulated any specific burden it would take to produce the requested communications, let alone a burden that would allow the SEC to withhold documents concerning the key question at issue in the case.

**A. OIG Communications with Third Parties are Relevant to this Litigation.**

As this Court recognized during its June 18, 2021 hearing and subsequent Order, the OIG communications are relevant to several issues in this litigation: (i) Mr. Keener's fair notice defense and (ii) Mr. Keener's defense against the injunctive relief sought by the SEC.

**Fair Notice**. The communications are relevant to Mr. Keener's fair notice defense. ECF No. 45 at 3 ("I find the information sought is relevant; the request is intuitive with respect to Defendant's due process argument"). To comply with the mandates of due process, laws and agencies that regulate persons and entities must provide fair notice of conduct that is forbidden

---

[2] We ask that the terms be run on documents from 2013 to 2020. In particular, we ask for documents before and after *Big Apple* (which was decided in 2015), in order to assess the ways in which that case did or did not alter the SEC's communications with members of the public about the dealer registration requirements.

or required. *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). In determining whether a person has received adequate fair notice, industry understanding of permissible or impermissible conduct as communicated by a regulator such as the SEC to members of the public, as well as conflicting statements by the regulator, are relevant. *See SEC v. Kovzan*, No. 11–2017–JWL, 2012 WL 4819011, at *5 (D. Kan. Oct. 10, 2012) (permitting discovery into non-public SEC communications with third parties because such documents were relevant to the defendant's fair notice defense).

Specifically, a defendant may prove his fair notice defense by demonstrating that industry practice was inconsistent with the government's litigation posture. *See Diebold Inc. v. Marshall*, 585 F.2d 1327, 1336 (6th Cir. 1978) (finding no fair notice when purported requirement was rarely fulfilled or enforced in the industry). And a defendant may also prove his fair notice defense by highlighting confusion and inconsistent interpretations within an agency as to the rules at issue. *General Elec. Co. v. EPA,* 53 F.3d 1324, 1332 (D.C. Cir. 1995) (finding no fair notice when agency regulations were internally inconsistent, the agency had difficulty clarifying which section of the regulations should apply to the defendant's activity, and conflicting interpretations of the regulatory requirements came from different agency regional offices).

The limited communications already provided by the SEC prove their relevance. For instance, the documents demonstrate that the SEC has generated confusion in the industry through its recent lawsuits against individual convertible note investors. Within weeks of filing the complaint in *SEC v. Almagarby*, anxious counsel for a clearing firm contacted OIG begging for an explanation of whether its understanding of the dealer registration requirements had now changed. *See* Ex. 19 (SEC-JMJ-OIG-13 - SEC-JMJ-OIG-31). These documents directly support

Mr. Keener's contention that the industry had a different understanding of the dealer registration requirements than the one the SEC is now advancing in this litigation.

The communications are also relevant for what is not there. The SEC never directed market participants that their questions could be answered simply by referring to *Big Apple* and/or the relevant portion of the Exchange Act. Instead, the SEC routinely directed members of the public to the Guide, and to conduct "a fact-specific assessment that involves consideration of a number of factors (which have been developed through SEC staff no action letters and case law)." Ex. 14; Ex. 15; Ex. 16. However, the SEC has only produced eleven document families from this database—an apparently miniscule percentage given the SEC's representations as to how long it would take to review all the documents in the database concerning the dealer registration requirements. The more documents Mr. Keener obtains, the stronger his arguments may become.

*SEC v. Kovzan* also supports production here. In *Kovzan*, the defendant sought the SEC's communications with third parties to prove his fair notice defense and demonstrate that the SEC had not given adequate guidance to the industry about the rules at issue. *Kovzan*, 2012 WL 4819011, at *5. The court agreed with the defendant that the communications were discoverable, and overruling a magistrate's decision to the contrary, ordered production. *Id.*

*SEC v. Ripple Labs*, a case in the Southern District of New York that presented the exact same issue earlier this year, also supports production. In *SEC v. Ripple Labs, Inc.*, defendants argued that SEC communications with third parties regarding certain forms of cryptocurrency were relevant to their fair notice defense because the communications were relevant to assessing (i) the SEC's awareness of the practices at issue, and (ii) whether market participants lacked a clear understanding as to the SEC's position on the practices. *See* Def's Letter Re Mot. to

Compel at 4, *SEC v. Ripple Labs, Inc.*, No. 20 Civ. 10832 (S.D.N.Y. Mar. 24, 2021) Dkt. No. 81. Again, the court agreed, ordering production of the requested communications between the SEC and "all market participants." *See* Ex. 20 (H'rg Tr. at 51, *SEC v. Ripple Labs, Inc.*, No. 20 Civ. 10832 (S.D.N.Y. Apr. 6, 2021))).

