# EXHIBIT 4



**UNITED STATES
SECURITIES AND EXCHANGE
COMMISSIONDIVISION OF
ENFORCEMENT**

100 F Street, NE
WASHINGTON, DC
20549-1004

DIVISION OF
ENFORCEMENT

Joshua Braunstein
Senior Trial Counsel
Telephone:  (202) 551-8470
BraunsteinJ@sec.gov

May 11, 2021

**VIA EMAIL**

Veena Viswanatha, Esq.
Christopher F. Regan, Esq.
Buckley Sandler LLP
1250 24th Street NW, Suite 700
Washington, DC 20037

     Re:     *SEC v. Justin W. Keener d/b/a JMJ Financial*, No. 20-cv-21254 (S.D. Fla.)

Dear Veena and Chris:

     We write in response to JMJ's May 7, 2021 letter, which we received after business hours this past Friday, concerning the SEC's response to your Second Set of Requests for Production. We agree that the parties appear to be at an impasse on whether any potentially responsive documents you seek would be relevant to any claim or defense in this case.

     We are guided by Federal Rule of Civil Procedure 26(b)(1), which allows parties to obtain discovery into any non-privileged matter that is relevant to any party's claim or defense and is proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).  We have reviewed your arguments and the cases you cite, and we stand by the analysis and conclusions in our May 6, 2021 letter.

     In your May 7 letter, you assert four separate reasons why documents reflecting communications between the Office of Interpretation and Guidance and third parties concerning *any* dealer registration issue are, in your view, relevant to your client's due process defense: (1) How evidence of industry practice may be relevant to a fair notice defense in a case involving a scienter-based charge (not at issue here); (2) How evidence of industry practice may be relevant

Veena Viswanatha, Esq.
Christopher Regan, Esq.
May 11, 2021

to the scienter element in the moving party's claim for injunctive relief; (3) How responsive documents may be relevant to certain objections (not "admissions" as you erroneously characterized them) the SEC posed to ten discovery requests; and (4) How an oral ruling of a Magistrate Judge in a discovery hearing in *Ripple Labs* supports your position.

As we explain below, these arguments are not persuasive. Significantly, your May 7 letter concludes that for the sole reason that we did not provide you with the search terms we applied to a search for potentially responsive documents at issue, you "cannot assess [our] claims of burden or meaningfully discuss reducing any alleged burden." And you declined our offer to propose "a small list of search terms that would narrowly target potential OIG [Office of Interpretation and Guidance] documents."

**Additional information regarding burden and proportionality.**

You have asked about the burden to conduct searches, and seem to be under a misimpression about how the SEC maintains documents reflecting communications that the Office of Interpretation and Guidance has had with third parties during the eight-year period you have requested. We have recently learned that the SEC stores these documents in limited purpose databases that do not support the type of Boolean electronic searches you may have envisioned. The databases can be searched for single words as well as broad topic areas (which in this case would be broker-dealer registration issues). Even with such searches, agency personnel would still have to look at each document to confirm that it is responsive to JMJ's request for production of documents.

**JMJ cites inapposite case law to attempt to demonstrate that "industry practice" is relevant.**

    **(1) Due Process/fair notice:**

In support of your due process/fair notice argument, you rely on *SEC v. Kovzan*, where a district court found in 2012 that industry practice was relevant to a due process/fair notice defense. 2012 WL 4189011, at *5 (D. Kan. Oct. 10, 2012). *Kovzan* is neither controlling, nor at all on point. As a preliminary matter, the due process claim in *Kovzan* dealt with the SEC's interpretations of an *agency rule*. *Id.* So too did the two cases the court cited in *Kovzan*. *See Ohio Cast Prods., Inc. v. Occupational Safety & Health Rev. Comm'n*, 246 F.3d 791, 793, 799 (6th Cir. 2001) (Department of Labor regulations at issue); *General Elec. Co. v. EPA*, 53 F.3d 1324, 1325, 1332 (D.C. Cir. 1995) (EPA regulations at issue).

Here, there are no SEC rules at issue, and the only laws are the Exchange Act's statutory definition of "dealer" and the requirement that dealers register with the SEC. In the commercial context, the standard for determining whether a statute has provided a person fair notice is if its prohibitions would be understood by an ordinary person operating a profit-driven business. *See Roberts v. U.S. Jaycees,* 468 U.S. 609, 629 (1984). As Judge Bloom observed in her August 14, 2020 Order, your client has not even contended that the Exchange Act's dealer registration provisions are ambiguous. Thus, *Kovzan*'s holding as to industry practice is inapplicable to a

Veena Viswanatha, Esq.
Christopher Regan, Esq.
May 11, 2021

due process/fair notice defense where, as here, the defendant is not even challenging statutory language as being vague or ambiguous. *Upton v. SEC* (which you cited for the same point in your Motion to Dismiss, which the Court rejected) also dealt with an agency rule, and not a statute, and is therefore similarly irrelevant to the issues here. *See id.*, 75 F.3d 92, 93 (2d Cir. 1996) (SEC's "Customer Protection Rule" at issue).

