# EXHIBIT 19

| | |
|---|---|
| **From:** | Rutkowski, Joanne |
| **To:** | "David Jarvis" |
| **Subject:** | RE: |
| **Date:** | Friday, January 05, 2018 10:15:00 AM |

David, could you use this dial-in for our call this morning, thx:

202-551-7000 (US/Canada)
888-732-8001 (US/Canada Toll-free)
17000      (SEC Internal)

Access Code:
980 530 750

---

**From:** David Jarvis [mailto:djarvis@alpine-securities.com]
**Sent:** Thursday, January 04, 2018 4:41 PM
**To:** Rutkowski, Joanne
**Subject:** RE:

Again, I'm not asking about the order.  I am asking a far more general question.  How about 11:00 EST?  I will conference in one of my colleagues at that time.

I can be reached at 804 357 0567

Thanks!

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

---

**From:** Rutkowski, Joanne [mailto:RutkowskiJ@sec.gov]
**Sent:** Thursday, January 4, 2018 1:53 PM
**To:** David Jarvis <djarvis@alpine-securities.com>
**Subject:** RE:

Mr. Jarvis,

Thank you for writing.  I'm not sure I can add any gloss to the Commission's order but would be happy to talk with you.  Is there a time tomorrow I could call you?

Many thx,
Joanne Rutkowski

**From:** David Jarvis [mailto:djarvis@alpine-securities.com]
**Sent:** Thursday, January 04, 2018 10:36 AM
**To:** Rutkowski, Joanne
**Subject:**
**Importance:** High

Dear Ms. Rutkowski:

I write to you, unfortunately, after having unsuccessful interaction with one of your colleagues.  I give you the entire history of the inquiry that I have on behalf of my organization.

Fairly recently the Commission filed an action against Microcap Equity Group and an individual that can be found here:  https://www.sec.gov/litigation/complaints/2017/comp23992.pdf

The gravamen of the Complaint can be found in numerical paragraph 2.  It alleges:  *Between January 2013 and July 2016, Defendants, as part of a regular business, engaged in the buying and selling of securities for Defendants' own accounts. Defendants purchased from debtholders the aged debts of various microcap issuers of securities. Contemporaneously, and as part of their purchase of the aged debt, Defendants obtained*
*agreements with the issuers permitting Defendants to, at their discretion, convert the debt into shares of the issuers' common stock. Defendants deposited these shares (once converted from the debt) into their brokerage accounts and sold significant numbers of them into the market.*
*Finally, Defendants deposited the net proceeds from the stock sales into their bank accounts.*

Generally speaking, the Defendants acquired aged convertible debt or simply aged where the issuer agreed to conversion terms because it could not pay the obligation.  Thereafter, Defendants converted the debt and sold the positions.  In a scheduled conference call with the Staff Attorneys who brought this action they would not provide us guidance in terms of our inquiries and instead directed us to OCIE.

*What we as an organization are trying to understand is whether or not the Staff and/or the Commission are deeming the acquisition of third party debt, conversion of that debt, and sale into the public marketplace a business model (if you will) that requires registration as a dealer?  We are aware that the definition of dealer excludes routine trading transactions for ones own account as well as other potentially relevant carve outs.  Here we are simply trying to gain our regulators posture.*

Despite advising you colleague that we do not seek any information or insight into pending litigation, she has refused to provide any guidance responsive to our inquiry basing her refusal on an errant belief that we are seeking comment on an enforcement action, where we clearly are not.  Rather, what we are trying to be is a compliant firm that operates well within the confines of propriety and our inquiry is on all fours with how we seek to operate our business.

Moreover, you colleague suggests we should obtain a no action letter where she certainly should know that the SEC will not provide no action relief or responses to hypothetical scenarios.

I, along with my organization, appreciate your assistance in this regard.

Thank you.

DHJ


David H . Jarvis
Special Counsel


Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

| | |
|---|---|
| **From:** | Smith, Margaret A. (TM) |
| **To:** | djarvis@alpine-securities.com |
| **Cc:** | TradingAndMarkets |
| **Subject:** | FW: Inquiry |
| **Date:** | Wednesday, January 03, 2018 11:07:00 AM |

Mr. Jarvis,

The Exam Hotline forwarded your email to us for response.

The Commission staff generally cannot comment on Enforcement Actions other than to provide information already made public by the Commission.

