IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>JUSTIN W. KEENER D/B/A JMJ FINANCIAL,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No. 20-cv-21254<br>)<br>)  Hon. Beth Bloom<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL AND MEMORANDUM OF LAW**

**INTRODUCTION**

After a discovery hearing on June 18, 2021, Magistrate Judge Louis ordered the SEC to search for and produce certain documents relating to communications that SEC staff in the Division of Trading and Market's Office of Interpretation and Guidance may have had with third-party members of the public. Mag. Judge Louis Order on Discovery Dispute, June 22, 2021 ("June 22 Order").[1]

---

[1] The SEC had previously confirmed that none of the potentially responsive materials related to Defendant or his business activities. By their nature, these materials comprise informal questions the staff received—and any nonpublic and expressly non-binding answers they provided—over an eight-year period from the public at-large regarding an online Guide the SEC provides as a service to the public. Specifically, the materials concern questions and staff responses to questions about "Who is a Dealer" in the online Guide to Broker-Dealer Registration ("Guide") at https://www.sec.gov/reportspubs/investor-publications/divisionsmarketregbdguidehtm.html. *See* Ex. 1.

The SEC has now produced the non-privileged documents that resulted from the two search terms Judge Louis ordered ("apple" and "convertible"). Searching for, reviewing, and compiling these documents from just those two search terms required manually reviewing over 1,250 "hits" in the databases for the Office of Interpretation and Guidance, which took several SEC attorneys more than 36 hours. *See* Ex. 2, at ¶ 7 (Declaration of Bonnie Gauch) ("Gauch Declaration" or "Gauch Decl.").[2]

Defendant now has filed a motion to compel ("Def.'s Mot. Compel") searches for documents containing any of 14 additional terms. Defendant's motion should be denied.

---

[2] While assisting in the preparation of this declaration, we discovered yesterday (July 8, 2021) that one of two databases in the Office of Interpretation and Guidance has more search functionality than we previously understood. We had previously informed counsel for Defendant on several occasions, and the Court during the June 18, 2021 discovery hearing, that no database for that office supported Boolean searches. That statement was accurate for the database that covers the period from January 2013 through February 2015. The statement was incorrect as to the database that covers March 2015 through the present.

Yesterday, July 8, 2021, we learned that the more recent documents are in a database that may be searched using more than one term and with some Boolean operators (such as "and," "or," etc.). When we represented to defense counsel and the Court that Boolean searches were not possible for either database, we believed this was completely accurate. We regret this unfortunate error. In an effort to remedy this situation, we informed counsel for Defendant promptly (on July 8, 2021, the same day that we learned of the error) and proposed to work with them to craft targeted searches of the current database that will identify the type of documents that they are seeking.

The process of pulling hits from even the current database remains very cumbersome, but the SEC offered to collaboratively develop targeted searches (with Boolean operators) that would result in a total of 1,000 hits. As part of this accommodation, we offered on July 8, 2021, to run a series of searches in the current database at the direction of Defendant's counsel, give them estimated hit counts for each search, and help them identify which searches are likely to be the most productive in identifying documents that they seek. Counsel for Defendant rejected our offer on July 9, 2021, but it will remain open in the event that the Court denies the instant motion to compel. With sincere apologies to both counsel and the Court for this error, the SEC nonetheless urges the Court to deny the motion because Defendant's fourteen proposed search terms are an ineffective vehicle to identify relevant documents. Our offer to collaborate on Boolean searches is a much more promising pathway for the parties to identify relevant documents, if any exist.

Production of documents based on the additional searches sought by Defendant would be extraordinarily burdensome and not proportional to the needs of the case. The SEC has provided a declaration from an official with personal knowledge of the burdens involved in such a search, clearly establishing the extraordinary burden that would be imposed by Defendant's request. *See* Gauch Decl. at ¶¶ 9, 12 (stating that Defendant's 14 additional search terms generate more than 54,000 hits, which is three times greater than the 18,000 hits for "dealer"). Weighed against this enormous burden, the relevance of the documents is small because searches based on the additional 14 terms proposed by Defendant are unlikely to produce anything relevant to any party's claims or defenses.

