EXHIBIT 2

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : Case No. 20-cv-21254 |
| v. | : |
| JUSTIN KEENER d/b/a JMJ FINANCIAL | : |
| Defendant. | : |

## DECLARATION OF BONNIE GAUCH IN SUPPORT OF SEC'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL

I, Bonnie Gauch, pursuant to 28 U.S.C. § 1746, do hereby declare as follows:

1. I am over 21 years of age and am a natural born citizen of the United States.

2. I submit this declaration in support of the SEC's Response to Defendant's Motion to Compel.

3. I have personal knowledge of the matters set forth in this declaration.

4. I have been employed as an attorney in the Division of Trading and Markets ("TM" or "Division") for Plaintiff Securities and Exchange Commission ("SEC" or "Commission") for over 20 years.

5. I have been in charge of the Division's Office of Interpretation and Guidance since 2012, as Coordinator. My duties in this position include, among other things, managing staffing for the office and responding to, or referring to other Divisions in the SEC or offices in TM, questions received from the public.

**Summary**

6. I have been asked to prepare this declaration to explain: (1) the burden associated with identifying and producing responsive documents relating to questions and answers between the staff and the public from January 1, 2013 through the present regarding "apple" and "convertible" to comply with Judge Louis's Order dated June 22, 2021 ("Court Order"), (2) the estimated burden to identify and produce documents for the 14 terms Defendant recently requested the SEC search, and (3) the estimated burden to identify and produce documents responsive to Defendant's initial discovery requests.

7. Regarding the Court Order, I supervised the effort to identify responsive documents containing either "convertible" or "apple." There were slightly more than 1,000 hits for "apple" and 249 hits for "convertible." My staff and I reviewed the hits using the manual process described below in paragraphs 21-27. It took 36.5 hours to complete this task, and our efforts uncovered only a handful of questions from the public that were related to dealer registration. We also ran searches for two additional terms "trader" and "factors," but they returned more hits (8,000 and 2,000 respectively) than "apple" or "convertible," and so we did not proceed further.

8. I understand that the Defendant recently proposed 14 additional search terms. The following chart provides an estimate of the number of hits for each term in the legacy database employed by the Office of Interpretation and Guidance:

|    | Search Term | Legacy Database |
|----|-------------|-----------------|
| 1. | Trader      | 203             |
| 2. | Factors     | 9               |

2

| | | |
|---|---|---|
| **3.** | Microcap | 2 |
| **4.** | Statute | 8 |
| **5.** | Discount | 4 |
| **6.** | Spread | 1 |
| **7.** | 144 | 37 |
| **8.** | Hold | 108 |
| **9.** | Advertise | 4 |
| **10.** | Business | 189 |
| **11.** | Penny | 21 |
| **12.** | Invest | 752 |
| **13.** | Investment | 307 |
| **14.** | Conference | 17 |
| | **Total Hits** | 1,662 |

9. Searching for these terms in the current database using an "OR" operator between them to eliminate duplicates,[1] we observed an estimated 52,860 hits, which, when added to the 1,662 legacy database hits for these 14 terms, totals 54,522.

10. As paragraph 23 explains below, these are just estimates because of the databases' limited functionality and the fact that the legacy database may include duplicates because a search term sometimes appears in more than one field for a given log entry and more than one search term may appear in a given item in the legacy database. Eliminating duplicates for this database across search terms involves a manual process of comparing items to identify duplicates (although putting the data into Excel may expedite the process).

11. As described in paragraph 26 below, the next step would be to manually review the items within each hit to see whether they actually are responsive.

12. Because there are approximately 54,000 hits, it would take enormous resources to

---

[1] While the search functionality for current database is not capable of the kinds of advanced searches possible in LexisNexis or WestLaw, it does permit some more limited use of search operators (such as "OR" between search terms) to attempt to eliminate duplicate results.

3

review the documents because it is a manual process (see paragraphs 21-27, below). This dataset would be almost 44 times the size of the dataset for "convertible" and "apple," which took us 36.5 hours to identify, compile, and review. I believe that reviewing 44 times as many hits could take the staff over 1,500 hours to complete. Based upon these numbers, it would likely take less time to just search for the term "dealer," for which we originally estimated 470 hours based upon approximately 18,000 hits.

13. Given these numbers, it would less time to simply run the search for "dealer." If we use the same process for this approach that we used to perform the reviews for "convertible" and "apple," it would require the four employees in the Office of Interpretation and Guidance to spend approximately 3 weeks doing nothing but responding to Defendant's request to complete this review. The staff who would conduct that review would have to ignore their extensive duties associating with responding to questions from the public, which as I explain below relate to much more than just dealer registration issues.

