UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JUSTIN W. KEENER D/B/A JMJ FINANCIAL, | ) | |
| | ) | No. 20-cv-21254 |
| Defendant. | ) | |
| | ) | Hon. Beth Bloom |
| | ) | |
| | ) | |
| _____ | ) | |

PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
OMNIBUS MOTION *IN LIMINE* AND INCORPORATED MEMORANDUM OF LAW

## INTRODUCTION

Plaintiff Securities and Exchange Commission respectfully moves *in limine* for this Court to enter an Order precluding Defendant Justin Keener d/b/a JMJ Financial from offering evidence or arguments, or mentioning in any way in the presence of the jury, including in opening and closing statements, anything regarding (1) allegations or evidence purporting to relate to due process, fair notice and estoppel defenses; (2) non-public communications between the SEC's Office of Interpretation and Guidance ("Guidance Office") and members of the public; (3) advice, involvement or presence of counsel; (4) remedies that the SEC might seek; (5) hardships that Defendant allegedly might suffer; and (6) Rule 144 under the Securities Act of 1933 ("Securities Act") and any opinions of counsel relating to Rule 144.

## I.     Background

The SEC's single claim is that the Defendant operated as an unregistered dealer in violation of Exchange Act Section 15(a).  *See* 15 U.S.C. §78o.  Defendant has asserted a number

of affirmative defenses, including his assertion that the SEC's claim should be barred on the ground of lack of due process and fair notice (Third Affirmative Defense), estoppel (Fourth Affirmative Defense), statute of limitations (Fifth Affirmative Defense), and advice of counsel (Sixth Affirmative Defense). Dkt. #30, Answer, Affirmative Defenses 3, 4, 5, and 6. Defendant also has asserted affirmative defenses (Seventh through Tenth Affirmative Defenses) that relate to the remedies that the SEC might seek in this case.

The SEC has filed a motion for summary judgment that asks the Court to enter judgment in favor of the SEC and against Defendant on the SEC's claim, and on the Defendant's Third, Fourth, Fifth, and Sixth Affirmative Defenses.

## II.    Legal Standards

"The purpose of a motion *in limine* is to give the judge notice of a party's desire to prevent the introduction of damaging evidence that may impact the fairness of a trial." *Biscayne Cove Condo. Ass'n Inc. v. QBE Ins. Corp.*, No. 10-23728-CIV, 2013 WL 2646828, at *3 (S.D. Fla. June 12, 2013) (italics added) (internal citations omitted). "In order to exclude evidence *in limine* it must be inadmissible on all potential grounds." *Id.* (italics added).

The decision to admit or exclude evidence is committed to the broad discretion of the District Court. *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 556 (11th Cir. 1998); *see also Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1161 (11th Cir. 2005). The Court has wide discretion in determining the relevance of evidence produced at trial. To be admissible, evidence must be relevant. Fed. R. Evid. 402. Evidence is relevant only if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. Even if evidence is relevant, Federal Rule of Evidence 403 allows the Court to exclude the evidence if its probative

value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.  Based upon this standard, the Commission respectfully requests that the Court use its discretion to exclude the evidence detailed below.

III.    **Matters That Should Be Excluded From the Trial[1]**

    A.    **The Court Should Preclude Evidence and Argument to the Jury Regarding Defendant's Due Process, Fair Notice, And Estoppel Defenses, Which Are Purely Legal And Will Not Go To The Jury**

Even if the Court does not grant the SEC's motion for summary judgment against the Defendant on his Third through Sixth Affirmative Defenses, there still should be no mention to the jury of the subject matter of those affirmative defenses or any evidence or allegations pertaining to them because they are purely legal issues to be decided by the Court and not the jury.  As discussed in the SEC's Motion for Summary Judgment, due process, fair notice, and estoppel defenses lodged against the SEC (*i.e.*, Defendant's Third through Sixth Affirmative Defenses) are purely questions of law to be decided by the Court and, in this case, should be denied as a matter of law.

