UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:20-CV-21254-BLOOM/LOUIS

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,

v.                                                    [ORAL ARGUMENT
                                                      REQUESTED]

JUSTIN W. KEENER D/B/A JMJ
FINANCIAL,

                              Defendant.

---

## DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE ANY EVIDENCE REGARDING ALLEGED VICTIMS, COUNTERPARTIES, OR HARM

The basic purpose of the Federal Rules of Civil Procedure is to eliminate trial by ambush. *Waite v. All Acquisition Corp.*, Case No. 15-cv-62359-BLOOM/Valle, 2016 WL 4433713, at *2-3 (S.D. Fla. Apr. 28, 2016) (noting that the Federal Rules "specifically guard against 'trial by ambush'"). But an ambush is exactly what the SEC is attempting here, at least with respect to its demand for disgorgement—the most significant remedy it seeks.

The SEC's Complaint and Initial Disclosures demand that Mr. Keener be ordered to disgorge north of $20 million. ECF No. 1, ¶¶ 2, 8, 16, Sec. V; Ex. 1 (7.20.20 Pl's Initial Discl.) at 3. In 2020, the U.S. Supreme Court imposed strict rules on when the SEC is allowed to seek disgorgement. Specifically, the Supreme Court held that the SEC may only seek disgorgement if it can demonstrate that (1) it can return disgorgement to wronged investors for their benefit and (2) the disgorgement amount only includes net profits, after "deducting legitimate expenses." *See Liu v. SEC*, 140 S. Ct. 1936, 1946-1948 (2020).

As a result, because the SEC demanded disgorgement here, it was obligated to disclose in discovery the information it intends to use to meet these burdens under *Liu*.  Namely, it was required to disclose, and to respond to discovery requests about, its theories and evidence as to which investors were harmed and in what amounts, as well as its calculation of Mr. Keener's net profits.

However, the SEC has failed to disclose any of this information, either as part of its Rule 26 disclosures or in response to Mr. Keener's discovery requests.  The SEC chose not to disclose a single victim or theory of harm, or any evidence whatsoever to support any theory that Mr. Keener's investments caused harm to any particular investor.[1]  Moreover, the SEC admitted that the $21.5 million figure in the Complaint did not account for Mr. Keener's business expenses but chose not to offer any new calculation that did.  In fact, the SEC's in-house economics expert, who offered only rebuttal opinions in response to Mr. Keener's experts, stated that no one at the SEC has actually attempted to calculate the disgorgement amount.  Ex. 2 (7.27.21 Taveras Dep. Tr.) at 254:18 – 255:5. However, she said that she "may be asked" to do so in the future and that she "reserve[s] the right to offer an opinion about disgorgement during the remedies phase of this case."  Ex. 3 (7.19.21 Taveras Report), ¶ 21.

The SEC's approach is unfair and in clear violation of its discovery obligations.  There is no separate "remedies phase" of this case.  The Court entered one calendar in this case for all fact and expert discovery, and both fact and expert discovery are now complete.  ECF Nos. 19, 41.  If the SEC is permitted to delay providing the basic information on which it will rely to carry its disgorgement-related burdens under *Liu*, Mr. Keener will be deprived of the ability to question the

---

[1] In fact, this is likely because, as Mr. Keener demonstrates in his contemporaneously filed Motion for Summary Judgment, no one was harmed at all by the conduct alleged in the Complaint.  See Def.'s Mot. for Summary Judgment at 4-6 (explaining that Mr. Keener invests his own money in convertible note investments in microcap companies in need of financing, and the terms of such investments are freely negotiated with the companies and disclosed in public filings).

SEC about its methods, to test its assumptions and calculations, and to develop his own responses to the SEC's contentions. This cannot be the outcome.

For instance, the SEC did not answer any of the following foundational questions during discovery:

- Who are the specific investors who were harmed by Mr. Keener's investments; how did Mr. Keener's investments cause them harm; and in what amounts were they harmed?

- What are the "ill-gotten gains" to be disgorged? Which specific transactions are part of the disgorgement calculation and why?

- What are the legitimate expenses to be deducted?

