**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **JUSTIN W. KEENER D/B/A JMJ FINANCIAL,** ) | |
| ) | **No. 20-cv-21254** |
| **Defendant.** ) | |
| ) | **Hon. Beth Bloom** |
| ) | |
| ) | |
| ) | |
| _____ ) | |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF
LAW IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE ANY
EVIDENCE REGARDING ALLEGED VICTIMS, COUNTERPARTIES, OR HARM**

## <u>TABLE OF CONTENTS</u>

BACKGROUND ...................................................................................................……...1

ARGUMENT .....................................................................................................……...2

I.   The Question of Liability is for the Jury; The Question of
     Remedies is for the Court ...........................................................................……...2

II.  The Appropriate Time for Presentation of Evidence Concerning
     Remedies, Including Disgorgement, is After a Finding of Liability ...............……...4

III. *Liu* Does Not Change the SEC's Required Disclosures
     or Burden of Proof ......................................................................................……...6

     A. Overview of the Supreme Court's Holding in *Liu* .............................……...6

     B. *Liu* Does Not Create New Disclosure Obligations .............................……...7

IV.  The SEC has Complied with Its Discovery Obligations.........................………...10

CONCLUSION...........................................................................................……...17

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Brice v. Haynes Invest., LLC*,
   2021 WL 2936733 (N.D. Cal. July 13, 2021)..........................................……......4

*CFPB v. Global Fin. Support, Inc.*,
   2021 WL 1165078 (S.D. Cal. Mar. 26, 2021) .......................................…….....9

*CFTC v. Tayeh*,
   2021 WL 794542 (11th Cir. Mar. 2, 2021)...........................................…….....4

*Estakhrian v. Obenstine*,
   2021 WL 2418972 (9th Cir. June 14, 2021) ........................................…….....9

*James v. CSX Transp. Inc.*,
   2017 WL 2535726 (M.D. Ga. 2017)...................................................…….....3

*Liu v. SEC*,
   140 S.Ct. 1936 (2020).........................................…………………......*ibid.*

*SEC v. Almagarby*,
   Case No. 17-62255-CIV-COOKE/HUNT, slip op. (S.D. Fla. Aug. 16, 2021)…………..9

*SEC v. AR Capital, LLC*,
   2021 WL 1988084 (S.D.N.Y. May 18, 2021) ...............................…….....7

*SEC v. Blackburn*,
   2020 WL 10787527 (E.D. La. Nov. 3, 2020). ..............................…….....9

*SEC v. Capital Solutions Monthly Income Fund, LP*,
   818 F.3d 346 (8th Cir. 2016) .......................................……............…….....3

*SEC v. Commonwealth Chem. Sec., Inc.*,
   574 F.2d 90 (2d Cir. 1978).......................................…….......…….....3

*SEC v. Cope*,
   2021 WL 653088 (S.D.N.Y. Feb. 19, 2021)..............................…….....7

*SEC v. Curative Biosciences, Inc.*,
   2020 WL 7345681 (C.D. Cal. Oct. 25, 2020)..............................…….....7

*SEC v. Dang*,
   2021 WL 1550593 (D. Conn. Apr. 19, 2021)…………………………..………7

*SEC v. Dropil, Inc.*,
    2020 WL 7348021 (C.D. Cal. Oct. 23, 2020)...............................................……...8

*SEC v. Erwin*,
    2020 WL 7310584 (D. Col. Dec. 11, 2020)...............................................……...7

*SEC v. First City Fin. Corp.,*
    890 F.2d 1215, 1231-32 (D.C. Cir. 1989).............................................……...4

*SEC v. First Jersey Sec., Inc.*,
    101 F.3d 1450 (2d Cir. 1996)...................................................................3-4, 10

*SEC v. Fowler*,
    2021 WL 3083655 (2d Cir. 2021)...........................................................……...4

*SEC v. Ginsburg*,
    2002 WL 1835810 (S.D. Fla. July 8, 2002)...........................................……...3, 4

*SEC v. Huff,*
    2010 WL 148232 (S.D. Fla. Jan. 10, 2010) .........................................……...8

*SEC v. Janus Spectrum, LLC*,
    15-cv-609, slip. op. (D. Ariz. Apr. 26, 2021) ....................................……...7

*SEC v. Johnson*,
    595 F. Supp. 2d 40 (D.D.C. 2009)........................................................……...4

*SEC v. Laura*,
    2020 WL 8772252 (E.D.N.Y. Dec. 30, 2020) ....................................……...8

*SEC v. Levin*,
    849 F.3d 995 (11th Cir. 2017) ..............................................................……...8

*SEC v. Levine*,
    279 F. App'x 6 (D.C. Cir. 2008)...........................................................……...5

*SEC v. Mizrahi*,
    2020 WL 6114913 (C.D. Cal. Oct. 5, 2020)........................................……...7

*SEC v. Montano*,
    2019 WL 2254946 (M.D. Fla. Mar. 5, 2019) ................................... ……11-12

*SEC v. Montgomery*,
    2021 WL 210749 (W.D. Tex. Jan. 20, 2021) .....................................……...7

*SEC v. Razmilovic*,
    2010 WL 2540762 (E.D.N.Y. June 14, 2010) ..............................…....11

