UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:20-CV-21254-BLOOM/LOUIS

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

v.

JUSTIN W. KEENER D/B/A JMJ
FINANCIAL,

                Defendant.

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO EXCLUDE REBUTTAL EXPERT REPORT OF DR. CARMEN TAVERAS**

Defendant Justin W. Keener respectfully files this reply in support of his motion to exclude the testimony of the SEC's proffered rebuttal expert, Dr. Carmen Taveras, filed on August 13, 2021 (ECF No. 66, the "Motion"). The SEC's Opposition (ECF No. 85, "Opp.") was filed on August 27, 2021.

## I.     INTRODUCTION

The SEC has put all of its eggs in one basket. Specifically, the SEC hopes that Mr. Keener's experts will not be testifying, and thus the question of whether Dr. Taveras offers even one admissible expert opinion will not need to be addressed. But this Motion is about Dr. Taveras, and in fact, she does not offer even one admissible opinion. The SEC does not effectively dispute the serious flaws with her rebuttal report. She offers nothing more than one conclusory assertion regarding Dr. George Oldfield. In response to the reports of Dr. Stewart Mayhew and Mr. Jason Flemmons, she presents brand-new theories regarding the impact of Mr. Keener's transactions and indeed the very transactions at issue in the case. These theories conflict with the SEC's prior pleadings and cannot be presented through a rebuttal expert report. Her report and testimony should be excluded.

Dr. Taveras's two-paragraph "rebuttal" to Dr. Oldfield's lengthy report does not even have the veneer of an expert opinion. The SEC asks that she be allowed to tell the jury that Dr. Oldfield's report contains "no relevant economic analysis"—not because she has the right to pronounce on relevance (she does not); not because she has a comprehensive or well-supported explanation of that opinion (she does not); but because she has a good resume. Of course, the law does not allow that.

Her "rebuttal" to Dr. Mayhew should also be excluded, based on the SEC's own concessions. Specifically, the SEC only asks that her response to Dr. Mayhew be admitted if he testifies to the jury. Opp. at 2. But Mr. Keener does not seek for Dr. Mayhew to testify to the jury.

1

Instead, his testimony is relevant for the Court's consideration of the SEC's requested remedies. *See* Def.'s Opp. to SEC's Omnibus *Daubert* Mot. ECF No. 84, at 17. Thus, Dr. Taveras's response to Dr. Mayhew—regardless of the substance—is irrelevant. Her "rebuttal" should also be excluded because it is not a rebuttal at all, and instead presents a new and different theory that contradicts the SEC's other disclosures during discovery. While the SEC claims that it should be allowed to do this because both reports broadly concern disgorgement, the SEC is wrong. A rebuttal expert report that presents a new theory that should be in a party's case-in-chief is improper and must be excluded. *See, e.g., In re Trasylol Prods. Liab. Litig.*, 2010 WL 4065436, at *2 (S.D. Fla. Aug. 6, 2010) ("Rebuttal testimony should not be allowed, if it logically belongs in the case-in-chief and goes to the case's central issue[s].") (cleaned up).

The same is true for her "rebuttal" to Mr. Flemmons. The SEC does not dispute that Dr. Taveras's report sought to radically expand the scope of the transactions at issue in the case in her response to Mr. Flemmons. While the SEC previously maintained the transactions at issue were "the sales of newly-issued stocks that [Mr. Keener] sold after making conversions of convertible notes," Dr. Taveras changed the scope to "all . . . inflows . . . resulting from convertible note activity" (a phrase that is never defined). *Compare* Mot. Ex. 4 at 3; *with* Mot. Ex. 1 ¶ 18. The SEC claims she should be allowed to fundamentally alter the transactions at issue in the case because again, both reports broadly concern disgorgement. Not so. The proper avenue was to replead the case; the SEC did not do so. It cannot seek to fundamentally alter the allegations in a case through a rebuttal expert report.

Finally, the Court should also exclude the declaration from Dr. Taveras that the SEC first disclosed as an attachment to its summary judgment motion. *See* Pl.'s Statement of Material Facts Ex. 11 ECF No. 67-11 ("Taveras Decl."). This declaration is nothing more than an affirmative expert report disclosed six weeks late, after the close of all discovery, and which the SEC seeks to

2

sneak through as a "fact summary" declaration without subjecting it to the strict scrutiny mandated by *Daubert* and Federal Rule of Evidence 702. The declaration purports to opine on net proceeds, net income, and other accounting concepts improper for a lay witness. Not to mention Dr. Taveras in the declaration purports to summarize data from a spreadsheet containing dozens of worksheets with hundreds of thousands of cells of information, without understanding the basic organization and limits of the data. All of her testimony must be excluded.

