UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:20-CV-21254-BLOOM/LOUIS

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

v.

JUSTIN W. KEENER D/B/A JMJ
FINANCIAL,

                Defendant.

**DEFENDANT JUSTIN W. KEENER'S REPLY IN SUPPORT OF HIS MOTION *IN LIMINE* TO EXCLUDE ANY EVIDENCE REGARDING ALLEGED VICTIMS, COUNTERPARTIES, OR HARM**

Defendant Justin W. Keener respectfully files this reply memorandum in support of his Motion in Limine to Exclude Any Evidence Regarding Alleged Victims, Counterparties, or Harm (ECF No. 69, "Mot."), filed on August 13, 2021.  Plaintiff Securities and Exchange Commission ("SEC") filed its Opposition to the Motion in Limine (ECF No. 86, "Opp.") on August 27, 2021.

## I. INTRODUCTION

This motion is about the SEC's request for the remedy of disgorgement, if Mr. Keener is found liable for violating the Securities Exchange Act of 1934's registration requirement.  In his Motion in Limine, Mr. Keener asks that the SEC be prohibited from relying on evidence not previously disclosed in support of its request for disgorgement.  In its Opposition, the SEC denies that it was required to disclose such information.  In so doing, the SEC completely misstates the significance of the Supreme Court's recent ruling in *Liu v. SEC*, 140 S. Ct. 1936 (2020).

In *Liu*, the Supreme Court imposed important limits and conditions on the SEC's ability to obtain disgorgement in civil actions like this one.  As relevant here, the Court noted two requirements before courts can award disgorgement to the SEC: "The Court holds today that a disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under [the Exchange Act]." *Id.* at 1940 (citing 15 U.S.C. § 78u(d)(5)).

The SEC dismisses the significance of this holding, as though the Supreme Court was simply restating the obvious.  Opp. at 7 (referring to "*Liu*'s exploration of age-old equitable principles"). That is plainly incorrect—whatever the state of the law was before *Liu*, the Court's opinion makes clear that the SEC now must establish that these two conditions are met before a Court can award disgorgement.  Thus, the opinion imposes on the SEC burdens of proof on these issues, and of course with burdens of proof come burdens of disclosure.  Mot. at 7-8.

There is no doubt that the SEC failed to fully disclose the information on which it will rely to make the showings required by *Liu*, particularly how it will "return [Mr. Keener's] gains *to wronged*

1

*investors* for their benefit." *Liu*, 140 S. Ct. at 1948 (emphasis added). Instead, the SEC claims that "*Liu* Does Not Change the SEC's Required Disclosures or Burden of Proof." Opp. at 5-10. Failing that, the SEC says that it does not matter because this information relates to remedies and, thus, was outside the scope of discovery. The SEC is wrong on both points and, as a result, its excuses for failing to disclose information about how it will satisfy the *Liu* conditions cannot be accepted.

## II. ARGUMENT

*Liu* imposes two important requirements on the SEC before it can obtain disgorgement: it must show that the disgorged funds will be returned to harmed investors, and it must show that the disgorgement amount does not exceed the defendant's net profits. We address each requirement in turn, and then we address the SEC's effort to improperly prejudice the jury by referring to its calculation of how much money Mr. Keener purportedly made from the investment activity at issue.

### A. The SEC Should Be Precluded From Introducing Evidence of Harmed Investors or "Victims."

#### 1. *Liu Requires the SEC to Prove that Disgorged Funds Will Be Returned to Harmed Investors.*

The issue in *Liu* was whether the SEC can obtain disgorgement in civil actions alleging violations of the federal securities laws. The only source of statutory authority is Section 21(d)(5) of the Exchange Act, which authorizes courts in such cases to award the SEC "equitable relief." 15 U.S.C. § 78u(d)(5). The Court held that disgorgement, which it defined as a remedy that "deprived wrongdoers of their net profits from unlawful activity," could be considered "equitable relief." *Liu*, 140 S. Ct. at 1942 (cleaned up). However, the Court held that there are important limits on this remedy that, if not observed, would transform it into a penalty beyond the statutory authorization for "equitable relief." Specifically, "to avoid transforming an equitable remedy into a punitive sanction, courts restricted the remedy to an individual wrongdoer's net profits *to be awarded for victims*." *Id.* at 1942 (emphasis added); *see also id.* at 1943 ("At the same time courts recognized that

2

the wrongdoer should not profit by his own wrong, they also recognized the countervailing equitable principle that the wrongdoer should not be punished by paying more than a fair compensation *to the person wronged*.") (emphasis added; cleaned up).

