IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| JUSTIN W. KEENER D/B/A JMJ Financial, | )   No. 20-cv-21254<br>) |
| Defendant. | )   Hon. Beth Bloom<br>)<br>) |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S REPLY TO
DEFENDANT'S OPPOSITION TO ITS OMNIBUS DAUBERT MOTION**

Plaintiff, United States Securities and Exchange Commission (the "Commission" or "SEC"), respectfully submits this reply to Defendant's opposition to the SEC's Omnibus *Daubert* Motion.

## **INTRODUCTION**

In its omnibus *Daubert* motion, the SEC respectfully requested that the Court exclude from any jury trial in this case the opinions and testimony of all three expert witnesses proffered by Defendant Justin W. Keener d/b/a JMJ Financial ("Defendant"): George Oldfield ("Dr. Oldfield"), Jason Flemmons ("Flemmons"), and Stewart Mayhew ("Dr. Mayhew").  DE 65.

The SEC specifically requested that the Court exclude the opinions and testimony of Dr. Oldfield and one of the opinions offered by Flemmons because these opinions and testimony fail to comply with the standards set forth in Rule 702 of the Federal Rules of Civil Procedure ("Rules") and case law, including *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

Defendant has conceded in its opposition brief that Dr. Mayhew's opinions should not go to the jury because they relate only to remedies, which should be decided by the Court after it determines liability.  DE 84 at 17 (Defendant's opposition to the SEC's omnibus *Daubert* motion).  The issues remaining are:

- Whether Flemmons's opinions and testimony should be excluded from jury consideration where they expressly relate only to the SEC's purported "Disgorgement Claim";

- Whether Flemmons's first opinion and testimony should be excluded from consideration entirely because it is based on a strawman argument and lacks any reliable methodology;

- Whether Dr. Oldfield's opinions and testimony should be excluded from consideration where he would testify that Defendant does not qualify as a "dealer" under a definition Dr. Oldfield applies from sources wholly outside the Exchange Act.

## ARGUMENT

A.  **The Two Opinions Contained In Flemmons's Reports Relate Only To The SEC's Purported Disgorgement Claim And Must Be Excluded From Any Jury Trial**

Defendant concedes that disgorgement is an equitable remedy that this Court will address *after* liability has been determined.[1]  DE 87 at 8 (Def. Opp. to SEC Omnibus MIL).  Thus, if Flemmons's opinions, as stated in his two reports, are related to disgorgement, they should be excluded from the jury, regardless of whether they are otherwise admissible.

In an attempt to convince the Court to admit Flemmons's opinions to a jury, Defendant *now* claims that Flemmons is an expert on "which sales of converted stock are alleged to have required Mr. Keener to register as a dealer, and whether and how much Mr. Keener profited from those sales."  *See* DE 84 at 14.  This change in tack by Defendant is understandable, but it is not at all persuasive.  The two reports that Flemmons prepared clearly indicate that his opinions are related exclusively to attacking a disgorgement calculation that the SEC has yet to make.  However, in his expert deposition testimony, Flemmons contended that he was not offering any opinions related to either disgorgement *or* Defendant's profits or losses from his convertible note business.  Therefore, Defendant cannot now contend that Flemmons is being offered to opine on "whether and how much Mr. Keener profited from those sales."  *See* DE 84 at 14.

There can be no dispute that the opinions Flemmons expressed in his two reports related exclusively to disgorgement because his Summary of Opinions section for each report only stated the following:

---

[1] In his opposition to the SEC's omnibus motion *in limine*, Defendant states that "the SEC's third request is to 'preclude Defendant from offering any evidence or making any argument about any potential remedies—including disgorgement, penalties, and the entry of an injunction or a penny stock bar—the Court may impose if the jury finds Defendant liable.'  Mot. at 9.  Mr. Keener has no objection to the SEC's request as phrased, so long as it is limited to proceedings determining liability."  DE 87 at 8.

2

> (1) "The SEC's **Disgorgement Claim** Includes Net Proceeds That Are Unrelated to Stock Sales Arising from Convertible Notes;" and
>
> (2) "The SEC's **Disgorgement Claim** Excludes Relevant Business Expenses."

DE 65-2 & 3 at §§ IV.A, IV.B (Flemmons's first and second reports) (emphasis added). Setting aside the false premise that the SEC has already made a specific request for a specific amount of disgorgement, these opinions plainly relate exclusively to the equitable remedy of disgorgement.

