# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JUSTIN W. KEENER D/B/A JMJ FINANCIAL, ) | No. 20-cv-21254 |
| ) | |
| Defendant. ) | Hon. Beth Bloom |
| ) | |

**REPLY TO DEFENDANT'S OPPOSITION TO SEC'S OMNIBUS MOTION *IN LIMINE*
AND INCORPORATED MEMORANDUM OF LAW**

1

## INTRODUCTION

Plaintiff Securities and Exchange Commission respectfully submits this reply to Defendant's opposition to its motion *in limine*, in which the SEC asked this Court to preclude Defendant from offering evidence or arguments, or mentioning in any way in the presence of the jury, the following: (1) allegations or evidence purporting to relate to due process, fair notice and estoppel defenses; (2) non-public communications between the SEC's Office of Interpretation and Guidance ("Guidance Office") and members of the public; (3) advice, involvement or presence of counsel; (4) remedies that the SEC might seek; (5) hardships that Defendant allegedly might suffer; and (6) Rule 144 under the Securities Act and any opinions of counsel relating to Rule 144.

In his opposition brief to the SEC's omnibus motion *in limine*, DE 87, Defendant *agrees* that the court should preclude any evidence regarding: remedies the court may impose after finding Defendant liable (*id*. at 8, concerning number 4 above); advice of counsel relating to dealer registration—the only charge at issue here (id. at 10, concerning number 3 above); and any hardships Defendant has or may suffer as a result of this litigation (*id*. at 11, concerning number 5 above). Defendant also agrees that because he "is not pursuing an affirmative defense based on estoppel," he "does not object" to the Court "precluding evidence or argument on that point." *Id*. at 4 & n. 4.

Thus, the only remaining questions are whether the Court should preclude evidence relating to the following issues: (1) Defendant's Due Process/fair notice defense (hereinafter "Due Process defense"); (2) communications between the Guidance Office and the public that Defendant claims are related to his Due Process/fair notice defense; and (3) evidence relating to the Rule 144 "safe harbor" provision that applies to the resale of unregistered securities under the Securities Act of 1933 ("Securities Act"), including attorney opinion letters regarding the rule.

1

I.  **Legal Standard**

The decision to admit or exclude evidence is committed to the broad discretion of the District Court.  *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 556 (11th Cir. 1998); *see also Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1161 (11th Cir. 2005).  The District Court has wide discretion in determining the relevance of evidence produced at trial.  To be admissible, evidence must be relevant. Fed. R. Evid. 402.  Evidence is relevant only if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401.  Even if evidence is relevant, Federal Rule of Evidence 403 allows a District Court to exclude the evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.  Based upon this standard, the Commission respectfully requests that the Court, in its discretion, exclude the evidence detailed below.

II. **Argument**

    A. **Defendant's Due Process Defense Is A Legal Issue To Be Decided By The Court And Not A Jury**

In its omnibus motion *in limine*, the SEC requested that the Court exclude evidence of Defendant's ostensible Due Process defense, because the law is clear that: (1) a constitutional Due Process defense necessarily challenges the language of a statute on the basis of vagueness, *see Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972); and (2)  "[T]he issue of whether a [law] is void for vagueness is a question of law for the court to determine," not a jury. *United States v. House*, 684 F.3d 1173, 1207 (11th Cir. 2012).  DE 64 at 3-4 (SEC MIL).

