IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

SECURITIES AND EXCHANGE COMMISSION, )
)
              Plaintiff, )
)
v. )
)
JUSTIN W. KEENER D/B/A JMJ FINANCIAL, )
) No. 20-cv-21254
              Defendant. )
) Hon. Beth Bloom
)
)

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S *LIMITED*
OBJECTIONS TO THE REPORT AND RECOMMENDATION ON REMEDIES**

Plaintiff Securities and Exchange Commission ("SEC") files this *limited* set of objections to the Report and Recommendation of the Magistrate Judge (hereinafter "R&R"). *See* DE 138. The SEC agrees with every recommendation in the R&R except: (1) the conclusion that "the Court [in its summary judgment order] effectively precluded consideration of the" parties' one-year tolling agreement, leading the Magistrate Judge to shorten the relevant period and thereby reduce disgorgement from $17,557,840 to $7,227,934; (2) the recommendation that prejudgment interest be measured starting on February 1, 2018 as opposed to the end of each year in which Defendant Justin W. Keener d/b/a JMJ Financial ("Defendant") generated net profits ordered to be disgorged; and (3) the recommendation to reduce the civil penalty from $1.75 million to $1.03 million.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant operated as an unregistered dealer in violation of Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act"). R&R at 1. He maintained a regular business of buying convertible notes from penny stock issuers, waiting at least six months, then converting them to stock of the issuers at a deep discount to the prevailing market price, and selling that stock into the public market for substantial profits. *Id.* at 2. Defendant admitted that he converted more than 100 notes from more than 100 different microcap issuers and subsequently liquidated billions of shares of stock. *Id.* Through a declaration summarizing Defendant's records submitted by Dr. Carmen Taveras, the SEC showed that, for the period March 24, 2014 through January 31, 2018, Defendant had net profits under *SEC v. Liu* from this business of $17,557,840 (net income from notes of $32,971,128 minus total business expenses of $15,413,288). *See* DE 122-3 at ¶ 19 ("Taveras Remedies Declaration").

The Court granted summary judgment to the SEC on liability only and denied Defendant's cross-motion. DE 118 ("Omnibus Order on Cross-Motions for Summary Judgment"). The SEC then filed a motion for remedies seeking: (1) a permanent injunction; (2) a penny stock bar; (3)

1

disgorgement of net profits of $17,557,840; (4) prejudgment interest thereon in the amount of $5,141,461; (5) a civil penalty of $1,750,000; and (6) an order requiring Defendant to surrender for cancellation shares of stock from, and conversion rights under, convertible notes that issuers had sold him.  DE 122 at ECF page 7.

After receiving briefs on the SEC's motion for remedies, the Court referred the motion to the Magistrate Judge for the preparation of a Report and Recommendation.  DE 130.  In her R&R, Magistrate Judge Louis recommended that the Court impose all of the remedies that the SEC requested with three exceptions as to the amounts.  First, she agreed that the SEC was entitled to disgorgement but recommended decreasing disgorgement by approximately $10.3 million based on her conclusion that the Court "effectively precluded consideration" of the parties' one-year tolling agreement when it stated in the summary judgment order that "Plaintiff is entitled to relief for conduct that occurred on or after March 24, 2015."  R&R at 22-23; DE 118 at 30.  Second, she recommended that the Court calculate prejudgment interest (on her revised disgorgement amount) using the period February 1, 2018 through January 21, 2022.  R&R at 25-26.  Third, she recommended a different methodology for calculating a civil penalty, which would reduce the amount from $1,750,000 to $1,030,000.  *Id.* at 29.  The Commission files this limited set of objections only as to these three recommendations.

## STANDARD OF REVIEW

The SEC is entitled to *de novo* review of any portion of the Magistrate Judge's findings or recommendations that it identifies with specificity and to which it articulates a specific objection. *Macort v. Prem, Inc.*, 208 F. App'x 781, 783–84 (11th Cir. 2006) (citing *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)).  The "District Judge shall make a de novo determination of those portions of the report … to which objection is made and may accept, reject, or modify in whole or in part, the

2

findings or recommendations made by the magistrate [judge]." *Id.* (internal quotation marks omitted).

