UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:20-CV-21254-BLOOM/LOUIS

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.

JUSTIN W. KEENER D/B/A JMJ
FINANCIAL,

      Defendant.

**DEFENDANT JUSTIN W. KEENER'S RESPONSE TO
PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OBJECTIONS
TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     INTRODUCTION**

On August 8, 2022, Magistrate Judge Louis issued a Report and Recommendation ("Report") (ECF No. 138) regarding the disposition of the Motion for Remedies (ECF No. 122) filed by Plaintiff Securities and Exchange Commission ("SEC"). The Report did not entirely please either side, as both filed objections. Defendant Justin W. Keener ("Mr. Keener") respectfully submits this response to the SEC's Objections to the Report ("SEC Objs.") (ECF No. 139).

The SEC's Objections have one overriding theme – the desire to punish Mr. Keener to the maximum extent possible. Thus, it seeks to base the disgorgement calculation on transactions (i) that pre-date the time period that it defined in its own Complaint (ECF No. 1) and for which it did not offer proof during the liability phase, and (ii) that are inconsistent with this Court's Order on the Motions for Summary Judgement ("Order") (ECF No. 118). The SEC also claims that Judge Louis erred in determining the amount of prejudgment interest and the civil penalty, but in both cases it does so without offering any legal argument contradicting her conclusions – it simply contends that the amounts should be higher. The SEC evidently has some type of vendetta against Mr. Keener, even though his violation was a mere failure to register and there has never been any suggestion that he acted with scienter or that the transactions he pursued were somehow egregious, improper (aside from the fact that he had not registered), or defrauded anyone. Enough is enough. Judge Louis' Report, while flawed in certain respects, would not under-penalize Mr. Keener. The SEC's Objections to the Report lack merit and should be rejected.

**II.    ARGUMENT**

The SEC objects to three separate aspects of Judge Louis' Report. *First*, it objects to the scope of the transactions Judge Louis used in arriving at her disgorgement recommendation. *Second*, it objects to her determination as to the time period for which prejudgment interest should be imposed.

*Third*, it objects to her determination regarding the appropriate amount of the civil monetary penalty that should be imposed. Each issue is addressed separately below.

### A. The SEC Continues to Advocate for a Disgorgement Amount Based on Transactions Not Encompassed by This Court's Order

In objecting to Judge Louis' Report, the SEC re-requests that the Court award a disgorgement amount equal to the amount the SEC originally sought in its Motion for Remedies. The SEC's objections are deficient in two aspects. First, the SEC seeks to include transactions from before 2015 in its disgorgement calculation. This Court stated that the SEC is entitled to relief for a Relevant Period starting in 2015 and Judge Louis appropriately limited disgorgement to after 2015. *See* Report at 22. Second, the SEC seeks disgorgement for transactions other than converting convertible notes and quickly reselling the shares to capture the spread, which is what this Court determined made Mr. Keener a dealer. These deficiencies are addressed separately.

#### 1. The Relevant Time Period Begins in 2015

Because the Complaint was filed on March 24, 2020, this Court concluded on summary judgment that the SEC "is entitled to relief for conduct that occurred on or after March 24, 2015." Order, at 30. In so concluding, the Court specifically noted that the SEC had "defin[ed] the relevant period as January 2015 through January 2018." *Id.* (citing Complaint ¶ 1). Further, in both its pleadings and in its presentation of the evidence, the SEC focused entirely on Mr. Keener's conduct from January 2015 forward—the "Relevant Period" it defined—to satisfy the critical element that Mr. Keener was engaged in a "business," as the statute requires. For the SEC's pleadings, *see, e.g.*, Complaint ¶ 1 (defining "January 2015 through January 2018" as the Relevant Period); *id.* ¶ 19 ("Between January 2015 and January 2018, Keener was not registered with the SEC as a dealer or associated with a dealer registered with the SEC"). For the SEC's evidence, *see, e.g.*, Pl.'s Mot. for Summ. J., ECF No. 68, at 1-2, 5-7 (providing evidence of Mr. Keener's activity from 2015 to 2017); Pl.'s Statement of Material Facts ("PSOF"), ECF No. 67 ¶¶ 5-6, 11-10, 17-18, 20-21, 23, 26, 36-37,

39-40, 42, 45, 49, 51, 54, 56, 58-60, 62, 64-65, 67 (same);[1] PSOF Exs. 5, 12, 15-16, 18, 20-21, 23-25, 28-34, 36 (same).

The SEC never even attempted to prove that Mr. Keener was operating as a "business" prior to the Relevant Period it defined, which started in January 2015. *See* Order at 9-10; PSOF at 3, n.1 ("The SEC's Complaint pleaded that the Relevant Period was January 2015 through January 2018."). And therefore, the Court did not and could not rule that Mr. Keener was operating as a dealer in violation of the statute at any time prior to January 2015.

