## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 20-cv-21254-BLOOM/Louis

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

JUSTIN W. KEENER, *d/b/a JMJ Financial*,

      Defendant.

_____/

### ORDER ADOPTING IN PART MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATIONS

**THIS CAUSE** is before the Court upon Plaintiff Securities and Exchange Commission's ("the SEC") Motion for Remedies, ECF No. [122] (the "Motion"). The Motion was referred to Magistrate Judge Lauren Fleischer Louis, ECF No. [130], who issued a Report and Recommendation ("R&R") on August 8, 2022, recommending that the SEC's Motion be granted in part and denied in part. ECF No. [138].

Both the SEC and Defendant Keener filed timely Objections and Responses. ECF Nos. [139], [140], [143], [144]. The Court has carefully considered the R&R, the parties' Objections and Responses, the record in this case, the applicable law, and is otherwise fully advised. Moreover, the Court has conducted a *de novo* review of the R&R in light of Plaintiff's Objections. *See Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009) (citing 28 U.S.C. § 636(b)(1)); *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) ("Where a proper, specific objection to the magistrate judge's report is made, it is clear that the district court must conduct a *de novo* review of that issue."). For the reasons set forth below, the Court adopts the R&R in part and rejects it in part.

I.    **BACKGROUND**

The SEC initiated this action against Keener on March 24, 2020, alleging a violation of Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78o(a)(1). ECF No. [1]. According to the Complaint, between January 2015 and January 2018 ("the Relevant Period"), Keener bought and sold billions of newly issued shares of microcap securities (penny stocks) and generated millions of dollars of profits from those sales, while failing to register as a dealer as required by the Exchange Act. *Id.* ¶ 1.

The details of Keener's activities are described in the Court's Order granting summary judgment in favor of the SEC ("Summary Judgment Order"), ECF No. [118]. Therein, the Court found that, during the Relevant Period defined in the Complaint, Keener operated as an unregistered securities dealer, in violation of Section 15(a)(1). *Id*. at 26.

On March 18, 2022, the SEC filed the instant Motion for Remedies. ECF No. [122]. Therein, the SEC seeks the following remedies: an injunction, a penny stock bar, disgorgement of $17,557,840.00 in profits, prejudgment interest of $5,141,461.00, a civil penalty of $1,750,000.00, and an order for Keener to surrender for cancellation all shares of stock from a list of companies the SEC identified. *Id*. at 7. Keener agrees to surrender and cancel his remaining shares in the companies identified by the SEC, but he opposes all other remedies sought by the SEC. ECF No. [124].

On August 8, 2022, the Magistrate Judge issued her R&R. ECF No. [138]. Therein, she recommended the following remedies: (a) a permanent injunction against Keener; (b) a permanent penny stock bar against Keener; (c) disgorgement in the amount of $7,227,934.00 plus prejudgment interest; (d) a tier-one civil penalty in the amount of $1,030,00.00; and (e) an order

for Defendant to surrender for cancellation all shares of stock and conversion rights from the issuers identified by the SEC. *Id*. at 30-31.

The SEC objects to three aspects of the R&R. *See* ECF No. [139]. First, the SEC argues that the R&'s disgorgement period should be lengthened. *Id*. at 4. Second, the SEC contests the R&R's method for determining the amount of prejudgment interest. *Id*. at 5. Third, the SEC asserts that the civil penalty should be increased from $1,030,000.00 to $1,750,000.00. *Id*. at 6.

Keener objects to all of the R&R, except the recommendation that Keener be ordered to surrender for cancellation any remaining shares he possesses in companies related to this litigation. ECF No. [140]. He argues that (a) the Fifth Amendment's Due Process Clause prohibits all remedies against him; (b) the recommended proposed injunction against him is unlawful; (c) a penny stock bar is not warranted; (d) the recommended disgorgement is both unlawful and excessive; (e) no prejudgment interest should be imposed; and (f) the recommended civil penalty of $1,030,000.00 is excessive. *Id*.

## II.     LEGAL STANDARD

"In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)) (alterations omitted). The objections must also present "supporting legal authority." S.D. Fla. L. Mag. J.R. 4(b). The portions of the report and recommendation to which an objection is made are reviewed *de novo* only if those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). If a party fails to object to any portion of the magistrate judge's

report, those portions are reviewed for clear error. *Macort*, 208 F. App'x at 784 (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999)); *see also Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001). A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1).

## III.    DISCUSSION

The Court will address the issues in the order they appear in Keener's Objections. ECF No. [140].

### A.    Due Process

Keener first argues that any remedies against him violate the Fifth Amendment's Due Process Clause because the SEC is currently considering a proposed rule that would give large hedge funds a year to register as "dealers." ECF No. [140] at 3. The SEC responds that Keener's Fifth Amendment argument is improper at this remedies stage, and, regardless, the claim is without merit. ECF No. [143] at 2-3.