The SEC cannot plausibly claim that the requested communications are not relevant to this litigation. The primary argument the SEC has articulated for refusing to produce the communications is that Mr. Keener "lacks a cognizable Due Process argument in this case." *See* Ex. 21 (May 6, 2021 Letter from J. Braunstein and A. Petrilla). But that is an argument on the merits of Mr. Keener's defense—not one that can be resolved through a discovery dispute. Mr. Keener has pled a fair notice defense and that defense has not been struck; thus, he is entitled to discovery relevant to proving that defense. ECF No. 45 at 3 ("Despite the SEC's protestations to the contrary, I also find that Judge Bloom's denial of the motion to dismiss on the basis of Defendant's due process claim is not synonymous with rejecting Defendant's due process claim altogether."); *see also Wachovia Fin. Servs. v. Birdman*, No. 09-81252-Civ-Marra/Johnson, 2010 WL 11506043, at *5 (S.D. Fla. Oct. 19, 2010) (rejecting party's discovery objections which were based on substantive issues yet to be decided); *Kovzan*, 2012 WL 4819011, at *5 ("[T]he SEC has responded to this argument solely by arguing the merits of the fair notice defense in this case. The Court is not inclined to consider those merits in this context of a motion for review of a discovery ruling, however.").

The SEC has also argued that the communications are irrelevant because they constitute "informal," "non-binding" guidance, and came with the caveat that individuals may need to consult private lawyers to fully assess whether they qualify as dealers. Ex. 5. But the SEC does not get a free pass for making conflicting statements and creating confusion in the marketplace

10

just by claiming its statements are not binding.  It had an option to stay silent, and it chose not to do so.

**Injunctive Relief:** The documents are also relevant to Mr. Keener's defense against the SEC's request for injunctive relief.  ECF No. 45 at 3.  Judge Bloom ruled that she will consider Mr. Keener's scienter, or lack thereof, in ruling on the SEC's request for injunctive relief.  ECF No. 29 at 11.  Thus, Mr. Keener can defend against SEC's injunction request by showing he did not act with scienter.  One way he can prove that he did not act with scienter is by demonstrating he acted in line with industry custom and practice.  *See Kovzan*, 2012 WL 4819011, at *5 (ruling that industry practice is relevant to the degree of a defendant's scienter); *see also See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1264 (11th Cir. 2006) (explaining that scienter requires a showing of recklessness; an extreme departure from standards of ordinary care).

For the reasons explained above in connection with Mr. Keener's fair notice defense, the OIG communications are also relevant to demonstrating industry understandings in connection with the lack of scienter defense.  If the documents demonstrate that market participants did not understand that individuals who were engaged in activities similar to Mr. Keener were securities dealers, that would further support Mr. Keener's claims that he did not act with scienter.  *See Kovzan*, 2012 WL 4819011, at *5 ("[I]ndustry practice, guidance given to other companies, and confusion within the SEC itself may be relevant to the degree of defendant's scienter"); Ex. 20 (*Ripple Labs* ruling granting defendants discovery into SEC's communications with third parties as relevant to scienter component of charge).

The SEC's argument to the contrary makes no sense.  The SEC claims the documents are not relevant because the SEC "will not make any [] argument" that "Mr. Keener recklessly disregarded industry practice."  *See* Ex. 4.  But that is beside the point because the SEC never

11

claims that it will forgo its request for injunctive relief, or even forgo any argument that Mr. Keener acted with scienter when it comes to arguing for injunctive relief. There can be no dispute that the Court will consider Mr. Keener's level of scienter at that time. Thus, Mr. Keener is entitled to discovery that is relevant to proving that he lacked scienter, and that his conduct was consistent with the standard industry practice. *See* ECF No. 45 at 3.

### B. The SEC Has Failed to Demonstrate the Burden of Production Outweighs the Documents' Relevance.

The SEC has had nearly six months to substantiate any claims of alleged burden. It has failed to do so. ECF No. 45 at 3 (noting that the SEC provided no way "to contextualize [its] unexplained statement that to fulfill the request would require 470 staff hours."). Based on the limited information the SEC itself provided, these documents are housed in a single, searchable database. *See* Ex. 4. The documents are communications with members of the public, and thus cannot be privileged. ECF No. 45 at 3 ("Further, as also noted at the hearing, I do not entirely understand the SEC's proffer as to why the documents or information would be privileged."). The SEC has not provided any clear reason why the documents could not be quickly produced without further review. Courts routinely overrule burden objections in such circumstances. *See SEC v. Creative Cap. Consortium, LLC*, Case No. 08-81565-Civ-Hurley/Hopkins, 2009 WL 10664429, at *3 (S.D. Fla. May 20, 2009) (denying a protective order resisting discovery on the basis of "undue expense" where the party did not support the claim with "any affidavits or other evidence, as many courts require"); *see also In re: Takata Airbag Prods. Liability Litig.*, MDL No. 15-2599, 2016 WL 5795347, at *4 (S.D. Fla. June 24, 2016) (ordering document database

search and production even where burden and expense was shown to be "considerable" when considering the documents' relevance and amount in controversy).