Moreover, the evidentiary basis you cite and rely upon from *Kovzan* is no longer operative. To that end, your May 7 letter quotes *Kovzan* for the proposition that "discovery of such non-public [SEC] documents may lead to the discovery of admissible information relevant to defendant's fair notice defense." Although in 2012, when *Kovzan* was written, this *was* the proper standard for determining whether information was discoverable, it no longer is. You are relying on a standard to determine whether evidence is discoverable from a former version of Rule 26 that was far broader than the current version. The proper standard matters. *See Sharbaugh v. Beaudry*, 2017 WL 5988221, at *2 and n.3 (N.D. Fla. May 5, 2017) (underscoring the peril in attorneys relying on "caselaw that analyzed the version of Rule 26 that existed before the highly publicized amendments took effect on December 1, 2015"). *Kovzan* is not helpful to your position for this additional reason.

Finally, as we discussed in our May 6, 2021 letter, and Judge Bloom expounded upon in her August 14, 2020 Order, unlike *Kovzan*, *Upton* or any of the cases that you cite in support of your due process/fair notice argument, the Eleventh Circuit had interpreted and explained the definition of "dealer" at the start of the Relevant Period in the SEC's Complaint. *See SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 809-10 (11th Cir. 2015) (explaining that the "centerpiece" of the definition of a "dealer" is the word "business," and noting that defendants were dealers where their "*entire* business model was predicated on the purchase and sale of securities" and where they bought "stocks at deep discounts" by contractual agreement and "then resold those stocks for profit") (emphasis in original). As discussed below, and by Judge Bloom, courts have been interpreting the statutory language at issue here for many years. Your client had more than "fair notice" of the statute's reach, and requiring the SEC to undertake a burdensome discovery search for "industry practice" evidence is clearly not proportional to the needs of the case.

**(2) Injunctive Relief:**

You also cite *Kovzan*'s ruling that industry practice could be relevant to the scienter requirement for injunctive relief. *See id.*, 2012 WL 4819011, at *4-5. While we disagree with that holding, you correctly observe that, *Kovzan* found both that showing recklessness may satisfy the scienter requirement and industry practice may be relevant to determining whether a person was reckless for purposes of injunctive relief. But as you are aware, the SEC's sole claim against Mr. Keener does not involve any showing of scienter. And we have *never contended* that Mr. Keener recklessly disregarded industry practice (whatever you believe that means here) in acting as an unregistered dealer. Indeed, the SEC will not make any such argument in this case. Because of this, neither *Kovzan*, nor the cases it cites aid your position that any responsive documents would be relevant.

3

Veena Viswanatha, Esq.
Christopher Regan, Esq.
May 11, 2021

**Contentions that the SEC made "Admissions that the Guide is Vague and Ambiguous" are a mischaracterization and are otherwise irrelevant.**

You point out the SEC's responses to certain of your client's requests for admission as ostensible support for the relevance of potentially responsive materials. You specifically state that "the communications are relevant because the SEC itself has admitted that some of the factors set forth in the Guide [to Broker-Dealer Registration] are vague and ambiguous, and thus in need of additional clarification." The SEC has done no such thing, and your letter misrepresents and mischaracterizes the SEC's discovery responses. Your letter cites the "SEC's Response to Mr. Keener's Requests for Admission (Oct. 29, 2020) at ¶¶ 6, 14-15, 17-21, 23, 29." In each of the 10 responses you cite, the SEC posed an objection, and it is a concerning mischaracterization to contend, as you do, that that SEC "admitted that those factors ["runs a matched book of repurchase agreements" or "participates in a 'selling group'"] as well as other factors . . . are "vague and ambiguous." A cursory review of the SEC's responses to those requests demonstrates that, as to the two factors you specifically cite, the SEC's response was a limited objection that cannot reasonably be interpreted as an "admission that some of the factors set forth in the Guide are vague and ambiguous."

Indeed, for example, RFA 6 states: "Admit that You are unaware of any evidence that Defendant ran a matched book of repurchase agreements." The SEC's response was as follows: "The SEC objects to this Request as the phrase 'ran a matched book of repurchase agreements' is vague and ambiguous *as used in the context of this Request*. Without waiving this objection, the SEC admits the Request." (emphasis added). There can be no question that the response was limited to the *context* of the request, as we explicitly stated. It cannot reasonably be deemed an "admission" of anything about the Guide. The same is true for RFA 18, where the SEC similarly objected to "participated in a selling group" as vague and ambiguous "in the context of this Request." More troubling still, neither the word "vague" nor "ambiguous" appears in the SEC's responses to other RFAs you cite for support, including RFAs 20, 21 and 23.