If there is a specific fact pattern you are seeking guidance on, you may send us a request for a no-action letter.  Procedures applicable to requests for no-action and interpretive letters are available in Securities Act Release No. 6269 (http://www.sec.gov/rules/other/33-6269.pdf ).

The Division of Trading and Markets

**From:** David Jarvis [mailto:djarvis@alpine-securities.com]
**Sent:** Tuesday, January 02, 2018 8:54 AM
**To:** Exam Hotline
**Subject:** RE: Inquiry
**Importance:** High

I'm hopeful that the delay in response to the below inquiry was derivative of the holidays and folks vacation schedules.  I look forward to a meaningful response.

Thank you.

DHJ

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

**From:** David Jarvis
**Sent:** Thursday, December 21, 2017 12:03 PM
**To:** 'examhotline@sec.gov' <examhotline@sec.gov>
**Subject:** Inquiry

I hope y'all are doing well this holiday season.  My inquiry starts with an explanation for clarity's

sake.

Fairly recently the Commission filed an action against Microcap Equity Group and an individual that can be found here:  https://www.sec.gov/litigation/complaints/2017/comp23992.pdf

The gravamen of the Complaint can be found in numerical paragraph 2.  It alleges:  *Between January 2013 and July 2016, Defendants, as part of a regular business, engaged in the buying and selling of securities for Defendants' own accounts. Defendants purchased from debtholders the aged debts of various microcap issuers of securities. Contemporaneously, and as part of their purchase of the aged debt, Defendants obtained*
*agreements with the issuers permitting Defendants to, at their discretion, convert the debt into shares of the issuers' common stock. Defendants deposited these shares (once converted from the debt) into their brokerage accounts and sold significant numbers of them into the market.*
*Finally, Defendants deposited the net proceeds from the stock sales into their bank accounts.*

Generally speaking, the Defendants acquired aged convertible debt or simply aged where the issuer agreed to conversion terms because it could not pay the obligation.  Thereafter, Defendants converted the debt and sold the positions.  In a scheduled conference call with the Staff Attorneys who brought this action they would not provide us guidance in terms of our inquiries and instead directed us to OCIE.

What we as an organization are trying to understand is whether or not the Staff and/or the Commission is deeming the acquisition of third party debt, conversion of that debt, and sale into the public marketplace a business model (if you will) that requires registration as a dealer?  We are aware that the definition of dealer excludes routine trading transactions for ones own account as well as other potentially relevant carve outs.  Here we are simply trying to gain our regulators posture.

Thank you very much.


David H . Jarvis
Special Counsel

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.


Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon the message. If you have received

this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

| | |
|---|---|
| **From:** | SmithMA@SEC.GOV |
| **To:** | djarvis@alpine-securities.com; TMOIGLOG |
| **Cc:** | TradingAndMarkets |
| **Subject:** | FW: Inquiry |
| **Date:** | Wednesday, January 03, 2018 11:07:30 AM |

Mr. Jarvis,

The Exam Hotline forwarded your email to us for response.

The Commission staff generally cannot comment on Enforcement Actions other than to provide information already made public by the Commission.

If there is a specific fact pattern you are seeking guidance on, you may send us a request for a no-action letter.  Procedures applicable to requests for no-action and interpretive letters are available in Securities Act Release No. 6269 (http://www.sec.gov/rules/other/33-6269.pdf ).

The Division of Trading and Markets

---

**From:** David Jarvis [mailto:djarvis@alpine-securities.com]
**Sent:** Tuesday, January 02, 2018 8:54 AM
**To:** Exam Hotline
**Subject:** RE: Inquiry
**Importance:** High

I'm hopeful that the delay in response to the below inquiry was derivative of the holidays and folks vacation schedules.  I look forward to a meaningful response.

Thank you.

DHJ

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

---

**From:** David Jarvis
**Sent:** Thursday, December 21, 2017 12:03 PM
**To:** 'examhotline@sec.gov' <examhotline@sec.gov>
**Subject:** Inquiry

I hope y'all are doing well this holiday season.  My inquiry starts with an explanation for clarity's

sake.