The disproportionate nature of Defendant's request is particularly evident because: (1) the responsive documents the SEC has already produced underscore the informal, practical and consistent nature of staff advice—there is no "confusion" as to the relevant requirements for dealers to be registered, (2) Defendant has yet to articulate any basis for a Due Process argument, (3) the materials at issue—communications about a section of the Guide—are expressly informal, non-binding and are not a statement of law, and (4) Defendant relies on inapposite case law.

## GOVERNING LAW

Before the SEC searched for materials containing the terms "apple" and "convertible" and produced the resulting documents that were responsive to Defendant's discovery requests for Office of Interpretation and Guidance documents, Judge Louis determined, after oral argument on June 18, 2021, that "the information sought is relevant" and that Defendant's "request is

intuitive with respect to Defendant's due process argument." June 22 Order at 3.[3] Judge Louis found, however, that "[p]roportionality is more difficult to determine absent more complete information about the database." *Id.*

Determining whether a discovery request is proportional "requires counsel and the court to consider whether relevant information is discoverable in view of the needs of the case. In making this determination, [courts are] guided by the non-exclusive list of factors in Rule 26(b)(1)." *Koster v. Landmark Am. Ins. Co.*, No. 5:14-CV-689-OC-37PRL, 2016 WL 3014605, at *2 (M.D. Fla. May 20, 2016) (quoting *Graham & Co., LLC v. Liberty Mut. Fire Ins. Co.*, No. 2:14-cv-2148-JHH, 2016 WL 1319697, at *3 (N.D. Ala. April 5, 2016)). Federal Rule of Civil Procedure 26(b)(1) states that even if they are relevant, the materials a party seeks in discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

As stated in *Fox v. Gen. Motors LLC*, No. 17-CV-209-MHC, 2019 WL 3503754, at *1 (N.D. Ga. Jan. 18, 2019):

> As the commentary to Rule 26 explains: "A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them." Fed. R. Civ. P. 26. Then, of course, it is the "Court's responsibility, using all the information provided by the parties...to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery."

(quoting *Koster*, 2016 WL 3014605, at *2).

---

[3] Accordingly, the SEC does not take the position that Defendant has failed to bear his "initial burden of proving that the information sought is relevant." *See Diamond State Ins. Co. v. His House, Inc.*, No. 10-20039-CIV, 2011 WL 146837, at *5 (S.D. Fla. Jan. 18, 2011).

# ARGUMENT

I. **The Defendant's Requested Searches Would Be Extraordinarily Burdensome**

   A. **The Gauch Declaration demonstrates the extreme burden.**

The Gauch Declaration establishes the extraordinary burden associated with Defendant's request to compel the SEC to search, review and produce documents based on 14 additional terms. Ms. Gauch estimates that it would take more than 1,500 hours of staff time to complete this work. Gauch Decl. at ¶ 12. Both the cumbersome nature of the databases that the Office of Interpretation and Guidance uses, and the fact that the office provides guidance to the public about a wide range of matters (not just dealer registration), contribute to this time estimate. *Id*. at ¶¶ 14, 22, 23. The legacy database is not searchable with more than one term. *Id*. at ¶ 21. The current database does not easily return an accurate number of search results without the staff manually scrolling through pages that contain only 10 results each. *Id*. at ¶ 23. Both the legacy database and the current database require a manual process to download search results. *Id*. at ¶¶ 22, 24. In the case of the legacy database, the staff must pull emails from an Outlook archive file that does not support accurate searching. *Id*. at ¶ 19. Reviewing the materials for responsiveness requires actually reading them carefully. *Id*. at ¶ 26. For all of these reasons, it would be less burdensome to use "dealer" as the search term, because it returns "only" an estimated 18,000 hits and would consume approximately 470 hours of staff time. *Id*. at ¶¶ 12, 13. And even then, it would take all four people on the staff of the Office of Interpretation and Guidance approximately three weeks of "doing nothing but responding to Defendant's request." *Id*.