### Background on the Office of Interpretation and Guidance

14. It is my understanding that the Division developed the Office of Interpretation and Guidance to respond to questions from the public, some of whom are industry professionals, about the securities laws the Division administers. The topics do not just concern dealer registration. They can include virtually any part of the securities laws that the Division administers, including, for example, regulations on short selling, net capital rules, Regulation NMS, Regulation SP on privacy, and the large trader reporting rule.

15. We receive questions via a dedicated email box and two dedicated telephone

lines.  I understand that before I came to the office, it originally employed a physical telephone log to maintain a contemporaneous record of inquiries received from, and responses provided to, the public.  That log gradually evolved through many iterations into the databases I discuss in the next section.

16.     The staff who respond to public inquiries are instructed to inform people that we only provide general guidance via telephone and emails and cannot provide legal advice.  It is our practice to refer questioners to resources on the Commission's website wherever possible.  For example, when responding to questions about broker-dealer registration issues, we often direct people to the Division's Guide to Broker-Dealer Registration ("Guide"), available on the Commission's website, which provides information about registration requirements.  Regardless of the subject matter of the question, if a person requires a more formal answer, we tell them they should contact private counsel familiar with the securities laws.

17.     The Guide reflects our policy of not providing legal advice to the public with the following disclaimer: "You may wish to consult with a private lawyer who is familiar with the federal securities laws, to assure that you comply with all laws and regulations. **The SEC staff cannot act as an individual's or broker-dealer's lawyer.** While the staff attempts to provide guidance by telephone to individuals who are making inquiries, the guidance is informal and not binding. Formal guidance may be sought through a written inquiry that is consistent with the SEC's guidelines for no-action, interpretive, and exemptive requests."  (Emphasis added).

18.     Since becoming Coordinator for the Office of Interpretation and Guidance, I have trained staff members to employ these principles in responding to phone calls or emails from the

5

public.

### Background on the Databases of the Office of Interpretation and Guidance

19.     Since March 2015, the office has been using its current Share-Point database ("the current database"), which I helped develop with the Commission's Office of Information Technology.  There is a legacy database that we used previously ("the legacy database").  The current database has more functionality than the legacy database, although neither is designed for sophisticated or high-volume searching.  The current database is able to maintain emails, including attachments to those emails, and associate them with a log entry.  The legacy database's functionality in this regard is much more limited because emails and their attachments are stored in a separate Outlook archive folder and must be retrieved manually.  In addition, while searches of the current database will cover emails or attachments, the legacy database does not support that functionality.  Instead, we search the legacy database for relevant log entries and if those entries indicate there may be a relevant email or attachment, I then look for it in the Outlook archive folder.  Due to the way it is maintained, I am unable to run accurate searches on the Outlook archive folder because of limitations in the archival software.

20.     With respect to the current database, a responsive item would generally include the log entry, any associated emails sent to or received from the public, and any documents attached to such emails.  With respect to the legacy database, an item would include a log entry and associated emails and attachments set to or from the public that would have to be retrieved from the separate Outlook archive folder.  For purposes of this declaration, I refer to each log entry and any associated emails and attachments that we receive from, or send to, the public as

6

one "Item."

## The Manual Search Process

21.     As discussed in greater detail below, the burden to search for responsive documents within the current and legacy databases can be considerable, primarily because the systems used to maintain records of public inquiries to the Office of Interpretation and Guidance were not designed for advanced searches. For example, the method we have to search the legacy database does not allow the use of Boolean search terms. Instead, we can search only one word at a time.

22.     Searching the legacy database is more cumbersome because we have to search each of nine data fields separately to ensure that we capture all relevant documents. Once we have gathered the results, the staff must then combine them and remove any duplicates that may arise if the search term appears in more than one field for a given log entry. Once we identify a responsive log entry that includes a search term, I then review the Outlook archive to determine if we have any emails to include as part of that Item.