A constitutional Due Process or "fair notice" claim necessarily challenges the language of a statute on the basis of vagueness.  *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972).  "[T]he issue of whether a [law] is void for vagueness is a question of law for the court to determine," not a jury.  *United States v. House*, 684 F.3d 1173, 1207 (11th Cir. 2012).

Similarly, Defendant's claim that the SEC failed to provide adequate guidance to the market with respect to the dealer registration statute (Dkt. # 47 at 1-2) is also an issue of law to

---

[1] The SEC has moved for summary judgment against Defendant on his Third through Tenth Affirmative Defenses.  If that motion is granted, then Defendant should be precluded from making any reference to the subject matter of those defenses.

be determined by the Court, not a jury.  "The relevant question is not whether [the Defendant] had fair notice of the [*agency's*] interpretation of the statute, but whether [the Defendant] had fair notice of what the statute *itself* requires."  *FTC v. Wyndham,* 799 F.3d 236, 253-54 (3d Cir. 2015) (emphasis added).  "The court … is the ultimate arbiter of the statute's meaning."  *Id.,* 799 F.3d at 251; *see also House*, 684 F.3d at 1207.

Finally, Defendant's arguments—that the Commission is estopped from bringing this action because "no trader in Mr. Keener's position has ever been required to register with the SEC" (Dkt. #14 at 4) and "the SEC has never interpreted the dealer registration statute to encompass the type of conduct at issue in this case" (Dkt. #47 at 2)—are matters of law to be determined by the Court, not the jury.  "The Commission may not waive the requirements of an act of Congress nor may the doctrine of estoppel be invoked against the Commission."  *SEC v. Culpepper*, 270 F.2d 241, 248 (2d Cir. 1959); *SEC v. Morgan, Lewis, and Bockius*, 209 F.2d 44, 49 (3d Cir. 1953); *SEC v. Badian*, 2010 WL 1028256 at *2-3 (S.D.N.Y. 2010) (discovery denied into affirmative defenses of estoppel against the SEC);  *SEC v. Rivlin,* No. 99–1455, 1999 WL 1455758, at *5 (D.D.C. Dec. 20, 1999) (citing *Culpepper* and granting SEC motion to strike defenses based on estoppel and waiver).

### B.     The Court Should Exclude All Non-public Communications Between the SEC's Guidance Office and Members of the Public

As part of his Third and Fourth Affirmative Defenses, Defendant asserts that he allegedly had no clear notice that his conduct was illegal, asserting that "no trader in Mr, Keener's position has ever been required to register with the SEC;" and "the SEC has never interpreted the dealer registration statute to encompass the type of conduct at issue in this case." Defendant also claims that the SEC failed to provide clear guidance with regard to dealer registration requirements.  Dkt. #14 at 4, 7, 12, and 14; and Dkt. #47 at 2.

In support of those assertions, Defendant has pointed to documents including communications between the Guidance Office and various members of the public regarding dealer registration requirements.  *See, e.g.,* Dkt. #47-15, 16, 17.  Defendant was not a party to such documents, and no basis exists to believe that Defendant ever received or saw them until obtaining them in discovery in this litigation.

If the Court grants the SEC's summary judgment motion against Defendant on his due process, fair notice and estoppel defenses, then the non-public communications between the Guidance Office and members of the public obviously would be irrelevant to any issue in the case and should be excluded.  And if the Court grants the SEC's request (*supra*) to exclude from the jury trial all references to those affirmative defenses, then also the communications would be irrelevant to any issue in the trial and thus should be excluded.

But even if the Court does not grant the SEC's motion for summary judgment and does not preclude all reference to those affirmative defenses, the communications between the Guidance Office and members of the public still are not probative of the affirmative defenses, and thus are irrelevant and should be excluded.