The SEC had every opportunity to properly disclose the necessary information to support its disgorgement demand during discovery. It chose not to do so. Its refusal is unjustified and highly prejudicial. As a result, and as a sanction for violating its obligations, the SEC should be prohibited from introducing any evidence not already disclosed to support its request for disgorgement. Specifically, it should not be able to introduce any evidence about the alleged victims or harm purportedly caused by Mr. Keener's investments—and it should be precluded from offering any expert or summary opinion about a proper net profits calculation. *See* Fed. R. Civ. P. 37(c)(1); *National Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec.*, LLC, Case No. 13-CIV-80371-BLOOM/Valle, 2015 WL 11251736, at *2-3 (S.D. Fla. July 29, 2015) (precluding the addition of two fact witnesses to a party's trial witness list where the identities of those witnesses had not been adequately disclosed during discovery).

## I.    BACKGROUND

The SEC's Complaint seeks disgorgement, and in its Rule 26 initial disclosures, the SEC estimated Mr. Keener's "net ill-gotten gains" to be $20 million. *See* ECF No. 1 at Sec. V; Ex. 1, at 2-3 ("The Commission estimates [the disgorgement] amount to be $20 million."). Accordingly, Mr.

Keener sought discovery from the SEC of the basis for its 8-figure disgorgement demand.  In particular, Mr. Keener sought discovery to assess whether the SEC's disgorgement demand complied with the parameters set forth by the Supreme Court in *Liu v. SEC*—namely, what profits were included, what business expenses were excluded, and whether any investors were harmed by Mr. Keener's transactions.  However, the SEC never disclosed any of this basic information over one year of discovery.

   A. <u>The SEC Failed to Respond to any Written Discovery Concerning its Disgorgement Request</u>.

  Plaintiff served its Initial Disclosures on July 20, 2020, asserting that it would seek "monetary relief in the form of disgorgement" and that the disgorgement would be based on the "amount of net ill-gotten gains" that Mr. Keener allegedly obtained through his investment activity. *See* Ex. 1 at 3.  In its disclosures, the SEC "estimate[d]" Mr. Keener's "net ill-gotten gains" to be $20 million but "reserve[d] its right to amend these calculations and methods based on discovery to be conducted in this case." *Id.*  The SEC never amended these calculations.

  Mr. Keener then issued document requests and requests for admission seeking the basis of the SEC's disgorgement calculation set forth in its Initial Disclosures. *See* Ex. 4 (9.11.20 Def.'s First Request for Production of Documents), ¶ 33(d)-(f) (requesting documents and information related to the amount of relief sought as disgorgement, the $20 million figure listed in the SEC's Initial Disclosures, and the contention in the SEC's Complaint that Mr. Keener made "$21.5 million in profits"); Ex. 5 (3.9.21 Def.'s Second Set of Requests for Admission), ¶ 12.  Mr. Keener also issued interrogatories seeking a comprehensive explanation of what transactions were at issue in the SEC's disgorgement claim.  Ex. 6 (6.9.21 Def.'s Fourth Set of Interrogs.), ¶ 18.

  The only information the SEC revealed as a result of any of these requests was that the SEC's allegation regarding Mr. Keener's profits was based on one spreadsheet prepared by one of Mr. Keener's assistants, which it admitted did not account for business expenses. *See* Ex. 7 (4.8.21

Pl.'s Resp. to Def.'s Second Set of Requests for Admission), ¶ 11 (citing JMJ-SEC-008-000380 as the sole basis for its allegation regarding Mr. Keener's profits); *id.*, ¶ 12 (admitting that JMJ-SEC-008-000380 did not account for Mr. Keener's business expenses); *see also* Ex. 15 (JMJ-SEC-008-000380). This spreadsheet is designated as "Notes" and contains blank fields and figures described as "estimated."  The SEC never provided more information to support its multi-million-dollar disgorgement demand, and never identified what specific transactions were at issue—*i.e.*, which specific sales of which issuer's stock—and never attempted to exclude business expenses from the calculation.