*SEC v. Rind*,
     991 F.2d 1486 (9th Cir. 1993) .........................................……....3

*SEC v. Rinfret*,
    2020 WL 6559411 (S.D.N.Y. Nov. 9, 2020) ........................……....7

*SEC v. Rosen*,
    2002 WL 34414715 (S.D. Fla. Apr. 24, 2002) ........................…....4, 5

*SEC v. Smith*,
    2020 WL 6712257 (C.D. Cal. Oct. 19, 2020) ........................……....7

*SEC v. U.S. Pension Trust Corp.*,
    2010 WL 3894082 (S.D. Fla. Sept. 10, 2010) ........................……....8

*SEC v. Westport Capital Mkts., LLC*,
    2021 WL 2801626 (D. Conn. July 6, 2021) ........................……....9

*SEC v. Yang*
    824 Fed. Appx. 445 (9th Cir. Aug. 6, 2020) ........................……....4

*Shannon v. United States*,
    512 U.S. 573 (1994) ........................................……....5

*Steadman v. SEC*,
    450 U.S. 91 (1981) ........................................……....5

*Tull v. United States*,
    481 U.S. 412 (1987) ........................................……....3

## STATUTES & RULES

15 U.S.C. § 78o(a)(1) ........................................………....2

15 U.S.C. § 78u ........................................................3, 6, 7

Fed. R. Civ. P. 26(a) ........................................ …………...11, 17

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this memorandum of law in opposition to Defendant's Motion *in Limine* to Exclude Any Evidence Regarding Alleged Victims, Counterparties, or Harm [ECF No. 69] ("Def. MIL").  Defendant argues that this Court should bar the SEC from adducing any evidence of alleged victims, counterparties, or harm "at or after trial," Def. MIL at 12, because—according to Defendant—to permit such evidence would be to permit "trial by ambush," *id.* at 3.  Defendant's argument misapprehends: (i) the bifurcated nature of SEC proceedings; (ii) the appropriate time for presentation of evidence concerning Defendant's ill-gotten gains; (iii) the Supreme Court's decision in *Liu v. SEC*, 140 S.Ct. 1936 (2020); and (iv) the SEC's full compliance with its discovery obligations.  This Court should deny Defendant's motion.

## BACKGROUND

Defendant Justin W. Keener, d/b/a JMJ Financial ("Defendant" or "Keener") engaged in the business of repeatedly purchasing convertible notes from small "microcap" issuers, converting the notes into stock at significant discounts from prevailing market prices, and selling the resulting newly issued shares into the public market for a significant profit.  Complaint ¶¶ 1-4 [ECF No. 1].  Defendant sold more than *38 billion shares of stock* purchased from more than *200 different issuers* into the public market.  *See* Plaintiff's Statement of Material Facts ¶¶ 27, 29 [ECF No. 67] ("SEC SMF").  Defendant's net proceeds from sales between March 24, 2014 and January 31, 2018 totaled approximately *$34 million*.  *Id.* ¶ 31.  The SEC alleges that, by engaging in this business, Defendant acted as an unregistered dealer in violation of Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)(1)].

There is *one* issue in the SEC's case in chief, and that is whether Defendant acted as an unregistered dealer.  To prevail on this claim, the SEC must prove by a preponderance of the

1

evidence that: Defendant (i) made use of the mails or other means or instrumentalities of interstate commerce; (ii) to effect transactions in, or to induce or to attempt to induce the purchase or sale of, securities; (iii) as part of a regular business; (iv) while not registered with the SEC as a dealer; and (v) when Defendant was not associated with an entity registered with the SEC as a dealer.  Complaint ¶ 24; 15 U.S.C. § 78o(a)(1).  This issue can, and should, be resolved in the SEC's favor on summary judgment.  *See* Plaintiff Securities and Exchange Commission's Motion for Summary Judgment and Incorporated Memorandum of Law ("SEC SJ Mtn.") [ECF No. 68] (seeking judgment in favor of the SEC and against Defendant on Count I of the Complaint, and on the Defendant's Third, Fourth, Fifth, and Sixth Affirmative Defenses).

## ARGUMENT

Defendant's motion hinges on Defendant's misplaced argument that the SEC has somehow failed in its discovery obligations concerning the calculation and proposed distribution of an as-yet-to-be-awarded disgorgement amount, and that this Court therefore should sanction the SEC by precluding the SEC from admitting "at or after trial" evidence of victims, counterparties, or harm.  Def. MIL at 12.  There is no basis for the extraordinary sanction Defendant seeks, and this Court should deny Defendant's motion.