## II.   ARGUMENT

### A.  Dr. Taveras's Opinion Regarding Dr. Oldfield's Report Should Be Excluded.

Dr. Oldfield is an expert in securities markets. He has decades of experience as a business school professor, conducting research and teaching graduate-level courses in market making, trading, and investing activities. Mot. Ex. 6 ¶¶ 4-5. He also has decades of experience as a practitioner in the securities industry. *Id.* ¶ 3. Based on this experience and additional research, Dr. Oldfield analyzed Mr. Keener's activities and compared them to the activities of other persons and firms involved in buying and selling securities. *Id.* §§ VII-IX. In this analysis, he applied research from the academic field of market microstructure, including the nature and roles of different market participants, and concepts relevant to understanding dealers such as a "bid-ask spread"; he applied knowledge he gained as a practitioner; and he conducted a study of extensive public data concerning registered dealers. *Id.* Based on this analysis, Dr. Oldfield concluded that Mr. Keener did not share characteristics with dealers in the industry, and instead shared characteristics with many types of investors who are not registered dealers. *Id.* §§ VII-VIII.

Dr. Taveras's "rebuttal" to Dr. Oldfield's report was two paragraphs of unsupported speculation that did not even pretend to constitute an expert opinion. Mot. Ex. 1 ¶¶ 43-44. Her "rebuttal" boiled down to a conclusory assertion that Dr. Oldfield did not provide any "relevant economic analysis." *Id.* ¶ 43. But of course, it is a job for the Court, not for the SEC's expert, to

3

determine what is relevant. *See* Fed. R. Evid. 401 ("Test for Relevant Evidence"); *see also Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1365 (S.D. Fla. 2015) (excluding expert report that drew impermissible legal conclusions).

The SEC's Opposition does not change the analysis. The SEC still maintains that, despite relevance being a legal issue for the Court, Dr. Taveras should nevertheless be permitted to opine to the jury that Dr. Oldfield's opinion "does not provide any relevant economic analysis." Opp. at 16. Why? Not because there is a well-reasoned or supported opinion (there is none). But solely because Dr. Taveras has good "academic credentials" and has spent seven years as an SEC economist. Opp. at 16. *Daubert* exists precisely to eliminate such tactics. *See, e.g.*, *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it'.") (quoting Fed. R. Evid. 702 advisory committee's notes to 2000 amendments). To the extent the SEC argues Dr. Taveras should be able to argue Dr. Oldfield's report is not "economic" in nature, the same problem remains. Her opinion would be nothing more than a conclusory assertion parroting the SEC's *Daubert* motion. The Court should exclude any testimony from Dr. Taveras concerning Dr. Oldfield.

### B. Dr. Taveras's Opinion Regarding Dr. Mayhew's Report Should Be Excluded.

Dr. Mayhew is an economist with 25 years' experience as an academic, regulator, and consultant. Mot. Ex. 7 ¶¶ 1-3. He spent eight years at the SEC, rising up to the level of Deputy Chief Economist. *Id.* ¶ 2. His report addressed the SEC's contention that the "victims" of the conduct alleged by the SEC in this case are "'the counter-parties to the sales of newly-issued stocks that [Mr. Keener] sold after making conversions of convertible notes.'" *Id.* ¶ 37 (quoting Mot. Ex. 4 at 3). Dr. Mayhew presented a detailed analysis of this allegation and concluded that there was "no economic basis" for concluding that any counterparties were harmed by Mr. Keener's transactions. *Id.* ¶ 38. Instead, Mr. Keener's counterparties were typically registered broker-dealers acting as over-

the-counter market makers, and there is no reason to believe these sophisticated market participants purchased stock from Mr. Keener at an artificially inflated price. *Id.* ¶¶ 40-43. Nor is there any evidence that the stock price of any of the companies at issue did not already reflect Mr. Keener's investments as issuers were obligated to disclose these investments in public filings. *Id.* ¶¶ 44-45. Counterparties may have even made money from trading with Mr. Keener, and there is no evidence that any sold at a loss. *Id.* ¶¶ 46-51.