The SEC brushes aside the import of this holding, contending that the Supreme Court did not rule "that the SEC must identify specific victims to whom a disgorgement award should be distributed, that all disgorged funds must be returned to investors, or that a disgorgement award should be limited to those funds that can be returned to investors." Opp. at 8. In support, the SEC makes two points. First, it notes that the Supreme Court "reasoned that the 'equitable nature of the profits remedy **generally** requires the SEC to return a defendant's gains to wronged investors for their benefit.'" Opp. at 6 (quoting *Liu*, 140 S. Ct. at 1948) (emphasis added by the SEC). Second, it notes that courts "routinely have recognized that disgorgement is measured by Defendant's profits, **not** investor losses." Opp. at 8 (emphasis in original). Neither argument withstands scrutiny.

First, it is true that the Supreme Court did not foreclose the possibility of exceptions to the requirement that disgorged funds be returned to the harmed investors, noting the possibility that it might be "infeasible to distribute the collected funds to investors." *Liu*, 140 S. Ct. at 1948. But it is clear in context that such a scenario would be an exception to the general rule, with the SEC bearing the burden of establishing that it should apply. The SEC's approach, by contrast, seeks to transform the Court's mere recognition of *the possibility* of an exception into a license **to ignore the requirement altogether**. *Liu*, 140 S. Ct. at 1948-49 ("The parties have not identified authorities revealing what traditional equitable principles govern when, for instance, the wrongdoer's profits cannot practically be disbursed to the victims. *But we need not address the issue here.*") (emphasis added).

The SEC then states that "[e]very court to have considered the question post-*Liu* has held that distributing disgorged funds *to victimized investors* is 'for the benefit of investors' within the meaning of Section 21(d)(5) and *Liu*. Opp. at 7 (emphasis added). This is true—but it proves Mr.

3

Keener's point. The problem with the SEC's request for disgorgement is that it has not established any basis to believe that any funds Mr. Keener disgorges can possibly be distributed "to victimized investors." **In every single one of the ten cases the SEC cites on this point, the court specifically noted that the SEC had identified the actual harmed investors and committed to returning the disgorged funds to them.** *See, e.g., SEC v. Montgomery*, 2021 WL 210749, at *6 (W.D. Tex. Jan. 20, 2021) ("The Commission's request for disgorgement would also be for the benefit of investors, as it is feasible *to distribute those funds to the injured investors*.") (emphasis added; internal citations to *Liu* omitted).[1] **This is exactly what the SEC has not done (and cannot do) here.**

Second, the SEC's insistence that disgorgement is "measured by" Defendant's profits rather than investor losses both misses the point and is directly contradicted by *Liu* itself. The SEC's position misses the point because the issue is not how to "measure" disgorgement (that is, how to