During his deposition, when the SEC asked him about calculations in his first report that Defendant had supposedly lost $4 million on convertible notes, DE 65-2 at ¶ 45 (Flemmons second report), Flemmons disavowed expressing an opinion about Defendant's profits and losses:

> **Q.** Okay. But what I'm -- what I'm talking about is your -- your finding and the basis of your opinions, your finding that JMJ suffered a 4 million-dollar loss during the relevant period, do you stand by -- let me ask you this question: Is it your opinion that JMJ suffered a loss during the relevant period, subtracting out the legitimate expenses from the proceeds?
> MR. REGAN: Objection. Vague.
> **A.** *That is not an opinion that I offered.*
> BY MR. BRAUNSTEIN:
> **Q.** Well, do you agree that you offered it in your first report?
> **A.** I do not.
> MR. REGAN: Objection. Asked and answered.
> BY MR. BRAUNSTEIN:
> **Q.** Do you agree that you stated that fact in your first report?
> MR. REGAN: Objection. Asked and answered.
> **A.** Again, as I said before, I recall there being a reference in my report to that point that you just outlined, *but that was not one of my opinions*.

Ex. 1 (Flemmons Dep. at 17:19 – 18:18) (emphasis added).

In fact, counsel specifically objected to the SEC asking questions about any profit calculations that Flemmons had done: "Objection. The witness has testified he didn't offer an opinion about the profits or loss [of Defendant's operations]." *Id*. at 29:7-9. And Flemmons testified unequivocally, "Well, again, whether or not Mr. Keener lost money is really outside the

scope of my opinions." *Id.* at 38:21-23. After suggesting that it "appeared Mr. Keener's business is operating at a loss," Flemmons reiterated, "But again, whether or not—***whether or not there was a business loss or whether or not that there are losses that are attributable to certain aspects of his business, all of that is outside the scope of my opinions.***" *Id.* at 39:1-6 (emphasis added). When SEC counsel pointed out that Flemmons's report concluded that Defendant suffered a loss during the relevant period, Flemmons again denied that he was opining on business losses, stating, "Well, let me try answering the question this way: ***I'm not offering, sitting here today, any opinion about whether or not Mr. Keener suffered a loss, and I do not intend to offer such an opinion at trial***." *Id.* at 39:18-22 (emphasis added).

The Court should exclude from trial any testimony or evidence about Flemmons's opinions (in both reports) because they relate only to the issue of disgorgement, which Defendant concedes should not be addressed until after liability has been determined. No matter how often he makes them, his self-serving assertions that Flemmons was not opining on disgorgement look silly when the only two opinions in his reports begin with, and are clearly focused on, "***The SEC's Disgorgement Claim*** . . . ." The Court should identify this for what it is and exclude this evidence from the jury.

Moreover, Flemmons's newly-reformulated opinion—"which sales of converted stock are alleged to have required Mr. Keener to register as a dealer, and whether and how much Mr. Keener profited from those sales" (DE 84 at 14)—should also be excluded because, as his deposition testimony demonstrates, he *did not offer* an opinion on Defendant's profits or losses. Flemmons cannot testify at trial to opinions that he has explicitly disavowed holding during his sworn deposition testimony. *See* Fed. R. Civ. Pro. 26(a)(2)(B)(i).

4

    **B.**    **Defendant Fails To Show How Flemmons's First Opinion In His Reports Could Be Helpful Because It Involves A Misleading And Unreliable Strawman Argument About A Fact That Is Not At Issue, And He Does Not Have an Opinion About Whether Defendant Suffered Any Losses**

Defendant's arguments do not meaningfully address, let alone refute, the SEC's core objection to Flemmons's first opinion—namely, that it is not reliable because it challenges a strawman disgorgement calculation that the SEC has not offered in this case. Further, the opinion is based entirely upon a document that the SEC did not use to calculate any disgorgement figure because, as stated, the SEC has not yet made such a calculation.

Defendant knows full well that the SEC has *made no contentions* about the spreadsheet that underlies Flemmons's strawman disgorgement calculation, including whether it (1) "includes revenue generated from sources other than converted stock" (which is evident on the face of the document, for one thing); or (2) includes "relevant business expenses." In other words, merely because Defendant paid an "expert" $875 per hour to challenge statements that SEC never made about Defendant's *own* spreadsheet does not make his opinion either reliable or otherwise helpful to the trier of fact.

Perhaps more fundamentally, however, Defendant asserts that Flemmons "based his analysis" on the SEC's calculation of profits in the Complaint. DE 84 at 15. The Court should exclude Flemmons's opinions entirely for the additional reason discussed above: Flemmons expressly denied having an opinion about Defendant's profits (specifically "whether or not Mr. Keener suffered a loss") and he insisted, "I do not intend to offer such an opinion at trial."