Notwithstanding this clear precedent—which Defendant does not even cite much less address in his opposition—Defendant nonetheless declares: "Mr. Keener's fair notice defense

2

must be presented to the jury." DE 87 at 2. Rather than confront the controlling cases on this issue, Defendant seeks to reframe his Due Process defense *not* as a statutory challenge, but as a challenge to an agency's interpretation of its own regulations. *Id.* at 3 & n. 1. Defendant's argument is based on the flawed premise that the SEC has departed from its past interpretation of "dealer" under the Exchange Act, found primarily in the SEC's Guide to Broker-Dealer Registration ("Guide"), thereby depriving him of fair notice of the requirements of the law. *See Id.* As he does throughout his motion for summary judgment, *see* DE 71 at 23-25,[1] he attempts to elevate SEC staff guidance, primarily the Guide, to an official agency interpretation of the law, such as a fully promulgated rule or regulation, despite that the Guide was never subject to the rule-making process of the Administrative Procedure Act. Accordingly, the Guide states on its face that it simply "highlights certain provisions of the Act" and is "not comprehensive." DE 88-5 at 3 ("Guide"). The Guide also explicitly warns readers that: "**You should not rely on this guide without referring to the actual statutes, rules, regulations, and interpretations.**" *Id*. at 29 (emphasis in original). A guide that summarizes statutory and regulatory obligations of securities professionals to help them conduct an appropriate inquiry is not a prior interpretation of a statute, or an agency rule, or a rule itself.

*Properly* viewed, this case is about applying the plain language of a federal statute to Defendant's conduct—not an agency rule, regulation, or the language of the Guide. As the Third

---

[1] Notably, Defendant's Due Process defense remains difficult to pin down, because he keeps changing it. In his opposition to the SEC's motion *in limine*, he asserts that his "fair notice defense is based on straightforward concepts" and intimates, but does not state explicitly, that he does not intend to make a constitutional challenge to the statutory dealer registration language, *see* DE 87 at 3 & n. 3. But in his motion for summary judgment Defendant takes another tack, by contending that the SEC is confused by the meaning of the statute and that "[i]f the SEC itself has disagreed as to what the statute requires, that is a clear sign of a due process violation." DE 71 at 24 (Defendant's motion for summary judgment). Then in his opposition to the SEC's motion for summary judgment, DE 90 at 23, he finally admits that he does not contend that the dealer registration statue is vague.

Circuit explained in *FTC v. Wyndham Worldwide Corp.*, when applying a statute, "[t]he relevant question is not whether [the defendant] had fair notice of *the [agency's] interpretation* of the statute, but whether [the defendant] had fair notice of what *the statute itself* requires." 799 F.3d 236, 253-54 (3d Cir. 2015) (emphasis in original). The legal authority upon which Defendant relies—where courts have analyzed agency regulations and agencies' interpretations of their own regulations—is thus inapplicable. *See, e.g., FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (finding a due process violation when the agency abruptly changed its prior interpretation of its *regulation* implementing the indecency provisions of the Communications Act); *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 157 (2012) (refusing to defer to the Department of Labor's retroactive application of a changed interpretation of its own *regulations*); *Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996) (finding that the SEC's interpretation of a specific *regulation* represented a substantial change in enforcement policy that had not reasonably been communicated to the public).[2]

It is for this Court to determine whether Defendant comes within the statutory definition of a dealer, not the jury. As noted, Defendant does not address *Wyndham*, the Supreme Court's decision in *Papachristou,* or the Eleventh Circuit's *House* decision, upon which the SEC relied in its omnibus motion *in limine* as dispositive of whether this Court or a jury should decide the Due Process question where, as here, it relates to the application of a federal statute. Rather than confront the controlling cases, Defendant cites a single case for the proposition that his Due

---

[2] Defendant's other cited cases are inapplicable for the same reason. *See Diebold Inc. v. Marshall,* 585 F.2d 1327, 1336 (6th Cir. 1978) (examining whether a challenged regulation "gave Diebold sufficient warning that press brakes were with the scope of its point of operation guarding requirements"); *SEC v. Kovzan*, 2012 WL 4819011, at *5 (D. Kan. Oct. 10, 2012) (dealing with the SEC's interpretations of agency regulations); *Summit Petroleum Corp. v. EPA*, 690 F.3d 733, 740 (6th Cir. 2012) (holding that the EPA's interpretation of the term "adjacent" in one of its regulations was contrary to the term's ordinary meaning and the unambiguous language of the regulation, as well as prior agency guidance in its regulatory history).