## ARGUMENT

### A.  The Relevant Period and the Parties' One-Year Tolling Agreement

The Magistrate Judge determined that the relevant period for disgorgement was March 24, 2015 through January 31, 2018. Magistrate Judge Louis reached this conclusion based on the Court's order granting summary judgment to the SEC on liability. R&R at 22. Although the parties signed a one-year tolling agreement before this litigation began, s*ee* DE 67-8 (tolling agreement), the Magistrate Judge concluded that "the Court effectively precluded consideration of this agreement and defined the Relevant Period as beginning on March 24, 2015." R&R at 22. The effect of this ruling is to reduce disgorgement from $17,557,840 to $7,227,934. *Id.* at 23. The SEC respectfully objects to this conclusion in the R&R because it does not believe that the Court prohibited consideration of the tolling agreement.

In his Fifth Affirmative Defense, Defendant claimed that the statute of limitations barred the SEC's complaint in whole or in part. DE 30 at ECF page 7 (Defendant's Answer). In briefing the cross-motions for summary judgment, Defendant argued that the SEC's cause of action first accrued more than five years before it filed the complaint and that the parties' one-year tolling agreement "cannot suspend the statute of limitations because Section 2462 [28 U.S.C. § 2462] is jurisdictional." DE 118 at 30 (Summary Judgment Order). The SEC moved for summary judgment on this affirmative defense and prevailed. *Id.* at 31 ("Plaintiff's Motion is granted as to the statute of limitations affirmative defense."). In light of the Court's ruling against Defendant on the statute of limitations defense, the SEC respectfully submits that the R&R is mistaken in concluding that the Court "effectively precluded consideration" of the tolling agreement. *See* R&R at 22. Simply put, the Court did not make any ruling concerning the tolling agreement in the summary judgment order,

nor did it need to do so. Instead, it relied upon the "continuing violation doctrine" to hold that, because Defendant had engaged in the violative conduct as recently as January 2018, the statute of limitations had not run. *Id.* at 31.

There is no merit to Defendant's argument that the tolling agreement "cannot suspend the statute of limitations because Section 2462 is jurisdictional." First, 28 U.S.C. § 2462 is no longer the applicable statute of limitations for disgorgement claims. Congress amended the Exchange Act in 2021 to create a new statute of limitations specifically for disgorgement claims, which applies to any case (like this one) that was pending on January 1, 2021. *See* Section 6501(a) of the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283 ("NDAA"), effective January 1, 2021 (codified as 15 U.S.C. § 78u(d)(8)(A)); NDAA, § 6501(b) (application to pending actions). Whatever arguments Defendant has about Section 2462 do not apply to 15 U.S.C. § 78u(d)(8)(A)(ii), the correct statute of limitations for disgorgement in this matter. Less than two weeks ago, Judge Covington in the Middle District of Florida recognized that the new statute of limitations applies to pending SEC actions, and she also applied SEC tolling agreements to reach conduct dating back to 2008. *See SEC v. Spartan Securities Group, Ltd., et al.*, Case No. 8:19-cv-448-VMC-CPT, at 25-26 (M.D. Fla. August 10, 2022) (attached as Exhibit A for the Court's convenience).

The Court should modify the R&R to recognize that the relevant period for purposes of disgorgement began on March 24, 2014, six years before the SEC filed its complaint. *See* DE 68 at 28 (SEC's explanation of the relevant period); DE 1 (complaint filed on March 24, 2020). The Court should also clarify that the proper amount of disgorgement for this relevant period is $17,557,840—the figure for net profits under *Liu* that Dr. Taveras calculated and which the R&R did not contest on any substantive basis.

## B.     Prejudgment Interest

The R&R recommends that the Court order Defendant to pay prejudgment interest on disgorgement at the IRS rate for underpayments and that it should be calculated starting on February 1, 2018 and ceasing on January 21, 2022. R&R at 25-26. The R&R did not itself calculate the precise amount of prejudgment interest that would result from using these parameters.