In *CFTC v. Sidoti*, 178 F.3d 1132 (11th Cir. 1999), the Eleventh Circuit faced nearly identical circumstances when the district court granted the government's request to disgorge the defendant's profits earned during time periods when there was no evidence of a violation. The Circuit vacated the disgorgement award imposed by the District Court, holding that "[a] district court may not order disgorgement of profits for a period during which there was no record evidence of fraud." *Id.* at 1138.[2]

The SEC argues that Judge Louis erred by failing to consider a one-year tolling agreement. SEC Objs. at 3-4. However, a tolling agreement only addresses a statute of limitations defense, it does not relieve the SEC of its burden of proving that a violation occurred during the period in question. As shown, the SEC did not plead or prove that Mr. Keener violated the statute prior to the Relevant

---

[1] In particular, PSOF ¶ 5 ("Keener has had offices . . . between January 2015 through January 2018"); *id.* ¶ 6 ("Between January 2015 and January 2018, JMJ had as many as 25 employees. . . ."); *id.* ¶¶ 6, 54, 56, 58 (discussing press releases, dinners, and seminars beginning in 2015).

[2] Mr. Keener also repeats the argument set forth in Defendant's Objections to the Report ("Def.'s Objs.") (ECF No. 140) that the Circuit Court's decision in *Sidoti,* 178 F. 3d, limits disgorgement to ill-gotten profits that are causally related to the registration violation. The only ill-gotten profits causally related to Mr. Keener's registration violation are the cost savings from not registering, which Judge Louis calculated to be $1,025,000. *See* Report at 29*; see also SEC v. Gane*, 2005 WL 90154, at *18 (S.D. Fla. Jan. 4, 2005) (refusing to award disgorgement for a "mere technical" violation); *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989) (same); *U.S. CFTC v. Southern Tr. Metals, Inc.*, 894 F.3d 1313, 1331 (11th Cir. 2018) (same, for a registration violation).

Period that it defined, and Judge Louis appropriately followed the clear terms of this Court's order on this point. There was no need to consider the tolling agreement.[3]

### 2. Disgorgement Should Only Include Transactions Where Mr. Keener (i) Acquired a Convertible note, (ii) Converted the Convertible Note into Stock at a Discount Pursuant to the Terms of the Note, and (iii) Quickly Resold the Stock Received Upon Conversion in Order to Capture the Spread.

The SEC objects to the Report by reiterating its request for a disgorgement amount equal to the amount set forth in its Motion for Remedies. The SEC's Motion for Remedies based its disgorgement amount on all of Mr. Keener's transactions other than purchases of stock in the open market or in syndicated offerings. *See* Pl.'s Reply in Support of Mot. for Remedies Ex. B, ECF No. 129-2, at 2, n.1. But the SEC's disgorgement amount should only be based on the transactions involving the conversion of shares (and resulting capitalization on the "spread") that led to the Court's determination that he was liable for violating the dealer registration requirement. *See* Def.'s Objs. at 1 (citing Order at 21-25 (dealer activity was "convert[ing] more than 100 convertible notes" into stock at a "discount to the trading price" and selling that stock)); *see also* Defendant's Opposition to Pl.'s Mot. for Remedies ("Def.'s Opp."), ECF No. 124 at 10. Mr. Keener has repeatedly objected to the SEC's disgorgement calculations because a large portion of the profits it included in its calculations did not arise from such conversions. *See id.* at 10-12; Def.'s Objs. at 11-13. That is, a significant portion of the amount the SEC seeks to disgorge was earned from stock market transactions wholly different from the activities that the SEC claimed, and the Court found, made Mr. Keener liable as a "dealer."

---

[3] The SEC also claims that the applicable statute of limitations changed from 28 U.S.C. § 2462 to 15 U.S.C. § 78u(d)(8)(A) by virtue of the National Defense Authorization Act for Fiscal Year 2021 ("NDAA"). SEC Objs. at 4. Whether or not this is correct as a matter of law, the NDAA has no bearing on the fact that the SEC limited the proof of liability in this case to 2015 forward or that the Court adopted that time period in its prior ruling. Judge Louis did not err in following the Court's ruling on this point.

Two transactions in particular stand out. As described in Defendant's objections to the Report, Mr. Keener sold shares in two firms, Advaxis, Inc. ("ADXS") and Northwest Biotherapeutics, Inc. ("NWBO"), prior to the start of the SEC's Relevant Period. The proceeds of these sales, which totaled approximately $4 million, should not be subject to disgorgement. Not only did they pre-date the Relevant Period, but they are not the type of transactions that the Court found made Mr. Keener a dealer. If disgorgement can only be awarded for time periods for which there was a finding of activities in violation of the statute, *Sidoti*, 178 F. 3d at 11, then by the same logic disgorgement should only be awarded for the types of activities for which there was a finding of liability.