The Court agrees with the SEC on both grounds. The Court rejected Keener's due process arguments in its Summary Judgment Order. *See* ECF No. [118] at 27. Keener is improperly asking the Court to reconsider that decision. Moreover, regarding the merits of Keener's due process argument, the SEC correctly points out that Keener has failed to show (a) that a *proposed* rule can form the basis of a due process challenge; and (b) that Keener is similarly situated to the entities who would benefit from the proposed rule. The Court rejects Keener's due process argument and proceeds with analyzing the remedies sought and the R&R's recommendations.

### B.    Permanent Injunction

The R&R recommends imposing a permanent injunction against Keener that prohibits him from committing further violations of Section 15(a)(1) of the Exchange Act. ECF No. [138] at 9. Keener objects to the permanent injunction on two grounds. First, he argues that a permanent injunction is not warranted because the SEC produced insufficient evidence that Keener will commit further wrongdoing. ECF No. [140] at 1. Second, Keener argues that the recommended injunction is an unenforceable "obey the law" injunction. *Id.* at 6.

### 1.   A Permanent Injunction Is Appropriate

The parties agree with the legal standards that the R&R applies to determine whether an injunction should be ordered. "The SEC is entitled to injunctive relief when it establishes (1) a prima facie case of previous violations of federal securities laws, and (2) a reasonable likelihood that the wrong will be repeated." *SEC v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004). The Court has already found Keener to have violated Section 15(a)(1) of the Exchange Act by acting as an unregistered dealer from January 2015 through January 2018. ECF No. [118] at 26.

At issue is whether the SEC has established "a reasonable likelihood that the wrong will be repeated." *Calvo*, 378 F.3d at 1216. The parties agree that *Calvo* established six factors a court should consider when evaluating the likelihood of future wrongdoing: "(1) the egregiousness of the defendant's actions, (2) the isolated or recurrent nature of the infraction, (3) the degree of scienter involved, (4) the sincerity of the defendant's assurances against future violations, (5) the defendant's recognition of the wrongful nature of his conduct, and (6) the likelihood that the defendant's occupation will present opportunities for future violations." *Id.* (quotation marks omitted).

Regarding (1) egregiousness, the Court agrees with the Magistrate Judge that Keener's conduct was not egregious. The R&R correctly notes: "Unlike cases of insider trading or conduct that involved scienter and not mere technical violations, the SEC can show no such conduct here nor cite cases in support." ECF No. [138] at 7-8. The R&R properly rejected the SEC's assertion that violating Section 15(a)(1) is inherently "egregious," ECF No. [138] at 7, since accepting the SEC's argument would render the egregiousness factor meaningless. This factor weighs against injunctive relief.

As to (2) the recurrent nature of the conduct, the R&R accurately concludes that Keener's conduct was recurrent because he disregarded the dealer registration requirement during a period of over three years as he acted as an unlicensed dealer. ECF No. [138] at 8. That conduct was not an isolated incident, but a systemic practice of noncompliance with the Exchange Act. This factor weighs in favor of injunctive relief.

As to (3) scienter, the SEC has not alleged scienter in this case. The R&R correctly determined that this factor weighs against an injunction. ECF No. [138] at 8.

As to (4) the sincerity of the defendant's assurances against future violations, the R&R found two factors weighing against Keener's sincerity regarding future wrongdoing. First, in 2012, Keener was barred from the Financial Industry Regulatory Authority ("FINRA") for failing to provide information regarding sales of unregistered securities. ECF No. [138] at 8. Second, the Magistrate Judge found that "[f]ollowing the initiation of this litigation, and while [Keener]'s Motion to Dismiss was pending, [Keener] sold Blink Charging Co. ["Blink"] stock, which is the type of stock the SEC qualifies as relevant in this litigation." ECF No. [138] at 8. Keener strenuously contests the Blink stock's relation to this litigation. ECF No. [140] at 5. He asserts that his acquisition and sales of Blink stock are unrelated because that stock "did not come from

6

converting any note at a discount to capture the conversion spread." ECF No. [140] at 5. Keener contends that he obtained the Blink stock not from a convertible note, but rather through a "simple loan in 2018 with no conversion rights." ECF No. [124] at 22.

The Court agrees with the SEC that Keener obtained most of his Blink stock through his convertible note business that was the subject of this litigation. The SEC's allegations are not "unsupported," as Keener claims. ECF No. [140] at 5. Rather, they are supported by a Form 10-K that Blink submitted to the SEC, which shows that the majority of Keener's Blink shares stem from a 2016 convertible note and bundled warrant agreement between Blink and Keener's company. ECF No. [91-14] at 4. According to the SEC's uncontested calculations, Keener obtained 73,529 shares of stock and 147,058 warrants from the 2018 simple loan that Keener repeatedly references, compared to 3.8 million shares that he acquired as a result of the convertible note. *See* ECF No. [129] at 12 n.18. As the SEC correctly asserts, it is "a distinction that makes no difference" that Keener's acquired most of the Blink stock through a settlement with Blink rather than discounted note conversions, since his interest in those shares stem directly from the 2016 convertible note, which was the type of convertible note he acquired over the course of his unlicensed dealing. ECF No. [143] at 9. In sum, the Court concludes that the vast majority of Keener's Blink stock was acquired through the convertible note business at issue in this case.