At the June 18, 2021 hearing, the SEC for the first time suggested that the documents may contain work product information or information purportedly protected under the whistleblower laws. *See* June 18, 2021 Hr'g Tr. at 31:23-25; 32:12-13. The SEC never revealed this information to counsel for Mr. Keener over more than a dozen meet and confer communications prior to the hearing. The SEC has not substantiated any part of those bald assertions. The communications are between the Office of Interpretation and Guidance and members of the public; they do not involve the SEC's Enforcement Division or any other SEC division involved in litigation. In fact, the limited communications produced by the SEC to date demonstrate that OIG refused to discuss ongoing litigation. *See* Ex 19.[3]

Moreover, there is no protection under the whistleblower laws for questions submitted to OIG. In order to benefit from the confidentiality protections provided in the SEC's whistleblower program, an individual must comply with certain procedures and processes. *See* 17 C.F.R § 240.21F-2(c) ("To qualify for the confidentiality protections…you must comply with the procedures and the conditions described in Rule 21F–9(a)."). These procedures and processes require whistleblowers to submit their information through the SEC's Tip, Complaint, or Referral ("TCR") portal or the SEC's Office of the Whistleblower. *See* 17 C.F.R. § 240.21F–9. This law does not grant confidentiality protections to information provided to OIG.

---

[3] Despite the apparent non-privileged nature of these documents, the SEC's limited production contains gaps in its Bates numbering, suggesting that some documents were withheld either on the basis of privilege or work product. As noted above, when counsel for Mr. Keener requested further information regarding the non-sequential Bates stamping and whether some documents were withheld as privilege, the SEC did not respond. *See* Ex. 7 (June 28 V. Viswanatha email).

Because the SEC has failed to demonstrate any specific burden, the production should not be limited to search terms that had the same or fewer hits than "apple" or "convertible." Those terms together hit on only eleven document families. Given the minimal, if any, review that would be required of additional OIG documents, the burden of producing more documents—even substantially more—is also minimal. And while Mr. Keener is willing to negotiate search terms, the SEC has refused to even identify the number of documents that hit on Mr. Keener's proposed terms and has never suggested any alternate terms. Furthermore, during the course of this litigation, the parties have produced nearly 300,000 documents to date. The burden of producing a few hundred or few thousand additional documents would be entirely proportional to the issues in this case, where the SEC seeks to extract tens of millions of dollars from Mr. Keener and restrict his ability to earn a living far into the future. In such circumstances, the SEC cannot hide behind an unsubstantiated burden objection to withhold such key documents. *See Powers*, 2020 WL 409534, at *2.

V. **CONCLUSION**

OIG's communications with third-party market participants regarding dealer registration requirements are highly relevant to Mr. Keener's fair notice and lack of scienter defenses, both in theory and in practice, as demonstrated by the few communications already produced. And the SEC has failed to identify a particular burden associated with running searches against an identified universe of documents and producing the responsive ones to Mr. Keener. Accordingly, this Court should compel SEC to run searches on the additional terms provided by Mr. Keener and produce all responsive documents.

Dated: July 2, 2021

Respectfully submitted,

**GREENBERG TRAURIG LLP**

/s/ *Benjamin G. Greenberg*

**Benjamin G. Greenberg**
Florida Bar No. 192732
greenbergb@gtlaw.com
333 SE 2nd Avenue Suite 4400
Miami, FL 33131
Telephone: (305) 579-0850
Facsimile: (305) 579-0717

**RASKIN & RASKIN, P.A.**

**Jane Serene Raskin**
Florida Bar No. 848689
201 Alhambra Circle Suite 1050
Coral Gables, Fl. 33134
Telephone: (305) 444-3400
jraskin@raskinlaw.com

*-and-*

**BUCKLEY LLP**

**Christopher F. Regan (*pro hac vice*)**
**Veena Viswanatha (*pro hac vice*)**
2001 M Street NW, Suite 500
Washington, DC 20036
Telephone: (202) 349-8000
Facsimile: (202) 349-8080
cregan@buckleyfirm.com
vviswanatha@buckleyfirm.com

*Counsel for Defendant Justin W. Keener*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served via ECF a true and correct copy of the foregoing Motion to Compel Communications Between the SEC's Office of Interpretation and Guidance and Third Parties to the following:

    Joshua E. Braunstein (Special Bar No. A5502640)
    Antony Richard Petrilla (Special Bar No. A5502641)
    Attorneys for Plaintiff
    SECURITIES AND EXCHANGE COMMISSION
    100 F Street NE
    Washington, DC 20549
    Telephone: (202) 551-8470
    Braunsteinj@sec.gov

    *Attorneys for Plaintiff*
    *Securities and Exchange Commission*

    This, the 2nd day of July, 2021

    /s/ *Benjamin G. Greenberg*