The SEC does not take the position that provisions of the Guide are vague and/or ambiguous. But even if there were an argument to be had about this, as we have stated several times, including in our response to JMJ's Second Request for Production of Documents, the Guide expressly states:

> You may wish to consult with a private lawyer who is familiar with the federal securities laws, to assure that you comply with all laws and regulations. The SEC **staff cannot act as an individual's or broker-dealer's lawyer**. While the staff attempts to provide guidance by telephone to individuals who are making inquiries, the **guidance is informal and not binding. Formal guidance may be sought through a written inquiry** that is consistent with the SEC's guidelines for no-action, interpretive, and exemptive requests. (Emphasis added).

4

Veena Viswanatha, Esq.
Christopher Regan, Esq.
May 11, 2021

There is no question that any responsive documents would only comprise third-party questions and non-binding, informal SEC staff responses that would not be relevant to the sole question of whether your client was engaged in a regular business of buying and selling securities.

To be clear, the Guide *does not purport to be a source of law*, and it expressly admonishes readers as follows:

> **CAUTION — MAKE SURE YOU FOLLOW ALL LAWS AND RULES**
>
> **Although this guide highlights certain provisions of the Act and our rules, it is not comprehensive. Brokers and dealers, and their associated persons, must comply with all applicable requirements, including those of the U.S. Securities and Exchange Commission ("SEC" or "Commission"), as well as the requirements of any self-regulatory organizations to which the brokers and dealers belong, and not just those summarized here. (Emphasis in original).**

Because the Guide is expressly *not* a statement of law, your claims that informal staff responses to third-party questions are simply not substantial enough to demonstrate relevance or proportionality.

**Reliance on *Ripple Labs* is misplaced.**

Your reliance on the Magistrate Judge's oral order in *Ripple Labs* is misplaced. Without addressing our views here of the Magistrate Judge's finding, we note that the cryptocurrency industry, which is a new and consistently growing area of the securities industry, is not comparable to the dealer market, and the law surrounding them could not be more different. Your client has been using the same business model for more than a decade. The jurisprudence on dealer registration in the Eleventh Circuit dates back more than 50 years to *Eastside Church of Christ v. National Plan, Inc.*, decades before cryptocurrency was even invented. *See id*., 391 F.2d 357 (11th Cir. 1968). What is more, the Magistrate Judge in *Ripple Labs* premised her holding on the narrow grounds that the Commission's statements to third parties about Bitcoin and Ether may be relevant to Ripple's defense that those assets are comparable to Ripple's XRP.

This case deals with clear statutory language that has been consistently applied in the Eleventh Circuit. This further distinguishes *Ripple* from our case. For the reasons set forth in this letter, our May 6, 2021 letter, our discovery responses and related communications, and (most importantly) Judge Bloom's August 14, 2020 Order and the cases the Order cites, there is no meaningful basis to contend that evidence of industry practice would shed light on whether your client had fair notice of what conduct the dealer registration statute proscribes.

Allowing wholesale discovery of a regulatory agency's communications with third parties who are not the subject of an enforcement action is likely to have a substantial chilling effect upon the free exchange of information and data between the agency and those it

Veena Viswanatha, Esq.
Christopher Regan, Esq.
May 11, 2021

regulates.  For example, the SEC often engages with issuers of registered and unregistered securities, broker-dealers, investment advisers, credit rating agencies, auditors, and other industry participants.  A requirement that the SEC produce in discovery all communications between and amongst those parties in all of the enforcement actions brought each year against or involving industry participants, would certainly lessen or even eliminate the useful exchange of information between the SEC and the securities industry.  Such an impact—compared to the likely irrelevancy of such information in a district court action applying the plain language of a decade's old federal statute—would not be helpful to industry participants, investors, or the markets that the SEC regulates.

      We believe that your May 7, letter is misguided, and that there may still be a mutually agreeable resolution to be had here.  However, if you believe that this matter should go before Magistrate Judge Louis without any further discussion, we ask that this letter be included with any submission to the judge, along with our other correspondence on this issue, as well as our related discovery responses.  As for dates, we are available on May 25 or May 27, 2021 at 11 a.m.

                                Sincerely,

                                s/_____
                                Joshua E. Braunstein
                                Antony Richard Petrilla

cc:    Ben Greenberg, Esq.
        Oliva Rauh, Esq.