Fairly recently the Commission filed an action against Microcap Equity Group and an individual that can be found here:  https://www.sec.gov/litigation/complaints/2017/comp23992.pdf

The gravamen of the Complaint can be found in numerical paragraph 2.  It alleges:  *Between January 2013 and July 2016, Defendants, as part of a regular business, engaged in the buying and selling of securities for Defendants' own accounts. Defendants purchased from debtholders the aged debts of various microcap issuers of securities. Contemporaneously, and as part of their purchase of the aged debt, Defendants obtained*
*agreements with the issuers permitting Defendants to, at their discretion, convert the debt into shares of the issuers' common stock. Defendants deposited these shares (once converted from the debt) into their brokerage accounts and sold significant numbers of them into the market.*
*Finally, Defendants deposited the net proceeds from the stock sales into their bank accounts.*

Generally speaking, the Defendants acquired aged convertible debt or simply aged where the issuer agreed to conversion terms because it could not pay the obligation.  Thereafter, Defendants converted the debt and sold the positions.  In a scheduled conference call with the Staff Attorneys who brought this action they would not provide us guidance in terms of our inquiries and instead directed us to OCIE.

What we as an organization are trying to understand is whether or not the Staff and/or the Commission is deeming the acquisition of third party debt, conversion of that debt, and sale into the public marketplace a business model (if you will) that requires registration as a dealer?  We are aware that the definition of dealer excludes routine trading transactions for ones own account as well as other potentially relevant carve outs.  Here we are simply trying to gain our regulators posture.

Thank you very much.


David H . Jarvis
Special Counsel

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.


Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon the message. If you have received

this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

| | |
|---|---|
| **From:** | David Jarvis |
| **To:** | Smith, Margaret A. (TM); TMOIGLOG |
| **Cc:** | TradingAndMarkets |
| **Subject:** | RE: Inquiry |
| **Date:** | Wednesday, January 03, 2018 11:19:58 AM |

Ms. Smith – thanks for your response.   Perhaps you have misread my inquiry.  My inquiry is not about active litigation although it is the active litigation that admittedly spurred the inquiry.  Rather, my inquiry is unrelated to the litigation.  Again and for clarity's sake, here it is:

What we as an organization are trying to understand is whether or not the Staff and/or the Commission is deeming the acquisition of third party debt, conversion of that debt, and sale into the public marketplace a business model (if you will) that requires registration as a dealer?  We are aware that the definition of dealer excludes routine trading transactions for ones own account as well as other potentially relevant carve outs.  Here we are simply trying to gain our regulators posture.

If the question requires a more intensive dive into facts to better frame a response please let me know what facts you would need.  Again, thank you for your assistance.

DHJ

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

**From:** Smith, Margaret A. (TM) [mailto:SmithMA@SEC.GOV]
**Sent:** Wednesday, January 3, 2018 9:07 AM
**To:** David Jarvis <djarvis@alpine-securities.com>
**Cc:** TradingAndMarkets <TradingAndMarkets@SEC.GOV>
**Subject:** FW: Inquiry

Mr. Jarvis,

The Exam Hotline forwarded your email to us for response.

The Commission staff generally cannot comment on Enforcement Actions other than to provide information already made public by the Commission.

If there is a specific fact pattern you are seeking guidance on, you may send us a request for a no-action letter.  Procedures applicable to requests for no-action and interpretive letters are available in Securities Act Release No. 6269 (http://www.sec.gov/rules/other/33-6269.pdf ).

The Division of Trading and Markets

---

**From:** David Jarvis [mailto:djarvis@alpine-securities.com]
**Sent:** Tuesday, January 02, 2018 8:54 AM
**To:** Exam Hotline
**Subject:** RE: Inquiry
**Importance:** High

I'm hopeful that the delay in response to the below inquiry was derivative of the holidays and folks vacation schedules.  I look forward to a meaningful response.

Thank you.

DHJ

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

---

**From:** David Jarvis
**Sent:** Thursday, December 21, 2017 12:03 PM
**To:** 'examhotline@sec.gov' <examhotline@sec.gov>
**Subject:** Inquiry

I hope y'all are doing well this holiday season.  My inquiry starts with an explanation for clarity's sake.

Fairly recently the Commission filed an action against Microcap Equity Group and an individual that can be found here:  https://www.sec.gov/litigation/complaints/2017/comp23992.pdf

The gravamen of the Complaint can be found in numerical paragraph 2.  It alleges:  *Between January 2013 and July 2016, Defendants, as part of a regular business, engaged in the buying and selling of securities for Defendants' own accounts. Defendants purchased from debtholders the aged debts of various microcap issuers of securities. Contemporaneously, and as part of their purchase of the aged debt, Defendants obtained*
*agreements with the issuers permitting Defendants to, at their discretion, convert the debt into shares of the issuers' common stock. Defendants deposited these shares (once converted from the debt) into their brokerage accounts and sold significant numbers of them into the market.*
*Finally, Defendants deposited the net proceeds from the stock sales into their bank accounts.*

Generally speaking, the Defendants acquired aged convertible debt or simply aged where the issuer agreed to conversion terms because it could not pay the obligation.  Thereafter, Defendants converted the debt and sold the positions.  In a scheduled conference call with the Staff Attorneys who brought this action they would not provide us guidance in terms of our inquiries and instead directed us to OCIE.