   B. **Defendant mischaracterizes the burden on the SEC, and cannot demonstrate that the burden for any additional searches is justified.**

In his motion, Defendant makes numerous unsupported contentions, including that

"apple" and "convertible" "together hit on only eleven document families." Def.'s Mot. Compel at 14. From this, Defendant makes the leap to concluding: "[g]iven the minimal, if any review that would be required of additional OIG documents, the burden of producing more documents—even substantially more—is also minimal." *Id.* Defendant's premise and conclusion are incorrect. In reality, the two search terms produced almost 1,250 hits, and the search for responsive documents required 36.5 hours of staff time. Gauch Decl. at ¶ 7.

Defendant has now *completely changed his original document requests*, contending—without foundation or support for why the additional search terms he now seeks would produce relevant information and be proportional to the needs of the case—that the SEC "should be compelled to produce documents from its OIG database that hit on the 14 terms set forth above." Def.'s Mot. Compel at 7.

But as Ms. Gauch explains in her declaration, searching for these terms would return "approximately 54,000 hits" and "it would take enormous resources to review that number of documents because it is a manual process." Gauch Decl. at ¶ 12. Ms. Gauch adds that, "This dataset would be almost 44 times the size of the dataset for 'convertible' and 'apple,' which took us 36.5 hours to identify, compile, and review." *Id.* at ¶ 11. She concludes that, "it would likely take less time to just search for the term 'dealer,' for which we originally estimated 470 hours based upon approximately 18,000 hits." *Id.* at ¶ 12.

In other words, the burden required to produce documents responsive to Defendant's new list of 14 favored search terms would *dwarf* the initial burden the SEC has been resisting. Moreover, virtually any question the Office of Interpretation and Guidance receives from the public could include words like "statute," "trader," business," "investment," "invest," "factors," and "hold." *See id*. at ¶ 14 (the office provides guidance to the public on a wide range of

matters). Indeed, the term "144" relates to Rule 144, which concerns the registration of securities, not broker-dealers. The Gauch Declaration provides concrete evidence that responding to the 14 new search terms proposed by Defendant would be extraordinarily burdensome.

It would be far more productive for the parties to collaborate, as we propose in footnote 1 above, on targeted Boolean searches of the Office of Interpretation and Guidance database that covers the period of March 2015 through the present. The SEC will offer this accommodation in the event that the Court denies Defendant's motion to compel.

Finally, Defendant is simply wrong to suggest that the SEC does not need to review the documents before producing them. Def.'s Mot. Compel at 12 ("The SEC has not provided any clear reason why the documents could not be quickly produced without further review."). This sort of conclusory assertion runs throughout the motion to compel, and it is utterly lacking in support. There are ample reasons the SEC should review documents for responsiveness before simply turning them over to a Defendant who is charged with violating securities laws. For instance, some of the documents in the databases are purely internal communications between and among attorneys in the Office of Interpretation and Guidance and would fall under the attorney-client privilege or be protected by the work product doctrine. Other documents may include privileged whistleblower materials. Under the Dodd-Frank Act, 15 U.S.C. § 78u-6(h)(2)(A), the identity of whistleblowers cannot be disclosed except under limited circumstances not applicable here, so at a minimum, any information identifying a whistleblower would have to be redacted. The documents might also contain non-public information about third-parties' businesses, that also might have to be redacted, or other steps might have to be taken to protect it. For these reasons, the SEC must review the documents and produce only

those that are responsive, non-privileged, and that the SEC is allowed to produce under applicable law.

## II.     The Requested Materials Would Have Little If Any Relevance

The minimal relevance of the documents sought by Defendant pales in comparison to the enormous burden of locating, reviewing and producing the documents, as discussed above.

### A.     Office of Interpretation and Guidance staff referred third-parties to the law and did not create any confusion in the industry.