23.     Although searching the current database will return results that include log entries, related emails and attached documents containing the search term, it too is cumbersome to search. Each page of search results contains only ten hits, and the staff must scroll through a significant number of pages to review search results. Because the system was not designed to calculate with a high degree of accuracy the number of times a search term appears in the current database, it has been our experience that the total number of hits appearing at the bottom of each page of search results may be inaccurate and may even change from page to page as we progress

through the search results. We attempt to determine the total number of hits by clicking through every page of the search results. Based upon our experience in answering Defendant's requests, the actual number of hits can be somewhat different than the number of hits indicated on the first page of the search results.[2]

24. The current database does not have functionality to export the list of search results. Instead, creating a list of hits requires us to run the search and then, for each of the ten hits on each page, manually click a link to the hit to select it, copy the hit using Ctrl-C, and paste it into a spreadsheet using Ctrl-V. It is not possible to select all the text on the page and then copy and paste it into a spreadsheet (or other document) because the links to the hits (which also contain information identifying the relevant log entry for each hit) become truncated using that approach and are thus not usable. Because the link to each hit must be clicked, copied, and pasted using this approach, simply creating the list of hits is a time-consuming and burdensome process.

25. The staff member who compiled the lists of search results for the terms "convertible" and "apple" has informed me that the process took 14.5 hours.

26. The next step in the process is reviewing the hits for responsiveness. That means determining that a document containing a hit actually concerns communications with the public about a dealer registration issue. To make this determination, we carefully read the log entries and, if appropriate, the associated emails and attached documents.

---

[2] The 52,860 hits in the current database for the proposed 14 additional search terms, discussed in the Summary, is an estimate based on the hit count from the first page of the search results.

27.     To expedite this task in order to meet the Court's deadline for the June 25, 2021 production, I assigned the review task to multiple staff members, including myself. For the term "convertible," the search resulted in 249 total hits relating to 137 separate log entries. This means that there were 249 instances in which the term "convertible" appeared one or more times either in a log entry, email, or document attached to an email. We determined that there were 4 responsive items in those hits. For the term "apple," there were 1,030 hits relating to 691 separate log entries. We determined that 13 hits associated with 10 log entries were responsive. I worked with three other people—all of whom set aside their regular work—to complete this review process in 22 hours.

## Previous Time Estimates

28.     My staff and I developed time estimates for identifying and producing documents responsive to Defendant's Interrogatory No. 6 and Defendant's Second Set of Requests for Production. The latter of those requests originally called for "all Documents reflecting questions received by the Office of Interpretation and Guidance … Concerning Section II.B of the Guide ('Who is a "Dealer"')." That is an extremely broad request. And, because our databases use the term "broker-dealer" without separating "broker" materials from "dealer" materials, we would have to review every database entry concerning the registration of broker-dealers. In my experience, there are far more questions related to broker registration, than to dealer registration. For that reason, and also because of the cumbersome search process described in the previous section, we estimated that it would take 470 hours to identify the requested documents.

29.     Now that we have actually completed one extensive search of the database (for

"convertible" and "apple"), we see that our original estimate was consistent with the actual results. There were approximately 18,000 hits for the term "dealer." Based on the fact that it took us 36.5 hours to complete our review of the 1,249 hits on the terms "apple" and "convertible," we believe (by extrapolation) that it would take us over 500 hours to complete the 18,000 hits for the term "dealer." Our estimate of 470 hours for the original request was, if anything, understated. In performing the search for the term "apple," it was somewhat easier to tell if a document was non-responsive, because the word "apple" frequently showed up in items that had nothing to do with dealer registration. When we search for the term "dealer," there is a much higher likelihood that the resulting documents will relate to dealer registration, and we will have to read them much more carefully to weed out the non-responsive documents.

## Whistleblower Information

30.     The process I have described so far does not include any review of the Items for protected whistleblower status. In my experience, the current and legacy databases contain materials from whistleblowers, whose identities may be protected from disclosure under federal law. Whistleblowers sometimes file multiple complaints with the agency, using both the standard Tips, Complaints, and Referrals ("TCR") database and the email box for the Office of Interpretation and Guidance. Once a complainant requests whistleblower status in a TCR submission, the agency is bound by law to honor that request for all of its operations, including with regard to the databases for the Office of Interpretation and Guidance.

31.     I understand that Defendant is not seeking complaints that are filed with the SEC (only questions about the dealer registration requirements), and so submissions from

whistleblowers would not be responsive. However, the SEC still has to review the documents to make sure they do not contain any whistleblower documents.

32. I understand that attorneys associated with this litigation will separately review any responsive Items for protected whistleblower materials. My time estimates above do not include their time to conduct this review (or any steps to produce documents to Defendant, including bate stamping or drafting privilege logs).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 9, 2021:

*Bonnie L. Gauch*

Bonnie Gauch
United States Securities and Exchange Commission