Non-public communications between staff attorneys in the Guidance Office and individual members of the public cannot supplant or change the law applicable to Defendant's conduct.  The expressly informal communications staff attorneys had with individuals do nothing to alter the unambiguous language of the dealer registration statute (Exchange Act Section 15(a)) [15 U.S.C. §78o], the definition of the term dealer (Exchange Act Section 3(a)(5)(A)) [15 U.S.C. § 78c(a)(5)(A)], or the Eleventh Circuit's opinion in *SEC v. Big Apple Consulting USA, Inc., et al.*, 783 F.3d 786, 809 (11th Cir. 2015).

Nor do these documents in any way establish that the SEC is estopped from bringing this

action.  Because these documents fail to support any of Defendant's challenges to the Commission's charge—but rather uniformly refer the public to the controlling statutes, rules, regulations, and case law, and/or advise them to seek the advice of an attorney—they lack any probative value and should be excluded from the trial.

Even if the Court were to determine that estoppel is actionable against the Commission—and it is not—the elements required to establish such a defense are that: 1) there was a "definite" representation to the party claiming estoppel; 2) the latter "relied on its adversary's conduct in such a manner as to change his position for the worse"; and 3) that the reliance was "reasonable."  *See Graham v. SEC*, 222 F.3d 994, 1008 (D.C. Cir. 2000) (citing *Community Health Servs.,* 467 U.S. at 59 (1984)).

It is undisputed—and a search for any communications between the Defendant and the Guidance Office confirmed—that neither Defendant nor any of his employees ever contacted the Guidance Office to request any information about dealer registration.  Ex. 1 (Keener Dep. 254:23 – 255:15) (attached hereto).  Moreover, Defendant does not recall being confused about the Guide at any point prior to being investigated.  *Id*. at 264:21-265:16.  As such, the Guidance Office never made any sort of "definite" representation to him about his need to register as a dealer.  In addition, Defendant has never identified any materials or communications authored by the Guidance Office upon which he relied when determining not to register as a dealer.

Because Defendant cannot demonstrate that any information from the Guidance Office ever reached him during any relevant time period, the office's communications with other members of the public cannot possibly be relevant to his due process, fair notice, or estoppel defenses.

Moreover, the Guidance Office documents—of which the Commission produced 580—further lack any probative value because they do not show that the office provided legal advice to the public, supplanted the law applicable to dealer registration, or in any way confused the public with respect to dealer registration.  First, consistent with information contained in the SEC's Guide (Dkt. # 47-4),[2] the Guidance Office staff members are instructed to decline to provide legal advice and instead urge questioners to consult an attorney.  The staff followed the protocol, and none of their responses gave rise to any due process, fair notice, or estoppel defenses.  *See* Dkt. #47-15,16, 17; SEC-JMJ-OIG-183, 372, 388, and 432 (attached hereto as Exhibits 2-5).

Second, the Guidance Office staff did not take any action to supplant the language of the statute or the law in the Eleventh Circuit.  In fact, the staff routinely referred the public to the Guide (which as discussed above admonishes readers to rely on the law) and case law.  *Id.* Third, the staff did not confuse the public about the registration requirements.  Rather, the communications uniformly decline to apply the facts of any particular inquiry to the law, or reach any conclusions about registration, such that no confusion was created.  *Id.*

The following examples from the Guidance Office documents highlight these points and are representative of the 580 documents produced by the Commission:

- In response to a question about the then-pending *Almagarby* case, the SEC responded, in part:

  > The Commission staff generally cannot comment on Enforcement Actions other than to provide information already made public by the Commission.  If there is a specific fact pattern you are seeking

---

[2] The Guide instructs that "[w]hile the staff attempts to provide guidance by telephone to individuals who are making inquiries, the guidance is informal and not binding.  Formal guidance may be sought through a written inquiry that is consistent with the SEC's guidelines for no-action, interpretive, and exemptive requests." *Id.* at 4.  The Guide also advises that the "SEC staff cannot act as an individual's or broker-dealer's lawyer." *Id.*

> guidance on, you may send us a request for a no-action letter.
> Procedures applicable to requests for no-action and interpretive
> letters are available in Securities Act Release No. 6269
> (http://www.sec.gov/rules/other/33-6269.pdf).  [Dkt. # 48-4]

- In response to a question about a possible new or gray area of the industry, the SEC responded:

> If private counsel determines that the types of activities you/your
> firm intends to engage in fall within a gray area (e.g., because you
> are engaging in some new type of activity or are providing services
> in some unique way), you could seek no action relief based on that
> unique set of circumstances.  [Exhibit 2, SEC-JMJ-OIG-372.]