Mr. Keener further issued discovery requests seeking an explanation of whether the SEC alleged there were any "victims" of Mr. Keener's conduct, the identity of those alleged victims, and the full basis for the allegation that those persons were in fact victims, including the specific extent of their harm.  *See, e.g.*, Ex. 8 (9.29.20 Def. Requests for Admission), ¶ 58; Ex. 9 (12.23.20 Def. First Set of Interrogs.), ¶ 1; Ex. 6, ¶¶ 17-18.  The SEC asserted a plethora of objections—including that such information was "irrelevant" and "premature."  Finally, the SEC conceded that this information was discoverable, but the only information the SEC revealed was that it alleged the "victims" were "the counter-parties to the sales of newly-issued stocks that [Mr. Keener] sold after making conversions of convertible notes."  Ex. 10 (1.22.21 Pl.'s Resp. to Def. First Set of Interrogs.), ¶ 1; Ex. 11 (7.16.21 Pl.'s Resp. to Def. Fourth Set of Interrogs), ¶¶ 17-18.  That was the entirety of the disclosure.  The SEC never identified any specific transactions it alleged resulted in harm; it never identified any particular counter-party it alleged was harmed; it never identified the amount by which it alleged anyone was harmed; and it never even identified how anyone was allegedly harmed.

B.   The SEC Failed to Identify Any Witness Concerning its Disgorgement
Request.

Nor did the SEC identify any witness who was able to testify about the SEC's disgorgement
demand during discovery.  The SEC identified an SEC market surveillance specialist named Robert
Nesbitt as someone who may testify about "the SEC's ability to identify counterparties to sales in
the OTC and other markets."  *See* Ex. 12 (6.10.21 Pl. Second Supp. Initial Discl.).  But it became
clear at his deposition that Mr. Nesbitt had not looked at a single one of Mr. Keener's transactions
and had not identified a single so-called counterparty.  *See* Ex. 13 (6.25.21 Nesbitt Dep. Tr.) at 47:15-
17 ("I have done no analysis for this case, you know, so—for this case I have done nothing.").
More importantly, he had nothing to say about whether any counterparty experienced any harm
from any of Mr. Keener's sales.  *See id.* at 104:8-9; 13-20 (harm is "not something that I would
determine"; "I typically do not get involved in those issues").  All he could testify about was a
complicated matching exercise that he had used in the past to identify counterparties to transactions
in the market for over-the-counter securities—an exercise that by his own admission required reams
of data that he had no idea whether it had been collected or produced in this case.  *See id.* 55:3-14;
63:17-68:17 (explaining the process through which Mr. Nesbitt identifies sales, including looking at
blue sheets, brokerage account statements, trade blotters, order information, and trade inquiry
reports).

The only other witness the SEC identified in discovery was Dr. Carmen Taveras, an in-house
economist, who was first disclosed as a "summary witness."  *See* Ex. 14 (3.10.21 Pl. Supp. Initial
Discl.) ("May be called as a summary witness regarding voluminous records relating to some or all of
the following: Defendant's securities transactions, tax records, and expense records.").  But when
deposed, Dr. Taveras admitted that she had not prepared any summaries and had no knowledge of
what summaries she would be providing testimony on.  *See, e.g.*, Ex. 2 at 35:9-14, 47:7-22, 53:12-54:8.
Moreover, Dr. Taveras made clear that neither she nor anyone else at the SEC had even attempted

6

to calculate the appropriate disgorgement amount.  *See id.* at 254:18 – 255:5 ("Setting aside the prejudgment interest, what is the amount of the ill-gotten gains from the activities ser forth in this complaint?" "You mean the number?" "Yes." "I don't know." "To your knowledge, does anyone at the SEC know that number?" "No.").

The SEC did not offer a single affirmative expert in this case—that is, the SEC offered no expert to support its demand for disgorgement, to calculate a disgorgement amount, to identify any harm caused by any of Mr. Keener's transactions, or to support its position on any other issue in the case.  On the Court's deadline for disclosure of rebuttal experts, the SEC first disclosed that Dr. Taveras would also serve as an expert for the SEC, but that the scope of her testimony was limited to rebutting the "substantive issues" raised by Mr. Keener's expert reports.[2]  In her rebuttal report, she asserted that she "may be asked to assist in calculating disgorgement," but that she had not yet conducted any such calculation.  *See* Ex. 3, ¶ 11.  The SEC did not provide any such calculation by the end of discovery.  Nor did the SEC provide any further information regarding any alleged victims of, counterparties to, or harm resulting from Mr. Keener's investment activity.