### I.     The Question of Liability is for the Jury; The Question of Remedies is for the Court

It is well established that in actions under the Exchange Act, the ***jury*** determines liability (based on evidence relevant to that question), and the ***Court*** determines relief (based on evidence relevant to that question).  The bifurcated nature of SEC proceedings stems from the nature of the relief sought (injunction, disgorgement, prejudgment interest, and/or penalties)—all of which are properly determined by the Court.  *See, e.g.*, *Tull v. United States,* 481 U.S. 412, 425-27 (1987) (holding that Constitutional right to a jury applies to determination of liability, but "trial

2

court and not the jury should determine the amount of penalty"); *SEC v. Capital Solutions Monthly Income Fund, LP*, 818 F.3d 346, 355 (8th Cir. 2016) ("[H]aving been found liable by the jury, [defendant] was not entitled to have the jury decide the remedies."); *SEC v. Rind,* 991 F.2d 1486, 1493 (9th Cir. 1993) (stating that there is no right to a jury trial where only injunctive relief and disgorgement are sought); *SEC v. Commonwealth Chem. Sec., Inc.,* 574 F.2d 90, 95-96 (2d Cir. 1978) (holding that SEC's action for injunction and disgorgement was analogous to traditional jurisdiction of equity to award restitution, meaning that defendants were not entitled to a jury trial); *James v. CSX Transp. Inc.*, No. 4:15-CV-204(CDL), 2017 WL 2535726, at *2 (M.D. Ga. 2017) ("Equitable relief . . . is decided by the judge and not the jury.").

Accordingly, if Defendant is found liable at summary judgment or trial, then this Court— not the jury—will determine the relief to be granted.  *See SEC v. Ginsburg*, No. 99-8694-CV-RYSKAMP, 2002 WL 1835810, at *2 (S.D. Fla. July 8, 2002) (citing 15 U.S.C. § 78u-1).  The Court may enjoin Defendant from violations of Section 15(a)(1), issue a penny stock bar, require disgorgement and payment of prejudgment interest, and require the payment of a civil penalty.  *Id.* (citing 15 U.S.C. §§ 78u-1(d)(2) and (3)); *see also* 15 U.S.C. §§ 78u(d)(5), & (7); Complaint at p.12.

With respect to disgorgement, this Court will have "broad discretion not only in determining whether or not to order disgorgement but also in calculating the ***amount*** to be disgorged."  *SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1474-75 (2d Cir. 1996) (emphasis added).  Importantly, the SEC will be entitled to disgorgement upon producing a reasonable approximation of Defendant's ill-gotten gains.  *See CFTC v. Tayeh*, --- Fed. Appx. ---, 2021 WL 794542, at *1-2 (11th Cir. Mar. 2, 2021) (applying reasonable approximation standard after *Liu*); *SEC v. Fowler*, --- F.4th ---, 2021 WL 3083655, at *9 (2d Cir. 2021) (accord); *SEC v. Yang*, 824

Fed. Appx. 445, 447 (9th Cir. Aug. 6, 2020) (accord). "If the disgorgement amount is generally reasonable, any risk of uncertainty about the amount falls on the wrongdoer whose illegal conduct created that uncertainty." *Fowler*, 2021 WL 3083655, at *14 (quotation marks and alteration omitted). Thus, once the SEC provides a reasonable estimate of Defendant's ill-gotten gains, Defendant will bear the burden of showing that the SEC's estimate is inaccurate. *See id.; see also SEC v. First City Fin. Corp.,* 890 F.2d 1215, 1231-32 (D.C. Cir. 1989).

## II. The Appropriate Time for Presentation of Evidence Concerning Remedies, Including Disgorgement, is *After* a Finding of Liability

Following a finding of liability at summary judgment or trial, when "[t]he issue of remedies is . . . ripe for review," the SEC will move this Court for the entry of final judgment and the imposition of remedies. *Ginsburg*, 2002 WL 1835810, at *1; *see also Brice v. Haynes Invest., LLC*, --- F. Supp. 3d ---, Case No. 18-cv-01200-WHO, Case No. 19-cv-01481-WHO, 2021 WL 2936733, at *10 n.18 (N.D. Cal. July 13, 2021) ("The question of what, if any, equitable relief should be awarded to plaintiffs will be determined only after considering the jury verdict and the evidence at trial."). In fashioning appropriate relief after a finding of liability, this Court may consider trial testimony and exhibits,[1] the parties' post-trial briefing,[2] evidence that was not presented to the jury,[3] and—if additional evidence is needed—further discovery and an evidentiary hearing. *See SEC v. Rosen*, No. 01-0369-CIV, 2002 WL 34414715, at *1 (S.D. Fla. Apr. 24, 2002) (conducting a further evidentiary hearing "with respect to resolving any

---

[1] *SEC v. Johnson*, 595 F. Supp. 2d 40, 42 (D.D.C. 2009).

[2] *SEC v. Rosen*, No. 01-0369-CIV, 2002 WL 34414715, at *1 (S.D. Fla. Apr. 24, 2002) (providing the parties with "an opportunity to address the remaining remedies issues in post-trial papers or in an evidentiary hearing, at their option"); *Ginsburg*, 2002 WL 1835810, at *2 (setting briefing schedule for the relief phase of the trial after jury's verdict).

[3] *SEC v. Levine*, 279 F. App'x 6, 8 (D.C. Cir. 2008).

remaining remedies issues raised by the parties for which they believed additional evidence might be necessary").

As with the liability phase, the SEC need only establish its requested relief by a preponderance of the evidence, *Steadman v. SEC,* 450 U.S. 91, 103 (1981), and may rely on direct or circumstantial evidence to meet its burden, *SEC v. Conaway*, 697 F. Supp. 2d 733, 745 (E.D. Mich. 2010).