The Court should exclude Dr. Taveras's rebuttal to Dr. Mayhew. First, the SEC concedes this rebuttal is only relevant to the extent Dr. Mayhew testifies for the jury. *See* Opp. at 7 ("The SEC submits Dr. Taveras' rebuttal expert testimony solely in response to the proposed testimony of Defendant's experts, should this Court permit them to testify **at trial**.") (emphasis added). However, Mr. Keener will not present Dr. Mayhew's testimony to the jury at trial. *See* Def.'s Opp. to SEC's Omnibus *Daubert* Mot. ECF No. 84, at 17. Instead, if the Court considers the SEC's request for disgorgement, his testimony is relevant to whether the SEC has met its burden under *Liu v. SEC* of demonstrating that any disgorgement will be awarded to "victims." 140 S. Ct. 1936, 1945-46 (2020). If there are no victims, as Dr. Mayhew's testimony demonstrates, the SEC cannot obtain disgorgement at all. *Id.*

Further still, the Court should exclude Dr. Taveras's rebuttal to Dr. Mayhew because it is a late affirmative expert report disguised as a rebuttal. Dr. Taveras did not actually rebut Dr. Mayhew—that is, she did not actually opine on the impact Mr. Keener's transactions had on his counterparties. Instead, the SEC took her rebuttal report as an opportunity to announce a brand-new theory on who the "victims" are in this case. For instance:

- The SEC previously alleged that the "victims" in this case were Mr. Keener's "counter-parties." Mot. Ex. 7 ¶ 37. By contrast, Dr. Taveras claimed the "victims" were other shareholders who "bought and held" the shares Mr. Keener sold,

5

- regardless of whether they were Mr. Keener's counter-parties or downstream investors. Mot. Ex. 1 ¶ 41.

- The SEC previously failed to identify even a single one of Mr. Keener's convertible note investments that was not disclosed in an SEC filing, despite an interrogatory asking for that exact information. *See* Mot. Ex. 13 at 3-4. Yet, the SEC used Dr. Taveras' rebuttal report to raise brand-new allegations that minor details about Mr. Keener's conversions of convertible notes were not timely disclosed by issuers in a few instances. Mot. Ex. 1 ¶¶ 24-26.

The SEC does not dispute that her rebuttal report announces a brand-new theory of harm. Instead, the SEC claims that is acceptable because her report is still about the same general topic: disgorgement. That is incorrect. *See, e.g.*, *1550 Brickell Assocs. v. QBE Ins. Corp.*, 2010 WL 1947636, at *2 (S.D. Fla. May 13, 2010) (excluding rebuttal experts who testify "on entirely new subject areas cloaked under the guise of the more general topic of 'causation'"); *Lebron v. Royal Caribbean Cruises, Ltd.*, 2018 WL 3583002, at *2 (S.D. Fla. July 26, 2018) ("a rebuttal opinion should not be used to advance new arguments or present new evidence") (cleaned up). Moreover, the SEC concedes that Dr. Taveras's analysis of the stock price of the companies in which Mr. Keener invested **does not show any causal connection to Mr. Keener's investments**. Opp. at 17-18. Thus, her analysis is intended not to help the jury, but to confuse it. *Frazier*, 387 F.3d at 1263 ("district courts must take care to weigh the value of [expert testimony] against its potential to mislead or confuse" the jury).

The SEC's last argument is that the late disclosure of what is in effect an affirmative expert report was substantially justified or harmless. Opp. at 14 n.6. That is false. The SEC does not offer any justification for the late disclosure, let alone a "substantial" one as the law requires. Moreover, the conduct was by definition harmful—it was a new theory on a key element that the SEC must prove as part of its case-in-chief. And it is a new theory that Mr. Keener never had an opportunity to take discovery on or rebut, and thus must be excluded. *See, e.g.*, *Wreal, LLC v. Amazon.com, Inc.*, 2016 WL 8793317, *3 (S.D. Fla. Jan. 7, 2016) ("[i]f a party attempts to advance new arguments

6

through a rebuttal expert, then the overwhelming weight of authority is that preclusion is required and mandatory absent some unusual or extenuating circumstances.") (cleaned up).

### C. Dr. Taveras's Opinion Regarding Mr. Flemmons's Report Should Be Excluded.

Mr. Flemmons is a forensic accountant with 25 years' experience at the SEC and in private practice. Mot. Ex. 8 ¶¶ 5-8. In his report, he compared the SEC's claims concerning Mr. Keener's alleged profits to Mr. Keener's financial data, transaction documents, and accounting records. *Id.* § IV. Specifically, the SEC alleged Mr. Keener generated $20 million or more in profits. *See* Compl. ECF No. 1, ¶ 2 ("more than $21.5 million in profits"); Mot. Ex. 2 at 3 ("net ill-gotten gains" were approximately "$20 million"). At the same time, the SEC alleged that the activity that generated such profits was "buy[ing] convertible notes . . . from penny stock issuers, convert[ing] the notes into newly issued shares of stock, and sell[ing] those shares into the public market." Compl. ECF No. 1, ¶ 2; *see also* Mot. Ex. 4 at 2-3 (sales at issue are "sales of newly-issued stocks that [Mr. Keener] sold after making conversions of convertible notes"); Opp. at 1 (activity at issue is "purchasing convertible notes . . . converting the notes into stock . . . and selling the resulting newly issued shares"). Accordingly, Mr. Flemmons analyzed the SEC's numbers, and concluded that they were flawed because they (1) included revenue generated from sources other than sales of converted shares; and (2) did not account for expenses. Mot. Ex. 8 § IV.