---

[1] The other cases cited by the SEC (Opp. at 7) are as follows: *SEC v. AR Capital, LLC*, 2021 WL 1988084, at *3 (S.D.N.Y. May 18, 2021) (deciding which potential victims were entitled to the disgorged funds, and noting that "[a]s long as the Plan returns the Funds to 'victims,' therefore, it does not run afoul of *Liu*"); *SEC v. Dang*, 2021 WL 1550593, at *7 (D. Conn. Apr. 19, 2021) ("In accordance with *Liu*, this amount shall be distributed by the SEC to the victims, *whose identities are known*, Clients A and B.") (emphasis added); Order, *SEC v. Janus Spectrum, LLC,* 15-cv-00609, ECF No. 272 slip op. at 3 (D. Ariz. Apr. 26, 2021) ("[T]he SEC represented to the Court that it had identified a number of investors and had the ability to distribute the funds, should they be paid, to those investors."); *SEC v. Cope*, 2021 WL 653088, at *3 (S.D.N.Y. Feb. 19, 2021) ("[T]he SEC has averred that it has identified the investors who were wronged by de Maison, and that it intends to return those funds to the investors."); *SEC v. Erwin*, 2020 WL 7310584, at *5 (D. Colo. Dec. 11, 2020) ("[T]he disgorgement is 'awarded for victims' because the SEC represents that it plans to distribute any funds collected from Leyton to investors."); *SEC v. Rinfret*, 2020 WL 6559411, at *6 (S.D.N.Y. Nov. 9, 2020) ("Ordering this disgorgement is consistent with equitable principles, as it was fraudulently obtained from investors and the SEC has represented that *it will use almost the entirety of these funds to compensate those same investors*.") (emphasis added); *SEC v. Curative Biosciences, Inc.*, 2020 WL 7345681, at *6 (C.D. Cal. Oct. 22, 2020) ("[T]he SEC asserts that it intends to distribute the funds to investors harmed by the Alversons' sale of unregistered securities.") (internal quotations omitted); *SEC v. Smith*, 2020 WL 6712257, at *3 (C.D. Cal. Oct. 19, 2020) ("The SEC seeks to return these funds to the 35 victims who lost significant sums of money from Defendants' fraudulent scheme."); *SEC v. Mizrahi*, 2020 WL 6114913, at *2 (C.D. Cal. Oct. 5, 2020) ("The SEC plans to return these funds to Mizrahi's clients in proportion to the amount of their losses.") (internal quotations omitted).

4

determine the precise amount), it is whether disgorgement can be imposed at all given the Supreme Court's holding that the statute requires the remedy to be equitable rather than penal in nature. *Liu*, 140 S. Ct. at 1944 ("While equity courts did not limit profits remedies to particular types of cases, they did circumscribe the award in multiple ways to avoid transforming it into a penalty outside their equitable powers."). And unfortunately for the SEC, the Supreme Court spoke clearly on this point:

> The Government maintains, however, that the primary function of depriving wrongdoers of profits is to deny them the fruits of their ill-gotten gains, not to return the funds to victims as a kind of restitution. . . . But the SEC's equitable, profits-based remedy *must do more than simply benefit the public at large by virtue of depriving a wrongdoer of ill-gotten gains*. To hold otherwise would render meaningless the latter part of § 78u(d)(5).

*Liu*, 140 S. Ct. at 1948 (emphasis added; cleaned up).[2]

Based on the foregoing, there is no doubt that, to be entitled to disgorgement, the SEC must prove that the disgorged funds will be returned to harmed investors, or that there is good reason to excuse the SEC from that requirement. That leaves only the question of whether the SEC's failure to disclose information about this issue during discovery will have any consequences.

---

[2] The cases cited by the SEC (Opp. at 8-9) are not on point. As noted above, the question here is not how to measure the amount of disgorgement, but whether disgorgement is available at all given the SEC's failure to disclose the information on which it will rely to make the showings required by *Liu*. Moreover, several of the cases cited by the SEC pre-date *Liu*. *SEC v. Levin,* 849 F.3d 995, 1006 (11th Cir. 2017); *SEC v. U.S. Pension Trust Corp.,* 2010 WL 3894082, at *23 (S.D. Fla. Sept. 10, 2010); *SEC v. Huff,* 2010 WL 148232, at *5 (S.D. Fla. Jan. 10, 2010). Two others did not even involve the securities laws, whereas the holding in *Liu* was based specifically on the language of the Exchange Act. *CFPB v. Glob. Fin. Support, Inc.,* 2021 WL 1165078, at *4 (S.D. Cal. Mar. 26, 2021); *Estakhrian v. Obenstine*, 2021 WL 2418972, at *2 (9th Cir. June 14, 2021). *SEC v. Westport Capital Mkts., LLC,* 2021 WL 2801626 (D. Conn. July 6, 2021), does post-date *Liu* and involve the securities laws, but in that case (unlike here) the SEC "[made] clear that it intends to distribute that disgorgement to defendants' advisory clients who were deprived of truthful disclosures about defendants' conflicted transactions." *Id.* at *8 (cleaned up). Finally, *SEC v. Blackburn,* 2020 WL 10787527 (E.D. La. Nov. 3, 2020), actually supports Mr. Keener's position because the court there held that "there should be a threshold showing of the feasibility of returning funds to harmed investors before disgorgement is ordered" and that "the SEC has established that there are identifiable victims and that returning disgorged funds is feasible." *Id.* at *3-4. That is precisely the showing that the SEC failed to make (or even attempt to make) here.