    **C.**    **Oldfield's First Opinion Should Be Excluded As An Improper Legal Opinion**

Defendant proposes that Dr. Oldfield testify about "dealer characteristics from the field of market microstructure" and his practical experience. DE 84 at 6-7. The SEC

objected that the only relevant definition of "dealer" in this proceeding is the definition in Section 3(a)(5) of the Exchange Act and the Eleventh Circuit case law interpreting it, and Dr. Oldfield could not testify about it without rendering impermissible legal conclusions. DE 65 at 5 (SEC's omnibus *Daubert* motion).  Defendant's Opposition does not address this issue.  It merely states: "The SEC first criticizes Dr. Oldfield for *not* offering an opinion as to the ultimate question whether Mr. Keener 'was acting as a dealer under the securities laws' but then turns around and complains that he testifies to 'legal conclusions.'"  DE 84 at 6 (emphasis in original).  This assertion is no more than rhetorical nonsense that Defendant uses to avoid responding in a serious manner to the SEC's argument.

Defendant has not and cannot explain how Dr. Oldfield could testify at trial about the definition of a dealer in *economics* without confusing the jury which is required to apply the appropriate legal definition of the term dealer contained in the Court's jury instructions.  As much as Defendant protests that laypersons on a jury would not be able to understand financial concepts, DE 84 at 5, he inexplicably thinks that they could properly apply two different definitions of "dealer"—from two entirely distinct disciplines (economics vs. securities laws) without becoming confused.  The authorities he offers in support of his position merely reinforce the fallacy inherent in it.

Defendant's reliance upon *SEC v. Spartan Securities Group, Ltd., et al.*, Case No. 8:19-cv-448-T-33CPT, 2020 WL 7024884, at *3 (M.D. Fla. Nov. 30, 2020), is misplaced. *See* DE 84 at 6-8.  In *Spartan*, the Court permitted the SEC to offer a securities expert who sought to explain the "customs, practices, and standards of the microcap securities industry," including that the defendant's activities comprised a "link in the chain" of the alleged schemes—even where the opposing party objected on the basis that the expert was offering a legal opinion.  *Spartan,* 2020 WL 7024884, at *7.  The Court reasoned that the proposed

6

expert's testimony was properly limited, and observed, "Such testimony concerning the ordinary practices of those engaged in the securities business is admissible under the same theory as testimony concerning the ordinary practices of physicians or concerning other trade customs: to enable the jury to evaluate the conduct of the parties against the standards of ordinary practice in the industry." *Id.*  But the testimony Dr. Oldfield would offer "ordinary practice" in the securities industry is utterly at odds with the *express legal definition* of "dealer" under the Exchange Act.  Defendant seeks to attach the imprimatur of an expert economist to a definition of "dealer" and that would encourage the jury to *disregard this Court's instructions regarding the Exchange Act's definition of that key term*. This is entirely distinguishable from the reasoning in *Spartan*, where the court specifically found that the proffered expert did not make any legal conclusions in his report.  *Id.*, at *7; *c.f. Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 509 (2d Cir. 1977) (finding expert testimony "did not concern practices in the securities business . . . but were rather legal opinions as to the meaning of the contract terms at issue" and concluding that this invaded the province of the court to instruct the jury).  Here, the unquestionable *centerpiece* of Dr. Oldfield's proposed testimony is his intention to define "dealer characteristics" for the jury in a manner that is plainly inconsistent with the instructions the Court will give the jury on the applicable legal definition of "dealer."  *See* DE 84 at 6.

       Defendant asks the Court to consider the ways in which Dr. Oldfield could help a jury understand financial terms and concepts, such as "a 'matched book of repurchase agreements,' a 'selling group,'" "[e]xchange member engaged in floor activities," and "'bid and ask' prices."  DE 84 at 5-6.  None of these concepts is relevant to the charge that Defendant operated as an unregistered dealer, and he does not even try to explain why a jury would need to know them.