Process defense "is a quintessential jury question ...." DE 87 at 3. Defendant's exclusive reliance on *U.S. v. Harra*, 985 F.3d 196, 204 (3d Cir. 2021), is misplaced.

*Harra* was a criminal case involving the false reporting of past due loans pursuant to reporting instructions provided by the SEC and the Federal Reserve. *Id.*, 985 F.3d at 207. The issue on appeal involved the sufficiency of the evidence to convict the defendant where those reporting instructions were ambiguous. *Id*. The case did not involve any challenge to the clarity of the Federal fraud statute under which the defendant had been charged. *Id*. The case does not hold that a jury should decide whether the language of a federal statute is vague or ambiguous and, therefore, violates Due Process. Rather, the Court held that "where falsity turns on how an agency has communicated its reporting requirements to the entities it regulates, and those communications are ambiguous, fair warning demands that the Government prove a Defendant's statement false under each objectively reasonable interpretation of the relevant requirement." *Id.*, 985 F.3d at 213. The Court should reject Defendant's argument and exclude evidence of his Due Process defense from any trial in this case. *Wyndham,* 799 F.3d at 253-54 ("The court … is the ultimate arbiter of the statute's meaning."); *see also House*, 684 F.3d at 1207.

**B. The Court Should Exclude All Non-Public Communications Between the SEC's Office of Investor Guidance and Members of the Public**

Defendant insists that communications between the SEC's Guidance Office and members of the public are necessary to his Due Process defense. He asserts, "These documents are highly relevant to Mr. Keener's fair notice defense because they demonstrate both (i) industry understanding regarding dealer registration requirements and (ii) the inconsistency between the SEC's current litigation posture and how it has explained dealer registration requirements to market participants for years." DE 87 at 5. Because he plans to only use these documents to support his Due Process defense, the Court should exclude them on the same basis that it should

5

preclude the jury from considering the purely legal question of whether he had fair notice of what the law required.

Even if the jury were permitted to determine whether Defendant had fair notice that his conduct was illegal, the Guidance Office's communications with the public do not support his defense. First, the communications do not show the industry's understanding of the dealer registration statute, but rather simply reveal questions that industry participants asked the Guidance Office. To the extent that the Guidance Office referred industry participants to the Guide or to factors in the Guide, that also does not show the industry's understanding of the statute, nor would it be of any consequence. Obviously, considering certain factors may be useful way to determine whether one fits the definition of the term "dealer." Indeed, as explained in the SEC's opposition to Defendant's motion for summary judgment [DE 89], Defendant met several of those factors. In any event, neither the Guide nor the communications set a different standard in the industry as the Guide specifically instructs readers to follow the law and the communications from the Guidance Office consistently stated the same. As noted previously, in support of his position, Defendant cites as legal authority the inapposite Due Process cases discussed above that concern fair notice of an agency's *regulation* or the agency's *interpretation of its regulations*. *See, e.g, id.* at 5 (citing *Gen. Elec. Co. v. EPA,* 53 F.3d 1324, 1332 (D.C. Cir. 1995) for the proposition that the court found "no fair notice when agency *regulations* were internally inconsistent") (emphasis added).[3]

---

[3] Defendant cites the Magistrate Judge's order in *SEC v. Ripple Labs, Inc.,* No. 20 Civ. 10832 (AT) (SN), 2021 WL 1814771, at *1 (S.D.N.Y. May. 6, 2021), for the proposition that "non-public SEC communications with third parties [are] relevant to a defendant's fair notice defense." DE 87 at 4. The cited order does not refer to "fair notice" apart from a letter from the SEC.