The SEC agrees with the rule enunciated in *Yun* and cited in the R&R at 25-26 that "[t]he time frame for the imposition of prejudgment interest usually begins with the date of the unlawful gain and ends at the entry of judgment." *See SEC v. Yun*, 148 F. Supp. 2d 1287, 1293 (M.D. Fla. 2001). That approach would be the most equitable, but the SEC understands that applying it here would be difficult because there were thousands of stock sales over a multi-year period. For that reason, Dr. Taveras calculated prejudgment interest for each year of sales beginning on the first day of the following year. DE 122-3 at ¶ 21. Her approach is still conservative because it treats all gains as if they were earned at the end of the year. But it at least ensures that Defendant will pay more interest on gains from 2015 than he will pay on gains from 2018. Prejudgment interest represents the amount of money a wrongdoer made or could have made from investing ill-gotten gains before disgorging them. *See SEC v. Koenig*, 557 F.3d 736, 745 (7th Cir. 2009). That concern is especially relevant here where Defendant was in the business of buying and selling securities for his own account as a professional dealer. He—more than most defendants—had ample opportunity to put his ill-gotten gains back into the market and make an economic return. Accordingly, the SEC believes that Dr. Taveras's approach is equitable and appropriate, but recognizes that the Court has substantial discretion over this matter.

For the Court's convenience, the SEC has provided four versions of re-calculated prejudgment interest in a declaration of Dr. Taveras (attached hereto as Exhibit B). The first version uses the methodology that the R&R recommended applying to the disgorgement figure

5

recommended by the Magistrate Judge of $7,227,934, which results in $1,323,001 of interest. *Id.* at Exhibit 1. The second version uses Dr. Taveras's approach to calculating prejudgment interest on that same disgorgement amount, which results in $1,824,839 of interest. *Id.* The third version uses the R&R's approach to calculating prejudgment interest on the disgorgement amount that Dr. Taveras originally calculated ($17,557,840), which results in $3,213,787 of interest. *Id.* The fourth version uses Dr. Taveras's approach to calculating prejudgment interest on the disgorgement figure of $17,557,840, just as she did in her summary declaration on remedies, *see* DE 122-3 at Ex. A, but stops counting interest on January 21, 2022, consistent with the R&R. Ex. B at Exhibit 1. Prejudgment interest under this approach would be $5,083,771. *Id.*

    **C.**    **Civil Penalty**

The R&R recommended decreasing the civil penalty amount from $1,750,000 to $1,030,000 based on a different calculation methodology. R&R at 29. The SEC stands by its original proposal and methodology for a civil penalty, but also recognizes that the Court has wide discretion in this area. *See SEC v. Aura Financial Services, Inc.*, No. 09-civ-21592, 2010 WL 3419200, at *3 (S.D. Fla. July 14, 2010). If the Court prefers the R&R's approach to calculating a civil penalty, the SEC respectfully requests that it apply that methodology to a time period that also includes 2014. As the SEC argued in Section A, above, the relevant period should start on March 24, 2014. If the Court agrees, the civil penalty, at a minimum, should increase to $1,270,000.[1]

---

[1] The R&R calculated a civil penalty by summing the costs Defendant avoided during the relevant period by failing to register as a dealer, become a member of a national securities association, or comply with the association's regulations. R&R at 29. Using figures that Defendant provided, it assumed that undertaking these tasks would have cost $545,000 for the first year and $240,000 for each subsequent year. *Id.* The R&R applied a three-year relevant period to arrive at a civil penalty of $1,030,000 (which also included $5,000 "for the actual violation"). *Id.* If the Court decides to include 2014 in the relevant period, the civil penalty under the R&R's approach would increase by $240,000 for a total penalty of $1,270,000.

DATE:   August 22, 2022                      Respectfully submitted,

By:  */s/ Antony Richard Petrilla*

Antony Richard Petrilla
Joshua E. Braunstein
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-4544
Petrillaa@sec.gov

**ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE
COMMISSION**

7

## CERTIFICATE OF SERVICE

  I hereby certify that on August 22, 2022, I filed Plaintiff Securities and Exchange Commission's *Limited* Objections to the Report and Recommendation on Remedies through the Court's CM/ECF system, which automatically sends notices to counsel of record in this case.

/s/ Tony Petrilla
_____
Antony Richard Petrilla
**ATTORNEY FOR PLAINTIFF**

**SECURITIES AND EXCHANGE COMMISSION**