Even the SEC concedes that Mr. Keener's sales of stock from "open market" transactions and syndicated offerings should not be subject to disgorgement. Pl.'s Reply in Support of Mot. for Remedies Ex. B, at 2, n.1 ("A small fraction of Defendant's trading activity was from the sale of stock from open market and syndicated offerings."). That can only be because those transactions are not the type that made Mr. Keener a "dealer" required to register. The same applies to the transactions, like those involving ADXS and NWBO, that did not involve converting shares to capture the "spread." *See* Def.'s Statement of Material Facts ("DSOF"), ECF No. 72 ¶ 33 ("During the Relevant Period, Mr. Keener also obtained shares in microcap companies through means other than conversions of his convertible note investments, including through warrants, settlement agreements, exchange agreements and open market purchases") (citing DSOF Ex. 2, ECF No. 72-3, at 81:4-13; DSOF Ex. 1, ECF No. 72-2 at 86:22-24).

Instead, Mr. Keener was approached by an investment bank to provide bridge loans to both issuers while the investment bank prepared a registered stock offering for the issuer. *See* Def.'s Opp. Exs. C-D (NWBO and ADXS agreements and stock sale dates); *see also* DSOF Ex. 2, ECF No. 72-3 at 79:2-80:24. When the investment bank was unable to raise enough money for the issuers to allow the issuers to repay the loans in cash as anticipated, Mr. Keener entered into negotiated agreements

5

with the issuers to accept a fixed number of shares of stock of the issuers as repayment of the bridge loans. *Id.*[4] Moreover, in both cases, Mr. Keener held the shares for several years, not the six-month holding period that characterized his convertible note transactions. And the vast majority of the profits from these sales came from appreciation in the value of the securities during the years he held the shares, not from any kind of spread. *See* Def.'s Opp. at 1-2, 10.

In its Complaint, the SEC based its allegations that Mr. Keener was a dealer required to register on his use of convertible notes to capture a spread:

> Keener "operates a business through which he buys convertible notes, a form of short-term debt security, from penny stock issuers in need of cash. After holding the notes for approximately six months, Keener converts them into newly issued shares of stock at a deep discount to the prevailing market price, **which he negotiates in advance of the purchase**, and sells that stock into the market to lock in a profit. … [the majority of] Keener's profits from this practice … **came from the spread** between Keener's discounted acquisition cost for the stock and the prevailing market price."

Complaint, ¶ 8 (emphasis added). That was also the SEC's focus on summary judgment. Pl.'s Mot. for Summ. J. at 4, 9, 13-14, 18.

Likewise, this Court focused on Mr. Keener's use of convertible notes to capture the spread when finding him liable for violating the dealer registration requirement. *See* Order at 24 ("Defendant acquired newly issued stock directly from microcap issuers at a discount, ranging between 10% to 50% **depending on the terms of the convertible notes**, and then resold the stock into the public market.") (emphasis added); *id.* at 25 n. 8 (refusing to "stray from the Eleventh Circuit's unequivocal determination in *Big Apple* that **evidence of a conversion discount is instructive of dealer activity**") (emphasis added); *id.* at 21 ("Defendant 'admits that **he converted** more than 100

---

[4] Mr. Keener's accepting stock as repayment of his bridge loans allowed the investment bank to complete its public offering and successfully resulted in both companies becoming listed on NASDAQ, at which time they ceased to be "penny stocks." DSOF ¶ 29; DSOF Ex. 29, ECF No. 72-31 at 3 (Mr. Keener's investments allowed ADXS and NWBO to uplist to NASDAQ).

[convertible] notes from more than 100 different microcap issuers.' . . . Additionally, Defendant does not genuinely dispute that he sought to make a profit **from selling the converted stock**.") (emphasis added). And Judge Louis followed this Court's lead in finding that the activities that made Mr. Keener a dealer were those involving converting debt into shares and quickly selling them to capture the spread. Report at 2.

The SEC has not explained why Mr. Keener's sales proceeds from stock acquired in the open market or in syndicated offerings should not be included in the disgorgement calculation, whereas other types of transactions not involving conversions of convertible notes at a discount pursuant to their terms and quickly reselling to capture the spread should be included. It just brushes the issue aside by invoking the "reasonable approximation" standard, but what transactions to include in the disgorgement calculation is a separate question from how to reasonably approximate the profits earned from such transactions. In any event, as discussed above, the ADXS and NWBO transactions did not involve the conversion of convertible notes at a discount.

In his Opposition to the SEC's Motion for Remedies, Mr. Keener argued that the proceeds from these two bridge loan transactions should not be included in the disgorgement calculation because the transactions were so distinct from the convertible note activity that gave rise to the finding of dealer liability. Def.'s Opp. at 1-2, 10-12. Judge Louis noted this argument **but did not address it**. Report at 24. Instead, she simply accepted the SEC's disgorgement calculation that included these proceeds, which amounted to approximately $5.4 million – roughly 75% of the total recommended disgorgement amount. *Id.* at 24-25.