The fact that Keener sold his Blink stock while his Motion to Dismiss was pending is not, in itself, conclusive evidence that he will continue to engage in illegal activity. As noted above, he acquired his Blink convertible note in 2016, years before this case began. At the time he sold the stock, it had not yet been determined that his convertible note business constituted unregistered dealing.

More concerning are Keener's statements and arguments in this litigation relating to the Blink stock. Keener argued before the Magistrate Judge that he obtained all of his Blink stock from "a simple loan in 2018 with no conversion rights[.]" ECF No. [124] at 22. For the reasons previously discussed, the Court agrees with the SEC that Keener's statement was materially false; the 2018 loan only accounted for a small fraction of Keener's Blink shares, most of which resulted from the convertible note. ECF No. [129] at 12. In briefing before this Court, rather than admitting his misrepresentation, Keener continues to argue that his sales of Blink stock are unrelated to this litigation. ECF No. [140] at 5. Keener's arguments regarding his sales of Blink stock reflect, at best, a misunderstanding of what rendered his conduct illegal, and at worst, an intent to obfuscate. The Court agrees with the R&R that there is good reason to doubt the sincerity of Kenner's assurances against future violations of the Exchange Act.

Turning to (5) Keener's recognition of the wrongful nature of his conduct, the Court agrees with the R&R that there has been no such recognition. Keener's closest statement to an admission is that he "accepts that his conduct was deemed wrongful." ECF No. [140] at 5. But that is not a recognition of Keener's wrongdoing; it is simply a recognition that the Court ruled against him. However, the Court recognizes that Keener has a right to "a full and vigorous defense," including on appeal. *S.E.C. v. Yun*, 148 F. Supp. 2d 1287, 1294 (M.D. Fla. 2001). The Court affords this factor little weight.

Concluding with (6) the likelihood that Keener's occupation will present opportunities for future violations, the Court agrees with the R&R that Keener's firm roots in the financial markets and ready access to capital and contacts will afford him ample opportunities to reengage in prohibited conduct. ECF No. [138] at 9. This factor weighs in favor of an injunction.

Case No. 20-cv-21254-BLOOM/Louis

Overall, the Court agrees with the R&R that an injunction is appropriate. As early as 2012, when FINRA barred him for failing to provide requested information regarding his financing of "small-cap, publicly traded companies," Keener has evinced an unwillingness to comply with financial regulatory bodies. ECF No. [143] at 7. From 2015 through 2018, he violated Section 15(a)(1) of the Exchange Act by failing to register as a dealer. Finally, his misrepresentation and obfuscation regarding his Blink stock dealings in briefings in this case indicate that Keener will continue to misinterpret the law in his favor. Keener's decade-long history of noncompliance and nondisclosure, when combined with his firm position in the financial industry, lead to a "reasonable likelihood" that Keener "will engage in wrongful actions in the future." *Calvo*, 378 F.3d 1211.

### 2. Framing the Injunction

Having determined that an injunction is appropriate, the Court must now determine the scope of that injunction. The R&R recommends that the Court accept the SEC's proposed injunction:

> IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") by, directly or indirectly, making use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security pursuant to 17 C.F.R. § 240.15a-2 or commercial paper, bankers' acceptances, or commercial bills) while engaged in and pursuant to the regular business of buying and selling securities (not including security-based swaps, other than security-based swaps with or for persons that are not eligible contract participants) for their own account through a broker or otherwise unless the Defendant is registered as a dealer with the Securities and Exchange Commission as provided in Section 15(b) of the Exchange Act, or unless Defendant is associated with a broker-dealer that was so registered.

ECF No. [138] at 9.

Keener argues that the proposed injunction is an unenforceable "obey the law" injunction because it essentially repeats the language of Section 15(a)(1) of the Exchange Act. ECF No. [140] at 5 (citing *SEC v. Graham*, 823 F.3d 1357, 1362 n.2 (11th Cir. 2016)). Keener proposes a narrower injunction that only enjoins him from "engaging in the convertible note transactions, note conversions, acts, practices or courses of business described in the Complaint[.]" ECF No. [140-1] at 2.

The SEC responds that "a broad, but properly drafted injunction, which largely uses the statutory or regulatory language" is permissible "so long as it clearly lets the defendant know what he is ordered to do or not." ECF No. [143] at 9 (quoting *SEC v. Goble*, 682 F.3d 934, 952 (11th Cir. 2012)). The SEC further argues that Keener's narrower proposed injunction should be rejected in light of Keener's failed attempt to argue that his sales of Blink stock are unrelated to the conduct that led to this litigation. *Id*.