What we as an organization are trying to understand is whether or not the Staff and/or the Commission is deeming the acquisition of third party debt, conversion of that debt, and sale into the public marketplace a business model (if you will) that requires registration as a dealer?  We are aware that the definition of dealer excludes routine trading transactions for ones own account as well as other potentially relevant carve outs.  Here we are simply trying to gain our regulators posture.

Thank you very much.

David H . Jarvis
Special Counsel

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon the message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

| | |
|---|---|
| **From:** | TradingAndMarkets@SEC.GOV |
| **To:** | djarvis@alpine-securities.com; TMOIGLOG |
| **Cc:** | TradingAndMarkets |
| **Subject:** | RE: Inquiry |
| **Date:** | Wednesday, January 03, 2018 11:34:36 AM |

Mr. Jarvis,

As noted earlier, we cannot comment on Enforcement Actions other than to provide information already made public by the Commission.  You may send us a request for a no-action letter regarding the specific fact pattern you are seeking guidance on.

The Division of Trading and Markets

**From:** David Jarvis [mailto:djarvis@alpine-securities.com]
**Sent:** Wednesday, January 03, 2018 11:20 AM
**To:** Smith, Margaret A. (TM); TMOIGLOG
**Cc:** TradingAndMarkets
**Subject:** RE: Inquiry

Ms. Smith – thanks for your response.   Perhaps you have misread my inquiry.  My inquiry is not about active litigation although it is the active litigation that admittedly spurred the inquiry.  Rather, my inquiry is unrelated to the litigation.  Again and for clarity's sake, here it is:

What we as an organization are trying to understand is whether or not the Staff and/or the Commission is deeming the acquisition of third party debt, conversion of that debt, and sale into the public marketplace a business model (if you will) that requires registration as a dealer?  We are aware that the definition of dealer excludes routine trading transactions for ones own account as well as other potentially relevant carve outs.  Here we are simply trying to gain our regulators posture.

If the question requires a more intensive dive into facts to better frame a response please let me know what facts you would need.  Again, thank you for your assistance.

DHJ

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

**From:** Smith, Margaret A. (TM) [mailto:SmithMA@SEC.GOV]
**Sent:** Wednesday, January 3, 2018 9:07 AM
**To:** David Jarvis <djarvis@alpine-securities.com>

**Cc:** TradingAndMarkets <TradingAndMarkets@SEC.GOV>
**Subject:** FW: Inquiry

Mr. Jarvis,

The Exam Hotline forwarded your email to us for response.

The Commission staff generally cannot comment on Enforcement Actions other than to provide information already made public by the Commission.

If there is a specific fact pattern you are seeking guidance on, you may send us a request for a no-action letter.  Procedures applicable to requests for no-action and interpretive letters are available in Securities Act Release No. 6269 (http://www.sec.gov/rules/other/33-6269.pdf ).

The Division of Trading and Markets

---

**From:** David Jarvis [mailto:djarvis@alpine-securities.com]
**Sent:** Tuesday, January 02, 2018 8:54 AM
**To:** Exam Hotline
**Subject:** RE: Inquiry
**Importance:** High

I'm hopeful that the delay in response to the below inquiry was derivative of the holidays and folks vacation schedules.  I look forward to a meaningful response.

Thank you.

DHJ

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

---

**From:** David Jarvis
**Sent:** Thursday, December 21, 2017 12:03 PM
**To:** 'examhotline@sec.gov' <examhotline@sec.gov>
**Subject:** Inquiry

I hope y'all are doing well this holiday season.  My inquiry starts with an explanation for clarity's sake.