Contrary to Defendant's assertions, the documents produced by the SEC thus far hardly substantiate Defendant's Due Process arguments. Defendant asserts that "[i]n none of the [Office of Interpretation and Guidance] communications did the SEC ever tell market participants to read *Big Apple* or the Exchange Act's dealer definition" and that by filing the case against Mr. Almagarby, the "SEC created confusion in the marketplace" about who qualifies as a dealer that it refused to clarify when asked. Def.'s Mot. Compel at 5. These assertions are factually incorrect and otherwise do not support any kind of a Due Process argument.[4]

When responding to questions, the Office of Interpretation and Guidance staff routinely directed the public to consult the Guide. *See* Gauch Decl. at ¶ 16. Notably, in the second sentence of the Guide's section "Who is a 'Dealer,'" the Guide quotes the definition of "dealer" from the Exchange Act. *See* Ex. 1 at 4. Defendants thus cannot reasonably contend that this would not be sufficient to alert the public to the plain language of the statute. More importantly,

---

[4] For example, although the Office of Interpretation and Guidance staff generally did not provide case citations to the public, they did refer at least one questioner to the district court's decision in *Big Apple*. *See* Ex. 3 at 2 (SEC-JMJ-OIG-75) ("You may also find the following cases informative: *Couldock & Bohan, Inc. v. Societe Generale Securities Corp.*, 93 F. Supp. 2d 220, 223-30 (D. Conn. 2000), and *SEC v. Big Apple Consulting U.S.A., Inc.*, 2011 U.S. Dist. LEXIS 95292, at *25-30 (M.D. Fla., Aug. 25, 2011)").

and as set forth in detail below, the Guide contains numerous statements admonishing readers that it is not a source of law and that they must understand and follow the law.

In general, the Office of Interpretation and Guidance staff members are instructed to decline to provide legal advice and instead urge questioners to consult an attorney. Gauch Decl. at ¶ 16. The staff were faithfully following agency protocol, and none of their responses gave rise to any Due Process claims.

Defendant further claims that the documents from the Office of Interpretation and Guidance that the SEC recently produced "directly support Mr. Keener's contention that the industry had a different understanding of the dealer registration requirements than the one the SEC is now advancing in this litigation" and the staff "created confusion in the marketplace" by refusing to answer questions about the SEC's pending litigation against Mr. Almagarby. Def.'s Mot. Compel at 5, 8-9.

To that end, Defendant relies upon an email chain between an employee of one of his brokers and the staff regarding the fact pattern presented in the *Almagarby* case, litigation that was then-pending in this district. *See SEC v. Almagarby*, 479 F. Supp. 3d 1266, 1271 (S.D. Fla. 2020); Ex. 4 (SEC-JMJ-OIG-14) (question of David Jarvis of Alpine Securities, Inc. regarding *Almagarby* and SEC response); Ex. 5 (SEC-ALPSEC-E-0021761) (email of JMJ Financial to Randall Jones and David Jarvis of Alpine Securities on March 22, 2019). The emails in this exchange undermine, rather than support, Defendant's contentions, as they demonstrate that the staff: (1) followed the agency's general policy of not discussing pending litigation with third-parties, and (2) invited the person making the inquiry to send a request for a no-action letter, which would have provided a formal fact-specific response to the inquiry.[5] Neither of these

---

[5] Specifically, the SEC's response stated, in part:

things could plausibly have sown confusion either specifically as to the Defendant or in the industry generally. They do not help the Defendant carry his burden of establishing why communications from the Office of Interpretation and Guidance are sufficiently relevant to justify requiring the SEC to conduct a burdensome search in support of a generalized Due Process claim.