- In response to a question about the "trader exception," the SEC responded:

> Thus, for a more formal answer to whether you fit the definition of
> the term "dealer" and would need to register with the Commission
> or if you would be able to rely on the "trader" exemption from
> registration, you would need to seek the counsel of an attorney
> familiar with the securities regulations and relevant case law.
> [Exhibit 3, SEC-JMJ-OIG-388.]

As these examples demonstrate, the communications are not probative of Defendant's due process, fair notice, or estoppel defenses.  In any case, Defendant never contacted the Guidance Office, nor did he review any of these communications during the time period in question, much less rely on them to formulate his decision not to register.  Ex. 1 (Keener Dep. 254:23 – 255:15, 264:21 – 265:16) (Defendant did not know anyone who contacted the SEC regarding his or their dealer registration status).  Critically, the evidence does not in any way supplant or confuse the well-established and unambiguous dealer registration statute or the law in the Eleventh Circuit.  The communications thus should be excluded because they are irrelevant.  Moreover, introduction of those communications would only "confuse[e] this issues," cause "undue delay," and "wast[e] time," and therefore also should be excluded under Fed. R. Evid. 403.

**C.     The Court Should Exclude Evidence and Argument Regarding Remedies the Commission Seeks Against Defendant in This Case**

Because two of Defendant's three expert reports deal exclusively with the equitable remedy of disgorgement, the SEC anticipates that Defendant will seek to introduce to the jury evidence pertaining to the SEC's potential claim for disgorgement.  The Court should preclude Defendant from offering any evidence or making any argument about any potential remedies— including disgorgement, penalties, and the entry of an injunction or a penny stock bar—the Court may impose if the jury finds Defendant liable.

The jury's role as trier of fact is to determine whether Defendant violated the federal securities laws.  The determination of the proper remedies, should the jury find the Defendant liable, lies exclusively within the discretion of the Court.  15 U.S.C. § 78u(d)(1), (3), (5), (6), and (7).  Equitable remedies are to be decided by the court, as opposed to the jury.  *See James v. CSX Transp. Inc.*, No. 4:15-CV-204(CDL), 2017 WL 2535726, at *2 (M.D. Ga. 2017) (stating, "Equitable relief . . . is decided by the judge and not the jury. The jury's job is to decide any factual disputes, and then the judge may fashion an equitable remedy based on those factual findings") (citations omitted); *Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 500–01 (7th Cir. 2000); *SEC v. Castaldo*, No. 08 Civ. 8397(JSR), 2009 WL 2591376, at *1 (S.D.N.Y. 2009) (acknowledging that equitable remedies and civil monetary penalties are within the discretion of the court and not for jury determination).

It is entirely improper to present any evidence or argument at trial regarding these potential remedies.  Any discussion or evidence regarding remedies—such as disgorgement, civil monetary penalties, injunctive relief, or a penny stock bar—is irrelevant to the jury's task of determining liability.  The issue of remedies is solely the domain of the judge and any argument or evidence on this issue before the jury would only lead to jury confusion.

**D.    The Court Should Exclude Evidence and Argument Regarding Advice, Involvement or Presence of Counsel**

Defendant should not be permitted to refer to any advice, involvement, or presence of counsel with regard to whether he was acting as an unregistered dealer.  As shown in the SEC's motion for summary judgment, the SEC's claim for Section 15(a)(1) of the Exchange Act is a strict liability claim that does not require any showing of intent.