## II.    ARGUMENT

To avoid trial by ambush, all parties "must, without awaiting a discovery request, provide to the other parties" names of individuals likely to have discoverable information, a copy or description of all "documents, electronically stored information, and tangible things" that the disclosing party may use to support its claims or defenses.  *See* Fed. R. Civ. P. 26(a); *Waite* 2016 WL 4433713, at *3. If a party does not comply with its Rule 26 obligations, Rule 37 provides that the party cannot be allowed to "use that information or witness to supply evidence on a motion, at a hearing, or at a trial."  The only exception is if the failure to comply was substantially justified or harmless.  *See* Fed.

---

[2] The substance of Dr. Taveras' rebuttal expert report is the subject of a contemporaneously filed Motion to Exclude Rebuttal Expert Report of Dr. Carmen Taveras.  Any testimony regarding harm that the SEC seeks to provide through rebuttal expert testimony is improper and addressed in that motion.

R. Civ. P. 37(c)(1); *National Union Fire Ins. Co.*, 2015 WL 11251736, at *2. The non-disclosing party bears the burden of demonstrating that its failure to disclose was substantially justified or harmless. *Mitchell v. Ford Motor Co.*, 318 Fed. Appx. 821, 824 (11th Cir. 2009).

A.   The SEC Failed to Produce Information Required Under Rule 26(a).

As stated above, Rule 26(a) requires a party to voluntarily furnish all information that a party may use to support its claims or defenses. Accordingly, the SEC was obligated to furnish the evidence it intended to rely on to support its disgorgement demand, including in particular any evidence to support its factual assertion that the counterparties to Mr. Keener's sale transactions are "victims." *Kline v. Berry*, 287 F.R.D. 75, 80 (D.D.C. 2012) (ordering plaintiff to furnish documents that can support a factual statement plaintiff made in support of her allegations). However, the SEC has refused to disclose any of the evidence that it will use to carry its burden on this point. After *Liu*, this information is particularly salient because the SEC's claim for disgorgement will fail unless it demonstrates that any disgorged amount will be "for victims." *See Liu*, 140 S. Ct. at 1945-46.

As explained below, the SEC cannot demonstrate that such failure to disclose was substantially justified or harmless, and therefore any evidence the SEC may proffer in the future concerning alleged victims, or alleged harm to downstream investors must be excluded under Rule 37. *See Disa v. Ashley Furniture Indus., Inc.*, Case No. 8:14–cv–01915–T–27AEP, 2016 WL 7177517, at *2 (M.D. Fla. Jan. 7, 2016) (excluding evidence not produced during discovery); *Beaubran v. Geico Gen. Ins. Co.*, Case No. 16-24205-Civ-Cooke/Torres, 2017 WL 3025852, at *2-3 (S.D. Fla. July 17, 2017) (same).

B.   The SEC's Conduct Was Not Substantially Justified

A party's nondisclosure is not "substantially justified" when there is no dispute as to whether the party complied with its discovery obligations. *See Waite*, 2016 WL 4433713, at *2. There is no justification for producing new information to support key issues in the case after the close of

8

discovery.  *See id.* at *2-3; *Beaubran* 2017 WL 3025852, at *2-3 (production of relevant material five months after the party's initial disclosures were due despite having possession of the material since the outset of the litigation was not substantially justified).

The SEC did not comply with its clear discovery obligations under Rule 26.  The SEC conceded that it was required to disclose information about its disgorgement demand under Rule 26, yet it never provided any net profits calculation.  Ex. 1.  Moreover, the SEC conceded that information concerning its disgorgement demand was relevant and discoverable in responses to Mr. Keener's discovery requests on this topic.  *See* Ex. 10, ¶ 1; Ex. 11 ¶¶ 17-18.  However, the SEC failed to provide any information other than the conclusory assertion that the "counterparties" to Mr. Keener's sales were "victims."  *See id.*  Without any explanation or justification, it chose not to disclose any evidence that would support that assertion—it chose not to identify a single counterparty or explain why or how a single counterparty was harmed.  Therefore, it must be precluded from introducing such evidence at or after trial.