As the SEC argues in its motion *in limine*, because the question of remedies is for this Court, not the jury, this Court should preclude Defendant from introducing evidence—including expert testimony and evidence concerning purported disgorgement offsets—that is solely relevant to the remedies phase.  *See* Plaintiff Securities and Exchange Commission's Omnibus Motion *in Limine* and Incorporated Memorandum of Law, § III.C [ECF No. 64] (citing cases). "The jury's job is to decide any factual disputes, and then the judge may fashion an equitable remedy based on those factual findings."  *Shannon v. United States,* 512 U.S. 573, 579 (1994) (holding, in the criminal context, that where the jury is tasked only with "find[ing] the facts" and "decid[ing] whether . . . the defendant is guilty of the crime charged. . . " "*[i]nformation regarding the consequences of a verdict* is . . . *irrelevant* to the jury's task).  This Court therefore should preclude Defendant—during the jury trial—from introducing fact and expert testimony that is solely relevant to the question of disgorgement and the distribution of any to-be-awarded disgorgement amounts during the jury trial.  The SEC likewise will not introduce (other than if the Court permits Defendant to do so, which it should not) evidence before the jury that is solely relevant to disgorgement or distribution of disgorgement.

III.    ***Liu* Does Not Change the SEC's Required Disclosures or Burden of Proof**

Defendant contends that *Liu* creates a new requirement that the SEC identify individual

victims and quantify their losses.  Def. MIL at 3.  Even more puzzlingly, Defendant contends

that the SEC must make this showing *in its case in chief*.  *Id.*  Defendant is wrong.

### A.       Overview of the Supreme Court's Holding in *Liu*

In *Liu*, the Supreme Court addressed courts' authority to order disgorgement

under Exchange Act Section 21(d)(5) [15 U.S.C. 78u(d)(5)], which authorizes the SEC to seek,

and courts to award, "equitable relief that may be appropriate or necessary for the benefit of

investors."  *Id.*  The Supreme Court held that Section 21(d)(5) authorizes "a disgorgement award

that does not exceed a wrongdoer's *net profits*," and that such recovery of unjust enrichment is a

"mainstay of equity courts."  *Liu,* 140 S. Ct. at 1942-43 (emphasis added).

In addition to affirming courts' authority to order disgorgement, *Liu* discussed several

"principles that may guide the lower courts' assessment" of disgorgement awards.  *Id.* at 1947.

As relevant here, *Liu* read the phrase "appropriate or necessary for the benefit of investors"

in Section 21(d)(5) as a "limitation[ ]" or "restrict[ion]" on a court's equitable authority to

disburse collected disgorgement amounts.  *Id.* at 1947-49.  The Supreme Court reasoned that the

"equitable nature of the profits remedy *generally* requires the SEC to return a defendant's gains

to wronged investors for their benefit."  *Id.* at 1948 (emphasis added).  "To hold otherwise," the

Supreme Court explained, "would render meaningless the latter part of § 78u(d)(5)."  *Id.*  But the

Supreme Court also acknowledged that Congress has established a fund in the U.S. Treasury for

disgorgement awards that are not deposited in "disgorgement funds" or otherwise "distributed to

victims."  *Id.* at 1947 (explaining that, by statute, "these sums may be used to pay whistleblowers

reporting securities fraud and to fund the activities of the Inspector General").  Because the

parties had not briefed what "traditional equitable principles govern when, for instance, the

wrongdoer's profits cannot practically be disbursed to the victims," the Supreme Court did "not

address [that] issue." *Id.* at 1948-49.  Rather, the Supreme Court left it for the "lower courts [to] evaluate in the first instance" whether an order directing proceeds to the Treasury "would indeed be for the benefit of investors as required by § 78u(d)(5) and consistent with equitable principles." *Id.*

Every court to have considered the question post-*Liu* has held that distributing disgorged funds to victimized investors is "for the benefit of investors" within the meaning of Section 21(d)(5) and *Liu*.  *See, e.g.*, *SEC v. Montgomery*, 2021 WL 210749, at *6 (W.D. Tex. Jan. 20, 2021) ("The Commission's request for disgorgement would also be for the benefit of investors, as it is feasible to distribute those funds to the injured investors.") (internal citation omitted); *see also SEC v. AR Capital, LLC*, 2021 WL 1988084, at *3 (S.D.N.Y. May 18, 2021); *SEC v. Dang*, 2021 WL 1550593, at *7 (D. Conn. Apr. 19, 2021); *SEC v. Janus Spectrum, LLC*, 15-cv-609, slip op. at 3 (D. Ariz. Apr. 26, 2021) [Ex. 5]; *SEC v. Cope*, 2021 WL 653088, at *3 (S.D.N.Y. Feb. 19, 2021); *SEC v. Erwin*, 2020 WL 7310584, at *5 (D. Col. Dec. 11, 2020); *SEC v. Rinfret*, 2020 WL 6559411, at *6 (S.D.N.Y. Nov. 9, 2020); *SEC v. Curative Biosciences, Inc.*, 2020 WL 7345681, at *9 (C.D. Cal. Oct. 25, 2020); *SEC v. Smith*, 2020 WL 6712257, at *3 (C.D. Cal. Oct. 19, 2020); *SEC v. Mizrahi*, 2020 WL 6114913, at *2 (C.D. Cal. Oct. 5, 2020).