Dr. Taveras's "rebuttal" was not a rebuttal at all. Instead, the SEC used Dr. Taveras's report to, for the first time, expand the transactions at issue far beyond sales of converted stock to include all of Mr. Keener's investment activity regardless of the type of investment or whether it shared any features with converted stock. The SEC's pleadings only take issue with Mr. Keener's sales of converted stock, but Dr. Taveras "do[es] not agree" that the profits calculation should be so limited. Mot. Ex. 1 ¶ 18. Specifically, her view was "all . . . inflows . . . resulting from convertible note activity" should be included, but this phrase is never defined. *Id.* She seeks to include stock

7

received through settlements with issuers and even warrant transactions, which are not connected to a conversion at all. *Id.* But a rebuttal expert report is not the place to stake out brand-new legal positions that directly conflict with the pleadings in this case. *See, e.g., Wreal*, 2016 WL 8793317, at *3 (excluding new theory raised for the first time in rebuttal expert report); *A.M.J. v. Cty. of Los Angeles*, 2016 WL 10672216, at *3 (C.D. Cal. Dec. 8, 2016) (rebuttal expert testimony "is not an opportunity for the correction of any oversights in the plaintiff's case in chief.") (cleaned up).[1]

The SEC argues that her opinion on what transactions are relevant to the case is not a legal opinion but is instead "based on her economic expertise and seven years in the SEC's Division of Economic Risk Analysis." Opp. at 18-19. How? The SEC never says. Nor could it—of course, the question of what sales are at issue (*i.e.*, which sales the SEC alleges caused Mr. Keener to become a securities dealer) is a question for the Court based on the SEC's pleadings; not one that can be radically expanded through a rebuttal report. Not to mention the transactions she included— converted stock, warrants, and issuer settlements—are all very different and cannot be lumped together. Mot. Ex. 1 ¶ 12. Some of these investments do not concern newly issued shares. Def.'s Statement of Material Facts ISO Mot. for Summ. J. ECF No. 73, ¶ 33. Some of these investments do not involve a market-adjustable discount. Def.'s Counterstatement of Disputed Facts in Resp. to Pl.'s Statement of Material Facts ECF No. 91, ¶¶ 12, 14-15, 36. Some of them do not even involve a conversion at all. *Id.* ¶¶ 22, 36.

Dr. Taveras's rebuttal to Mr. Flemmons's expense analysis fares no better. Her report was silent as to the actual conclusion Mr. Flemmons drew—that the SEC's numbers were flawed

---

[1] The SEC's cases do not support its claim that the scope of Dr. Taveras's rebuttal is proper, because those cases did not involve fundamental changes to the pleadings in the case. *See* Opp. at 13 (citing *Adacel, Inc. v. Adsync Tech., Inc.*, 2020 WL 4588415, at *3 (M.D. Fla. July 9, 2020) (concerning the use of one phrase); *Plantation Pipe Line Co. v. Assoc. Electric & Gas Ins. Servs. Ltd.*, 2011 WL 13143562, at *1-2 (N.D. Ga. Nov. 10, 2011) (concerning change in test methods)).

because they did not account for any business expenses. After reviewing tax and accounting data, as well as voluminous expense records, Mr. Flemmons concluded that Mr. Keener incurred approximately $12.4 million in business expenses during the Relevant Period, none of which were accounted for in the SEC's profit numbers; but Mr. Flemmons did not opine on whether any particular expense was incurred in connection with Mr. Keener's convertible note investments. Mot. Ex. 8 ¶ 46. Dr. Taveras in her rebuttal report did not disagree with his conclusion that the SEC had not accounted for any of these expenses. Instead, she opined that only 48% of these expenses could be subtracted to determine Mr. Keener's net income from the sales of converted stock. Mot. Ex. 1 ¶ 16.