### 2. *The SEC's Failure to Disclose Information About How Disgorged Funds Will Be Returned to Investors was Prejudicial and Should Not Be Excused.*

Had the SEC said from the outset of the case that the parties should not conduct discovery on remedies issues unless and until after liability was established, this motion would not have been necessary. Instead, the SEC expressly rejected Mr. Keener's suggestion that discovery be bifurcated and insisted on one calendar for all discovery. Ex. 1 (9.3.2021 Regan Declaration) ¶¶ 3-5.

As a result, the Court entered a scheduling order requiring all discovery to be completed in a single phase, before trial. Order, ECF No. 41, at 2. Accordingly, Mr. Keener issued discovery requests to the SEC, including requests concerning how the SEC would comply with *Liu's* requirement that any disgorgement be "awarded for victims," and prepared his defenses (including expert reports) on issues relating to remedies during the discovery period. The SEC responded to those discovery requests with only the barebones statement that "to the extent that victims would need to be identified by name, they are the counter-parties to the sales of newly-issued stocks that [Mr. Keener] sold after making conversions of convertible notes." Mot. Ex. 10 (Pl.'s Resp. to Def. Interrogs. (1st Set)) ECF No. 69-11, ¶ 1; *see also* Mot. Ex.11 (Pl.'s Resp. to Def. Interrogs. (4th Set)) ECF No. 69-12, ¶¶ 17-18; Opp. at 13. The SEC did not disclose any other information on which it will rely in support of its request for remedies. Mot. at 2-7. Now the SEC says that Mr. Keener "misapprehends . . . the bifurcated nature of SEC proceedings," as though he should have known all along that discovery would in fact be bifurcated. Opp. at 1.[3]

The SEC's failure to be forthcoming about how it intended to litigate this case was unfair and caused unnecessary waste and inefficiency. But more importantly, it has prejudiced Mr. Keener

---

[3] The SEC's suggestion that discovery in SEC proceedings is always or even presumptively bifurcated is unsupported and wrong. *See, e.g., SEC v. Megalli*, 2015 WL 11216815, at *1 (N.D. Ga. Apr. 17, 2015) (agreeing with the SEC that defendant's motion to bifurcate case between liability and remedies should be denied).

by giving the SEC an unwarranted opportunity to tailor its remedies case in response to Mr. Keener's defenses. The SEC does not deserve this unfair substantive advantage, and the only way to prevent it now is to grant Mr. Keener's Motion in Limine to stop the SEC from introducing new remedies-related evidence not previously disclosed.

As detailed in the Motion, the SEC's sole disclosure concerning persons allegedly harmed by Mr. Keener's conduct was its assertion that the "victims" were Mr. Keener's "counter-parties." Mot. at 5. The SEC never went further: it never identified any specific transactions it alleged resulted in harm; it never identified any particular counter-party it alleged was harmed; it never identified the amount by which it alleged anyone was harmed; and it never even identified how anyone was allegedly harmed. *Id.*[4]

Although hampered by the SEC's refusal to fully respond to his remedies-related discovery, Mr. Keener was nevertheless forced to prepare his defenses on this issue because he had no reason to believe that there would be a subsequent remedies-phase of fact or expert discovery. Accordingly, Mr. Keener retained multiple experts to opine on remedies issues. One, Dr. Stewart Mayhew, focused his report on responding to the SEC's contention that Mr. Keener's conduct had harmed the counter-parties to Mr. Keener's sales of stock created from convertible notes. In brief, Dr. Mayhew explained that Mr. Keener's counter-parties were actually all broker-dealers and other sophisticated market participants—Mr. Keener did not have any interactions with retail investors— and that they were not harmed in their transactions with Mr. Keener.