7

The SEC raised series questions whether Dr. Oldfield employed a reliable methodology, DE 65 at 6-7, and Defendant responded that his expert's "opinion is based on five decades of experience in financial markets and the securities industry as an academic, regulator, and practitioner, as well as on highly regarded textbooks and peer-reviewed research published in top academic journals." DE 84 at 6-7.  But Defendant's description does not bring the Court any closer to understanding *how* Dr. Oldfield came to his (improper legal) opinion that Defendant is not a dealer.  At best, Dr. Oldfield applied a "I-know-it-when-I-see-it" approach, which is not susceptible to evaluation as a real methodology would be.  The value of the economic literature on which Dr. Oldfield purportedly based his opinion is dubious because none of it addresses the dealer definition under the Exchange Act, or otherwise deals with dealers who are convertible note holders.  DE 65 at 6-7.  Defendant's response on this latter point is not helpful: "No academic literature concerning financial markets treats convertible notes as having any unique relevance to the dealer analysis."  DE 84 at 8.  If that is so, why would the jury need to hear Dr. Oldfield's testimony that is supposedly based on that literature?  Defendant is silent on that point.

Defendant asserts that: "Dr. Oldfield did provide extensive background information about convertible notes and the benefits they offer to companies and investors alike."  DE 84 at 8.  The SEC has never suggested that those who issue or buy convertible notes are somehow acting improperly.  There is, thus, no probative value in permitting expert testimony about the benefits of convertible notes generally.

In short, the risks of misleading and confusing the jury about who is a dealer under the Exchange Act are too great to allow Dr. Oldfield to present his proposed first opinion at trial and the Court should therefore exclude it.

### D. Oldfield's Second Opinion Is Irrelevant To The Sole Claim In This Case

Dr. Oldfield's second opinion is that Defendant is not unlike "different market participants involved in buying and selling securities, including convertible notes." DE 84 at 8. The SEC challenged this opinion as irrelevant to the question of whether Defendant himself was operating as a dealer. DE 65 at 8-9. Defendant responds that "industry context and analysis is relevant to Mr. Keener's contention that he was not a dealer." DE 84 at 9. He adds, without *any* support that, "When an entire industry agrees with Mr. Keener's position, and disagrees with the SEC's current litigation position, that is clear evidence that the SEC's position is mistaken." *Id*.

Defendant, of course, does not identify what this "entire industry" is—other than apparently market participants who buy and sell securities—or much less describe how he knows that the entirety of this unidentified industry agrees with him and disagrees with the SEC. Dr. Oldfield did not fare any better in his deposition on this point, where he testified that Defendant has operated "in the financial industry" as "an investment firm." Ex. 2 (Oldfield Deposition Excerpt, at 218:15-23). That is an extremely broad description of Defendant's "industry," and fails to establish that Defendant was not required to register as a dealer. It is unclear what context Dr. Oldfield could provide about the industry, other than to make completely unsupported statements that no one else in the industry views Defendant as a dealer under the Exchange Act. Nevertheless, that is the subject of Dr. Oldfield's proposed second opinion to be presented to the jury, and the Court should exclude it.

### E. Oldfield's Third Opinion Is Irrelevant And Would Not Assist The Trier Of Fact

Dr. Oldfield's third opinion is that Defendant is not similar to any firm that has registered as a dealer using Form BD. DE 84 at 12. Defendant would elevate industry

9

participants' descriptions of themselves in Form BD above the statute itself, as well as precedent in this Circuit interpreting it.  The only issue before the Court is whether Defendant, by buying and selling securities as a business, met the definition of dealer and was, therefore, required to register with the Commission.  Defendant's allegation that Dr. Oldfield conducted "a distillation of thousands of pieces of complex data" from various Forms BD (DE 84 at 14) does not make his opinion relevant or helpful to the trier of fact.  Regardless of how he analyzed or distilled these forms, his work product is irrelevant to whether Defendant's business of buying convertible notes, converting them to stock, and selling the stock into the public market required him to register as a dealer pursuant to the statutory definition of the term "dealer" and this Circuit's interpretation of it.  Hence, the Court should exclude Dr. Oldfield's third opinion from trial.

## CONCLUSION

Defendant's opposition brief underscores, rather than undermines, the SEC's contentions in its omnibus *Daubert* motion.  Accordingly, the Court should grant the SEC's motion.

DATE:   September 3, 2021                    Respectfully submitted,

By:

/s/Joshua E. Braunstein
Joshua E. Braunstein
Antony Richard Petrilla
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-8470
Braunsteinj@sec.gov

**ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE
COMMISSION**

## CERTIFICATE OF SERVICE

      I hereby certify that on September 3, 2021, I filed Plaintiff Securities And Exchange Commission's Reply To Defendant's Opposition To Its Omnibus Daubert Motion through the Court's CM/ECF system, which automatically sends notices to counsel of record in this case.

                                                  /s/Joshua E. Braunstien
                                                  Joshua E. Braunstein

                                                  **ATTORNEY FOR PLAINTIFF**
                                                **SECURITIES AND EXCHANGE**
                                                **COMMISSION**