Second, the communications do not demonstrate that the SEC's current litigation position is different from how the Guide and the Guidance Office have addressed the dealer registration requirements. As the SEC's motion *in limine* demonstrates—and Defendant does not meaningfully contest—none of the almost 600 communications the SEC produced to Defendant demonstrates that the SEC staff members were anything but consistent in their responses to the members of the public who contacted them. Nothing staff said contradicted in any way the plain language of the dealer registration statute, or arguably caused confusion of any sort (let alone such confusion that would somehow give rise to a fair notice defense). *See* DE 64 at 5-8 (SEC MIL). Defendant asserts that the communications (which he had never seen) are "direct evidence of [his] contention" that "through this litigation, the SEC is imposing a broader definition of 'dealer' under the Exchange Act than it ever has before to encompass individuals like" Defendant. DE 87 at 7-8. This is incorrect.

In its Complaint and throughout this litigation, the SEC has maintained that Defendant was required to register as a dealer because he operated a regular business of buying and selling securities. That language comes directly from the statutory definition of the term "dealer," and the Eleventh Circuit cases interpreting it. Indeed, the SEC has applied the plain language of the statute, the Guide instructs readers to follow the statute, and the communications from the Guidance Office do the same. Because the communications fail to advance Defendant's Due Process defense, they should be excluded. Otherwise, allowing the jury to view those communications would only "confuse[e] th[e] issues" cause "undue delay" and "wast[e] time," and therefore they also should be excluded under Fed. R. Evid. 403.[4]

---

[4] Although Defendant concedes that issues related to remedies should await a determination on liability, he claims that the SEC failed to meet its disclosure requirements with respect to it summary witness, Dr. Carmen A. Taveras. DE 87 at 9-10. To the contrary, pursuant to Federal Rules of Civil Procedure 26(a)(3)(A)(iii) and (B), summaries may be disclosed 30

7

### C. The Court Should Exclude All Evidence and Argument Relating to Defendant's Purported Compliance With Rule 144 Under the Securities Act

Defendant's opposition to the SEC's motion *in limine* underscores that he will seek to confuse the jury about his status as an unregistered dealer under Exchange Act Section 15(a)(1) [15 U.S.C. § 78o(a)(1)] by introducing evidence that he: (1) complied with SEC Rule 144,[5] (which he agrees is a separate inquiry) and (2) received the advice of counsel in many attorney opinion letters regarding his purported compliance with the rule.  DE 87 at 14.  Contrary to Defendant's allegations, complying with Rule 144 does not relieve him of the obligation to comply with Section 15(a)(1), and any reference to Rule 144 or the related attorney opinion letters are legally irrelevant and likely prejudicial.

The Court should find that Defendant's compliance with Rule 144 is irrelevant to the dealer analysis, and that Defendant's compliance with the Rule is *not* a fact necessary to the determination of this case.  As the SEC explained in its motion *in limine*, and Defendant does not dispute, Rule 144 is a safe harbor that applies to the resale of unregistered *securities* under Section 4(a)(1) of the Securities Act; it is not a safe harbor from registering as a *dealer* pursuant to Section 15(a) of the Exchange Act.  *See* DE 64 at 13.  Section 4(a)(1) of the Securities Act allows individuals, who possess unregistered securities *and are not issuers, underwriters or dealers* under the Securities Act, to resell those securities without registering them with the Commission.  15 U.S.C. § 77d(a)(1).  Rule 144 is a safe harbor from underwriter status under Section 4(a)(1), and so those who comply with the rule when selling unregistered securities will not be deemed to have engaged in an unlawful distribution of the securities (*i.e.*, acting as a

---

days prior to trial.  With trial several months away, the SEC has more than met its burden under the rules.

[5] 17 C.F.R. § 230.144, promulgated under the Securities Act, 15 U.S.C. § 77a et seq.

8

"statutory underwriter"). But those who rely on Rule 144 must still register as a dealer under the Exchange Act if they are in the regular business of buying and selling securities.