This issue cannot simply be brushed aside under the "reasonable approximation" standard. *See S.E.C. v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004) (in order to obtain disgorgement, the SEC must "produc[e] a reasonable approximation of a defendant's ill-gotten gains"). The proper calculation of disgorgement, limited only to the conduct this Court's Order found to violate the statute

7

and limited only to the Relevant Period, is set forth in detail in Mr. Keener's Objections to the Report. Def.'s Objs. at 11-13; Def.'s Opp Ex. B, ECF No. 124-2, at 15.

**B.  Prejudgment Interest Should Not Be Awarded, But If It Is, Then Judge Louis' Calculation Should be Adopted**

As already set out in Mr. Keener's Objections, prejudgment interest on disgorgement is not warranted here. *See* Def.'s Objs. at 13-14.

If, however, prejudgment interest is to be awarded, the Court should adopt Judge Louis' calculation. She noted that "although there is no universal method for calculating prejudgment interest, many courts appear to calculate prejudgment interest on the final disgorgement amount sought, which is the realized amount of the unlawful gain." Report at 26. Further, she cited multiple cases in support of this approach. *Id.* (citing *SEC v. BIH Corp.,* 2014 WL 7499053, at *8 (M.D. Fla. Dec. 12, 2014); *SEC v. Yun,* 148 F. Supp. 2d 1287, 1293 (M.D. Fla. 2001); *SEC v. Almagarby,* 2021 WL 4461831, at *2 (S.D. Fla. Aug. 16, 2021)). The SEC offers no legal argument as to why Judge Louis, and the multiple cases she relied upon, are wrong. It simply asks this Court to exercise its discretion to impose a method of calculation that would be more damaging to Mr. Keener, without any showing that a more damaging method is warranted. *See* Def.'s Obj. at 13. The SEC's request should be rejected.

**C.  A Civil Penalty Should Not Be Awarded, But If It Is, Then Judge Louis' Calculation Should Be Adopted**

In his Objections, Mr. Keener argued that no civil penalty was warranted and that almost the entire amount Judge Louis recommended as a civil penalty is better categorized as disgorgement anyway, since it expressly reflects the registration fees that Mr. Keener did not incur by not registering as a dealer. *See* Def.'s Objs. at 14-15. However, to the extent a civil penalty is to be imposed, Judge Louis' computation should be adopted. The SEC, on the other hand, merely stands by its original proposal and arbitrary methodology without further explanation. *See* SEC Objs. at 6. The SEC also

8

asserts that, even if this Court accepts Judge Louis' approach, transactions from 2014 should be included in the penalty determination. *Id.* As noted above, this position is contrary to this Court's prior order, and the SEC's proof, Judge Louis rightly rejected it. *See* Report at 22; Order at 30.

The SEC offers no legal argument to further increase Judge Louis' recommended penalty amount, which is already excessive. *See* Def.'s Objs. at 15.

### III.   CONCLUSION

Mr. Keener respectfully submits that the SEC's Objections to Magistrate Judge Louis' Report and Recommendation should be rejected and overruled.

Dated: September 6, 2022                         Respectfully submitted,

**GREENBERG TRAURIG LLP**

*/s/ Benjamin G. Greenberg*
**Benjamin G. Greenberg**
Florida Bar No. 192732
333 SE 2nd Avenue Suite 4400
Miami, FL 33131
Telephone: (305) 579-0850
Facsimile: (305) 579-0717
greenbergb@gtlaw.com

-and-

**BUCKLEY LLP**
**Christopher F. Regan (*pro hac vice*)**
**Adam Miller (*pro hac vice*)**
2001 M Street NW, Suite 500
Washington, DC 20036
Telephone: (202) 349-8000
Facsimile: (202) 349-8080
cregan@buckleyfirm.com
amiller@buckleyfirm.com

*Counsel for Defendant Justin W. Keener*

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have this day served via ECF a true and correct copy of the foregoing Defendant's Response to Plaintiff's Objections to Magistrate Judge's Report and Recommendation to the following:

    Joshua E. Braunstein (Special Bar No. A5502640)
    Antony Richard Petrilla (Special Bar No. A5502641)
    Attorneys for Plaintiff
    SECURITIES AND EXCHANGE COMMISSION
    100 F Street NE
    Washington, DC 20549
    Telephone: (202) 551-8470
    Braunsteinj@sec.gov

    *Attorneys for Plaintiff*
    *Securities and Exchange Commission*

                                                                                         This, the 6th of September, 2022

                                                                                       */s/ Benjamin G. Greenberg*
                                                                                       Benjamin G. Greenberg