An "injunction prohibiting violations of the securities regulations must comply with [Federal Rule of Civil procedure 65(d)]." *Goble*, 682 F.3d at 952. "Rule 65(d)(1) states that Every order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail – and not by referring to the complaint or other document – the act or acts retrained or required." *Id.*

In *Goble*, the Eleventh Circuit addressed injunctions enjoining a defendant from violating two sections of the Exchange Act. *Id*. at 949. The *Goble* court recognized that the injunctions were problematic "obey-the-law" injunctions that did "little more than order the defendant to obey the law." *Id.* at 949. But it recognized that such an injunction had been upheld by the Supreme Court, and "[p]ermitting injunctions of some breadth in the

context of civil enforcement actions brought by the SEC is warranted." *Id*. at 952. The *Goble* court ultimately vacated the proposed injunctions at issue because they contained cross-references to the relevant statutes and rules, thus requiring the defendant to look beyond "the four corners of the injunction to determine what he must do or refrain from doing." *Id*. at 952 (quotation marks omitted). But the court stressed that, in some instances, injunctions enjoining specific violations of the Exchange Act are permissible, so long as they "clearly and specifically describe permissible and impermissible conduct." *Id*. at 952.

Here, Keener is correct that the proposed injunction essentially tracks the language of Section 15(a)(1) of the Exchange Act. *See* 15 U.S.C. § 78o(a)(1). However, it makes one important substitution. Whereas Section 15(a)(1) simply prohibits "any broker or dealer" from engaging in unregistered dealing, the proposed injunction instructs Keener the activity that makes him a dealer: engagement in "the regular business of buying and selling securities." That instruction is consistent with the law, *see* § 78c(a)(5)(A-B), and it avoids the sin noted in *Goble* of "cross-referenc[ing] the relevant statutes and regulations." 682 F.3d at 952. Keener's proposed injunction, by contrast, is plainly in violation of Rule 65(d)(1)(C) because it refers to the Complaint to define the scope of the prohibited activity.

The Court concludes that the R&R's proposed injunction is largely consistent with *Goble* and appropriate in these circumstances. However, it contains unnecessary references to laws and regulations, a practice that *Goble* prohibits. The Court excises those references and imposes the following injunction:

> Keener is permanently restrained and enjoined from directly or indirectly making use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) while engaged in and pursuant to the regular business of buying and selling securities (not including security-based swaps, other

11

than security-based swaps with or for persons that are not eligible contract participants) for his own account through a broker or otherwise unless Keener is registered as a dealer with the Securities and Exchange Commission, or unless he is associated with a broker-dealer that is so registered.

### C.    Penny Stock Bar

The R&R recommends imposing a penny-stock bar on Keener. ECF No. [138] at 11. "Under the Exchange Act, a court may prohibit any person who, at the time of the alleged misconduct, was participating in any offering of penny stock from participating in any future offering of penny stock." *SEC v. Almagarby*, 17-cv-62225, 2021 WL 4461831, at * 4 (S.D. Fla. Aug. 16, 2021) (citing 15 U.S.C. §§ 77t(g), 78u(d)(6)). "Before a court may enter a penny stock bar, the SEC must demonstrate that the stock at issue in the violations under review is, in fact, a penny stock." *SEC v. Huff*, 758 F. Supp. 2d 1288, 1357 (S.D. Fla. 2010). Here, there is no dispute that Keener's violations related to his dealing of penny stocks.

The Magistrate Judge and parties appear to agree that the same factors relevant to a permanent injunction are applicable to a penny stock bar. ECF Nos. [138] at 11, [140] at 7, [143] at 9. The parties disagree as to how those factors are applied. Keener stresses that his violations were not egregious, and he has made assurances that he is no longer in the convertible note business. ECF No. [140] at 7. If a penny stock bar is imposed, Keener requests that it be confined to convertible notes and temporally limited. *Id.* at 8. The SEC responds that Keener's misconduct chiefly related to his unauthorized dealing of penny stocks, and, for the same reasons that a permanent injunction is necessary, a penny stock bar is also appropriate. ECF No. [138] at 11. The SEC does not respond to Keener's request to limit the penny stock bar's scope and duration.

The Court agrees that a penny stock bar is appropriate in this case. As noted above, Keener has been under scrutiny for his penny stock dealings since at least 2012. ECF No. [143] at 7. His assurances that he has been out of the convertible note business since 2017, *see id.* at 6, are

undermined by his sale of Blink stock as late as 2020. ECF No. [143] at 6 n.2. Thus, the Court agrees there is a reasonable likelihood that Keener will reengage in unlawful conduct related to penny stocks.

However, the Court agrees with Keener that the SEC has not shown a reasonable likelihood that he cannot *ever* engage in lawful penny stock offerings. Accordingly, the Court adopts Keener's proposal to temporally limit the penny stock bar to five years. The Court otherwise rejects Keener's request to limit the scope of the penny stock bar.