Fairly recently the Commission filed an action against Microcap Equity Group and an individual that can be found here:  https://www.sec.gov/litigation/complaints/2017/comp23992.pdf

The gravamen of the Complaint can be found in numerical paragraph 2.  It alleges:  *Between January 2013 and July 2016, Defendants, as part of a regular business, engaged in the buying and selling of securities for Defendants' own accounts. Defendants purchased from debtholders the aged debts of various microcap issuers of securities. Contemporaneously, and as part of their purchase of the aged debt, Defendants obtained*
*agreements with the issuers permitting Defendants to, at their discretion, convert the debt into shares of the issuers' common stock. Defendants deposited these shares (once converted from the debt) into their brokerage accounts and sold significant numbers of them into the market. Finally, Defendants deposited the net proceeds from the stock sales into their bank accounts.*

Generally speaking, the Defendants acquired aged convertible debt or simply aged where the issuer agreed to conversion terms because it could not pay the obligation.  Thereafter, Defendants converted the debt and sold the positions.  In a scheduled conference call with the Staff Attorneys who brought this action they would not provide us guidance in terms of our inquiries and instead directed us to OCIE.

What we as an organization are trying to understand is whether or not the Staff and/or the Commission is deeming the acquisition of third party debt, conversion of that debt, and sale into the public marketplace a business model (if you will) that requires registration as a dealer?  We are aware that the definition of dealer excludes routine trading transactions for ones own account as well as other potentially relevant carve outs.  Here we are simply trying to gain our regulators posture.

Thank you very much.


David H . Jarvis
Special Counsel

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.


Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon the message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no

privileges are waived by the transmission of this message.

| From: | David Jarvis |
|---|---|
| To: | TradingAndMarkets; TMOIGLOG |
| Subject: | RE: Inquiry |
| Date: | Wednesday, January 03, 2018 11:35:52 AM |

I'm not asking for a comment on open litigation.  Who is your supervisor please?

Thank you

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

**From:** TradingAndMarkets [mailto:TradingAndMarkets@SEC.GOV]
**Sent:** Wednesday, January 3, 2018 9:35 AM
**To:** David Jarvis <djarvis@alpine-securities.com>
**Cc:** TradingAndMarkets <TradingAndMarkets@SEC.GOV>
**Subject:** RE: Inquiry

Mr. Jarvis,

As noted earlier, we cannot comment on Enforcement Actions other than to provide information already made public by the Commission.  You may send us a request for a no-action letter regarding the specific fact pattern you are seeking guidance on.

The Division of Trading and Markets

**From:** David Jarvis [mailto:djarvis@alpine-securities.com]
**Sent:** Wednesday, January 03, 2018 11:20 AM
**To:** Smith, Margaret A. (TM); TMOIGLOG
**Cc:** TradingAndMarkets
**Subject:** RE: Inquiry

Ms. Smith – thanks for your response.   Perhaps you have misread my inquiry.  My inquiry is not about active litigation although it is the active litigation that admittedly spurred the inquiry.  Rather, my inquiry is unrelated to the litigation.  Again and for clarity's sake, here it is:

What we as an organization are trying to understand is whether or not the Staff and/or the Commission is deeming the acquisition of third party debt, conversion of that debt, and sale into the public marketplace a business model (if you will) that requires registration as a dealer?  We are aware that the definition of dealer excludes routine trading transactions for ones own account as well as other potentially relevant carve outs.  Here we are simply trying to gain our regulators posture.

If the question requires a more intensive dive into facts to better frame a response please let me know what facts you would need.  Again, thank you for your assistance.

DHJ

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

**From:** Smith, Margaret A. (TM) [mailto:SmithMA@SEC.GOV]
**Sent:** Wednesday, January 3, 2018 9:07 AM
**To:** David Jarvis <djarvis@alpine-securities.com>
**Cc:** TradingAndMarkets <TradingAndMarkets@SEC.GOV>
**Subject:** FW: Inquiry

Mr. Jarvis,

The Exam Hotline forwarded your email to us for response.

The Commission staff generally cannot comment on Enforcement Actions other than to provide information already made public by the Commission.

If there is a specific fact pattern you are seeking guidance on, you may send us a request for a no-action letter.  Procedures applicable to requests for no-action and interpretive letters are available in Securities Act Release No. 6269 (http://www.sec.gov/rules/other/33-6269.pdf ).

The Division of Trading and Markets

**From:** David Jarvis [mailto:djarvis@alpine-securities.com]
**Sent:** Tuesday, January 02, 2018 8:54 AM
**To:** Exam Hotline
**Subject:** RE: Inquiry
**Importance:** High

I'm hopeful that the delay in response to the below inquiry was derivative of the holidays and folks vacation schedules.  I look forward to a meaningful response.

Thank you.