> **B.      Defendant fails to articulate any substantial Due Process argument, especially in the face of the Court's holdings on Due Process at the pleadings stage.**

Defendant's weak Due Process argument further demonstrates how the limited relevance of the discovery cannot overcome the enormous burden that the proposed search terms would impose. In her August 14, 2020 Order denying Defendant's motion to dismiss, Judge Bloom squarely considered and rejected Defendant's claim that he was engaged in business activities he "'had no way of knowing could be unlawful.'" *See* August 14, 2020 Order at 10. Judge Bloom reasoned that Defendant's Due Process argument "overlooks the express language of the Exchange Act, decisions from this circuit applying the definition of 'dealer,' and the SEC Guide itself, which sets forth instances in which a party can be deemed a dealer." *Id.* at 10-11. Moreover—and critical to both the relevance burden and proportionality—Judge Bloom also found that Defendant's Due Process argument "**fails to point to any particular aspect of the**

---

The Commission staff generally cannot comment on Enforcement Actions other than to provide information already made public by the Commission. If there is a specific fact pattern you are seeking guidance on, you may send us a request for a no-action letter. Procedures applicable to requests for no-action and interpretive letters are available in Securities Act Release No. 6269 (http://www.sec.gov/rules/other/33-6269.pdf).

Ex. 4.

**Exchange Act that is ambiguous.**" *Id.* at 11 (emphasis added). Since that time, eleven months ago, Defendant has come no closer to articulating a specific Due Process argument. He still cannot say why he lacked notice of the dealer registration requirement.

The SEC is mindful of Judge Louis's observation that "Judge Bloom's denial of the motion to dismiss on the basis of Defendant's due process claim is not synonymous with rejecting Defendant's due process claim altogether." June 22 Order at 3. However, as the SEC responded during the June 18, 2021 hearing, *see* Hr'g Tr. at 38-39, the controlling law that Judge Bloom relied upon has not changed, and the responsive documents the SEC has produced so far underscore that Defendant is casting about for a Due Process argument. It is simply implausible—and Defendant provides no basis to believe—that there will be an email or other evidence in the files of the Office of Interpretation and Guidance regarding one or more non-binding informal SEC staff member responses to any members of the public (about which Defendant is not yet aware, or he would have requested it specifically) that will change Judge Bloom's findings regarding the plain language of the statute, controlling Eleventh Circuit law, and the language of the Guide.

Key to the relevance analysis is that Defendant has yet to articulate any sort of challenge to the language of the *statute*. And one is unlikely to come. Instead, it appears that Defendant's as-yet-un-elucidated Due Process argument rests, at least in part, on his view that the factors cited in the Guide, or the manner in which the staff answered third-party questions about them, somehow prevented him from having fair notice of the law. The nascent—or nonexistent—nature of Defendant's argument is strongly suggested in the instant motion, where Defendant "ask[s] that [14 additional] terms be run on documents from 2013 to 2020 . . . . in order to ***assess*** the ways in which [*SEC v. Big Apple*] did or did not alter the SEC's communications with

members of the public about the dealer registration requirements." Def.'s Mot. Compel at 7 n.2 (emphasis added).

It is clear that *without any actual evidence that the staff ever gave anyone unclear or confusing advice,* Defendant is seeking an order that would require the SEC to continue a highly burdensome endeavor that is unlikely to affect the reasoning or law supporting Judge Bloom's rejection of Defendant's Due Process challenge at the pleading stage. Despite Defendant's ardent focus on the Guide, the law in the Eleventh Circuit does not even require a court to consider it in determining whether one is a dealer. To that end, Judge Bloom held that:

> The Eleventh Circuit has examined the explicit statutory language defining a 'dealer' without referencing factors when evaluating whether a party is subject to securities registration requirements. *See SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 809-10 (11th Cir. 2015) (explaining that the "centerpiece" of the definition of a "dealer" is the word "business," and noting that defendants were dealers where their "*entire* business model was predicated on the purchase and sale of securities" and where they bought "stocks at deep discounts" by contractual agreement and "then resold those stocks for profit") (emphasis in original).

*Id.* at 9-10.

Defendant had notice of the dealer registration requirement not only from the plain language of the statute, the Guide, and the Eleventh Circuit's decision in *Big Apple*, which came within two months of the start of the Relevant Period in the Complaint, but also from the *Big Apple* decision in the Middle District of Florida in 2011. *See SEC v. Big Apple Consulting USA, Inc., et al.*, 2011 WL 3753581, *8-10 (M.D. Fla. Aug. 25, 2011). And he has not articulated what sort of communications from the Office of Interpretation and Guidance about the Guide— even if they existed—would have any bearing on whether he had notice of the requirements.