In cases involving other violations for failure to register under the securities laws, courts have held that advice of or reliance on counsel defenses are insufficient to avoid liability.  *See SEC v. PV Enterprises*, No. 16-20542-Civ-Scola, 2016 WL 8808697, at \*4 (S.D. Fla. Jun. 28, 2016) (in case involving failure to register securities under Section 5 of the Securities Act, "neither a good faith belief that the offers or sales in question were legal, nor reliance on the advice of counsel, provides a complete defense") (quoting *SEC v. Friendly Power Co.*, 49 F. Supp. 2d 1363, 1368 (S.D. Fla. 1999)).  Therefore, whether Defendant allegedly relied on advice of counsel is irrelevant, and should not be presented to the jury.

But even if advice of counsel was theoretically a viable defense to a Section 15(a)(1) claim, Defendant does not satisfy the required elements.[3]  "To succeed with a defense of good faith reliance on the advice of counsel, the defendant must show that 1) he fully disclosed all relevant facts to his counsel and 2) he relied in good faith on his counsel's advice."  *United States v. Parker*, 839 F.2d 1473, 1482 n.6 (11th Cir. 1988); *SEC v. Huff*, 758 F. Supp. 2d 1288, 1348-49 (S.D. Fla. 2010) (collecting cases).

---

[3] Even if Defendant had actually sought and received advice of counsel (which he did not), and could meet the factors to establish the defense, that would only be relevant (if at all) to remedies, such as the amount of penalties to be imposed.  *SEC v. Calmes*, No. 09-80524-CIV, 2010 WL 11505260, at \*5 (S.D. Fla. Nov. 19, 2010).  That is a question for the Court, not the jury.

Defendant can make neither showing because he did not consult an attorney about his potential dealer liability.  Defendant has testified that he did *not* seek or receive attorney advice that he was not acting as a dealer and did not need to register as a dealer.  Ex. 1 (Keener Dep. 237:8-11, 246:18-23).  Because Defendant plainly does not satisfy the elements of a reliance on advice of counsel defense, the Court should exclude any mention of counsel (including any attorney opinion letters that he received stating that he complied with SEC Rule 144, discussed *infra*).

Even the mention that counsel were consulted or involved should be excluded because it "would likely confuse the jury," who could "easily believe that the fact that a lawyer is present . . . means that he or she must have implicitly or explicitly 'blessed' the legality of the defendants' conduct."  *SEC v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013).  Such evidence would allow Defendant "all of the essential benefits of an advice of counsel defense without . . . the burden of proving any of [its] elements."  *Id.; see also SEC v. Kokesh*, No. 09-cv-1021, 2014 WL 11516545, at *3 (D.N.M. July 21, 2014) (finding the "probative value" of such evidence is "outweighed by the danger that the jury will be misled and confused"); *SEC v. Mapp*, No. 16-cv-00246, 2017 WL 8780604, at *2 (E.D. Tex. Dec. 4, 2017).

**E.    The Court Should Preclude Defendant From Referring to Any Alleged Hardships Pertaining to This Litigation or Related Investigations**

The SEC anticipates that Defendant or his counsel might refer in the presence of the jury to allegations about personal hardships that the Defendant allegedly may have suffered or might suffer in the future as a result of this litigation, the outcome of the litigation, or the investigations that preceded or are related to the litigation.

Courts consistently have held that testimony about hardships related to litigation or investigations is irrelevant and unfairly prejudicial, and therefore have granted motions *in limine*

to preclude such testimony.  As the court stated in *SEC v. Moran*, No. 95 CIV. 4472 (BN), 1995

WL 785953, at *1 (S.D.N.Y. Oct. 31, 1995), "[i]t is well settled that the trier of fact must

consider only the factual issue of liability without regard to any potential consequences which

may befall a defendant." (*citing Shannon v. United States*, 512 U.S. 573, 579 (1994)).