Nor was Mr. Keener's request for such information premature.  This litigation is not bifurcated into separate liability and remedies phases.  The SEC did not ask for, and the Court did not set, any separate calendar for disclosures and discovery related to remedies.  Instead, one calendar was entered, which directed that all fact and expert discovery in this case ended on August 2, 2021.  *See* ECF Nos. 19, 41.  Accordingly, the only time for the disclosure of evidence relevant to the SEC's claims for relief was during discovery. *Cf. SEC v. Megalli*, Civil Action No. 1:13-cv-3783-AT, 2015 WL 11216815 (N.D. Ga. Apr. 17, 2015) (refusing to bifurcate case "at the summary judgment phase").

C.     The SEC's Conduct Was Not Harmless.

Failure to disclose cannot be "harmless" when it causes any prejudice to the opposing party. *See Hinds v. American Sec. Ins. Co.*, Case No. 16-CV-20780-Cooke/Torres, 2016 WL 8677901, at *3

9

(S.D. Fla. Dec. 7, 2016) (citing *S.O.S. Resource Services, Inc. v. Bowers*, Case No. 14-Civ-22789-Cooke/Torres, 2015 WL 6735540, at *1 (S.D. Fla. Nov. 4, 2015)).  A party faces prejudice when it is deprived of a meaningful opportunity to test, analyze or rebut new evidence.  *See Beaubrun*, 2017 WL 3025852 at *3 (finding harm where belated disclosure prevented opposing party of an opportunity to depose witness about new evidence); *Global Dig. Sols., Inc. v. Grupo Rontan Electro Metalurgica, S.A.*, Case No. 18-80106-cv-Middlebrooks, 2020 WL 8816214, at *4 (S.D. Fla. Dec. 1, 2020) (party would suffer prejudice if non-disclosing party were able to present expert testimony on damages without having provided an expert report during discovery); *Waite*, 2016 WL 4433713, at *3 (party would suffer prejudice if new evidence were disclosed only days before the relevant depositions were to take place).

The SEC's failure to disclose information critical to its requested relief—and therefore, crucial to Mr. Keener's defense—is by definition prejudicial to Mr. Keener.  Courts routinely exclude damages information that a party failed to provide in discovery, because such failure cannot be harmless.  *See, e.g.*, *Global Dig. Sols., Inc.*, 2020 WL 8816214, at *3-4  (finding that a party would "suffer substantial prejudice" if the non-disclosing party was able to present evidence on damages not provided during discovery); *see also Roman v. MSL Cap., LLC*, Case No. EDCV 17-2066 JGB (SPx), 2019 WL 1449499, at *6 (C.D. Cal. Mar. 29, 2019) (granting a motion in limine to preclude the introduction of injuries "not already identified through disclosures, written discovery, or evidence testified to at a deposition").  Such nondisclosure is particularly prejudicial where, as here, the fact and expert discovery deadlines have passed.  *See Hinds*, 2016 WL 8677901, at *3 (failure to produce responsive expert opinions to opposing party "effectively render[s] *any* trial testimony made by the expert a surprise") (emphasis in original).

Despite over six months of discovery requests seeking clarifying information about alleged victims of and harm resulting from Mr. Keener's investment activity, the SEC failed to identify any

"victims" other than a single reference to "counter-parties to the sales of newly issued stocks that [Mr. Keener] sold after making conversions of convertible notes." Ex. 10, ¶ 1. But it has never identified *how* any "counterparties" were allegedly victimized (or even who the counterparties are). If the SEC were permitted to introduce novel theories and information regarding alleged victims and harm at trial, Mr. Keener would be substantially prejudiced.