## B.   *Liu* Does Not Create New Disclosure Obligations

Defendant argues that *Liu*'s exploration of age-old equitable principles somehow requires the SEC "to disclose, and to respond to discovery requests about, its theory and evidence as to which investors were harmed and in what amounts."  Def. MIL at 2.[4]  This is incorrect.  *See SEC*

---

[4] Defendant also argues that the SEC must disclose its "calculation of Mr. Keener's net profits."  Def. MIL at 2.  The SEC repeatedly has done so, based on the best evidence and calculations available during each phase of the case.  *See* Section IV, *infra; see also* Complaint ¶¶ 2, 8, 16; Plaintiff's Initial Disclosures at 2-3 (July 20, 2020) [ECF No. 69-2]; SEC SMF ¶¶ 27-37 [ECF No. 67].

*v. Dropil, Inc.*, Case No. 8:20-cv-00793-SB (DFMx), 2020 WL 7348021, at *5 (C.D. Cal. Oct. 23, 2020) ("*Liu* does not address the essential elements of a claim."); *see also SEC v. Laura*, 18-cv-5075, 2020 WL 8772252, at *4 (E.D.N.Y. Dec. 30, 2020) (an SEC disgorgement action is not "coterminous with an individual injured investor's claim," therefore, *Liu* "does not require that a disgorgement award reflect every individually wronged investor's" harm). *Liu* did not impose upon the SEC ***new*** obligations to identify investor victims to whom it proposes to distribute any disgorgement—much less to do so ***before*** any finding of liability or award of disgorgement. Nor did *Liu* create a ***new*** requirement to calculate individual investor damages. The Supreme Court made no ruling, as Defendant suggests, that the SEC must identify specific victims to whom a disgorgement award should be distributed, that all disgorged funds must be returned to investors, or that a disgorgement award should be limited to those funds that can be returned to investors.

Courts in this District routinely have recognized that disgorgement is measured by Defendant's profits, ***not*** investor losses. *See, e.g., SEC v. Levin*, 849 F.3d 995, 1006 (11th Cir. 2017) (affirming disgorgement award because "the district court properly based the disgorgement upon [defendant's] gains, not investors' losses."); *SEC v. U.S. Pension Trust Corp.*, No. 07-22570-CIV-Martinez, 2010 WL 3894082, *23 (S.D. Fla. Sept. 10, 2010) ("The disgorgement amount should be calculated by measuring illegal profits, not an amount needed to reimburse defrauded investors."); *SEC v. Huff,* No. 08–60315–CIV*,* 2010 WL 148232, at *5 (S.D. Fla. Jan. 10, 2010) ("[T]he [disgorgement] inquiry focuses on a defendant's gain, not investors' losses."). This well-established principle has been repeatedly confirmed after *Liu*. *See, e.g., SEC v. Westport Capital Mkts., LLC*, No. 3:17-cv-02064 (JAM), 2021 WL 2801626, at *8 (D. Conn. July 6, 2021) (rejecting the argument that disgorgement would be a "windfall" to investors whom defendants claimed were not harmed by a violation, because disgorgement is

measured by wrongful gain, not investor harm); *CFPB v. Global Fin. Support, Inc.*, Case No. 15-cv-2440-GPC-AHG, 2021 WL 1165078, at *4 (S.D. Cal. Mar. 26, 2021) (explaining that "the full amount lost by consumers may be an appropriate basis for restitution," and that *Liu* "has no bearing on whether restitution . . . must exclusively be calculated by measure of net profits"); *see also Estakhrian v. Obenstine*, No. 19-55459, 2021 WL 2418972, at *2 (9th Cir. June 14, 2021) (*Liu*'s net profit limitation inapplicable in claim for restitution where amount was measured "simply by what was taken from the plaintiff").

Nothing in *Liu* requires the SEC to undertake the significant burden of identifying individual harmed investors or quantifying their losses ***before*** disgorgement is awarded or collected—much less (as Defendant argues) before there is even a finding of liability. "To be sure, [*Liu*] did not create a rule requiring all disgorged funds be returned to investors, or that a disgorgement award be limited to those funds that could be returned to investors." *SEC v. Blackburn*, Case No. 15-2451, 2020 WL 10787527, at *3 (E.D. La. Nov. 3, 2020). Rather, identifying the specific individuals and entities who may receive money in any disgorgement distribution must await entry of a judgment by this Court specifying the amount of disgorgement, as well as a determination of the amount that can be collected. *SEC v. Almagarby*, Case No. 17-62255-CIV-COOKE/HUNT, slip op. at 7 (S.D. Fla. Aug. 16, 2021) [Ex. 4] ("[T]he Supreme Court made no ruling, as Defendants suggest, that the SEC must identify specific victims to whom a disgorgement award should be distributed, or that all disgorged funds must be returned to investors, or that a disgorgement award should be limited to those funds that could be returned to investors.") (citing *Liu*, 140 S.Ct. at 1940).