This opinion must be excluded because (1) Mr. Flemmons did not opine on what expenses should be excluded; and (2) her opinion is based on sheer speculation that if Mr. Keener generated 48% of his proceeds from sales of converted stock, then 48% of his expenses would be related to that endeavor as well. *Id.* ¶¶ 16-17. But that is false, because the convertible note investments were far more resource intensive than any other investments. Ex. 1 (6.6.19 Keener Tr.) at 54:23-57:13 (Mr. Keener had to "have employees to help administer them," and "it became very burdensome and was not worth" the "hassle."). In any event, answering the question of what expenses were connected to the convertible note investments requires more than the speculation and guesswork that Dr. Taveras employs.

### D. Dr. Taveras's "Fact Summary" Declaration Should be Excluded.

Finally, the SEC attached a brand-new analysis from Dr. Taveras to its motion for summary judgment that should also be excluded. Taveras Decl. The SEC claims this is a fact witness declaration that purports to "summarize" Mr. Keener's net proceeds and income from the transactions the SEC now alleges are at issue in the case. *See* Opp. at 7 n.3; Taveras Decl. ¶¶ 2, 4. First, this is far more than a mere fact summary; it is a late-disclosed expert report in disguise. Dr.

9

Taveras purports to opine on net income calculations from many different securities transactions, and to summarize hundreds of thousands of pieces of data in one spreadsheet concerning an eight-year period. Taveras Decl. at Ex. 4.

Not only is her declaration an expert report in disguise, it is an untimely one. Specifically, the SEC disclosed it six weeks after the deadline for affirmative expert reports, two-and-a-half weeks after Dr. Taveras's deposition, and ten days after the close of fact and expert discovery. The SEC thus robbed Mr. Keener of any ability to depose Dr. Taveras about the declaration or rebut it with his own expert report. "Federal courts routinely strike expert reports or exclude expert testimony which is not timely disclosed." *Kakawi Yachting v. Marlow Marine Sales, Inc.*, 2014 WL 12639973, at *3 (M.D. Fla. Oct. 28, 2014).

Even if the declaration had been disclosed timely as an affirmative expert report, it should be excluded because it is not reliable. Dr. Taveras relies on two documents to purportedly differentiate between several types of transactions. Taveras Decl. ¶¶ 4-6. But Mr. Keener's accounting assistant has already testified that the two documents in question do not contain enough information to distinguish between transaction types. Ex. 2 (6.28.21 Aucoin Tr.) at 166:17-167:9, 189:18-190:2. The same is true for Dr. Taveras' opinion on net income—the two documents she relied on do not contain any expense data, and thus cannot support a net income calculation. *Id.* at 180:20-25, 306:13-307:4; Ex. 3 (8.2.21 Flemmons Tr.) at 122:3-8. Unreliable analyses must be excluded. *See Alifax Holding SPA v. Alcor Sci. Inc.*, 2021 WL 3911258, at *2 (D.R.I. Sept. 1, 2021) (entirely excluding unreliable testimony from witness offered in an expert and summary capacity.).

### III. CONCLUSION

For the foregoing reasons, and for the reasons stated in the Motion, Mr. Keener respectfully requests that his Motion be granted and that Dr. Taveras's rebuttal report and testimony be excluded.

Dated: September 3, 2021                    Respectfully submitted,

                                            **GREENBERG TRAURIG LLP**

                                            /s/ *Benjamin G. Greenberg*

                                            **Benjamin G. Greenberg**
                                            Florida Bar No. 192732
                                            greenbergb@gtlaw.com
                                            333 SE 2nd Avenue Suite 4400
                                            Miami, FL 33131
                                            Telephone: (305) 579-0850
                                            Facsimile: (305) 579-0717

                                            *-and-*

                                            **BUCKLEY LLP**

                                            **Christopher F. Regan (*pro hac vice*)**
                                            **Veena Viswanatha (*pro hac vice*)**
                                            **Adam Miller (*pro hac vice*)**
                                            2001 M Street NW, Suite 500
                                            Washington, DC 20036
                                            Telephone: (202) 349-8000
                                            Facsimile: (202) 349-8080
                                            cregan@buckleyfirm.com
                                            vviswanatha@buckleyfirm.com
                                            amiller@buckleyfirm.com

                                            *Counsel for Defendant Justin W. Keener*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served via ECF a true and correct copy of the foregoing Reply in Support of Motion to Exclude Rebuttal Expert Report of Dr. Carmen Taveras to the following:

Joshua E. Braunstein (Special Bar No. A5502640)
Antony Richard Petrilla (Special Bar No. A5502641)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-8470
Braunsteinj@sec.gov

*Attorneys for Plaintiff*
*Securities and Exchange Commission*

This, the 3rd day of September, 2021

/s/ *Benjamin G. Greenberg*