---

[4] The SEC argues that "identifying the specific individuals and entities who may receive money in any disgorgement distribution must await entry of a judgment by this Court specifying the amount of disgorgement, as well as a determination of the amount that can be collected." Opp. at 9. The SEC cites no support for this assertion, because it makes no sense. The "amount of disgorgement" depends on identifying the investors who were harmed by Mr. Keener's conduct. While exactitude is not required, the SEC's approach would, once again, implicitly overrule *Liu's* express requirement that disgorged funds "must do more than simply benefit the public at large by virtue of depriving a wrongdoer of ill-gotten gains." *Liu*, 140 S. Ct. at 1948.

The SEC has no effective response to Dr. Mayhew's report, which all but defeats its request for disgorgement in light of *Liu*. Therefore, the SEC has attempted to change its position. It offered as a rebuttal expert witness an in-house economist, Dr. Carmen Taveras, who opined that the actual victims were not actually Mr. Keener's counter-parties after all. Instead, Dr. Taveras stated that the victims were the investors who bought shares from Mr. Keener's counter-parties— the counter-parties of his counter-parties. Ex. 2 (Taveras Dep. Tr.) at 124:18-125:14.

In an ordinary discovery process, a party cannot take a position on a key issue during fact discovery and then totally change its position and introduce a new theory via a rebuttal expert report. *Wreal, LLC v. Amazon.com, Inc.*, 2016 WL 8793317, at *3 (S.D. Fla. Jan. 7, 2016) (Rebuttal experts "cannot be used to advance *new arguments* or *new evidence*, and a rebuttal expert cannot offer separate and distinct analysis. If a party attempts to advance new arguments through a rebuttal expert, then the overwhelming weight of authority is that preclusion is *required* and *mandatory* absent some unusual or extenuating circumstances—that is, substantial justification.") (emphasis in original; cleaned up); *Stephenson v. Wyeth LLC*, 2011 WL 4900039, at *4-5 (D. Kan. Oct. 14, 2011) ("Courts will disallow the use of a rebuttal expert to introduce evidence more properly a part of a party's case-in-chief. . . . A party also may not use a rebuttal expert to introduce new legal theories.").

But that is exactly what the SEC intends to do here, and it intends to use a separate discovery period devoted to remedies to do it. Opp. at 17 ("[I]n connection with its determination of remedies, this Court may (in its discretion) permit the parties to provide briefs, undertake additional discovery, or conduct an evidentiary hearing."). The SEC should not be permitted to engage in such tactics. As requested in Mr. Keener's Motion, the SEC should be "precluded from introducing at or after trial any evidence about the alleged victims or harm purportedly caused by Mr. Keener's investments." Mot. at 12.

### B. The SEC Should Be Precluded From Introducing New Evidence of Mr. Keener's Net Profits.

The second disgorgement requirement set forth in *Liu* is less controversial. The SEC does not dispute that disgorgement must be limited to "net profits from wrongdoing after deducting legitimate expenses." *Liu*, 140 S. Ct. at 1946. Moreover, while the SEC has put forward some information about Mr. Keener's alleged "profits," there is no dispute that it has not offered an actual calculation of the appropriate amount of disgorgement, and in particular that it has not taken into account Mr. Keener's legitimate business expenses in any of its various assertions about his "profits." Mot. at 2-5. Having chosen not to provide this information during discovery, the SEC should not be permitted to do so at a later point.