Defendant alleges that "the SEC has put Mr. Keener's compliance with Rule 144 directly at issue" in the Complaint. DE 87 at 11. But the SEC has never claimed that Defendant failed to comply with Rule 144. In fact, in its Complaint, the SEC alleged:

> Keener timed his conversions and sales in an effort to comply with the holding period under Rule 144. For that reason, Keener generally waited six months after purchasing a convertible note before he began to exercise his right to convert the note to stock, which he then resold in the market.

DE 1 at ¶ 12. Defendant also asserts that the Rule 144 opinion letters from counsel are necessary to rebut the SEC's claim that he "engaged in a 'distribution' of 'newly issued' stock." DE 87 at 11. But whether he was permitted to sell that newly issued stock under the Securities Act, because of Rule 144, is irrelevant to the question of whether selling newly stock into the market made him a dealer under the Exchange Act. Rule 144 just addresses the legal status of the sales under the Securities Act; it does not change the underlying fact that they were sales to the public of newly issued stock.

If anything, these facts demonstrate that Defendant was a sophisticated industry participant who was able to navigate the registration provisions of the Securities Act, the exemptions to registration, and the Rule 144 "safe harbor." Yet, he purports to have been completely confused by the dealer registration provisions of the Exchange Act.

Defendant's technique of blurring and conflating the Exchange Act (this case) with the Securities Act (Rule 144) is compelling evidence of the danger that he will seek to confuse the jury with evidence that is wholly irrelevant to the issues in this case. That is exactly why the SEC raised this issue with the Court in the first place. *See* DE 64 at 13. The Court should reject Defendant's transparently slick reasoning and exclude any evidence relating to Rule 144 because

9

it is irrelevant and any marginal relevance would be substantially outweighed by the danger of unfair prejudice.

Perhaps more importantly, despite Defendant's statement in his opposition to the SEC's motion for summary judgment, that he "is no longer asserting an … advice of counsel defense," he seeks to introduce the advice of counsel embedded in attorney opinion letters on Rule 144. *See* DE 90 at 30 n. 12 (Def. Opp. to SEC MSJ). He seeks to have his cake and eat it too— disclaiming an advice of counsel defense (and the burden of proving it) while seeking to put into evidence dozens of attorney opinion letters that state, among other things, that Defendant "**is Not a Dealer**." *See, e.g.,* DE 73-8, at JMJ-SEC-005-008412 (June 6, 2017 letter of Laura Anthony to Old Monmouth Transfer Co., Inc.) (emphasis in original). A jury would inevitably be confused by Defendant's ruse where, although he is not formally invoking an advice of counsel defense (which would require him to prove its elements), he may convince a jury that he was acting on wholly separate advice from an attorney stating that he was not a dealer. There can be no more prejudicial evidence in a case like this, and the Court must exclude it.

## CONCLUSION

The SEC respectfully requests that the Court enter an order *in limine* that Defendant and his counsel shall not, while in the presence of the jury, offer or elicit any testimony or other evidence about and shall not mention or make any reference to: (1) allegations or evidence purporting to relate to a Due Process/fair notice defense; (2) non-public communications between the SEC's Office of Interpretation and Guidance and members of the public; (3) advice, involvement or presence of counsel; (4) remedies that the SEC might seek; (5) hardships that Defendant allegedly might suffer; and (6) Rule 144 under the Securities Act and any opinions of counsel relating to Rule 144.

DATE: September 3, 2021 Respectfully submitted,

By:

/s/ Joshua E. Braunstein

Joshua E. Braunstein
Antony Richard Petrilla
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-8470
Braunsteinj@sec.gov

**ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE
COMMISSION**

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2021, I filed Plaintiff Securities And Exchange Commission's Reply to Defendant's Opposition to the SEC's Omnibus Motion in Limine through the Court's CM/ECF system, which automatically sends notices to counsel of record in this case.

s/ Joshua E. Braunstein<br>
Joshua E. Braunstein<br>
***Attorney for Plaintiff***<br>
***Securities and Exchange Commission***