### D.    Disgorgement

Keener objects to the R&R's recommendation to disgorge $7,227,934.00 plus prejudgment interest. First, Keener argues that there is no causal connection between Keener's Section 15(a)(1) violation and his profits. ECF No. [140] at 8. Second, he asserts that the recommended disgorgement violates *Liu v. SEC*, 140 S. Ct. 1940 (2020). *Id.* at 10. Third, he argues that the R&R's disgorgement calculation is not a reasonable approximation of his profits. *Id.* at 12. The SEC responds that Keener's profits were the result of his violations and argues that the Magistrate Judge's disgorgement calculation was erroneously low. ECF No. [139] at 4.

Disgorgement is an equitable remedy that "deprive[s] wrongdoers of their net profits from unlawful activity[.]" *Liu*, 140 S. Ct. at 1942; *see also SEC v. Tayeh*, 848 F. App'x 827, 828 (11th Cir. 2021) ("Disgorgement is an equitable remedy intended to prevent unjust enrichment from ill-gotten gains and must not be used punitively."). Prior to January 1, 2021, courts awarded disgorgement in securities cases pursuant to 15 U.S.C. § 78u(d)(5), which permits courts to grant "any equitable relief that may be appropriate or necessary for the benefit of investors." However, a 2021 amendment added a separate subsection specifically authorizing federal courts to order disgorgement. 15 U.S.C. § 78u(d)(7). Unlike the subsection addressing equitable relief generally,

the disgorgement subsection contains no "for the benefit of investors" requirement. *Compare* § 78u(d)(5) *with* § 78u(d)(7).

### 1.  Causality

The first disgorgement issue raised by Keener is whether there is a causal relationship between Keener's earnings and his failure to register. ECF No. [140] at 8. He argues that, had Keener registered as a dealer, he could have engaged in the same conduct and would have made the same earnings. *Id.*  As such, Keener contends that his failure to register was not the cause of his profits. *Id.* (citing *CFTC v. Sidoti*, 178 F.3d 1132, 1138 (11th Cir. 1999)). The Magistrate Judge agreed with the SEC that Keener's violation was his unlawful dealing of securities, so the profit he earned from such dealing directly stemmed from his misconduct. ECF No. [138] at 17.

The Court finds no merit in Keener's argument. His "violation was engaging in the business of regularly acquiring securities from issuers and reselling those securities into the market without registering as a 'dealer.' Thus, the profits generated from these transactions are connected to [Keener]'s violation." *Almagarby*, 2021 WL 4461831, at * 3.

Keener's reliance on *Sidoti* is misplaced. *See* ECF No. [138] at 16. In *Sidoti*, the Eleventh Circuit affirmed the finding that Mr. Sidoti was liable for failing to register as a principal of an "introducing broker" (IB), and the district court's conclusion that the IB engaged in fraud unrelated to Sidoti's failure to register. 178 F.3d at 1136, 1138. The *Sidoti* court held that Sidoti's profits from the IB should not be disgorged because there was no allegation that "Sidoti knew of, much less participated in, any of the fraudulent conduct" at the IB, so there was no causal relation between Sidoti's failure to register and the IB's ill-gotten profits. *Id.* at 1138.

Here, by contrast, it is undisputed that Keener personally engaged in the unauthorized dealing of securities. Just as Sidoti's failure to register did not render all of the IB's activity

unlawful, Keener's failure to register did not render all of his financial conduct illegal. Rather, his failure to register rendered illegal the transactions he could not lawfully conduct without being a registered dealer. "[T]he profits generated from these transactions are connected to [Keener]'s violation." *Almagarby*, 2021 WL 4461831, at * 3.

Keener's reliance on *SEC v. Wyly* is likewise misplaced. ECF No. [140] at 10 (citing 56 F. Supp. 3d 260 (S.D.N.Y. 2014)). *Wyly* is an out-of-circuit district court decision that bears little relevance to the present proceedings because it did not involve unlawful trading. 56 F. Supp. 3d at 269.

If accepted, Keener's position would significantly weaken the enforceability of Section 15(a)(1). Under Keener's interpretation, an unregistered dealer of securities could retain all profits from systemic unlawful activity based on the theory that he *could* have obtained those profits had he complied with the law.[1] For the registration requirement to be meaningful, nonregistered dealers cannot profit from their unlawful conduct.

In sum, Keener violated Section 15(1)(a) by engaging in the regular business of buying and selling securities without registering as a dealer. The profits he gained from that unlawful trading are the direct result of his illegal conduct, so they are subject to disgorgement. *See Almagarby*, 2021 WL 4461831, at *3.