DHJ

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

---

**From:** David Jarvis
**Sent:** Thursday, December 21, 2017 12:03 PM
**To:** 'examhotline@sec.gov' <examhotline@sec.gov>
**Subject:** Inquiry

I hope y'all are doing well this holiday season.  My inquiry starts with an explanation for clarity's sake.

Fairly recently the Commission filed an action against Microcap Equity Group and an individual that can be found here:  https://www.sec.gov/litigation/complaints/2017/comp23992.pdf

The gravamen of the Complaint can be found in numerical paragraph 2.  It alleges:  *Between January 2013 and July 2016, Defendants, as part of a regular business, engaged in the buying and selling of securities for Defendants' own accounts. Defendants purchased from debtholders the aged debts of various microcap issuers of securities. Contemporaneously, and as part of their purchase of the aged debt, Defendants obtained*
*agreements with the issuers permitting Defendants to, at their discretion, convert the debt into shares of the issuers' common stock. Defendants deposited these shares (once converted from the debt) into their brokerage accounts and sold significant numbers of them into the market.*
*Finally, Defendants deposited the net proceeds from the stock sales into their bank accounts.*

Generally speaking, the Defendants acquired aged convertible debt or simply aged where the issuer agreed to conversion terms because it could not pay the obligation.  Thereafter, Defendants converted the debt and sold the positions.  In a scheduled conference call with the Staff Attorneys who brought this action they would not provide us guidance in terms of our inquiries and instead directed us to OCIE.

What we as an organization are trying to understand is whether or not the Staff and/or the Commission is deeming the acquisition of third party debt, conversion of that debt, and sale into the public marketplace a business model (if you will) that requires registration as a dealer?  We are aware that the definition of dealer excludes routine trading transactions for ones own account as well as other potentially relevant carve outs.  Here we are simply trying to gain our regulators posture.

Thank you very much.

David H . Jarvis
Special Counsel

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.


Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon the message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

| | |
|---|---|
| **From:** | TradingAndMarkets@SEC.GOV |
| **To:** | djarvis@alpine-securities.com; TMOIGLOG |
| **Cc:** | TradingAndMarkets |
| **Subject:** | RE: Inquiry |
| **Date:** | Wednesday, January 03, 2018 12:00:05 PM |

My supervisor is Joanne Rutkowski.  She can be reached at RutkowskiJ@sec.gov.

**From:** David Jarvis [mailto:djarvis@alpine-securities.com]
**Sent:** Wednesday, January 03, 2018 11:35 AM
**To:** TradingAndMarkets; TMOIGLOG
**Subject:** RE: Inquiry

I'm not asking for a comment on open litigation.  Who is your supervisor please?

Thank you

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

**From:** TradingAndMarkets [mailto:TradingAndMarkets@SEC.GOV]
**Sent:** Wednesday, January 3, 2018 9:35 AM
**To:** David Jarvis <djarvis@alpine-securities.com>
**Cc:** TradingAndMarkets <TradingAndMarkets@SEC.GOV>
**Subject:** RE: Inquiry

Mr. Jarvis,

As noted earlier, we cannot comment on Enforcement Actions other than to provide information already made public by the Commission.  You may send us a request for a no-action letter regarding the specific fact pattern you are seeking guidance on.

The Division of Trading and Markets

**From:** David Jarvis [mailto:djarvis@alpine-securities.com]
**Sent:** Wednesday, January 03, 2018 11:20 AM
**To:** Smith, Margaret A. (TM); TMOIGLOG
**Cc:** TradingAndMarkets
**Subject:** RE: Inquiry

Ms. Smith – thanks for your response.   Perhaps you have misread my inquiry.  My inquiry is not about active litigation although it is the active litigation that admittedly spurred the inquiry.  Rather, my inquiry is unrelated to the litigation.  Again and for clarity's sake, here it is:

What we as an organization are trying to understand is whether or not the Staff and/or the Commission is deeming the acquisition of third party debt, conversion of that debt, and sale into the public marketplace a business model (if you will) that requires registration as a dealer? We are aware that the definition of dealer excludes routine trading transactions for ones own account as well as other potentially relevant carve outs. Here we are simply trying to gain our regulators posture.

If the question requires a more intensive dive into facts to better frame a response please let me know what facts you would need. Again, thank you for your assistance.

DHJ

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

**From:** Smith, Margaret A. (TM) [mailto:SmithMA@SEC.GOV]
**Sent:** Wednesday, January 3, 2018 9:07 AM
**To:** David Jarvis <djarvis@alpine-securities.com>
**Cc:** TradingAndMarkets <TradingAndMarkets@SEC.GOV>
**Subject:** FW: Inquiry

Mr. Jarvis,

The Exam Hotline forwarded your email to us for response.