### C. The Guide to Broker-Dealer Registration is not a source of law and it expressly directs readers that they may not rely on it without "referring to the actual statutes, rules, regulations, and interpretations."

In urging the Court to order the SEC to conduct additional burdensome searches, Defendant focuses intently upon what SEC staff may have told (or failed to tell) unrelated third-parties about parts of the Guide, while ignoring the plain language of the statute, controlling Eleventh Circuit case law, and the fact that Judge Bloom has already held that the SEC has alleged that Defendant's business activities "come within the ambit of certain of the factors listed in the SEC Guide." August 14, 2020 Order at 9.

Although Judge Bloom's holding regarding the primacy of the relevant statute and Eleventh Circuit case law are dispositive of the potential probative value of the Guide, or communications regarding it, the Guide *itself* is unmistakably in accord. In seeking to justify his motion to compel, Defendant glosses over the fact that the *Guide is not, and does not purport to be, a source of law*. In reality, the Guide expressly admonishes readers (in all caps in the original) as follows: "**CAUTION — MAKE SURE YOU FOLLOW ALL LAWS AND RULES**." Ex. 1 at 3. It further states, "We have prepared this guide to summarize some of the significant provisions of the Act and its rules." *Id*. And by its own terms the Guide warns readers that it does not take the place of the law, stating:

> **We wish to stress that we have published this guide as an introduction to the federal securities laws that apply to brokers and dealers. It only highlights and summarizes certain provisions, and does not relieve anyone from complying with all applicable regulatory requirements. You should not rely on this guide without referring to the actual statutes, rules, regulations, and interpretations.**

*Id*. at 24 (emphasis in original). Were this not sufficient to apprise the public that the Guide is not the law, it also states, "Although this guide highlights certain provisions of the Act and our

rules, it is not comprehensive[]" and it further instructs that "Brokers and dealers, and their associated persons, must comply with all applicable requirements, including those of the U.S. Securities and Exchange Commission [], as well as the requirements of any self-regulatory organizations to which the brokers and dealers belong, and not just those summarized here." *Id*. at 3.

Among other caveats, the Guide also makes clear that anyone who consults it "may wish to consult with a private lawyer who is familiar with the federal securities laws, to assure that you comply with all laws and regulations" and that "[w]hile the staff attempts to provide guidance by telephone to individuals who are making inquiries, the guidance is informal and not binding. Formal guidance may be sought through a written inquiry that is consistent with the SEC's guidelines for no-action, interpretive, and exemptive requests." *Id*. The Guide also advises that the "SEC staff cannot act as an individual's or broker-dealer's lawyer." *Id*. There is no evidence that Defendant either sought informal information from SEC staff or formal guidance.

Because the Guide is expressly not a statement of law, Defendant's continued quest for informal, non-binding staff responses to third-party questions would not be relevant to any defense—questions to, and responses provided by, the SEC to other members of the public are not legal determinations, are not binding upon this Court, and cannot be used to determine whether Defendant's conduct violated the plain language of the dealer registration statute at issue in this case. Any communications SEC staff had with third-party members of the public would have at best marginal probative value as to either of the defenses Defendant proffers, and as discussed below, the resources required to conduct the searches would simply not be proportional to the needs of the case.

### D. Defendant cites inapposite case law to attempt to demonstrate that "industry practice" is relevant to Due Process and scienter for purposes of injunctive relief.