("Information regarding the consequences of a verdict is therefore irrelevant to the jury's task.")).

The prohibition on raising hardships applies to pre- and post-filing difficulties related to

the litigation and any related pre-filing investigations.  As the Court stated in *SEC v. Berretini*,

No. 10–cv–1614, 2015 WL 4247776, at *2 (N.D. Ill. Jul. 14, 2015):

> The Court agrees with the SEC that such evidence offers little if any
> probative value of the question of Berrettini's liability or non-liability.
> *See* Fed.R.Evid. 401; *SEC v. Steffes,* 10–cv–6266 (N.D.Ill.2014), [261]
> at 4; *SEC v. Moran,* 1995 WL 785953, at *1 (S.D.N.Y. Oct. 31, 1995).
> Furthermore, any probative value that such evidence theoretically may
> have is substantially outweighed by the risk of wasting time, confusing
> the issues, and evoking sympathy—none of which are valid bases for
> offering evidence or testimony. Accordingly, this evidence is
> inadmissible under Rule 403. Fed.R.Evid. 403.

Similarly, in *SEC v. Spencer Pharmaceutical Inc.*, 58 F. Supp. 3d 165, 166 (D. Mass. 2014), the

court granted the SEC's motion to exclude evidence of any negative effects arising from the

investigations by the SEC or a Canadian regulator into the defendant's alleged violations of law

or from any possible adverse consequences if the defendant were found liable for violations of

U.S. securities law.

And in *SEC v. The Nutmeg Group, LLC*, No. 09-cv-1775, 2017 WL 3269389, at *7-8

(N.D. Ill. Aug. 1, 2017), the court excluded evidence of defendants' "poor financial condition"

because it "could provoke sympathy by jurors, prompting them potentially to excuse a violation

of the law because [defendants] did not benefit from their scheme and already have suffered

financial hardship."  *See also SEC v. Jacobs*, No. 1:13 CV 1289, 2014 WL 12597832, at *5

(N.D. Ohio Feb. 25, 2014) (granting SEC's motion to exclude any testimony about adverse consequences the defendant might suffer if he were found liable, because such evidence "is not relevant, and even if such evidence were relevant, it is more prejudicial than probative.").

References to Defendant's purported hardships of any sort, whether personal, emotional, financial, or career-related, and whether past, present or future, are irrelevant to any issues in this case. References to any such hardships would waste time, confuse the jury, and unfairly evoke sympathy—"none of which are valid bases for offering evidence or testimony." *Berretini*, 2015 WL 4247776, at *2; *see also* FRE 403.

F.     **The Court Should Exclude All Evidence and Argument Relating to Purported Compliance With Rule 144 Under the Securities Act**

The SEC anticipates that Defendant will contend that he was not a dealer under Exchange Act Section 15(a)(1) [15 U.S.C. § 78o(a)(1)] because he purportedly complied with SEC Rule 144 [17 C.F.R. § 230.144] promulgated under the Securities Act [15 U.S.C. § 77a et seq.]. Rule 144 applies to unregistered sales of securities under the Securities Act, not registration of dealers under Section 15(a)(1) of the Exchange Act.

Defendant is expected to argue that: (1) he held the securities for the time period set forth in SEC Rule 144; and/or (2) received attorney opinion letters that he obtained before selling stock from convertible notes that opined that he had properly complied with Rule 144 (which is effectively an advice of counsel defense, see *supra*).

Any reference to Rule 144 is a red herring because it simply does not pertain to whether one has to register as a dealer of securities under the Exchange Act. The question of whether compliance with Rule 144 avoids the need to **register the securities transaction** itself is wholly irrelevant to whether one needs to register as a dealer under the Exchange Act.

Therefore, any reference to compliance with regard to Rule 144, or any opinion letters

from counsel to that effect, are completely irrelevant to the claim in this case that Defendant failed to register as a dealer under Section 15(a)(1) of the Exchange Act.  Any references to Rule 144 or communications with counsel about that should be excluded from the trial.