The SEC's failure to disclose such critical information was not inadvertent. In both her Rebuttal Report and her deposition, Dr. Taveras, an SEC employee, admitted that the SEC had not yet calculated disgorgement and that it had no intention of performing such a calculation until some indeterminate point in the future. *See* Ex. 3, ¶ 11 ("I understand that the SEC has not made a claim for disgorgement and that such a claim would be made after liability has been determined. I may be asked to assist in calculating disgorgement, and I would rely on more than just the 'JMJ Income Statement – Notes' to do so."); Ex. 2 at 254:18 – 255:5 ("Setting aside the prejudgment interest, what is the amount of the ill-gotten gains from the activities ser forth in this complaint?" "You mean the number?" "Yes." "I don't know." "To your knowledge, does anyone at the SEC know that number?" "No."). Similarly, Mr. Nesbitt's deposition revealed that he had not looked at any of Mr. Keener's transactions or identified a single counterparty, suggesting that any identification of specific counterparties would be completed at some unknown later date. *See* Ex. 13 at 47:15-17 ("I have done no analysis for this case, you know, so—for this case I have done nothing."). The SEC made a calculated decision that it could withhold this key information and instead ambush Mr. Keener at or after trial. The Federal Rules prohibit such conduct. *See Waite*, 2016 WL 4433713, at *2; *Dorvil v. Nationstar Mortg., LLC*, Case No. 17-23193-CIV-MARTINEZ/ OTAZO-REYES, 2020 WL 9065875, at *1-2 (S.D. Fla. Feb. 13, 2020) (the Federal Rules and "tenets of fairness" require parties to be put on notice as to their potential liability and exposure "such that they can adequately defend their case").

### III.    CONCLUSION

Information regarding how the SEC intends to comply with *Liu* –*i.e.*, how it intends to calculate net profits and how it intends to prove there are any alleged victims or harm resulting from any of Mr. Keener's investment activity—is central to this case because the SEC chose to request disgorgement.  The SEC's failure to provide any of this information during discovery puts Mr. Keener in an impossible position—the SEC effectively seeks to prevent Mr. Keener from putting up any meaningful defense with respect to the amount of disgorgement.  The Federal Rules of Civil Procedure apply to the SEC too, and do not allow this outcome.  Thus, Mr. Keener respectfully requests that the SEC be precluded from introducing at or after trial any evidence about the alleged victims or harm purportedly caused by Mr. Keener's investments, or any net profits calculation, including but not limited to any expert or summary opinion that witnesses were not prepared to offer during discovery on these topics.

Dated: August 13, 2021

Respectfully submitted,

**GREENBERG TRAURIG LLP**

/s/ *Benjamin G. Greenberg*

**Benjamin G. Greenberg**
Florida Bar No. 192732
greenbergb@gtlaw.com
333 SE 2nd Avenue Suite 4400
Miami, FL 33131
Telephone: (305) 579-0850
Facsimile: (305) 579-0717

*-and-*

**BUCKLEY LLP**

**Christopher F. Regan (*pro hac vice*)**
**Veena Viswanatha (*pro hac vice*)**
**Adam Miller (*pro hac vice*)**
2001 M Street NW, Suite 500
Washington, DC 20036
Telephone: (202) 349-8000

12

Facsimile: (202) 349-8080
cregan@buckleyfirm.com
vviswanatha@buckleyfirm.com

*Counsel for Defendant Justin W. Keener*

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for Mr. Keener has

conferred with opposing counsel in good faith on August 11, 2021 and August 12, 2021. Opposing

counsel informed counsel for Mr. Keener that Plaintiff cannot agree or consent to the relief

requested herein.


/s/ *Benjamin G. Greenberg*
Benjamin G. Greenberg

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served via ECF a true and correct copy of the foregoing Motion in *Limine* To Exclude Any Evidence Regarding Alleged Victims, Counterparties, or Harm to the following:

Joshua E. Braunstein (Special Bar No. A5502640)
Antony Richard Petrilla (Special Bar No. A5502641)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-8470
Braunsteinj@sec.gov

*Attorneys for Plaintiff*
*Securities and Exchange Commission*

This, the 13th day of August, 2021

*/s/ Benjamin G. Greenberg*

15