This Court should not sanction the SEC—***before*** any finding of liability in this matter by the fact-finder—for not adducing evidence that goes solely to the question of how any yet-to-be-

awarded disgorgement amounts will be distributed to investors.

**IV.    The SEC has Complied with Its Discovery Obligations**

Because this Court has "broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged," *First Jersey, Inc.,* 101 F.3d at 1474-75, and is entitled—in connection with its determination of the appropriate remedies following a finding of liability—to elicit additional relevant evidence, Defendant's argument that the SEC has somehow failed to support its disgorgement claim is both premature and incorrect.  The SEC will provide this Court with evidence and argument relevant to the Court's calculation and distribution of disgorgement at the appropriate time.  More importantly, the SEC has timely made ***all*** of the required disclosures concerning its "reasonable approximation" of Defendant's ill-gotten gains and net profits:

*First*, the SEC's Complaint—filed a year and a half ago—placed Defendant on notice that the SEC intends to seek disgorgement of Defendant's ill-gotten gains, should the SEC prevail on its claim of liability.  Complaint ¶ 4 & p.12 (seeking an order that Defendant "disgorge, with prejudgment interest, all ill-gotten gains derived from the activities set forth in this Complaint").  The Complaint alleges that "[b]y engaging in a regular business of buying convertible notes and selling the resulting newly issued shares of microcap stock into the public market, Keener operated as an unregistered securities dealer and ***generated more than $21.5 million in profits***."  *Id.* ¶ 2 (emphasis added); *see also id.* ¶ 8 ("Keener's ***profits*** from this practice were ***approximately $21.5 million***, the majority of which came from the ***spread between Keener's discounted acquisition cost for the stock and the prevailing market price***.") (emphasis added); *id.* ¶ 16 ("Keener sold more than 17.5 billion shares of newly issued stock that he obtained from convertible notes for ***approximately $21.5 million in profits***.") (emphasis added).

Defendant has been on notice since the inception of this case that the SEC intends to seek

disgorgement of Defendant's net profits from the purchase of notes and the sale of shares

relating to the notes.  *Id.* ¶ 8.  The information necessary to calculate this amount is publicly

available or within Defendant's possession, custody, and control.

*Second*—even though Rule 26(a)(1)(A)(iii) only requires disclosure of "damages," and

disgorgement is an equitable remedy[5]—in its Rule 26(a) initial disclosures, the SEC disclosed

that:

> The Commission also seeks monetary relief in the form of
> ***disgorgement*** and civil penalties.  The disgorgement is based upon
> the ***amount of net ill-gotten gains Defendant obtained from the
> illegal acts alleged in the Complaint***, along with pre-judgment
> interest.  ***The Commission estimates that amount to be $20
> million.***
>
> \* \* \* \*
>
> At this time, the Commission estimates that ***Defendant's
> pecuniary gain from the activity alleged in the Complaint is $20
> million, while acting as an unregistered dealer.***  The Commission
> reserves its right to amend these calculations and methods based on
> discovery to be conducted in this case.

Plaintiff's Initial Disclosures at 2-3 (July 20, 2020) [ECF No. 69-2] (emphasis added).  Thus, in

its Rule 26(a) initial disclosures—served on Defendant on July 20, 2020 (almost exactly one

month after the Supreme Court's *Liu* decision)—the SEC apprised Defendant of its intent to seek

---

[5]  Contrary to Defendant's assertion, by voluntarily making this disclosure, the SEC did not "concede[] that it was required to disclose information about its disgorgement demand under Rule 26."  Def. MIL at 9.  The SEC's disclosure expressly states that it does not seek "damages."  Plaintiff's Initial Disclosures at 2 (July 20, 2020) [ECF No. 69-2].  "Rule 26(a)(1)(A)(iii) does not apply to disgorgement or civil penalties, as neither are a damages remedy."  *SEC v. Montano*, Case No: 6:18-cv-1606-Orl-31GJK, 2019 WL 2254946, *3 (M.D. Fla. Mar. 5, 2019) (declining to require the SEC to amend its initial disclosures to provide a computation of damages) (citing *United States v. Stinson*, No. 6:14-CV-1534-ORL-22TBS, 2016 WL 8488241, at *7 (M.D. Fla. Nov. 22, 2016); *SEC v. Razmilovic*, No. CV-04-2276, 2010 WL 2540762, at *2 (E.D.N.Y. June 14, 2010)).

"net ill-gotten gains," from Defendant's unregistered dealer activity.  The SEC's use of the word

"net" makes clear that the SEC's reasonable approximation of the amounts realized by

Defendant from his unlawful trading activity may be offset by other amounts, the magnitude of

which is in Defendant's possession, custody, or control.  *Liu*, 140 S.Ct. at 1949-50 ("Courts may

not enter disgorgement awards that exceed the gains made upon any business or investment,

when both the receipts and payments are taken into the account.") (internal quotation marks and

citation omitted).