To be clear, Mr. Keener appreciates the SEC's belated acknowledgement that some discovery on remedies issues will be necessary. Opp. at 4 ("In fashioning appropriate relief after a finding of liability, this Court may consider trial testimony and exhibits, the parties' post-trial briefing, evidence that was not presented to the jury, and—if additional evidence is needed—further discovery and an evidentiary hearing.") (citations omitted). If the Court does permit the SEC to pursue its disgorgement claim despite its failure to comply with its discovery obligations, Mr. Keener assumes that the parties will be given a full opportunity to conduct discovery and serve expert reports on that issue. But, for the reasons expressed above, none of that is necessary or appropriate. The SEC had every opportunity to fulfill its discovery obligations during the discovery period, but it chose not to do so. That failure should not be countenanced.[5]

---

[5] The SEC's purported "net income" analysis first disclosed as an attachment to its Motion for Summary Judgment, s*ee* ECF 67-11, should also be excluded. As described in detail in Mr. Keener's Reply in Support of his Motion to Exclude Rebuttal Expert Report of Dr. Carmen Taveras, that analysis is nothing more than a late-disclosed expert report that Mr. Keener never had an opportunity to challenge in discovery and is riddled with flaws. ECF No. 94, at Sec. II.D.

9

### C.  The SEC Should Be Precluded from Introducing Evidence or Argument to the Jury Regarding Mr. Keener's Proceeds From His Investment Activities.

Finally, it is worth highlighting the SEC's statement that neither side should be permitted to introduce evidence before the jury that is "solely relevant to disgorgement or distribution of disgorgement." Opp. at 5. However, that stands in stark contrast to the SEC's repeated emphasis on the amount of money that Mr. Keener purportedly made from his investment activity. *See, e.g.*, Opp. at 1 ("Defendant's net proceeds from sales between March 24, 2014 and January 31, 2018 totaled approximately **$34 million**.") (emphasis in original).

Clearly, the SEC intends to prejudice the jury against Mr. Keener by presenting evidence about the amount of money he allegedly made—but such information is in reality only relevant to disgorgement. As the SEC repeatedly points out, the only issue to be resolved by the jury is "whether [Mr. Keener] acted as an unregistered dealer." Opp. at 1. The amount of money he made in the course of the activities that the SEC says made him a dealer is not relevant to that determination. Opp. at 1-2 (listing the elements the SEC must prove, none of which concerns the amount of money Mr. Keener made). And any slight relevance is vastly outweighed by the prejudicial effect of highlighting Mr. Keener's supposed wealth. *Reyes v. Collins & 74th Street Inc.*, 2018 WL 11346740, at *14 (S.D. Fla. Mar. 8, 2018) ("The general rule is that, during trial, no reference should be made to the wealth or poverty of a party, nor should the financial status of one party be contrasted with the other's.") (citing *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1178 (11th Cir. 2002)). Therefore, the Court should prohibit the SEC from introducing evidence or argument before the jury as to the amount of proceeds Mr. Keener earned, because such information is relevant only to disgorgement.

### III.  CONCLUSION

For the foregoing reasons, as well as those set forth in Mr. Keener's Motion, Mr. Keener respectfully requests that the Court grant his Motion in Limine.

Dated: September 3, 2021                    Respectfully submitted,

**GREENBERG TRAURIG LLP**

/s/ *Benjamin G. Greenberg*

**Benjamin G. Greenberg**
Florida Bar No. 192732
greenbergb@gtlaw.com
333 SE 2nd Avenue Suite 4400
Miami, FL 33131
Telephone: (305) 579-0850
Facsimile: (305) 579-0717

*-and-*

**BUCKLEY LLP**

**Christopher F. Regan (*pro hac vice*)**
**Veena Viswanatha (*pro hac vice*)**
**Adam Miller (*pro hac vice*)**
2001 M Street NW, Suite 500
Washington, DC 20036
Telephone: (202) 349-8000
Facsimile: (202) 349-8080
cregan@buckleyfirm.com
vviswanatha@buckleyfirm.com

*Counsel for Defendant Justin W. Keener*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served via ECF a true and correct copy of the foregoing Reply in Support of Motion *in Limine* to Exclude Any Evidence Regarding Alleged Victims, Counterparties, or Harm to the following:

Joshua E. Braunstein (Special Bar No. A5502640)
Antony Richard Petrilla (Special Bar No. A5502641)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-8470
Braunsteinj@sec.gov

*Attorneys for Plaintiff*
*Securities and Exchange Commission*

This, the 3rd day of September, 2021

/s/ *Benjamin G. Greenberg*