## 2. *Liu v. SEC*

Keener additionally argues that disgorgement in this case is illegal under *United States v. Liu*, wherein the Supreme Court instructed that disgorgement must be "return[ed] . . . to wronged investors for their benefit." ECF No. [140] at 10 (quoting 140 S. Ct. at 1948). Keener contends

---

[1] Given Keener's FINRA bar, it appears unlikely that he *could* have successfully registered as a dealer. The parties have not squarely addressed this factual point, so the Court will not consider it further.

that disgorgement in this case violates *Liu* because there are no "wronged investors" of Keener's unlicensed trading. *Id.*

Keener's *Liu* argument is without merit. First, "the [disgorgement] inquiry focuses on a defendant's gain, not investors' losses." *SEC v. Huff*, No. 8-cv-60315, 2010 WL 14832, at *5 (S.D. Fla. Jan. 10, 2010). The essential holding of *Liu* is that a disgorgement award may "not exceed a wrongdoer's net profits[.]" 140 S. Ct. at 1940. The R&R complies with *Liu* by recommending disgorgement of precisely the amount of Keener's net profits.

Second, the Court rejects Keener's assertion that there were no victims of his unlawful activity. The SEC convincingly showed that 93% of issuers experienced stock price declines between Keener's first and last sales, indicating that the majority of investors who bought Keener's offerings suffered losses and could be considered victims of his unlawful dealing. ECF No. [122] at 15. Unlike in *Alvarez v. United States*, 862 F.3d 1297, 1302 (11th Cir. 2017), which Keener relies upon, the investor's losses in this case stem directly from Keener's dealing that was inherently unlawful due to Keener's unregistered status. And unlike *CFTC v. Southern Tr. Metals, Inc.*, 894 F.3d 1313, 1330 (11th Cir. 2018), which addressed whether a registration violation proximately caused customers' losses, the but-for causation standard applicable in this case is less demanding. *See id.* at 1329 ("Establishing *proximate cause* requires more [than "but-for" causation]."). That lessor standard is met: But for Keener's unlawful dealing, some investors would not have lost money after buying his offerings.

Third, the SEC's potential difficulty in identifying victims is not a reason to preclude disgorgement. The SEC has committed to distributing disgorgement to the victims of Keener's activity. ECF No. [143] at 15. Moreover, *Liu* explicitly left open the question of whether it can be considered "for the benefit of investors" for the SEC to deposit disgorgement funds with the

Treasury "where it is infeasible to distribute the collected funds to investors." 140 S. Ct. at 1948. The 2021 amendment to the SEC regulations moots the question by clarifying that disgorgement, unlike other forms of equitable relief, need not be "for the benefit of investors."[2] *Compare* 15 U.S.C. § 78u(d)(5) *with* § 78u(d)(7).

### 3. Reasonable Approximation

The final disgorgement issue is whether the R&R's recommended disgorgement amount is a reasonable approximation of Keener's profit from his unlawful activity. "In order to be entitled to disgorgement, the SEC needs to produce only a reasonable approximation of the defendant's ill-gotten gains, and exactitude is not a requirement." *SEC. v. Monterosso*, 756 F.3d 1326, 1337 (11th Cir. 2014) (cleaned up); *see also United States Commodity Futures Trading Comm'n v. Tayeh*, 848 F. App'x 827, 828 (11th Cir. 2021) (recognizing the Government's "burden to produce a reasonable approximation of a defendant's ill-gotten gains to sustain a disgorgement amount").

The R&R recommends disgorgement of $7,227,934.00. ECF No. [138] at 25. The Magistrate Judge arrived at that amount by relying upon the SEC's calculation of Keener's profits, as set forth in Dr. Taveras's Remedies Declaration, ECF No. [122-3], but limiting her calculation to Keener's profits from March 24, 2015 through January 31, 2018. ECF No. [138] at 22. Both parties object to the R&R's disgorgement calculation.

Keener argues that the disgorgement amount should be nothing more than the "registration costs that he avoided incurring." ECF No. [140]. The Court rejects this argument for the reasons stated in the "Causal Connection" section above: All profit that Keener gained from his unregistered dealing is subject to disgorgement as "ill-gotten gains" from his unlawful dealing. *Monterosso*, 756 F.3d at 1337.

---

[2] The 2021 amendment applies to "any action or proceeding that is pending on" January 1, 2021. National Defense Authorization Act of 2021 § 6501(b). This case was pending at that time.

The SEC argues that the Magistrate Judge improperly limited disgorgement to the period beginning on March 24, 2015. ECF No. [139] at 4. The SEC argues the disgorgement period should commence one year earlier. *Id*. Although this case was initiated on March 24, 2020, and 28 U.S.C. § 2462 imposed a five-year statute of limitations for disgorgement claims, the SEC argues that § 2462's statute of limitations period was extended by a tolling agreement between Keener and the SEC. *Id.* at 4-5.

The Court agrees with the SEC that the tolling agreement extends the appropriate disgorgement period. The tolling agreement between Keener and the SEC explicitly tolls "the running of any statute of limitations . . . including any sanctions or relief . . . for the period beginning on March 7, 2019 through March 6, 2020." ECF No. [67-8] at 2. Keener's only argument against enforcement of the tolling agreement is that § 2462 is a jurisdictional statute that is not subject to tolling. ECF No. [118] at 30. That argument has been squarely rejected by the Eleventh Circuit. *SEC v. Revolutionary Concepts, Inc*., No. 21-10984, 2022 WL 386085, at *7 (11th Cir. Feb. 9, 2022).