The Commission staff generally cannot comment on Enforcement Actions other than to provide information already made public by the Commission.

If there is a specific fact pattern you are seeking guidance on, you may send us a request for a no-action letter. Procedures applicable to requests for no-action and interpretive letters are available in Securities Act Release No. 6269 (http://www.sec.gov/rules/other/33-6269.pdf ).

The Division of Trading and Markets

**From:** David Jarvis [mailto:djarvis@alpine-securities.com]
**Sent:** Tuesday, January 02, 2018 8:54 AM
**To:** Exam Hotline

**Subject:** RE: Inquiry
**Importance:** High

I'm hopeful that the delay in response to the below inquiry was derivative of the holidays and folks vacation schedules.  I look forward to a meaningful response.

Thank you.

DHJ

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

---

**From:** David Jarvis
**Sent:** Thursday, December 21, 2017 12:03 PM
**To:** 'examhotline@sec.gov' <examhotline@sec.gov>
**Subject:** Inquiry

I hope y'all are doing well this holiday season.  My inquiry starts with an explanation for clarity's sake.

Fairly recently the Commission filed an action against Microcap Equity Group and an individual that can be found here:  https://www.sec.gov/litigation/complaints/2017/comp23992.pdf

The gravamen of the Complaint can be found in numerical paragraph 2.  It alleges:  *Between January 2013 and July 2016, Defendants, as part of a regular business, engaged in the buying and selling of securities for Defendants' own accounts. Defendants purchased from debtholders the aged debts of various microcap issuers of securities. Contemporaneously, and as part of their purchase of the aged debt, Defendants obtained*
*agreements with the issuers permitting Defendants to, at their discretion, convert the debt into shares of the issuers' common stock. Defendants deposited these shares (once converted from the debt) into their brokerage accounts and sold significant numbers of them into the market.*
*Finally, Defendants deposited the net proceeds from the stock sales into their bank accounts.*

Generally speaking, the Defendants acquired aged convertible debt or simply aged where the issuer agreed to conversion terms because it could not pay the obligation.  Thereafter, Defendants converted the debt and sold the positions.  In a scheduled conference call with the Staff Attorneys who brought this action they would not provide us guidance in terms of our inquiries and instead directed us to OCIE.

What we as an organization are trying to understand is whether or not the Staff and/or the

Commission is deeming the acquisition of third party debt, conversion of that debt, and sale into the public marketplace a business model (if you will) that requires registration as a dealer?  We are aware that the definition of dealer excludes routine trading transactions for ones own account as well as other potentially relevant carve outs.  Here we are simply trying to gain our regulators posture.

Thank you very much.

David H . Jarvis
Special Counsel

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon the message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

| **From:** | David Jarvis |
|---|---|
| **To:** | TradingAndMarkets; TMOIGLOG |
| **Subject:** | RE: Inquiry |
| **Date:** | Wednesday, January 03, 2018 1:40:28 PM |

Thank you very much.

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

**From:** TradingAndMarkets [mailto:TradingAndMarkets@SEC.GOV]
**Sent:** Wednesday, January 3, 2018 10:00 AM
**To:** David Jarvis <djarvis@alpine-securities.com>
**Cc:** TradingAndMarkets <TradingAndMarkets@SEC.GOV>
**Subject:** RE: Inquiry

My supervisor is Joanne Rutkowski.  She can be reached at RutkowskiJ@sec.gov.

**From:** David Jarvis [mailto:djarvis@alpine-securities.com]
**Sent:** Wednesday, January 03, 2018 11:35 AM
**To:** TradingAndMarkets; TMOIGLOG
**Subject:** RE: Inquiry

I'm not asking for a comment on open litigation.  Who is your supervisor please?

Thank you

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

**From:** TradingAndMarkets [mailto:TradingAndMarkets@SEC.GOV]
**Sent:** Wednesday, January 3, 2018 9:35 AM
**To:** David Jarvis <djarvis@alpine-securities.com>
**Cc:** TradingAndMarkets <TradingAndMarkets@SEC.GOV>
**Subject:** RE: Inquiry

Mr. Jarvis,

As noted earlier, we cannot comment on Enforcement Actions other than to provide information already made public by the Commission.  You may send us a request for a no-action letter regarding the specific fact pattern you are seeking guidance on.