#### (1) Due Process

In support of his Due Process argument, Defendant relies on *SEC v. Kovzan*, where a district court in Kansas found in 2012 that industry practice was relevant to a due process/fair notice defense. *See* 2012 WL 48190114819011, at *5 (D. Kan. Oct. 10, 2012). Def.'s Mot. Compel at 9-10. *Kovzan* is neither controlling, nor at all on point. First, the due process or fair notice claim in *Kovzan* dealt with the SEC's interpretations of agency regulations, which the defendant contended "were impermissibly vague."[6] *Id.*

Here, there are no SEC rules at issue, and the only laws are the Exchange Act's statutory definition of "dealer" and the requirement that dealers register with the SEC. Moreover, Judge Bloom has already found that Defendant has not even contended that the Exchange Act's dealer registration provisions are ambiguous. Thus, *Kovzan*'s holding as to industry practice is inapplicable to a Due Process/fair notice defense where, as here, the defendant is not even challenging the statutory language as being vague or ambiguous. The other cases Defendant relies on in ostensible support for his Due Process argument—and his contention that industry practice materials would somehow be relevant to his claim—suffer from the same problem as *Kovzan* in that they both deal with challenges to an agency regulation, or its interpretation thereof. *See Diebold Inc. v. Marshall*, 585 F.2d 1327, 1336 (6th Cir. 1978) (examining whether a challenged regulation "gave Diebold sufficient warning that press brakes were with the scope

---

[6] The two cases the court cited in *Kovzan* also involved agency rules, not statutes. *See Ohio Cast Prods., Inc. v. Occupational Safety & Health Rev. Comm'n*, 246 F.3d 791, 793, 799 (6th Cir. 2001) (Department of Labor regulations at issue); *General Elec. Co. v. EPA*, 53 F.3d 1324, 1325, 1332 (D.C. Cir. 1995) (EPA regulations at issue).

of its point of operation guarding requirements."); *General Elec. Co. v. EPA,* 53 F.3d 1324, 1332 (D.C. Cir. 1995) (determining that the EPA's interpretation of its own regulation did not provide fair notice to the plaintiff); *see also* Def.'s Mot. Compel at 8. Moreover, both of these cases dealt with specific Due Process challenges, rather than the generalized "confusion in the industry" allegedly caused by the SEC's decision to file a lawsuit to enforce the longstanding dealer registration statute in the Exchange Act. *See* Def.'s Mot. Compel at 8.

Second, Defendant ignores the fact that *Kovzan* relied upon an outdated discovery standard. The *Kovzan* Court ordered the SEC to produce non-public SEC documents based on the former version of Federal Rule of Civil Procedure 26, holding: "The Court concludes that discovery of such non-public documents may lead to the discovery of admissible information relevant to defendant's fair notice defense." 2012 WL 4819011, at *5. *Kovzan* was decided in 2012. In 2015, Rule 26 was amended, deleting the quoted phrase that was relied upon by *Kovzan* (i.e., allowing discovery because it was "reasonably calculated to lead to the discovery of admissible evidence"). Amended Rule 26(b)(1) clearly states a different standard: "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The proper standard matters. *See Sharbaugh v. Beaudry*, 2017 WL 5988221, at *2 and n.3 (N.D. Fla. May 5, 2017) (underscoring the peril in attorneys relying on "caselaw that analyzed the version of Rule 26 that existed before the highly publicized amendments took effect on December 1, 2015"). *Kovzan* is not helpful to Defendant or the Court's resolution of the discovery issues here.

### (2) Injunctive Relief

As a preliminary matter, the SEC has made the significant concession that it will not argue that Defendant acted recklessly with respect to its claim for injunctive relief (it is not

disputed that there is no *scienter* component to the statute Defendant is charged with violating). The only reason to determine the industry's understanding of the dealer requirements, and whether the SEC somehow confused the industry, is to assess whether Defendant acted recklessly in not registering as a dealer for purposes of injunctive relief. Once the SEC agrees not to argue recklessness, there is no reason for it to undertake an extraordinary burden to produce materials about its communications with the industry.