The SEC anticipates that Defendant will maintain the position he did at the pleadings stage, where he intimated that because he received opinion letters from attorneys opining that, in holding securities for six months, he had complied with SEC Rule 144 *and* that this meant that he was not a dealer. [4]  But Rule 144, by its own terms does not apply to the question of whether a person meets the definition of dealer in the Exchange Act.  Indeed, the caption to Rule 144 makes clear that it is inapposite to the purpose for which Defendant will seek to use it: "*Persons deemed not to be engaged in a distribution and therefore not underwriters*."  The Rule 144 procedure for selling stock has nothing to do with the registration of dealers under the Exchange Act.  Instead it relates to statutory underwriting (*i.e.*, acting as a *de facto* underwriter without properly registering *the securities* to be sold), as the caption of the Rule indicates.  *See Big Apple*, 783 F.3d at 807 (discussing Rule 144 in the context of whether defendants were statutory

---

[4] In his motion to dismiss, Defendant contended:

> In fact, as the preliminary note to SEC Rule 144 indicates, compliance with SEC Rule 144 involves a conclusion that the person engaging in the transaction is a person "other than an issuer, underwriter, *or dealer*" under the Securities Act of 1933. 17 C.F.R. § 230.144 (emphasis added) ("A person satisfying the applicable conditions of the SEC Rule 144 safe harbor is deemed not to be engaged in a distribution of the securities and therefore not an underwriter of the securities for purposes of Section 2(a)(11). Therefore, such a person is deemed not to be an underwriter when determining whether a sale is eligible for the Section 4(1) exemption for 'transactions by any person other than an issuer, underwriter, or dealer.'").

Dkt.# 14 at 13 n.10

underwriters).  The Rule 144 procedure for selling stock has nothing to do with the registration

of dealers under the Exchange Act, and the danger of Defendant confusing the jury with

evidence that (for instance) Defendant received hundreds of Rule 144 opinion letters vastly

outweighs any arguable relevance.  The Court should therefore preclude any mention of Rule

144 and exclude any attorney opinion letters related to it.

## **CONCLUSION**

The SEC respectfully requests that the Court enter an order *in limine* that Defendant and

his counsel shall not, while in the presence of the jury, offer or elicit any testimony or other

evidence about and shall not mention or make any reference to: (1) allegations or evidence

purporting to relate to due process, fair notice and estoppel defenses; (2) non-public

communications between the SEC's Office of Interpretation and Guidance and members of the

public; (3) advice, involvement or presence of counsel; (4) remedies that the SEC might seek; (5)

hardships that Defendant allegedly might suffer; and (6) Rule 144 under the Securities Act and

any opinions of counsel relating to Rule 144.

Pursuant to Local Rule 7.1(a)(3), undersigned counsel hereby certifies that on August 12,

2021, they conferred with counsel for Defendants in a good faith effort to resolve the issues

presented in this motion by agreement, but counsel were unable to reach an agreement.

DATE:   August 13, 2021                    Respectfully submitted,

                              By:

                                   _____/s/_____
                                   Joshua E. Braunstein
                                   Antony Richard Petrilla
                                   Attorneys for Plaintiff
                                   SECURITIES AND EXCHANGE COMMISSION
                                   100 F Street NE
                                   Washington, DC 20549
                                   Telephone: (202) 551-8470
                                   Braunsteinj@sec.gov

                                   **ATTORNEYS FOR PLAINTIFF**
                                   **SECURITIES AND EXCHANGE**
                                   **COMMISSION**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2021, I filed Plaintiff Securities and Exchange Commission's Omnibus Motion *In Limine* and Incorporated Memorandum of Law through the Court's CM/ECF system, which automatically sends notices to counsel of record in this case.


_____/s/_____
Joshua E. Braunstein

**ATTORNEY FOR PLAINTIFF**
**SECURITIES AND EXCHANGE**
**COMMISSION**