     *Third*, in its document and interrogatory responses, the SEC responded to Defendant's

requests for production concerning both disgorgement and victims.  In response to a document

request asking the SEC to produce "SEC Guidance"[6] concerning the calculation of

disgorgement, the SEC told Defendant that, "[a]ny publicly available SEC and Division guidance

related to disgorgement calculations would be available on the SEC website and in the form of

SEC rule releases.  The parties have equal access to publicly available materials."  *See* Ex. 1,

Plaintiff's Responses and Objections to Defendant's First Set of Requests for Production of

Documents at 7-8 (Oct. 13, 2020).  In response to a request concerning the SEC's calculation of

Defendant's profits from unlawful dealer activity, the SEC told Defendant that the SEC's

reasonable approximation of Defendant's net profits was based on ***Defendant's*** own business

records, to which Defendant has equivalent or better access than the SEC.  *See* SEC's Responses

to Defendant's Fourth Set of Interrogatories at 3 (July 16, 2021) [ECF No. 69-12] ("Mr.

---

     [6] Defendant defined "SEC Guidance" as "all current and prior SEC presentations, publications, statements, speeches, testimony, releases, no-action letters, letters denying no-action, webpages, Frequently Asked Questions (FAQs), the Guide to Broker-Dealer Registration, email or telephone guidance provided by the Division of Trading and Markets or Corporation Finance, and any other letters, staff interpretations, or advice."  Defendant's First Request for Production of Documents at 2 (Sept. 11, 2020) [ECF No. 69-5].

Keener's own documents, including but not limited to JMJ-LIT-008-000001, identify most, if

not all, of the transactions in which Mr. Keener sold stock (and the related issuers) at issue in the

Complaint.  The counter-parties to such transactions will be identified using the techniques

discussed in the deposition of Robert Nesbitt.").  In response to an interrogatory seeking

disclosure concerning the "victims" of Defendant's wrongdoing, the SEC stated:

> The interrogatory—seeking the names of each victim and the facts
> supporting their status as victims—is irrelevant to whether JMJ is
> liable for the unregistered dealer charge in this case.  The SEC
> need not identify even one victim by name to prove that Defendant
> was in the business of buying and selling securities and, therefore,
> was required to register as a dealer or to secure remedies for such a
> violation.  Reliance, victims, and losses are not elements of the
> unregistered dealer charge, hence the information sought in this
> interrogatory is not necessary to any claim or defense and is,
> therefore, not proportional to the needs of this case.  At the very
> least, seeking specific victim information is premature.  Without
> waiving these objections, and even if such information were
> relevant and proportional, to the extent that *victims* would need to
> be identified by name, they ***are the counter-parties to the sales of***
> ***newly-issued stocks that Defendant sold after making***
> ***conversions of convertible notes***.

SEC's Responses to Defendant's First Set of Interrogatories at 2-3 (Jan. 22, 2021) [ECF No. 69-

11] (emphasis added).  The SEC's responses are not deficient.

*Fourth*, the SEC's Market Surveillance Specialist, Robert Nesbitt, and rebuttal expert, Dr.

Taveras, fully and truthfully answered all questions posed to them at their depositions concerning

disgorgement, counterparties, and investor harm.  *See* Ex. 2, Deposition Tr. of Robert Nesbitt

(June 25, 2021); Ex. 3, Deposition Tr. of Carmen A. Taveras, Ph.D. (July 27, 2021).

While acknowledging that he has not yet conducted the analysis in this specific case

(because the appropriate time to do so is following the Court's disgorgement determination), Mr.

Nesbitt detailed for Defendant the manner in which he determines the counterparties in SEC

enforcement matters, to enable the SEC's Office of Distributions to return disgorged amounts to

injured individuals and entities:

- "So as in any case that I do here, if somebody asks me to look at trading . . . I will typically look at bluesheet data, I will look at the internal trading records.  I'll look at account statements . . . potentially bank statements.  Whatever exists in the case file." Ex. 2 (Nesbitt Tr.) at 51.

- "I would look at every account that [Defendant] had . . . whether it would involve an individual or an entity.  . . . I would identify each account and I would look at the sales that occurred into the market.  From there, I would ask . . . the SEC attorneys what specific information they were looking for . . . from the buy-side.  And I can get as granular . . . as necessary."  *Id.* at 54.

- "Generally what I would do in that area [to identify counterparties] is . . . I would again look at the sellers [on] the blue sheets . . . I would look at something like a trade inquiry report and I would essentially endeavor to combine the two so that you would identify counterparties to the trades. . . .  [I]t depends on the level of detail needed.  But those are the two primary tools that would be needed."  *Id.* at 74.

- "Q:  So you would match up the trades . . . you would match up Mr. Keener's sales with a buyer on the other side . . . how would you match that up?  A:  Time stamp, date, quantity, price of the trade and the firm involved."  *Id.* at 77-78.

- "Q:  If you have all the buys for a security for, let's say a three-year time period . . . how would you use that data to match it up with . . . Mr. Keener's sales?  A:  Again, I can answer in general what I have done in the past . . . take someone like Mr. Keener's sales and . . . put them in a chronological . . . order and . . .  I would populate that onto the chronological list, the trade inquiry report.  And then I would populate all the buy-side

14

customers as well.  And you would be able to match up.  If that was necessary where you

needed to do an exact counterparty like that, that's how I would do it . . . ." *Id.* at 81-82.