It is true, as Keener notes, that the Court stated in its Summary Judgment Order that the SEC "is entitled to relief for conduct that occurred on or after March 24, 2015." ECF No. [118] at 30. However, that statement was made within the context of rejecting Keener's argument that this entire action was barred under a first-accrual theory. *Id.* at 30-31. The Court did not find the tolling agreement to be invalid or unenforceable, nor did it limit the disgorgement period to the five year period before the Complaint was filed. ECF No. [118] at 31 n.12 (rejecting Keener's "contention that [the SEC] is precluded from seeking penalties and disgorgement for conduct that occurred more than five years before the Complaint was filed."). Rather, the Court rejected Keener's statute of limitations defense in whole, not in part. *Id.* at 31.

However, the disgorgement period cannot extend to March 24, 2014, as the SEC contends. The SEC's Complaint established January 2015 through January 2018 as the "Relevant Period" in this case. ECF No. [1] ¶ 1. It was during the Relevant Period that the Court determined Keener to have violated Section 15(a)(1) of the Exchange Act by acting as an unregistered dealer. *See* ECF No. [118] at 21-26. The Court made no findings regarding Keener's activities prior to the Relevant Period. Thus, the SEC cannot disgorge Keener's profits from activity prior to the Relevant Period, which began in January 2015.

The R&R calculates Keener's net profits from January 2015 through January 31, 2018 to be $8,725,267.00. ECF No. [138] at 23. The Court adopts that amount but rejects the R&R's proposed subtraction of $1,497,332.89 for the period between January 1, 2015 and March 23, 2015, which the Magistrate Judge erroneously excluded from the disgorgement period.[3]

Keener's final "reasonable approximation" argument is that the disgorgement amount should be reduced by $935,628.00, the amount of proceeds from warrants issued by Ampio Pharmaceuticals Inc. that Keener claims he acquired in a syndicated offering unrelated to any convertible note. ECF No. [140] at 13. Keener's argument is supported by statements in Dr. Taveras's declaration indicating that "the documents produced to the SEC do not include a convertible note from that issuer." ECF No. [129-2] at ¶¶ 18-19. The SEC has not responded to Keener's argument regarding the Ampio Pharmaceuticals Inc. stock. *See generally* ECF No. [143]. Due to the SEC's failure to respond to Keener's plausible objection, the Court concludes that Keener has met his burden to show an error in the SEC's calculation, and the Court reduces the disgorgement amount noted above by $938,628.00. Accordingly, the Court arrives at a total disgorgement amount of **$7,786,639.00**.

---

[3] The Court rejects as moot Keener's argument that the R&R poorly estimates the amount to be subtracted for the period from January 1, 2015 – March 23, 2015. *See* ECF No. [140] at 14.

### E.       Prejudgment Interest

The R&R recommends that prejudgment interest be imposed on the final disgorgement amount, from February 1, 2018, through January 21, 2022. ECF No. [138] at 26. Both parties object to this recommendation.

The SEC argues that the time frame for the imposition of prejudgment interest should begin as near as possible to the date of the unlawful gain. ECF No. [139] at 6 (citing *SEC v. Yun*, 248 F. Supp. 2d 1287, 1293 (M.D. Fla. 2001)). Thus, the SEC urges the Court to impose prejudgment interest not on February 1, 2018, but rather on the first day of each year following Keener's unlawful gains, beginning in 2015. *Id*.

Keener argues that no prejudgment interest should be imposed because the purpose of prejudgment interest is to compensate victims, not to penalize wrongdoers. ECF No. [140] at 14. Keener repeats his previously rejected argument that there are no victims in this case.

In the Eleventh Circuit, "awards of prejudgment interest are equitable remedies, to be awarded or not awarded in the district court's sound discretion." *Indus. RiskInsurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1446 (11th Cir. 1998). The rate of pre-judgment interest that should generally be awarded is the prime rate during the relevant period. *Sunderland Marine Mut. Ins. Co., Ltd. v. Weeks Marine Const. Co*., 338 F.3d 1276, 1280 (11th Cir. 2003).

The Court agrees with the R&R that an award of prejudgment interest is appropriate in this case. "Requiring the payment of interest prevents a defendant from obtaining the benefit of what amounts to an interest free loan procured as a result of illegal activity." *SEC v. Credit Bancorp, LTD.*, 2011 WL 666158, at *3 (S.D.N.Y. Feb. 14, 2011). The Court agrees with the R&R that prejudgment interest is routinely awarded in cases such as this, and appropriately levied on the final disgorgement amount sought. *See* ECF No. [138] at 26 (citing cases).

Accordingly, the Court adopts the R&R's recommendation and imposes prejudgment interest on the total disgorgement amount from February 1, 2018, through January 21, 2022.