The Division of Trading and Markets

---

**From:** David Jarvis [mailto:djarvis@alpine-securities.com]
**Sent:** Wednesday, January 03, 2018 11:20 AM
**To:** Smith, Margaret A. (TM); TMOIGLOG
**Cc:** TradingAndMarkets
**Subject:** RE: Inquiry

Ms. Smith – thanks for your response.   Perhaps you have misread my inquiry.  My inquiry is not about active litigation although it is the active litigation that admittedly spurred the inquiry.  Rather, my inquiry is unrelated to the litigation.  Again and for clarity's sake, here it is:

What we as an organization are trying to understand is whether or not the Staff and/or the Commission is deeming the acquisition of third party debt, conversion of that debt, and sale into the public marketplace a business model (if you will) that requires registration as a dealer?  We are aware that the definition of dealer excludes routine trading transactions for ones own account as well as other potentially relevant carve outs.  Here we are simply trying to gain our regulators posture.

If the question requires a more intensive dive into facts to better frame a response please let me know what facts you would need.  Again, thank you for your assistance.

DHJ

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

---

**From:** Smith, Margaret A. (TM) [mailto:SmithMA@SEC.GOV]
**Sent:** Wednesday, January 3, 2018 9:07 AM
**To:** David Jarvis <djarvis@alpine-securities.com>
**Cc:** TradingAndMarkets <TradingAndMarkets@SEC.GOV>
**Subject:** FW: Inquiry

Mr. Jarvis,

The Exam Hotline forwarded your email to us for response.

The Commission staff generally cannot comment on Enforcement Actions other than to provide information already made public by the Commission.

If there is a specific fact pattern you are seeking guidance on, you may send us a request for a no-action letter.  Procedures applicable to requests for no-action and interpretive letters are available in Securities Act Release No. 6269 (http://www.sec.gov/rules/other/33-6269.pdf ).

The Division of Trading and Markets

---

**From:** David Jarvis [mailto:djarvis@alpine-securities.com]
**Sent:** Tuesday, January 02, 2018 8:54 AM
**To:** Exam Hotline
**Subject:** RE: Inquiry
**Importance:** High

I'm hopeful that the delay in response to the below inquiry was derivative of the holidays and folks vacation schedules.  I look forward to a meaningful response.

Thank you.

DHJ

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.

---

**From:** David Jarvis
**Sent:** Thursday, December 21, 2017 12:03 PM
**To:** 'examhotline@sec.gov' <examhotline@sec.gov>
**Subject:** Inquiry

I hope y'all are doing well this holiday season.  My inquiry starts with an explanation for clarity's sake.

Fairly recently the Commission filed an action against Microcap Equity Group and an individual that can be found here:  https://www.sec.gov/litigation/complaints/2017/comp23992.pdf

The gravamen of the Complaint can be found in numerical paragraph 2.  It alleges:  *Between January 2013 and July 2016, Defendants, as part of a regular business, engaged in the buying and selling of securities for Defendants' own accounts. Defendants purchased from debtholders the aged debts of*

*various microcap issuers of securities. Contemporaneously, and as part of their purchase of the aged debt, Defendants obtained*
*agreements with the issuers permitting Defendants to, at their discretion, convert the debt into shares of the issuers' common stock. Defendants deposited these shares (once converted from the debt) into their brokerage accounts and sold significant numbers of them into the market. Finally, Defendants deposited the net proceeds from the stock sales into their bank accounts.*

Generally speaking, the Defendants acquired aged convertible debt or simply aged where the issuer agreed to conversion terms because it could not pay the obligation.  Thereafter, Defendants converted the debt and sold the positions.  In a scheduled conference call with the Staff Attorneys who brought this action they would not provide us guidance in terms of our inquiries and instead directed us to OCIE.

What we as an organization are trying to understand is whether or not the Staff and/or the Commission is deeming the acquisition of third party debt, conversion of that debt, and sale into the public marketplace a business model (if you will) that requires registration as a dealer?  We are aware that the definition of dealer excludes routine trading transactions for ones own account as well as other potentially relevant carve outs.  Here we are simply trying to gain our regulators posture.

Thank you very much.


David H . Jarvis
Special Counsel

Privileged Information: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential and/or exempt from disclosure. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please delete this message, along with any attachments, from your computer. Thank you.


Confidentiality Notice: This e-mail message, including any attachments, from the U.S. Securities and Exchange Commission is for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please do not read, distribute, or take action in reliance upon the message. If you have received this message in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.