Moreover, Judge Louis's finding that "the SEC's decision not to argue scienter does not preclude Defendant from advancing it" does not square with *Kovzan* (which the SEC maintains is inapposite in any event) where the Court found that the SEC could "remov[e] the issue recklessness from the case" by seeking to prove its charge through a different theory. *See* 2012 WL 4819011, at *4. In *Kovzan*, the court noted that recklessness involves an "extreme departure from the standard of ordinary care," and that, therefore, "evidence of the practice within the industry may be relevant." The court observed that "the SEC could attempt to prove scienter in this case solely by showing an intent to defraud, thereby removing the issue [of] recklessness from the case." *Id.* But because the SEC would not agree to remove the recklessness standard, therefore, the court held, "defendant is entitled to seek evidence relating to the industry standard." *Id.*

In the present case, in contrast, the SEC has "removed the issue [of] recklessness from the case," and so it follows that "evidence of practices within the industry" are not relevant.

### (3) Reliance on *Ripple Labs* is misplaced.

Defendant's reliance on the Magistrate Judge's oral order in *Ripple Labs, see* Def.'s Ex. 20 (H'rg Tr. at 51, *SEC v. Ripple Labs, Inc.*, No. 20 Civ. 10832 (S.D.N.Y. Apr. 6, 2021)), is likewise misplaced. We note that the cryptocurrency industry, which is a new and consistently

growing area of the securities industry, is not comparable to the dealer market, and the law surrounding them could not be more different. Defendant has been using the same business model for more than a decade. The jurisprudence on dealer registration in the Eleventh Circuit dates back more than 50 years to *Eastside Church of Christ v. National Plan, Inc.*, 391 F.2d 357 (11th Cir. 1968), decades before cryptocurrency was even invented. In short, because the law on dealer registration is long standing, clear and well developed, the considerations at play in *Ripple* regarding the relatively new cryptocurrency industry simply are not relevant in this case.

What is more, the Magistrate Judge in *Ripple Labs* premised her holding on the narrow grounds that the Commission's statements to third parties about Bitcoin and Ether may be relevant to Ripple's defense that those assets are comparable to Ripple's XRP. Defendant has no analogous defense here.

Finally, allowing wholesale discovery of a regulatory agency's communications with third parties who are not the subject of an enforcement action is likely to have a substantial chilling effect upon the free exchange of information and data between the agency and those it regulates. For example, the SEC often engages with issuers of registered and unregistered securities, broker-dealers, investment advisers, credit rating agencies, auditors, and other industry participants. A requirement that the SEC produce in discovery all communications between and amongst those parties, in all of the enforcement actions brought each year against or involving industry participants, would risk lessening the useful exchange of information between the SEC and the securities industry. Such an impact—weighed against the likelihood that such information would be irrelevant in a district court action applying the plain language of an 87 year old federal statute—would not be helpful to industry participants or investors.

## CONCLUSION

The Court should deny Defendant's motion because the documents he seeks to compel would not aid him in proving either of the defenses he proffers, and the burden to the SEC would be extraordinary and disproportional to any genuine needs of the case. More significantly, the SEC—having discovered that it mistakenly described one of the databases that contains potentially responsive documents to counsel and the Court—has offered to work collaboratively with Defendant's counsel to conduct a reasonable search for responsive documents, notwithstanding their lack of relevance.

DATED:   July 9, 2021                                         Respectfully submitted,

By:
        /s/
Joshua E. Braunstein (Special Bar No. A5502640)
Antony R. Petrilla (Special Bar No. A5502641)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
100 F Street NE
Washington DC 20549
Telephone: (202) 551-8470
Braunsteinj@sec.gov

**ATTORNEY FOR PLAINTIFF
SECURITIES AND EXCHANGE
COMMISSION**

## CERTIFICATE OF SERVICE

      I hereby certify that on July 9, 2021, I filed Plaintiff Securities and Exchange Commission's Response in Opposition to Defendant's Motion to Compel and Memorandum of Law through the Court's CM/ECF system, which automatically sends notices to counsel of record in this case.

                                                 /s/
                                  Joshua E. Braunstein

                                **ATTORNEY FOR PLAINTIFF**
                                **SECURITIES AND EXCHANGE**
                                **COMMISSION**