- "Counterparty would be the exact . . . person on the other side of a trade. . . .  [T]here

   would typically be a market maker and then another retail customer on the other side of

   the trade.  Market maker is typically in the middle of the transaction and . . . oftentimes

   between retail customers." *Id.* at 82-83.

Dr. Taveras—who is offered in rebuttal to Defendant's experts—likewise answered all

questions posed to her concerning disgorgement and investor harm, while acknowledging that

she has not been asked to conduct an analysis in connection with an as-yet-to-be-awarded

disgorgement amount.  *See generally* Ex. 3 (Taveras Tr.); *id.* at 254-55; Plaintiff Securities and

Exchange Commission's Memorandum of Law in Opposition to Defendant's Motion to Exclude

Rebuttal Expert Report of Dr. Carmen Taveras [filed concurrently herewith].  Because Mr.

Nesbitt and Dr. Taveras answered Defendant's questions, Defendant cannot argue that the SEC

has failed to comply with its discovery obligations merely because Defendant is dissatisfied with

the answers.

*Finally*, in the SEC's affirmative motion for summary judgment and the accompanying

statement of material facts, the SEC details Defendant's volume of business and profit from his

unlawful unregistered dealer activity.  *See* SEC SJ Mtn. at 8-9 [ECF No. 68]; SEC SMF ¶¶ 27-37

[ECF No. 67]; *see also* Declaration of Carmen A. Taveras, Ph.D., in Support of Plaintiff's

Motion for Summary Judgment [ECF No. 67-11] ("Taveras Decl.") (summarizing certain

information produced by Defendant relating to his convertible note transactions).  Based on

information produced by Defendant (Taveras Decl. ¶ 3 [ECF No. 67-11]), and Defendant's own

testimony (SEC SMF ¶¶ 34-35 [ECF No. 67]), the SEC establishes that it is undisputed that:

> Between July 2010 and April 2018, Defendant bought more than **272 convertible notes** with **201 different issuers**.  To purchase the notes, and related warrants, Defendant made payments to the issuers totaling approximately **$52 million**.  Defendant converted these notes on **2,414 occasions** and received more than **38 billion shares** of newly issued stock directly from the issuers.  He sold those shares into the market through more than **16,000 transactions** for **gross proceeds of approximately $93.5 million**.
>
> During the period March 24, 2014 through January 31, 2018, Defendant's **net proceeds** from selling approximately 33 billion shares of stock converted from notes, and warrant agreements bundled with the notes, totaled approximately **$34 million**.  **Sixty-two percent (62%)** of these net proceeds were from selling stock converted from notes; **17%** were from selling stock received from issuers as payment for outstanding note balances where the parties did not employ the conversion mechanism of the notes (also known as "settlements"); and **6%** were from selling stock from "bonuses" associated with notes.  Less than one percent of these net proceeds derived originally from or were tied to his acquisition of convertible notes.
>
> Defendant had **net income of approximately $33 million** during this period after accounting for proceeds from original issue discounts, interest, and penalties as well as write-offs and other losses.
>
> Defendant stated that "**50 to 100 percent would be a reasonable . . . estimate**" of Defendant's profit margin on convertible notes (*i.e.*, the ratio of Defendant's profit from a convertible note to his acquisition cost."  Despite testifying that Defendant continues to engage in the business of buying and selling securities.

SEC SJ Mtn. at 8-9 (emphasis added).  Following a finding of liability, it will be a simple arithmetic exercise for the SEC to use these undisputed facts concerning Defendant's unregistered dealer activity—based on Defendant's own documents and testimony—to calculate a reasonable approximation of Defendant's ill-gotten gains subject to disgorgement.

In sum, at all times, the SEC has complied with its discovery obligations under Rule 26(a).  The SEC has disclosed to Defendant that, following a finding of liability, it intends to seek disgorgement based on Defendant's net profits.  The SEC has further disclosed to

Defendant that it may reach a reasonable approximation of this amount through reliance on Defendant's own documents and testimony.  Moreover, in connection with its determination of remedies, this Court may (in its discretion) permit the parties to provide briefs, undertake additional discovery, or conduct an evidentiary hearing.  Defendant's motion should be denied.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the SEC respectfully requests that this Court deny Defendant's motion *in limine*.


DATED:    August 27, 2021                    Respectfully submitted,


By:

 /s/Joshua E. Braunstein
Joshua E. Braunstein
Antony Richard Petrilla
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-8470
Braunsteinj@sec.gov

**Lead Attorney**
**Attorney to Be Noticed**

**ATTORNEYS FOR PLAINTIFF**
**SECURITIES AND EXCHANGE**
**COMMISSION**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2021, I caused the Plaintiff Securities and Exchange Commission's Memorandum of Law in Opposition to Defendant's Motion *In Limine* to Exclude Any Evidence Regarding Alleged Victims, Counterparties, or Harm to be served on all counsel of record in this case through the Court's CM/ECF system, which automatically sends notices to counsel of record in this case.

 /s/ Joshua E. Braunstein
 Joshua E. Braunstein
**ATTORNEY FOR PLAINTIFF**
**SECURITIES AND EXCHANGE**
**COMMISSION**