### F.    Civil Penalty

The final remedy recommended in the R&R is a civil penalty in the amount of $1,030,000.00. ECF No. [138] at 29. The Magistrate Judge arrived at that amount by first calculating the amount of registration and fees that Keener would have paid had he complied with Section 15(a)(1)'s registration requirement during the Relevant Period. ECF No. [138] at 29. That amounted to $1,025,000.00. *Id.* The Magistrate Judge then added $5,000.00 for a "tier one" penalty that is typically awarded in cases involving a failure to register. *Id*.

Both parties object to the recommended civil penalty. The SEC argues that the penalty should be 10% of the disgorgement amount. ECF No. [138] at 29. Keener argues that the civil penalty should be nothing more than the tier one penalty of $5,000.00. ECF No. [140] at 16.

Section 21(d)(3) of the Exchange Act authorizes the Court to order penalties for violations of the federal securities laws, providing three tiers of escalating penalty amounts. 15 U.S.C. § 78u(d)(3). Whereas the tier two and tier three penalties can be imposed only in cases involving "fraud, deceit, manipulation, or deliberate or reckless disregard or a regulatory requirement," a tier one penalty "may be imposed for any violation." *Monterosso*, 756 F.3d at 1338. Regardless of the tier, the Court may impose a penalty up to the amount of a defendant's gross pecuniary gain. *See* 15 U.S.C. § 78u(d)(3)(B)(i).

In general, "[c]ivil penalties are intended to punish the individual wrongdoer and to deter him and others from future securities violations." *Monterosso*, 756 F.3d at 1338. The decision of whether to impose a penalty and in what amount falls within the Court's discretion. *SEC v. Aura Financial Servs., Inc.*, 9-cv-21592, 2010 WL 3419200, at *3 (S.D. Fla. July 14, 2010).

The Magistrate Judge correctly rejected the SEC's proposed penalty of 10% of the disgorgement figure as arbitrary. ECF No. [138] at 29. Keener's proposed penalty of a mere $5,000.00 would have no deterrent effect on Keener or others, given the substantial profit he earned from unregistered dealing.

The Court agrees with the R&R's recommendation of a penalty of $5,000.00 plus the amount of money that Keener would have paid had he registered with the SEC throughout the Relevant Period.[4] That penalty deters individuals in Keener's position because it forces Keener to pay the costs that he sought to avoid by declining to register. The message to dealers is that failing to register is never in the dealer's financial interest.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Magistrate Judge Louis's Report and Recommendation, **ECF No. [138]**, is **ADOPTED IN PART**;

2. The SEC's Objections, **ECF No. [139]**, are **SUSTAINED IN PART AND OVERRULED IN PART**;

3. Keener's Objections, **ECF No. [140]**, are **SUSTAINED IN PART AND OVERRULED IN PART**;

4. The SEC's Motion for Judgment, **ECF No. [122]**, is **GRANTED IN PART AND DENIED IN PART**;

5. Keener is **permanently restrained and enjoined** from directly or indirectly making use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of,

---

[4] Given the Court's extension of the disgorgement period to January 2015, the Magistrate Judge's calculation likely underapproximates the amount of money Keener would have paid in registration and fees.

any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) while engaged in and pursuant to the regular business of buying and selling securities (not including security-based swaps, other than security-based swaps with or for persons that are not eligible contract participants) for his own account through a broker or otherwise unless Keener is registered as a dealer with the Securities and Exchange Commission, or unless he is associated with a broker-dealer that is so registered;

6. As provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Keener's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Keener or with anyone described in (a).

7. Keener is barred **for five years from the date of this Order** from participating in the offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock. A penny stock is any equity security that has a price of less than five dollars, except as provided in Rule 3a51-1 under the Exchange Act [17 C.F.R. 240.3a51- 1].

8. Keener is liable for disgorgement of **$7,786,639.00**, representing net profits gained as a result of the conduct alleged in the Complaint.

9. Prejudgment interest is awarded on the disgorgement amount for the period from February 1, 2018, through January 21, 2022. **No later than December 16, 2022**, the Parties shall submit a notice that calculates this amount of prejudgment interest.

10. Keener must pay a civil penalty in the amount of **$1,030,000.00**.

11. Following the parties' Notice regarding prejudgment interest, the Court will enter a Final Judgment stating the total amount due.

12. **Within ten days of entry of the Final Judgment**, Keener must surrender for cancellation his remaining shares of stock of the issuers listed in Exhibit 1 of the SEC's Motion for Remedies in this case, ECF No. [122-1], and surrender his remaining conversion rights under the convertible securities issued by them (the "Issuers"); and send copies of correspondence evidencing the surrender for cancellation of Defendant's remaining shares of the Issuers and his remaining conversion rights under the convertible securities issued by the Issuers to the Securities and Exchange Commission addressed to Joshua E. Braunstein, Senior Trial Counsel, Securities and Exchange Commission, 100 F Street NE, Washington, DC 20549.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 6, 2022.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record